# Exhibit C

1995 WL 17770982 (S.D.N.Y.) (Trial Motion, Memorandum and Affidavit)
United States District Court, S.D. New York.

Ephraim BRYKS, Plaintiff,

v.

CANADIAN BROADCASTING CORPORATION, Noah Erenberg,

Danielle Keefler, Heidi Graham, and Cable News Network, Inc., Defendants.

No. 95 Civ. 1219 (MBM).
June 8, 1995.

**Defendants' Memorandum of Law in Support of Motion to Dismiss for Lack of Subject-Matter Jurisdiction and under Doctrine of Forum Non Conveniens, and for Other Relief**

Gibson, Dunn & Crutcher, 200 Park Avenue, 47th Floor, New York, New York 10166-0193, (212) 351-4000, Attorneys for Defendants.

Of Counsel: Robert D. Sack, Lawrence Byrne, Jonathan Israel.

*TABLE OF CONTENTS*

| | |
|---|---|
| INTRODUCTION ................................................................................................................................ | 1 |
| STATEMENT OF FACTS ................................................................................................................... | 3 |
| ARGUMENT ....................................................................................................................................... | 7 |
| POINT I THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS ACTION ................ | 7 |
| A. Plaintiff's Complaint Fails To Allege Proper Grounds For Subject-Matter Jurisdiction Over This Action | 7 |
| B. The Court Cannot Exercise Subject-Matter Jurisdiction Over This Action Under FSIA ......................... | 8 |
| 1. 28 U.S.C. § 1330(a) governs the jurisdictional analysis in the instant case ................................................ | 9 |
| 2. Each of the Canadian defendants is a "foreign state" under 28 U.S.C. § 1603 .................................... | 10 |
| 3. Plaintiff's claims against the Canadian defendants are jurisdictionally barred under FSIA. ..................... | 11 |
| a. FSIA expressly provides that there is no jurisdiction over an action for libel or slander against a foreign state ............... | 13 |
| b. The commercial activity exception does not apply to Plaintiff's libel claims ............................................... | 15 |
| POINT II THE COURT SHOULD DISMISS THIS ACTION ON GROUNDS OF FORUM NON CONVENIENS ........................................................................................................................................ | 18 |
| A. Threshold Issues ................................................................................................................................. | 19 |
| 1. Canada represents an adequate alternative forum ............................................................................... | 20 |
| 2. Plaintiff's Choice of Forum ............................................................................................................... | 21 |
| B. The Private and Public Gulf Oil Factors Weigh In Favor Of A Canadian Forum .................................... | 22 |
| 1. Choice of law ...................................................................................................................................... | 23 |
| 2. All of the other private Gulf Oil factors support dismissal in favor of a Canadian forum ....................... | 28 |
| 3. All of the public Gulf Oil factors support dismissal in favor of a Canadian forum .................................. | 30 |
| POINT III DISCOVERY SHOULD BE STAYED ................................................................................... | 33 |
| CONCLUSION ......................................................................................................................................... | 35 |

*TABLE OF AUTHORITIES*
Cases

| | |
|---|---|
| *Abdullah v. Sheridan Square Press, Inc.,* No. 93 Civ. 2515 (LLS), 1994 WL 419847 (S.D.N.Y. 1994) ............................ | 28 |
| *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147 (2d Cir.) (*en banc*), *cert. denied,* 449 U.S. 890 (1980) ................ | 21 |

| | |
|---|---:|
| *Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996 (2d Cir.), *cert. denied,* 114 S. Ct. 386 (1993) ........................ | 21, 22, 29 |
| *American Bonded Warehouse Corp. v. Compagnie Nationale Air France,* 653 F. Supp. 861 (N.D. Ill. 1987) ...... | 11 |
| *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428 (1989) ................................................... | 7, 12 |
| *AroChem Int'l, Inc. v. Buirkle,* 767 F. Supp. 1243 (S.D.N.Y. 1991), *aff'd,* 968 F.2d 266 (2d Cir. 1992) ........................ | 24, 26 |
| *Aschenbrenner v. Conseil Regional de Haute-Normandie,* 851 F. Supp. 580 (S.D.N.Y. 1994) ......................... | 7, 16 |
| *Auvil v. CBS '60 Minutes',* 800 F. Supp. 928 (E.D. Wash. 1992) ................................................................ | 23 |
| *Bachchan v. India Abroad Publications. Inc.,* 585 N.Y.S.2d 661 (N.Y. Sup. Ct. 1992) ........................ | 27 |
| *Bailey v. Grand Trunk Lines New England,* 805 F.2d 1097 (2d Cir. 1986), *cert. denied,* 484 U.S. 826 (1987) ........ | 7, 9, 10 |
| *Bank of China v. Chan,* No. 88 Civ. 0232 (MBM), 1992 WL 298002 (S.D.N.Y. Oct. 14, 1992) .......................... | 9 |
| *Barkanic v. General Admin. of Civil Aviation of the People's Republic of China,* 923 F.2d 957 (2d Cir. 1991) ...... | 24 |
| *Chrysler Capital Corp. v. Century Power Corp,,* 137 F.R.D. 209 (S.D.N.Y. 1991) ........................................ | 34 |
| *Chuidian v. Philippine Nat'l Bank,* 912 F.2d 1095 (9th Cir. 1990) .................................................................... | 11 |
| *Davis v. Costa-Gavras,* 580 F. Supp. 1082 (S.D.N.Y. 1984) ........................................................................ | 25, 26 |
| *DeRoburt v. Gannett Co.,* 83 F.R.D. 574 (D. Haw. 1979) . | 27 |
| *Desai v. Hersh,* 719 F. Supp. 670 (N.D. Ill. 1989), *aff'd,* 954 F.2d 1408 (7th Cir. 1992) ........................ | 27 |
| *DeYoung v. Beddome,* 707 F. Supp. 132 (S.D.N.Y. 1989) . | 19, 26, 29, 31, 32 |
| *Grass v. News Group Publications, Inc.,* 570 F. Supp. 178 (S.D.N.Y. 1983) ................................................ | 26 |
| *Gregorian v. Izvestia,* 658 F. Supp. 1224 (C.D. Cal. 1987) *aff'd,* 871 F.2d 1515 (9th Cir.), *cert. denied,* 493 U.S. 891 (1989) ................................................................ | 14, 15, 16 |
| *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947) ................. | 19, 21, 31 |
| *In re Estate of Ferdinand Marcos, Human Rights Litig.,* 25 F.3d 1467 (9th Cir. 1994), *cert. denied,* 115 S. Ct. 934 (1995) ................................................................ | 11 |
| *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) ................................................................ | 17 |
| *Kline v. Kaneko,* 685 F. Supp. 386 (S.D.N.Y. 1988) .... | 11 |
| *Koster v. Lumbermens Mut. Casualty Co.,* 330 U.S. 518 (1947) ................................................................ | 18 |
| *Lund's Inc. v. Chemical Bank,* 870 F.2d 840 (2d Cir. 1989) ................................................................ | 24 |

| | |
|---|---:|
| *Matusevitch v. Telnikoff,* 887 F. Supp. 1 (D.D.C. 1995) | 27 |
| *Merrill Lynch Futures, Inc. v. Miller,* 686 F. Supp. 1033 (S.D.N.Y. 1988) | 24, 25 |
| *Morgan v. International Bank for Reconstruction and Dev.,* 752 F. Supp. 492 (D.D.C. 1990) | 14 |
| *Morris v. Chemical Bank,* No. 85 Civ. 9838 (SWK), 1987 WL 16973 (S.D.N.Y. Sept. 10, 1987), *aff'd,* 847 F.2d 835 (2d Cir. 1988) | 25, 32 |
| *Mueller v. Diggelman,* No. 82 Civ. 5513 (CBM), 1983 WL 25419 (S.D.N.Y. May 13, 1983), *aff'd,* 742 F.2d 1436 (2d Cir. 1983) | 14 |
| *Murray v. British Broadcasting Corp.,* No. 94 Civ. 6162 (LLS), 1995 WL 146250 (S.D.N.Y. April 4, 1995) | 29, 31 |
| *Narvaez v. City of New York,* No. 92 Civ. 4748 (CSH), 1994 WL 583176 (1994) | 33 |
| *Opert v. Schmid,* 535 F. Supp. 591 (S.D.N.Y. 1992) | 32 |
| *Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981) | 20, 21, 26 |
| *Postol v. El-Al Israel Airlines, Ltd.,* 690 F. Supp. 1361 (S.D.N.Y. 1988) | 30, 31 |
| *Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela. S.A.,* 760 F.2d 390 (2d Cir. 1985) | 18 |
| *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164 (2d Cir. 1991) | 18, 20, 23 |
| *Ruggiero v. Compania Peruana de Vapores,* 639 F.2d 872 (2d Cir. 1981) | 8 |
| *Shapiro v. Republic of Bolivia,* 930 F.2d 1013 (2d Cir. 1991) | 12, 17 |
| *Stratton Oakmont, Inc. v. Prodigy Servs. Co.,* No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) | 23 |
| *Sussman v. Bank of Israel,* 801 F. Supp. 1068 (S.D.N.Y. 1992), *aff'd,* 990 F.2d 71 (2d Cir. 1993) | 19, 21 |
| *Transunion Corp. v. Pepsico, Inc.,* 811 F.2d 127 (2d Cir. 1987) | 33 |
| *Travel All Over the World v. Kingdom of Saudi Arabia,* No. 91-C-3306, 1994 WL 673025, (N.D. Ill. Nov. 28, 1994) | 14 |
| *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534 (11th Cir.), *cert. denied,* 113 S. Ct. 2334 (1993) | 8, 11 |
| *Yessenin-Volpin v. Novosti Press Agency,* 443 F. Supp. 849 (S.D.N.Y. 1978) | 14, 15, 16 |

*Statutes*

| | |
|---|---:|
| 28 U.S.C. § 1330 | 2, 9, 11, 12, 13, 17 |
| 28 U.S.C. § 1332 | 1, 7, 8, 17 |
| 28 U.S.C. § 1602 | 2, 7 |
| 28 U.S.C. § 1603 | 9, 10, 11, 16 |
| 28 U.S.C. § 1604 | 12, 13 |
| 28 U.S.C. § 1605 | 2, 13, 14, 15, 17 |
| 28 U.S.C. § 1605-1607 | 9 |
| 28 U.S.C. § 1611 | 2 |

N.Y. Civ. Prac. L. & R. § 301-02 ..................................... 17

*Other Authorities*

Julian Porter and David A. Potts, *Canadian Libel Practice,* (1986) ................................................................. 27, 29

INTRODUCTION

This memorandum of law is respectfully submitted by the defendants in support of their motion to dismiss the above-captioned matter on various grounds. The instant lawsuit was filed by plaintiff Ephraim Bryks in February 1995. Plaintiff's complaint (the "Complaint") alleges two claims for libel arising out of a documentary news program which reported on the controversy surrounding allegations of Plaintiff's sexual abuse of children in Canada over a ten-year period from approximately 1980 to 1990. Plaintiff has sued five defendants in this case: the Canadian Broadcasting Corporation ("CBC"), which reported the allegations in Canada, three employees of CBC, Noah Erenberg, Danielle Keefler and Heidi Graham, and Cable News Network, Inc. ("CNN") which on one occasion republished in the United States a very small portion of the program which CBC had broadcast in Canada.

All of the defendants move to dismiss the instant lawsuit on various grounds set forth below. First, this Court lacks subject-matter jurisdiction over this case. Plaintiff has erroneously alleged that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. The diversity statute does not confer jurisdiction over this case, however, because CBC is wholly owned by the people and government of Canada. CBC is therefore protected from suit by the doctrine of foreign sovereign immunity as are Erenberg, Keefler and Graham (collectively referred to as the "individual defendants") as employees of a foreign state.

In view of the status of CBC and the individual defendants only 28 U.S.C. §§ 1330 and 1602-1611 can confer subject-matter jurisdiction on this Court to hear the instant lawsuit. Those statutes establish and circumscribe the limited circumstances in which the district courts have subject-matter jurisdiction over suits against foreign sovereigns. In the instant case those statutes not only fail to confer jurisdiction on this Court but specifically preclude the exercise of jurisdiction: 28 U.S.C. § 1605(a)(5)(A) strips this Court of subject-matter jurisdiction over any suit against CBC and the individual defendants "arising out of" libel and slander claims. Thus, the Court lacks the power to hear this suit and, it is respectfully submitted, must dismiss it.

Should the Court reach a different conclusion and determine that a basis for exercising subject-matter jurisdiction exists, the instant case against CBC and the individual defendants (the "Canadian defendants") nonetheless should be dismissed under the doctrine of forum non conveniens. The events underlying this lawsuit occurred virtually entirely in Winnipeg, in the Canadian province of Manitoba, and relate solely to Plaintiff's conduct there over a ten-year period. Indeed, this lawsuit has only two relevant contacts with New York State. First, Plaintiff alleges that he is a resident of Queens. The second contact is CNN's republication in the United States (including New York) on one occasion at approximately 2:00 a.m. of less than a two-minute segment about the controversy. Those two factors are not sufficient, however, to bar the dismissal of this case against the Canadian defendants so that it can proceed in the proper forum, which is the Canadian courts.

Finally, in view of the substantial jurisdictional questions which this motion addresses, the defendants have moved for a stay of discovery until this Court determines whether this lawsuit will proceed in the United States.

STATEMENT OF FACTS

Plaintiff's lawsuit arises out of a documentary television news report which was first broadcast by CBC in Canada on February 28, 1994 (the "Report"). *See* Declaration of Daniel J. Henry, dated June 8, 1995 ("Henry Declaration"), ¶ 8. The Report constituted the first half-hour segment of the hour-long evening news program broadcast by CBC on February 28.[1] *Id.* at ¶ 9. The Report was entitled "Unorthodox Conduct" and dealt primarily with allegations of Plaintiff's sexual abuse of young students

over a ten year period in Winnipeg, Canada, while he served as principal of The Torah Academy, a private primary school he founded for Orthodox Jewish students in Winnipeg. *Id.* at ¶ 8. The Report aired without commercial interruption, contained allegations about at least four different Canadian students who were reported by various witnesses to have been sexually abused by Plaintiff and the devastating consequences Plaintiff's conduct reportedly had on those victims, including the suicide of one of them. The Report further contained information about investigations of Plaintiff's conduct by the Winnipeg Police Department, the Winnipeg Child Services Agency and the Board of the Winnipeg Synagogue where Plaintiff served as the Rabbi. In addition, the Report detailed how Plaintiff's conduct had devastated and divided Winnipeg's Orthodox Jewish community.

CBC also reported that Plaintiff had lied about having an Israeli law degree and previously serving as a judge in Israel. It further reported that he had plagiarized an article in a religious publication in Canada. Portions of numerous interviews were aired during the Report. Most of those interviews were conducted in Canada with Canadian residents and officials. Some of those interviewed appeared on a confidential basis and their visual appearances were obscured to preserve anonymity. Only a brief interview of Plaintiff in which he declined comment was conducted in New York and broadcast in the Report.

The Report further detailed how Plaintiff had prevented dissemination of the foregoing information in Canada for many years by using lawyers to threaten lawsuits and, indeed, how Plaintiff's Winnipeg lawyer had threatened CBC with a lawsuit in an effort to block the broadcast of the Report. The Report concluded by pointing out that Plaintiff, who by that time had fled Canada and relocated to the United States, faced possible extradition to Canada as a result of a reopening of the Winnipeg Police Department investigation into Plaintiff's conduct.

CBC also rebroadcast the Report in Canada on March 5, 1994. *See* Henry Declaration at ¶ 12. CBC's "Prime Time News" broadcast a slightly modified version of the Report in Canada later in the evening on February 28, 1994. *Id.* at ¶ 10. CBC rebroadcast that version in Canada on August 25, 1994. *Id.* On March 1, 1994, CBC broadcast in Canada a follow-up to the Report in which portions of interviews with additional Canadian residents and officials were aired. *Id.* at ¶ 11. A slightly modified version of that follow-up story was also broadcast in Canada by CBC on its "Prime Time News" program on March 1, 1994. [2] *Id.* Finally, pursuant to a news-sharing arrangement with CBC, CNN broadcast in the United States a less than two-minute portion of the Report at approximately 2:00 a.m. on March 2, 1994. *See* Declaration of David C. Kohler, dated June 8, 1995 ("Kohler Declaration"), ¶¶ 3-4.

CBC is a Crown Corporation created by an Act of the Canadian Parliament. *See* Henry Declaration, ¶ 3. All of CBC's assets are Crown assets. CBC and its assets are wholly owned by the people and Government of Canada, and CBC answers to the Canadian Parliament. *Id.* at ¶¶ 3-4. CBC only broadcasts programs (including the Report) in Canada although its broadcast signal is received in some small portions of the United States because it is not technologically feasible to prevent it. *Id.* at ¶¶ 6-7. CBC does not broadcast its signal into the United States in order to reach an American audience. *Id.* CBC receives over $1 billion (in Canadian dollars) a year in government funding for its operating budget from the Canadian Parliament. It does not earn a profit on an annual basis. *Id.* at ¶ 5.

The individual defendants are all CBC employees who acted at all times in their official capacities with respect to Plaintiff and the Report.

CNN republished only a small portion of the Report in the United States on one occasion. Kohler Declaration, ¶¶ 3-4. CNN acquired that portion of the Report from CBC pursuant to a nonmonetary agreement to exchange news items and materials between those two entities. *Id.* at ¶ 3. CNN is a Georgia corporation with its principal place of business in Georgia. *Id.* at ¶ 2.

## ARGUMENT

### POINT I

## THE COURT LACKS SUBJECT-MATTER *JURISDICTION OVER THIS ACTION*

### A. Plaintiff's Complaint Fails To Allege Proper Grounds For Subject-*Matter Jurisdiction Over This Action.*

The Complaint erroneously alleges that this Court has subject-matter jurisdiction over the instant lawsuit under 28 U.S.C. § 1332 on the basis of diversity of citizenship between the parties. Complaint, ¶ 1. The diversity statute does not confer jurisdiction in this case, however, and, indeed, is wholly inapplicable because CBC and the individual defendants constitute a "foreign state" under federal law.

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-11, "provides the exclusive source of federal jurisdiction in actions against foreign sovereigns or their instrumentalities." *Bailey v. Grand Trunk Lines New England,* 805 F.2d 1097, 1100 (2d Cir. 1986), *cert. denied,* 484 U.S. 826 (1987); *see also Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434 (1989); *Aschenbrenner v. Conseil Regional de Haute-Normandie,* 851 F. Supp. 580, 584 (S.D.N.Y. 1994).

As Plaintiff has sued CBC, which is a foreign state under FSIA, this Court may exercise subject-matter jurisdiction in the instant action only within the parameters of FSIA. *See Bailey,* 805 F.2d at 1100; *Aschenbrenner,* 851 F. Supp. at 584. The diversity statute simply does not provide for federal jurisdiction in actions where a foreign state is a defendant. That statute creates diversity jurisdiction only in suits between a "foreign state, [as defined by FSIA], as *plaintiff* and citizens of a State or of different States." 28 U.S.C. § 1332(a) (emphasis added); *see also Ruggiero v. Compania Peruana de Vapores,* 639 F.2d 872, 875-76 (2d Cir. 1981) (holding that a foreign state is not a "citizen" or "subject" of a foreign state under 28 U.S.C. § 1332(a)). [3]

### B. The Court Cannot Exercise Subject-Matter *Jurisdiction Over This Action Under FSIA.*

Since FSIA provides the exclusive basis for jurisdiction over suits against foreign states the Court must determine whether jurisdiction is proper under FSIA. As set forth below, FSIA does not vest this Court with subject-matter jurisdiction over this case. [4]

### 1. 28 U.S.C. § 1330(a) governs the *jurisdictional analysis in the instant case.*

Jurisdictional analysis under FSIA begins with 28 U.S.C. § 1330(a), which provides:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a). This statute acts as the sole jurisdictional foundation for actions against foreign states and thus controls the determination of whether subject-matter jurisdiction exists over Plaintiff's lawsuit. [5]

### 2. Each of the Canadian defendants is a *"foreign state" under* [28 U.S.C. § 1603](#)

FSIA defines an "agency or instrumentality" of a foreign state as any entity:

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a [corporation incorporated or operating its principal place of business in the United States], nor created under the laws of any third country.

[28 U.S.C. § 1603(b)(1)-(3)](#).

The Canadian defendants are squarely within the foregoing FSIA provision. CBC is a Crown corporation wholly owned by the Canadian people and government. CBC is a governmental entity created and funded by the Canadian Parliament under the Broadcasting Act of Canada, S.C. 1991, c.11. CBC's principal place of business is in Ottawa, Ontario. Thus, CBC is a "foreign state" for purposes of determining whether jurisdiction exists under FSIA. *See* [*Bailey,* 805 F.2d at 1100-01](#) (deeming Canadian National Railway, owned by the Canadian government, a foreign state under [Section 1603](#)); *see also* [*Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1542 (11th Cir.)](#) (deeming Renault, wholly owned by French government, a foreign state under FSIA), *cert. denied,* [113 S. Ct. 2334 (1993)](#).

[Section 1603(b)](#) also "include[s] individuals sued in their official capacity." [*Chuidian v. Philippine Nat'l Bank,* 912 F.2d 1095, 1103 (9th Cir. 1990)](#); *accord* [*In re Estate of Ferdinand Marcos, Human Rights Litig.,* 25 F.3d 1467, 1470 n.2 (9th Cir. 1994)](#), *cert. denied,* [115 S. Ct. 934 (1995)](#); [*Kline v. Kaneko,* 685 F. Supp. 386, 389 & n.1 (S.D.N.Y. 1988)](#). At all times relevant to Plaintiff's claims, and during the preparation, production and broadcast of the Report, each of the individual defendants was acting in an official capacity as an employee of CBC. Consequently, the Court must view the individual defendants as a foreign state for purposes of analyzing subject-matter jurisdiction. *See* [*American Bonded Warehouse Corp. v. Compagnie Nationale Air France,* 653 F. Supp. 861, 863 (N.D. Ill. 1987)](#) (concluding that FSIA protected defendants sued in their capacities as employees of Air France, a corporation owned by French government).

### 3. Plaintiff's claims against the Canadian defendants are *jurisdictionally barred under FSIA.*

Under [Section 1330(a)](#), subject-matter jurisdiction over a suit against a foreign state depends upon the applicability of a treaty-based or statutory exception to foreign sovereign immunity. *See* [28 U.S.C. § 1330(a)](#). The principle of foreign sovereign immunity is codified in FSIA under [28 U.S.C. § 1604](#), which provides that subject to any applicable international agreements, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in [sections 1605](#) to [1607](#) [of FSIA]." [28 U.S.C. § 1604](#). The Supreme Court has stated that:

> [Sections 1604](#) and [1330(a)](#) work in tandem: [§ 1604](#) bars federal and state courts from exercising jurisdiction when a foreign state *is* entitled to immunity, and [§ 1330(a)](#) confers jurisdiction on district courts to hear suits brought by United States citizens ... when a foreign state is *not* entitled to immunity."

*Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434 (1989) (emphasis in original).

Sections 1330(a) and 1604 both expressly provide that the Court cannot exercise jurisdiction over this action unless one of the limited statutory exceptions under FSIA operates to strip the Canadian defendants of their sovereign immunity. *See Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1017 (2d Cir. 1991) ("unless one of the statutory exceptions [under FSIA] applies, a federal court is without subject matter jurisdiction to hear the ... action [against a foreign state]"). [6] Sections 1330(a) and 1604 also provide that the statutory exceptions to foreign sovereign immunity are found solely in FSIA, specifically under 28 U.S.C. § 1605, which provides that under certain narrow circumstances, "[a] foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States ...." 28 U.S.C. § 1605(a). That section of FSIA also identifies the various limited exceptions to immunity. Because none of the limited statutory exceptions apply to Plaintiff's claims, the Canadian defendants' sovereign immunity is preserved and the Court lacks subject-matter jurisdiction over the instant action.

### a. FSIA expressly provides that there is no jurisdiction over an action for libel or *slander against a foreign state.*

Plaintiff has sued the Canadian defendants in tort for libel arising out of the broadcast of the Report. FSIA provides that sovereign immunity will not operate to bar an action against a foreign state for injuries "occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or his employment." 28 U.S.C. § 1605(a)(5). The statute also expressly limits the applicability of that general tort exception, however, by specifically stating that it shall not apply to "any claim arising out of malicious prosecution, abuse of process, *libel, slander,* misrepresentation, deceit, or interference with contract rights." *Id.* at § 1605(a)(5)(B) (emphasis added). Thus, libel and slander claims are an exception to the exception; foreign sovereign immunity is retained for such claims and district courts therefore lack subject-matter jurisdiction over such claims. *See Gregorian v. Izvestia,* 658 F. Supp. 1224, 1230-34 (C.D. Cal. 1987) (libel claim jurisdictionally barred under FSIA), *aff'd,* 871 F.2d 1515 (9th Cir.), *cert. denied,* 493 U.S. 891 (1989); *Yessenin-Volpin v. Novosti Press Agency,* 443 F. Supp. 849, 855 (S.D.N.Y. 1978); *see also Travel All Over The World v. Kingdom of Saudi Arabia,* No. 91-C-3306, 1994 WL 673025, at *4 (N.D. Ill. Nov. 28, 1994); *Morgan v. International Bank for Reconstruction and Dev.,* 752 F. Supp. 492, 494 (D.D.C. 1990); *Mueller v. Diggelman,* No. 82 Civ. 5513 (CBM), 1983 WL 25419, at *2-3 (S.D.N.Y. May 13, 1983), *aff'd,* 742 F.2d 1436 (2d Cir. 1983). Plaintiff thus cannot rely on FSIA's general tort exception to contend that this Court has subject-matter jurisdiction over this action.

### b. The commercial activity exception does not apply *to Plaintiff's libel claims.*

Section 1605 contains five other limited exceptions to sovereign immunity, none of which apply to Plaintiff's claims. *See* 28 U.S.C. § 1605(a)(1)-(4), (6). Indeed, the only provision which Plaintiff might conceivably allege as a basis for subject-matter jurisdiction involves "commercial activity" conducted by foreign states. *See* 28 U.S.C. § 1605(a)(2). Some plaintiffs have attempted to plead defamation claims against foreign states under that narrow exception in an attempt to avoid FSIA's complete bar of defamation claims against foreign states. *See, e.g., Gregorian,* 658 F. Supp. at 1230-1334; *Yessenin-Volpin,* 443 F. Supp. at 855-56. [7] No court has ever exercised subject-matter jurisdiction over a defamation claim under FSIA on that basis, however. This Court, too, should reject any contention that the commercial activity exception is applicable to Plaintiff's defamation claims.

Any attempt by Plaintiff to replead his defamation claims under the commercial activity exception should be rejected because Plaintiff's claims do not arise out of any commercial activity by CBC. Rather, they arise out of CBC's publication of a documentary news report in Canada. FSIA defines commercial activity as "a regular course of commercial conduct" or as "a particular commercial transaction." 28 U.S.C. § 1603(d). Whether an activity is a "commercial activity" for purposes of FSIA "shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The commercial activity exception does not apply here because CBC was engaged in public and governmental activities when it published the Report. See *Yessenin-Volpin,* 443 F. Supp. at 855-57. CBC is a governmental entity established and funded by the Canadian Parliament, and all of its assets are Crown assets owned by the Canadian Government. The preparation and broadcast of CBC news programs are sovereign functions within the meaning of FSIA performed for the public interest and, therefore, do not constitute a regular course of commercial conduct or a particular commercial transaction. See *Gregorian,* 871 F.2d at 1522; *see also Aschenbrenner,* 851 F. Supp. 585-86. This is true even if CBC engages in commercial activities which are unrelated to Plaintiff's claims. See *Yessenin-Volpin,* 443 F. Supp. at 856. Indeed, even CBC's distribution of a small portion of the Report to CNN was not commercial activity because it was done pursuant to a non-monetary agreement between those two entities to exchange news items and materials. *See* Kohler Declaration, ¶ 3.

Under the protections afforded by FSIA, the Canadian defendants are immunized against Plaintiff's claims. Thus, there exists no basis for subject-matter jurisdiction either under Sections 1330(a) or 1332. Accordingly, the Court should dismiss Plaintiff's complaint. [8]

## POINT II

### THE COURT SHOULD DISMISS THIS *ACTION ON GROUNDS OF FORUM NON CONVENIENS*

Should the Court determine that subject-matter jurisdiction exists over this action it should nonetheless be dismissed on grounds of forum non conveniens with respect to the claim against the Canadian defendants. [9] This Court may resist the proper imposition on its jurisdiction and dismiss an action under the doctrine of forum non conveniens where dismissal would "best serve the convenience of the parties and the ends of justice." *Koster v. Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 527 (1947); *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir. 1991). The interests of convenience and justice would best be served by the dismissal of this action in favor of a Canadian forum. Virtually all of the relevant events in this dispute occurred in Manitoba, in Western Canada and involve Manitoba residents. The lone contacts which this action has with New York arise out of Plaintiff's move to New York after the events portrayed in both the Report and CNN's brief republication of a portion of the Report.

Plaintiffs' lawsuit is about CBC and its conduct. He has sued CNN as well, but CNN, a mere one-time republisher, is exceedingly unlikely to be liable to Plaintiff under any circumstances (*see* n. 10, p. 22 *infra*). The Court may retain jurisdiction over the CNN claim only, at least until CNN has the opportunity to move to dismiss it on substantive grounds. The Court is, therefore, urged to analyze the relevant forum non conveniens issues with regard to Plaintiff's claim against the Canadian defendants.

The instant case meets the prerequisites for dismissal for forum non conveniens: an adequate alternative forum exists and the relevant private and public interest factors, as set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947) (the "*Gulf Oil* factors"), weigh strongly in favor of litigating this case in Canada. *See Sussman v. Bank of Israel,* 801 F. Supp. 1068, 1072 (S.D.N.Y. 1992), *aff'd,* 990 F.2d 71 (2d Cir. 1993); *DeYoung v. Beddome,* 707 F. Supp. 132, 138-40 (S.D.N.Y. 1989).

### A. *Threshold Issues.*

Prior to balancing the *Gulf Oil* factors, the Court must consider two threshold matters: (1) whether Canada represents an adequate alternative forum for the resolution of this litigation, and (2) whether Plaintiff's choice of a New York forum deserves any deference within the *Gulf Oil* equation. See *R. Maganlal,* 942 F.2d at 167-68.

This case presents a third issue which the Court should address from the outset, albeit within the framework of analyzing the *Gulf Oil* factors -- which forum's law will apply to Plaintiff's libel claim against the Canadian defendants. For the reasons that follow, defendants submit that the Court's choice of law determination -- either New York or Canadian -- represents a critical element in the forum non conveniens analysis. Unless the Court will, irrespective of which law applies, dismiss this case, it is respectfully submitted that, in this unusual setting, the choice of law issue should be resolved before the Court considers the other relevant forum non conveniens factors and issues.

### 1. Canada represents an *adequate alternative forum.*

Generally, courts consider a foreign forum to be an adequate alternative "when the defendant is subject to the jurisdiction of that forum[,]" *R. Maganlal,* 942 F.2d at 167, and where "the remedy offered by the other forum is [not] clearly unsatisfactory[.]" *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n.22 (1981) (citing case where Ecuador provided no legal remedy for plaintiff's tort and unjust enrichment claims). Both of these conditions are present here. The Canadian defendants are amenable to jurisdiction in the Canadian courts. Thus, Canada (which allows libel suits such as that brought by Plaintiff here) represents an adequate alternative forum for the litigation of Plaintiff's libel claim against the Canadian defendants.

### 2. *Plaintiff's Choice of Forum.*

Generally there exists "a strong presumption in favor of a plaintiff's choice of forum ...." *Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 1001 (2d Cir.), *cert. denied,* 114 S. Ct. 386 (1993); *see also Piper Aircraft,* 454 U.S. at 255. However, Plaintiff's choice of forum may be overcome if "certain private and public interest [*Gulf Oil*] factors point towards trial in an alternative forum." *Allstate Life Ins. Co.,* 994 F.2d at 1001; *see also Gulf Oil Corp.,* 330 U.S. at 508-09.

This principle applies even in circumstances where, as here, the plaintiff brings the action in his home state. See *Piper Aircraft Co.,* 454 U.S. at 256 n.23 ("dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."); *see also Sussman,* 801 F. Supp. at 1073 ("[o]n more than one occasion the Second Circuit has affirmed forum non conveniens dismissal requiring litigation abroad of a claim by an American citizen") (citing *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 154-58 (2d Cir.) (*en banc*), *cert. denied,* 449 U.S. 890 (1980)). Accordingly, the Court should not defer to plaintiff's choice of a New York forum because the balance of *Gulf Oil* factors weigh heavily in favor of this action proceeding in Canada, the forum with the greatest interest in the underlying events.

### B. The Private and Public *Gulf Oil Factors Weigh In Favor Of A Canadian Forum.*

The public and private *Gulf Oil* factors which the Court must weigh include:

> (1) the ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) practical problems involving the efficiency and expense of a trial; (5) enforceability of judgments; (6) administrative difficulties flowing from court congestion; (7) imposing jury duty on citizens of the forum; (8) local interest in having controversies decided at home; and (9) the avoidance of unnecessary problems in the application of foreign law.

*Allstate Life Ins. Co.,* 994 F.2d at 1001.

In the instant case, these factors weigh strongly in favor of dismissal of Plaintiff's claim against the Canadian defendants. Plaintiff has asserted two claims for relief, one against the Canadian defendants and one against CNN. Should Plaintiff's claim against the Canadian defendants be dismissed under forum non conveniens principles, the Court should retain jurisdiction over the claim against CNN. That claim should also be dismissed in due course, albeit on different grounds. [10]

**1. *Choice of law.***

In balancing the *Gulf Oil* factors, choice of law is an important factor although generally not the lone dispositive issue. *See R. Maganlal,* 942 F.2d at 169 ("the need to apply foreign law is not alone sufficient to dismiss under the doctrine of forum non conveniens"). Under the unique circumstances of this case, however, the Court should accord the choice of law question special consideration.

If the Court determines that New York defamation law applies to Plaintiff's claim against the Canadian defendants, the Court will also necessarily have to apply the defenses and issues that will arise under the United States Constitution. Although the balance of *Gulf Oil* factors strongly favors a Canadian forum, defendants believe that the Court must consider the importance of having a United States court apply American constitutional law. Thus, should the Court determine that New York law applies to Plaintiff's claims, defendants concede that this factor should be accorded significant weight in favor of the entire lawsuit remaining in this forum.

Notwithstanding this concern, under the applicable choice of law analysis the Court should determine that Canadian law applies to Plaintiff's claim against the Canadian defendants and should, therefore, dismiss that claim. [11] Under New York choice of law principles, "the law of the jurisdiction having the greatest interest in the litigation applies." *AroChem Int'l, Inc. v. Buirkle,* 968 F.2d 266, 270 (2d Cir. 1992). That jurisdiction is Manitoba.

For a defamation claim, the plaintiff's home state, at the time of the defamation, often is considered to have the greatest interest in the case because that is where the plaintiff is presumed to have suffered the greatest injury. *Merrill Lynch Futures, Inc. v. Miller,* 686 F. Supp. 1033, 1041 (S.D.N.Y. 1988). This presumption does not apply, however, where another forum has "a more significant relationship" with the cause of action. *Davis v. Costa-Gavras,* 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984); *accord Miller,* 686 F. Supp. at 1041. [12] To determine which forum -- Canada (more specifically Manitoba) or New York -- has the most significant relationship with Plaintiff's claims, the Court must consider eight factors: (1) plaintiff's home state -- New York (although only after most of the events described in the Report occurred); (2) where the subject of the alleged defamation (plaintiff's activity) occurred -- Canada; (3) the forum in which plaintiff "in fact" would have suffered the greatest harm -- as to the Canadian defendants, in Canada, where CBC broadcast the Report; (4) defendants' domicile -- for the Canadian defendants,

Canada; (5) where defendants' main broadcasting facilities are located -- for the Canadian defendants, in Canada; (6) the forum where defendants' principally broadcast -- for the Canadian defendants, in Canada; (7) the place of broadcast -- for the Canadian defendants, in Canada; and (8) the forum where the alleged defamation was first aired -- Manitoba. *See Morris,* 1987 WL 16973, at \*8; *Miller,* 686 F. Supp. at 1041.

With respect to the claim against the Canadian defendants, seven of the eight factors support application of Canadian law.[13] Only one factor -- plaintiff's home state -- supports application of New York law. "Standing alone, plaintiff's residence is not enough to determine the choice of law" that should apply to plaintiff's claim, however. *AroChem Int'l, Inc. v. Buirkle,* 767 F. Supp. 1243, 1247 (S.D.N.Y. 1991), *aff'd,* 968 F.2d 266 (2d Cir. 1992); *see also Grass v. News Group Publications, Inc.,* 570 F. Supp. 178, 186 (S.D.N.Y. 1983) (applying New York law to Pennsylvania plaintiff's libel claim against New York magazine with essentially local circulation where libelous statements appeared in article concerning qualifications of plaintiff's brother-in-law as candidate for New York governor).

Furthermore, that CBC only broadcast the Report in Canada cuts sharply against application of New York law to Plaintiffs' claim. *See Davis,* 580 F. Supp. at 1091 (concluding that plaintiff's domicile may be state with most significant interest "if the libel was published in that state"). All the relevant choice of law factors compel the application of Canadian law to the claim against the Canadian defendants. The prospective application of Canadian law should weigh in favor of dismissal. *See DeYoung v. Beddome,* 707 F. Supp. at 139 (citing *Piper Aircraft Co.,* 454 U.S. at 260).

If the Court concludes that Canadian law applies to the claims against the Canadian defendants, this case should be dismissed for two reasons. First, this Court should not be burdened with determining what Canadian law provides with respect to all aspects of libel litigation. But more important: By retaining jurisdiction over this case even though Canadian law controls this Court would be put in the position of applying foreign law which does not include fundamental federal constitutional protections. *See* Julian Porter and David A. Potts, *Canadian Libel Practice,* §§ 286-87, at 76-77 (1986) (noting that there are no reported decisions in Canada applying principles similar to American constitutional protections in Canadian libel cases). Other courts have declined to apply such foreign law in libel cases on public policy grounds. *See Matusevitch v. Telnikoff,* 887 F. Supp. 1, 3-5 (D.D.C. 1995) (refusing to enforce libel judgment obtained under British law because doing so would be antithetical to protections afforded by First Amendment); *Bachchan v. India Abroad Publications, Inc.,* 585 N.Y.S.2d 661, 662 (N.Y. Sup. Ct. 1992) (similarly refusing to enforce British libel judgment as contrary to constitutional protections under First Amendment); *Desai v. Hersh,* 719 F. Supp. 670, 674-81 (N.D. Ill. 1989) (noting difficulty of applying foreign defamation law which does not accord same protections as First Amendment), *aff'd,* 954 F.2d 1408 (7th Cir. 1992); *DeRoburt v. Gannett Co.,* 83 F.R.D. 574, 579-83 (D. Haw. 1979) (applying foreign defamation law only to the extent it does not conflict with First Amendment protections); *see also Abdullah v. Sheridan Square Press. Inc.,* No. 93 Civ. 2515 (LLS), 1994 WL 419847, at \*1 (S.D.N.Y. May 4, 1994) (dismissing defamation claim based on British law because it "would be antithetical to the First Amendment ....").

To avoid having to apply foreign law that is antithetical to fundamental constitutional rights, the Court must dismiss the case if Canadian law governs.

### 2. All of the other private *Gulf Oil* factors *support dismissal in favor of a Canadian forum.*

The Canadian defendants' activities occurred almost entirely in Manitoba. They interviewed sources in and from Canada, researched background history in Canada, wrote the Report in Canada, produced the Report in Canada, and broadcast the Report in Canada. *See* Henry Declaration, ¶¶ 13-14. Now, if required, they should defend themselves against Plaintiff's defamation claim in a Canadian forum, not in New York.

Given the locus of the Canadian defendants' activities, it should come as no surprise that most of the relevant evidence and witnesses in this case, including information sources, files, facilities, videotapes and notebooks, are located in Canada. *Id.* at ¶ 14. [14] Access to this evidence and information during pretrial discovery could prove difficult and costly, especially regarding third parties to whom requests for discovery necessarily implicate cumbersome international procedural rules. *See Murray v. British Broadcasting Corp.,* No. 94 Civ. 6162 (LLS), 1995 WL 146250, at *4 (S.D.N.Y. April 4, 1995) (dismissing action and citing difficulty of compelling English citizens to produce documents); *DeYoung,* 707 F. Supp. at 139 (this Court dismissing action and observing that "discovery of third parties in Canada ... would have to be conducted by cumbersome letters rogatory").

The unavailability of key non-party witnesses for discovery would similarly detract from any trial ultimately conducted in this forum. [15] Many of the necessary, non-party Canadian witnesses have essential information regarding the manner in which the Canadian defendants developed the Report and the veracity of the contents therein. Those key witnesses "cannot be compelled to appear at trial in New York[,]" and "their unavailability is a factor favoring dismissal on the ground of forum non conveniens." *Allstate Life Ins. Co.,* 994 F.2d at 1001; *see also Postol v. El-Al Israel Airlines, Ltd.,* 690 F. Supp. 1361, 1363 (S.D.N.Y. 1988) (dismissing action and concluding that when "vital foreign witnesses are not subject to the jurisdiction of th[e] court, effective discovery would be difficult if not impossible"). Moreover, having already stated that they suffered horrible consequences as a result of Plaintiff's conduct, those victims should not be forced to suffer further distress by having to travel to New York (a foreign forum with no interest in Plaintiff's underlying conduct) for the sole purpose of publicly repeating their charges and presenting evidence against Plaintiff. They can do that in a far less disruptive, painful and costly manner in a Canadian courtroom. Finally, many other Canadian government agencies (such as the Winnipeg Police Department) have highly relevant evidence which would be difficult or impossible to obtain while the case is pending in this Court.

Consequently, the private *Gulf Oil* factors -- including access to proof, witness convenience, the availability of compulsory process, and the practical expenses of these proceedings -- all weigh in favor of dismissal.

### 3. All of the public *Gulf Oil* factors *support dismissal in favor of a Canadian forum.*

In addition to private interests, the Court must also balance certain public interests between the respective forums, including "court congestion, the local interest in having localized controversies decided at home, the unfairness of imposing the burden of jury service on citizens in a forum unrelated to the dispute, and the appropriateness of trying a case in a forum which is unfamiliar with the law to be applied." *Murray,* 1995 WL 146250, at *7 (citing *Gulf Oil,* 330 U.S. at 508-09). All of these factors weigh in favor of a Canadian forum. As discussed above, Canadian law should govern Plaintiff's claims, and "requiring an American court to apply foreign law supports dismissal on a ground of forum non conveniens." *Postol,* 690 F. Supp. at 1365. As addressed above, this is particularly true where application of that foreign law would skirt fundamental United States constitutional protections. In addition, this Court has concluded that court congestion in this district also warrants dismissal of this action. *See DeYoung,* 707 F. Supp. at 139 (dismissing action in favor of Canadian forum, where "docket congestion in this Court is a persistent affliction").

The balancing of local interests also weighs in favor of Canada as the appropriate forum. Canadian citizens possess a significantly greater interest in this dispute than New York citizens; a greater interest in resolving a dispute involving allegations of Plaintiff's sexually abusive conduct against Canadian children. Indeed, as the Report noted, Plaintiff could well face extradition to Canada at the conclusion of the Winnipeg Police Investigation to face criminal charges for that conduct; a factor which further underscores Canada's greater interest in this case. *See also* Henry Declaration, ¶ 15. Moreover, Plaintiff may well be tempted to use the discovery devices of the Federal Rules of Civil Procedure to frustrate that investigation, something which Canada has a great interest in controlling.

In addition, CBC and certain of its employees, have been accused of publishing a false and defamatory news report. CBC is an entity owned and operated by, and on behalf of, the Canadian citizenry. Given the gravity of Plaintiff's claims and Canada's

significant concern with the activities and conduct of CBC and its employees, the citizens of Canada should bear the burden of jury service and Canadian courts should resolve those issues. See *DeYoung,* 707 F. Supp. at 139 ("the interest of Canada in having controversies relating to one of its major corporations decided at home is substantial").

Surely, Canada's interest in the alleged wrongdoings of CBC is of greater magnitude than New York's interest in protecting Plaintiff. See *Opert v. Schmid,* 535 F. Supp. 591, 595 (S.D.N.Y. 1992) (dismissing defamation action of New York plaintiff against foreign defendants where "circulation of the allegedly defamatory statements in New York was at best insubstantial; they were primarily distributed in West Germany"); *Morris,* 1987 WL 16973, at *7 (dismissing action where the "majority of [the defamatory] statements were published in England" and citing England's interest in British defendants' free speech rights "within the boundaries of Great Britain"). Moreover, even if Plaintiff ultimately obtained a judgment in his favor from this Court he would have to enforce that judgment in the Canadian courts thus necessitating multiple litigations over the same dispute.

Thus, the majority of public *Gulf Oil* factors are balanced strongly in support of litigating the case against the Canadian defendants in Canada. Plaintiff's claims have everything to do with Canada -- its broadcasting company, its citizens and the relevant events occurring there both before and after Plaintiff came to New York in 1990. Plaintiff's inclusion of CNN as a defendant, and the claim based on incidental republication in New York, does not counterbalance the overwhelming weight of factors that favor dismissal on grounds of forum non conveniens.

## POINT III

### *DISCOVERY SHOULD BE STAYED*

In order to avoid cumbersome, expensive and perhaps unnecessary discovery the Court should grant a temporary stay of discovery pending its decision on the instant motion. This Court has discretion to stay discovery and should do so. See *Transunion Corp. v. Pepsico, Inc.,* 811 F.2d 127, 130 (2d Cir. 1987) (holding that trial court did not abuse discretion by staying discovery pending resolution of motion to dismiss for forum non conveniens); *Narvaez v. City of New York,* No. 92 Civ. 4748 (CSH), 1994 WL 583176, at *2 (1994) ("[j]udges routinely [stay] time-consuming discovery that may ultimately prove unneeded" upon resolution of a dispositive motion).

Discovery in this case will be particularly burdensome. As noted earlier, most of the relevant evidence and witnesses are located in Canada, and requests for discovery will require the parties to use complicated international procedure rules. Indeed, those very issues have compelled defendants to seek dismissal of this action on the grounds of forum non conveniens.

Furthermore, the relevant evidence will not be more difficult to obtain in the future should discovery become necessary. Thus, delaying discovery will not prejudice Plaintiff. See *Chrysler Capital Corp. v. Century Power Corp.,* 137 F.R.D. 209, 210 (S.D.N.Y. 1991) (granting defendants a stay of burdensome discovery while motion to dismiss was pending and where plaintiffs did not demonstrate extraordinary prejudice to them). Accordingly, the Court is respectfully requested to grant a temporary stay of discovery until the substantial jurisdictional questions are resolved.

## CONCLUSION

For the foregoing reasons, this action should be dismissed.

## Footnotes

1     A videotaped copy of the Report, and the news program which it was part of, has been submitted by the defendants to the Court in support of this motion.

2     Plaintiff erroneously alleges in the Complaint that the Report (which he refers to as "the Program") was broadcast in Canada and the United States by CBC on February 28, March 1, and March 5, 1994, and by CNN after February 28, 1994.

3     Plaintiff purportedly is a resident of New York. CNN is a citizen of Georgia where it is incorporated and also has its principal place of business. Diversity between plaintiff and CNN is irrelevant, however, and does not establish subject-matter jurisdiction. The diversity statute is wholly inapplicable in this suit as framed by Plaintiff and Plaintiff must provide the Court with some other, independent basis for the exercise of subject-matter jurisdiction. *See* *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1542-43 (11th Cir.), *cert. denied,* 113 S. Ct. 2334 (1993).

       Beyond the erroneous allegation of diversity jurisdiction, the Complaint pleads no other basis upon which the Court may properly exercise subject-matter jurisdiction. Furthermore, there is no other basis for jurisdiction, and the Court should therefore dismiss the Complaint in its entirety.

4     Although Plaintiff has not alleged that subject-matter jurisdiction is proper under FSIA, defendants presume that Plaintiff will now attempt to establish jurisdiction under FSIA. Defendants offer the following analysis in order to assist the Court in resolving, if it wishes to do so at this stage, the question whether subject-matter jurisdiction exists under FSIA.

5     Plaintiff's complaint contains a demand for a jury trial. All actions brought under Section 1330(a), however, must be tried only to the bench. *See* *Bailey,* 805 F.2d at 1100 (citing § 1330(a) and FSIA, and holding that that "statutory scheme expressly forecloses the right to a jury trial"); *Bank of China v. Chan,* No. 88 Civ. 0232 (MBM), 1992 WL 298002, at *1 (S.D.N.Y. Oct. 14, 1992) (under § 1330(a), "[u]nless a claim against a foreign state is to be tried to the bench, a district court has no jurisdiction to hear it"). Thus, Plaintiff's claim against the Canadian defendants could not be tried to a jury under FSIA and the Court therefore lacks jurisdiction over the case as currently pleaded by Plaintiff.

6     Defendants are unaware of any treaties or international agreements that would operate to revoke the sovereign immunity of the Canadian defendants.

7     Under the commercial activity exception, district courts have jurisdiction over actions against a foreign state which are based:

       upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States ....

       28 U.S.C. § 1605(a)(2). As Plaintiff did not plead jurisdiction under FSIA defendants do not know which of the three prongs Plaintiff might attempt to rely upon.

8     If the Court determines that subject-matter jurisdiction exists under either the diversity statute or FSIA, there remain serious questions concerning the exercise of personal jurisdiction over all of the defendants. Defendants wish to reserve those questions until the Court resolves the threshold issue of subject-matter jurisdiction and also rules on the forum non conveniens issue. The relevant law which will determine whether personal jurisdiction exists over the defendants

in this Court will not be known until the basis of subject-matter jurisdiction is determined. The defendants, therefore, cannot properly address that issue at this stage of the litigation.

If diversity jurisdiction applies, the exercise of personal jurisdiction will implicate New York's long-arm provision, *see* N.Y. Civ. Prac. L. & R. §§ 301-02, and federal constitutional principles of due process. *See, e.g., International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

Under FSIA, the issues of subject-matter and personal jurisdiction are intertwined. *See* 28 U.S.C. § 1330(b) ("[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction under [§ 1330(a)]"). In addition, the personal jurisdiction determination may depend on which FSIA immunity exception provides subject-matter jurisdiction. *See Shapiro,* 930 F.2d at 1020 (finding that the defendant's contacts with the United States that provide for subject-matter jurisdiction under the commercial activity exception, 28 U.S.C. § 1605(a)(2), also are sufficient for personal jurisdiction where those contacts were directed toward the forum state).

The same is true with respect to whether service of the Complaint was by proper means. Service must be effected differently depending on the Court's resolution of the foregoing issues. The defendants therefore wish to reserve on that issue as well at this point in the litigation.

9     The doctrine of forum non conveniens is applicable in actions arising under FSIA. *Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.,* 760 F.2d 390, 394 (2d Cir. 1985).

10    Under New York and federal constitutional law (which apply to Plaintiff's claim against CNN), CNN would be entitled to summary judgment under, *inter alia,* the so-called "wire service defense" which applies to television stations. *Auvil v. CBS "60 Minutes",* 800 F. Supp. 928, 930-32 (E.D. Wash. 1992). In short, CNN would have no liability as a matter of law for republishing a news item from a reputable news agency such as CBC without substantial change and without actually knowing that the republished material was false. *See id.* (cited with approval in *Stratton Oakmont. Inc. v. Prodigy Servs. Co.,* No. 31063/94, 1995 WL 323710, at *4-5 (N.Y. Sup. Ct. May 24, 1995)).

11    Whether this action proceeds under diversity jurisdiction or FSIA, the Court in either circumstance would apply New York choice of law analysis to plaintiff's claims. *See Barkanic v. General Admin. of Civil Aviation of the People's Republic of China,* 923 F.2d 957, 959-61 (2d Cir. 1991) (concluding that FSIA requires federal court to apply choice of law rules of forum state to non-federal claims); *Lund's Inc. v. Chemical Bank,* 870 F.2d 840, 845 (2d Cir. 1989) (in a diversity action, federal court applies choice of law rules of the state in which the court sits).

12    This rule has particular force with respect to the claim against the Canadian defendants, which only concerns the broadcast in Canada, not in New York. *See Morris v. Chemical Bank,* No. 85 Civ. 9838 (SWK), 1987 WL 16973, at *8 (S.D.N.Y. Sept. 10, 1987) (even where defamation occurs in plaintiff's home state, "where another state has a more significant relationship the laws of that [other] forum will apply"), *aff'd,* 847 F.2d 835 (2d Cir. 1988).

13    Those same factors support the application of New York law to the claim against CNN.

14    Indeed, even a cursory review of the Report established that most of the relevant events, witnesses and evidence occurred or are located in Canada. The Court is respectfully requested to review the Report in determining whether dismissal is appropriate.

15    Under Canadian law one of the primary defenses to a libel claim is "justification" (which is more commonly known in American libel jurisprudence as the defense that what was published was "true"). *See* Porter and Potts, *Canadian Libel*

*Practice,* §§ 211-49 at 59-68. The unavailability of the essential nonparty Canadian witnesses in this forum prevents the Canadian defendants from establishing that defense.

---

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.