UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WE CHARITY, <br><br>                      *Plaintiff,* <br> vs. <br><br> CANADIAN BROADCASTING CORPORATION, <br><br>                     *Defendant.* | Civil Action No. 1:22-cv-00340; RDM |

### DECLARATION OF DOUGLAS F. HARRISON

DOUGLAS F. HARRISON, pursuant to 28 U.S.C. § 1746, state that I have personal and professional knowledge of the facts set forth below and am competent to testify as follows:

1. I am a lawyer licensed to practice and am practicing law in the Province of Ontario, Canada.

2. For over 30 years, I was with a major Canadian national corporate law firm, Stikeman Elliott LLP. I joined the firm's Toronto litigation department as an associate in 1988, when I was called to the Ontario bar. I was a partner in that department from 1995 until the end of 2017. Since then, I have been a sole practitioner, working primarily as a commercial arbitrator and mediator but also doing advisory and opinion work. In 2020 and 2021, I provided expert opinions on Ontario and British Columbia law for use in court proceedings in the Netherlands, including on the issue of enforcement of a provisional judgment of a Dutch court and on mitigation principles, and in the United States District Court (Southern District of New York), with respect to the ability to obtain pre-litigation discovery in Canada.

3. My litigation practice at Stikeman Elliott was broad-based and included acting in defamation cases for both plaintiffs (e.g., business owners and professionals) and defendants

(publishers). I also provided pre-publication opinions to clients on whether content was potentially defamatory, including to an Ontario Government Minister with respect to a task force report. I contributed a chapter on Canadian defamation law to *The International Libel Handbook: A Practical Guide for Journalists* (Oxford, UK: Butterworth-Heinemann, 1995).

4. I worked as a reporter and copyeditor at *The Globe and Mail* (Canada's National Newspaper) while I attended law school at the University of Toronto from 1982 to 1985, and I also freelanced, principally as a sportswriter, for *The Globe and Mail* and other Canadian media outlets (including the CBC) from 1985 to 1988.

5. I have been retained by WE Charity to review and respond to the Declaration of Brian MacLeod Rogers filed in this matter by the Defendant and to provide information about the following issues under Ontario law:

    a. The requirement of a notice of libel as a condition precedent to a claim;

    b. Whether this requirement can be waived;

    c. A dissolved corporation's status and the non-assignability of a defamation claim;

    d. The enforcement of foreign defamation judgments in the U.S. and Ontario;

    e. The relationship between Anti-SLAPP legislation and defamation; and

    f. How long it takes to resolve civil actions in the Ontario court.

**A Libel Notice is a Condition Precedent to a Defamation Action**

6. Limitation periods for defamation actions in Ontario are governed by provisions in the *Libel and Slander Act*, R.S.O. 1990, c. L.12 (the "*LSA*"). These limitation periods prevail over those established by the *Limitations Act, 2002*, S.O. 2002, c. 24, Sched. B (the "*Limitations Act, 2002*"), per s. 19(4) of the *Limitations Act, 2002*.

7. Pursuant to s. 6 of the *LSA*, an action in respect of a defamatory statement in a newspaper or broadcast must be commenced within three months of the defamatory statement coming to the attention of the plaintiff.

8. However, there is a condition precedent to commencing such an action against a newspaper or broadcaster: A plaintiff must first serve the defendant with a notice of libel within six weeks of the defamatory statement coming to the plaintiff's attention, per s. 5(1) of the *LSA*.

9. The *LSA* defines a newspaper in s. 1(1) as "a paper containing public news, intelligence, or occurrences, or remarks or observations thereon, or containing only, or principally, advertisements, printed for distribution to the public and published periodically, or in parts or numbers, at least twelve times a year." In interpreting that definition, the Ontario Court of Appeal has held that "the word 'paper' is broad enough to encompass a newspaper that is published on the internet" (per Mr. Justice Armstrong in *Weiss v Sawyer*, 2002 CanLII 45064, 61 O.R. (3d) 526 (C.A.) at para. 24). This interpretation was confirmed in a subsequent decision of the Ontario Court of Appeal, *John v. Ballingall*, 2017 ONCA 579 (CanLII), at paras. 21-31, which found that the Act applied to an online version of an article published by the *Toronto Star*, which is a daily newspaper.

10. Online versions of broadcasts are likewise subject to the *LSA*. In *Janssen-Ortho Inc. v. Amgen Canada Inc.*, 2005 CanLII 19660 (ON CA), Madam Justice Weiler said, at para. 41, "the definition of broadcasting is broad enough to include a broadcast over the Internet". She was in that case dealing with a radio broadcast. However, the *LSA*, in s. 1(1) defines "broadcasting" as "the dissemination of writing, signs, signals, pictures and sounds <u>of all kinds</u>, intended to be received by the public either directly or through the medium of relay stations, by means of, (a) any form of wireless radioelectric communication utilizing Hertzian waves, including radiotelegraph

and radiotelephone, or (b) cables, wires, fibre-optic linkages or laser beams" (emphasis added). The French-language version of the *LSA* also uses the terms "radiodiffusion ou télédiffusion" in place of "broadcasting" (both the English and French versions of Ontario statutes are official). The literal translation of "télédiffusion" is "television broadcasting". Accordingly, online television broadcasts can be considered as being caught by the provisions of the *LSA*.

11. It is unsettled whether a notice of libel under the *LSA* must be given when the statement published on the Internet is on a website that is distinct from an online version of a newspaper or an online version of a television or radio broadcast. To date, Ontario courts have deferred ruling on the issue until the matter is addressed at a trial, rather than on a summary judgment motion (see, for example, *Vivo Canadian Inc. v. Geo TV*, 2021 ONSC 3402 (CanLII), where Madam Justice Baltman said, at para. 50, "Courts have repeatedly held that due to the technical language of 'broadcast', expert evidence is required for the Court to determine whether any technology meets the definition of 'broadcast', noting at para. 52 that "[n]umerous other decisions in recent years have taken the same cautionary approach.").

12. The publication of a libelous article in print and also online is not considered a single publication in Ontario – these would be considered two separate instances of libel. As stated by Mr. Justice Armstrong in *Weiss v. Sawyer, supra*, at para. 28, "Every republication of a libel is a new libel." In *Shtaif v. Toronto Life Publishing Co. Ltd.*, 2013 ONCA 405 (CanLII), Mr. Justice Laskin, after noting that statement by Mr. Justice Armstrong, went on to say, at para. 35:

> [E]ven if we were to consider a single publication rule in Ontario, I would not apply it across different mediums of communication. In my opinion, it would be unfair to plaintiffs to apply the rule to publications that are intended for different groups or that may reach different audiences.

13. A notice given under s. 5 of the *LSA* is not part of the pleadings and does not constitute the commencement of litigation, which may never occur. As stated by Mr. Justice Smith of the Ontario

High Court of Justice (a predecessor of the current Superior Court of Justice) in *Stuarts Furniture & Appliances et al. v. No Frills Appliances & T.V. Ltd. et al.*, 1982 CanLII 1898, 40 O.R. (2d) 52 (ON SC):

> [T]he notice must precede the start of the action. The notice is a constituent part of the cause itself. The statement of claim can accordingly not constitute notice within the meaning of the Act.

14. The failure to give notice is a bar to an action against a newspaper or broadcaster for defamation. Mr. Justice Cory, when he sat on the Ontario Court of Appeal, before later being elevated to the Supreme Court of Canada, said, in *Grossman v. CFTO-TV Ltd.*, 1982 CanLII 1768, 39 O.R. (2d) 498, lv. to app. to SCC ref'd, [1993] SCCA No. 463:

> [Section 5(1) of the *LSA*] stands as a condition precedent to the commencement of an action for libel. It constitutes an absolute bar. … and forever prevents a determination of the issue on the merits. … Clearly the notice provisions contained in the *Libel and Slander Act* are mandatory and if notice is not given then a libel action cannot be maintained.

15. Similar absolutist statements have been made by other Ontario judges in other cases regarding the *LSA*'s notice requirement. For example, in *Frisina v. Southam Press Ltd. et al.*, 1980 CanLII 1749 (ON SC), 30 O.R. (2d) 65, aff'd, 1981 CanLII 1824 (ON CA), 33 O.R. (2d) 287, Mr. Justice Robins of the Ontario High Court of Justice said:

> [Section 5(1) of the *LSA*] is clearly mandatory -- written notice must be given within six weeks of the alleged libel coming to the plaintiff's knowledge or no action lies. The Court is nowhere empowered, on my reading of the *Libel and Slander Act*, to relieve against or excuse non-compliance with the notice requirements. Notice is a condition precedent to the bringing of the action and want of notice constitutes a bar to the action: … [U]nless notice is given in accordance with s. 5(1), no claim is subsequently maintainable.

In the Ontario Court of Appeal's decision in this case, Mr. Justice Zuber, speaking for the court, said, "We are all in complete agreement with Robins J. and adopt his reasons."

16. As noted by Mr. Justice Robins in *Frisina*, *supra*, the courts in Ontario are not empowered to forgive or excuse a plaintiff's failure to provide a libel notice. In *Pohlman v. Herald Printing Co. of Hamilton, Ltd.*, 1919 CanLII 460 (ON CA), Chief Justice Meredith said:

> [I]t is to be observed that in other like legislation as to giving notice, power to excuse want of notice and to aid faulty notice is sometimes given; none is given in this enactment; it is peremptory: "No action … shall lie." Therefore, if the case is within the provisions of sec. 8 [now s. 5 of the *LSA*], there is no means, of which I am aware, by which the faults of the notice can be cured or avoided; …

17. The Ontario Court of Appeal reiterated this view in *Misir v. Toronto Star Newspapers Ltd.*, 1997 CanLII 717 (ON CA), at para. 13:

> Section 5(1) [of the *LSA*] is a condition precedent to the bringing of an action for libel. Lack of notice bars the action. The court has no power to relieve against or excuse non-compliance with the notice requirement.

18. The requirement to provide the notice of libel under s. 5 of the *LSA* is not a special limitation period, as stated by Mr. Rogers in para. 12 of his Declararion. The notice is a condition precedent to a plaintiff being permitted to commence litigation. The failure by a plaintiff to deliver a notice in compliance with s. 5 of the *LSA* is not a defence that the defendant may raise in response to the plaintiff's proceeding - the failure to abide by that condition precedent renders the proceeding a nullity.

19. Under s. 7 of the *Proceedings Against the Crown Act*, R.S.O. 1990, c. P.27, a plaintiff was required to serve the Crown with a notice of claim at least 60 days prior to the commencement of an action. In *Beardsley v. Ontario* (2001), 2001 CanLII 8621 (ON CA), 57 O.R. (3d) 1 (C.A.), the Ontario Court of Appeal held that "[p]roper notice is a necessary pre-condition to the right to sue the Crown", distinguishing a notice from a limitation period. In *Miguna v. Ontario (Attorney General),* 2005 CanLII 46385 (ON CA), the Court of Appeal held that a failure to comply with this notice requirement rendered the plaintiff's action a nullity.

20. In *Janssen-Ortho Inc. v. Amgen Canada Inc.*, *supra*, Madam Justice Weiler of the Ontario Court of Appeal said, at para. 62, that s. 5(1) of the *LSA* (the notice provision) is "similar" to s. 7 of the *Proceedings Against the Crown Act*, noting also that the Supreme Court of Canada had held in *Sentinel-Review Co. Ltd. v. Robinson et al.*, 1928 CanLII 9 (SCC), [1928] S.C.R. 258, that the notice required under the *LSA* is a condition precedent and not a defence.

**A Condition Precedent is Jurisdictional and Cannot be Waived**

21. Ontario courts have held that where a statute sets out a condition precedent, that condition is a jurisdictional requirement and cannot be waived, including by agreement of the parties.

22. In Re *Don Howson Chevrolet Oldsmobile Ltd. and Registrar of Motor Vehicle Dealers and Salesmen*, 1974 CanLII 566 (ON SC), the issue was whether the Registrar had properly given notice of a hearing. Counsel for the parties had agreed that the matter could proceed. Mr. Justice Thompson of the Ontario Divisional Court (an intermediate level of appeal court) held that the agreement was of no force or effect – the Registrar's compliance with the *Motor Vehicle Dealers Act*, R.S.O. 1970, c. 475 was "a condition precedent to the jurisdiction of the Tribunal to hold a hearing" - and also held that "the condition provided by that provision of the statute may not be waived by the parties …".

23. In *Amerato, Re*, 2005 CanLII 31577 (ON CA), Madam Justice Gillese of the Ontario Court of Appeal, citing *Re Don Howson Chevrolet Oldsmobile, supra,* said, at para. 36:

> Compliance with s. 7 of the [*Motor Vehicle Dealers*] Act is a statutory condition precedent to any exercise of power under s. 7; that is, it is a jurisdictional requirement. See *Don Howson Chevrolet Oldsmobile Ltd. and Registrar of Motor Vehicle Dealers and Salesmen (Re)* (1974), 1974 CanLII 566 (ON SC), 6 O.R. (2d) 39, 51 D.L.R. (3d) 683 (Div. Ct.). [page251] The parties could not waive a jurisdictional requirement.

24. There is no provision in the *LSA* that either permits the court to extend the period within which a notice of libel must be delivered, or acknowledges the ability of parties to agree to such

7

an extension.  By contrast, s. 22(3) of the *Limitations Act, 2002* expressly permits parties to agree to an extension of a limitation period "under this Act" (emphasis added).  But there is no similar provision in the *LSA* allowing parties to agree to an extension of the three-month limitation period in s. 6 within which to commence an action in defamation.

25. I have reviewed Brian Rogers' submission in this matter and see that while he opines (in para. 13) that the three-month limitations period for the *LSA* may be waived, he does not opine that the six-week notice requirement is waivable.  In a chapter on Canadian defamation law that Mr. Rogers authored in *International Libel & Privacy Handbook* (3d ed.) (Hoboken, N.J.: John Wiley & Sons Inc., 2013), Mr. Rogers states at pp. 45-46 that failure to provide notice "is an absolute bar to bringing an action":

> For a libel published or broadcast by the media in Ontario, a plaintiff must serve written notice to all prospective defendants specifying the matter complained of within six weeks of the alleged libel coming to his or her knowledge.  This extends to online versions of the publication as well, but there has not yet been a court ruling on whether purely Internet publications are covered.
>
> A failure to give the required notice is an absolute bar to bringing an action, and there is also a three-month limitation period for media libel in Ontario.

26. In  Ontario, an action in defamation would normally be commenced in the Superior Court of Justice (as opposed to the Small Claims Court).  Appeals in civil actions from the Superior Court are generally heard by the Court of Appeal for Ontario (appeals involving matters below a certain monetary threshold are first heard by the Divisional Court).  Appeals in civil actions from the Court of Appeal can be taken to the Supreme Court of Canada, with leave of that court.  Were a trial court to permit a defamation action under the *LSA* to proceed without satisfaction of the statutory notice requirement, that decision could potentially be overturned at an appellate court sometime after the trial court's decision.

**Status of a Dissolved Corporation and Assignability of Claims in Defamation**

27. If a corporation has been dissolved, it has ceased to exist as a legal entity. Accordingly, it has no status to commence or maintain legal proceedings. A claim issued post-dissolution is a nullity (See *602533 Ontario Inc. v. Shell Canada Ltd.*, 1998 CanLII 1775 (ON CA)).

28. A claim for defamation is considered a purely personal cause of action and, therefore, cannot be assigned, per *Ma v. Ma*, 2012 ONCA 408 (CanLII) at para. 12, citing *Trendtex Trading Corp. v. Credit Suisse*, [1980] 3 All E.R. 721 (C.A.), aff'd [1981] All E.R. 520 (H.L.). Given the personal nature of claims in defamation (and other torts such as assault), it is said that the assignee can have no legitimate property or commercial interest in recovery. Similarly, with respect to defamation claims by individuals in Ontario, if the plaintiff dies, the plaintiff's executor or administrator may not maintain the action, pursuant to s. 38(1) of the *Trustee Act*, R.S.O. 1990, c. T.23.

**Enforcement of Foreign Defamation Judgments in the U.S. and in Ontario**

29. While I understand that Canadian defamation judgments may not be enforceable in the United States, there is no similar prohibition in Canada against enforcing American judgments.

30. The rule in *New York Times v. Sullivan*, 376 U.S. 254 (1964), has been expressly rejected by Canadian courts in respect of defamation claims among private litigants. In *Hill v. Church of Scientology of Toronto*, 1995 CanLII 59 (SCC), [1995] 2 SCR 1130, Mr. Justice Cory of the Supreme Court of Canada, writing for a unanimous court on this point, stated, at para. 137:

> The *New York Times v. Sullivan* decision has been criticized by judges and academic writers in the United States and elsewhere. It has not been followed in the United Kingdom or Australia. I can see no reason for adopting it in Canada in an action between private litigants. The law of defamation is essentially aimed at the prohibition of the publication of injurious false statements. It is the means by which the individual may protect his or her reputation which may well be the most distinguishing feature of his or her character, personality and, perhaps, identity. I simply cannot see that the law of defamation is unduly restrictive or inhibiting. Surely it is not requiring too much of individuals that they ascertain the truth of the

  allegations they publish.  The law of defamation provides for the defences of fair comment and of qualified privilege in appropriate cases.  Those who publish statements should assume a reasonable level of responsibility.

31. Plaintiffs have taken advantage of this difference in libel laws by suing American media companies in Ontario.  For example, in *Pindling v. National Broadcasting Corp. et al.*, 1984 CanLII 1910 (ON SC), the Ontario court held that the plaintiff, the Prime Minister of the Bahamas, could pursue a defamation claim against NBC for a broadcast emanating from the United States that could be viewed in Ontario, either over the airwaves or via cable or satellite services.  The court found that defamatory words spoken in a broadcast in the United States and heard in Ontario constitute a tort committed within Ontario, relying on the decision of the court in *Jenner v. Sun Oil Co. Ltd. et al.*, 1951 CanLII 129 (ON SC), in which a plaintiff was permitted to pursue a defamation claim arising from a US radio broadcast heard in Ontario.  In *Pindling*, the court also refused to stay the Ontario action as that would have deprived the plaintiff of a substantial juridical advantage, since if he sued NBC in the United States, he would be forced to prove actual malice in order to succeed, due to the test in *New York Times v. Sullivan*, and also NBC might be able to rely upon the Act of State doctrine.

32. However, Ontario courts may be reluctant to permit libel actions to proceed when there is little chance a judgment will be enforceable in the United States. In *Bangoura v. Washington Post*, 2005 CanLII 32906 (ON CA), the plaintiff was a resident of Ontario who claimed he had been defamed by articles published by the *Washington Post* in its print editions and online at a time when he was living and working in Kenya.  The court reviewed whether it should assume jurisdiction.  The Court of Appeal ultimately declined jurisdiction.  One of the factors the court took into account, at para. 39, was "the reality … that American courts will not enforce foreign

libel judgments that are based on the application of legal principles that are contrary to the actual malice rule [in *New York Times v. Sullivan*]."

33.     In contrast, with respect to enforcement of foreign judgments, Canadian courts take a "generous and liberal approach", per the decision of the Supreme Court of Canada, in *Chevron Corp. v. Yaiguaje*, 2015 SCC 42 (CanLII).  The court there held, at para. 27, that to recognize and enforce a foreign judgment, "the only prerequisite is that the foreign court had a real and substantial connection with the litigants or with the subject matter of the dispute, or that the traditional bases of jurisdiction were satisfied."  In addition to the traditional rule that to be enforceable a foreign judgment must be final and conclusive for a sum certain (but not a tax or a penalty), Canadian courts will also now enforce foreign non-money judgments provided certain criteria are satisfied (per *Pro Swing Inc. v. Elta Golf Inc.*, 2006 SCC 52 (CanLII)).

34.     Accordingly, it is likely that a judgment obtained in a foreign defamation action for money damages will be enforceable in Ontario, provided the test as enunciated in *Chevron Corp.*, *supra*, is met.

**Anti-SLAPP Legislation and Defamation**

35.     So-called anti-SLAPP legislation is designed to protect expression on matters of public interest from being silenced by strategic litigation.  However, anti-SLAPP legislation in Ontario does not change the substantive standards applicable to defamation claims, other than a minor change with respect to the defence of qualified privilege (see *1704604 Ontario Ltd. v. Pointes Protection Association*, 2018 ONCA 685 (CanLII), at para. 46).  Speaking for the majority of the Supreme Court of Canada in *Bent v. Platnick*, 2020 SCC 23 (CanLII), at para. 1, Madam Justice Côté reiterated the court's view that the right to freedom of expression is not a license to ruin reputations.

**The Length of Time to Get to Trial and Subsequent Appeals in Toronto, Ontario**

36. Civil litigation can take a long time to make its way through the court in Toronto. Anecdotally, I have been told in the past two weeks by two civil litigators that the Superior Court trial office in Toronto is now assigning trial dates in civil matters well into 2023 and 2024 for matters that have already been set down for trial (i.e., cases for which discovery is complete and the parties have already attended a pre-trial conference with a judge).

37. In my experience, it is not uncommon for a trial to occur four or five years after a claim is commenced.  A review of the Superior Court's docket for June 7, 2022 in Toronto, on [www.ontariocourtdates.ca](www.ontariocourtdates.ca) (accessed the evening of June 5, 2022) showed there were nine civil trials scheduled to be held that day – one of which was commenced in 2013, four of which were commenced in 2017 and two of which were commenced in 2018. There are certainly older cases in the Ontario Superior Court system.

38. If a trial judgment is appealed to the Court of Appeal, it can certainly be upwards of a year or more before the appeal is decided.  The appellate court has discretion to hear submissions from parties on issues not addressed at first instance (see, for example, *Kaiman v. Graham*, 2009 ONCA 77 (CanLII)).  Appeals of civil matters to the Supreme Court of Canada are not as of right – an appellant must first successfully obtain leave to appeal from the Supreme Court.

39. By way of a recent example, in the case of *Nelson (City) v. Marchi*, the trial judgment of McEwan J., 2019 BCSC 308, was released on March 8, 2019, and the decision of the B.C. Court of Appeal, 2020 BCCA 1, was released on January 2, 2020.  The decision of the Supreme Court of Canada, 2021 SCC 41, was released on October 21, 2021, after having been heard on March 25, 2021.  The case arose from an accident that occurred on January 6, 2015, when the plaintiff attempted to climb over a snowbank on a city street.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed:    June 10, 2022
             Port Elgin, Ontario, Canada

　                                                                  _____
　                                                                  Douglas F. Harrison