# EXHIBIT 6

**Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265**

2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 2 of 19

2005 CarswellOnt 2265
Ontario Court of Appeal

Janssen-Ortho Inc. v. Amgen Canada Inc.

2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89, 256 D.L.R. (4th) 407

## Janssen-Ortho Inc. (Plaintiff / Appellant / Respondent on Cross-Appeal / Respondent on Appeal Transferred from Divisional Court) and Amgen Canada Inc. and Krisma Canada Inc. (Defendants / Respondents / Cross-Appellants/ Appellants on Appeal Transferred from Divisional Court)

Lang J.A., Rosenberg J.A., and Weiler J.A.

Heard: April 22, 2005
Judgment: June 7, 2005
Docket: CA C42093, C42657, C42658

Proceedings: reversing in part *Janssen-Ortho Inc. v. Amgen Canada Inc.* (2004), 2004 CarswellOnt 2414 (Ont. S.C.J.)

Counsel: Kathryn Podrebarax, Jennifer Lynch for Janssen-Ortho Inc.
Roco Di Pucchio for Amgen Canada Inc.
Dominic Campione for Karisma Canada Inc.

Subject: Torts; Civil Practice and Procedure
**Related Abridgment Classifications**
Civil practice and procedure
IX Service of originating process
   IX.6 Miscellaneous
Civil practice and procedure
X Pleadings
   X.2 Statement of claim
      X.2.f Striking out for absence of reasonable cause of action
         X.2.f.i General principles
Civil practice and procedure
XIII Admissions
   XIII.1 General principles
Civil practice and procedure
XVI Disposition without trial
   XVI.1 Preliminary determination of question of law or fact
      XVI.1.a Question of law alone
Civil practice and procedure
XXII Judgments and orders
   XXII.18 Judgment on basis of admissions
Torts
V Defamation
   V.2 Libel [publication]
      V.2.f Broadcasting
Torts
V Defamation

WESTLAW CANADA Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.     1

    V.4 Defences
        V.4.c Qualified privilege
            V.4.c.ii When qualified privilege arises
                V.4.c.ii.B Statements by public figures
                      V.4.c.ii.B.1 Members of federal or provincial legislatures
Torts
  XXIII Practice and procedure
    XXIII.5 Pleadings
        XXIII.5.d Miscellaneous

**Headnote**

Defamation --- Publication in mass media — Broadcasting — Statutory requirements

Defamation --- Publication in mass media — Broadcasting — Miscellaneous issues

Defamation --- Practice — Pleadings — General principles — General

Defamation --- Practice — Pleadings — Miscellaneous issues

Civil practice and procedure --- Judgments and orders — Judgment on basis of admissions

Civil practice and procedure --- Admissions — General principles

Defamation --- Privilege — Qualified privilege — When qualified privilege arises — Statements by public figures — Members of Parliament or legislatures

Civil practice and procedure --- Pleadings — Statement of claim — Striking out for absence of reasonable cause of action — General principles

Civil practice and procedure --- Service of originating process — General principles

Civil practice and procedure --- Disposition without trial — Preliminary determination of question of law or fact — Question of law alone

**Table of Authorities**

**Cases considered by *Weiler J.A.*:**

    *Abbott v. Collins* (2002), 2002 CarswellOnt 3487, 165 O.A.C. 272, 62 O.R. (3d) 99, 26 C.P.C. (5th) 273, 24 C.C.E.L. (3d) 219 (Ont. C.A.) — referred to

    *Adam v. Ward* (1917), [1917] A.C. 309, [1916-17] All E.R. Rep. 157 (U.K. H.L.) — referred to

    *Al's Steak House & Tavern Inc. v. Deloitte & Touche* (1997), 102 O.A.C. 144, 1997 CarswellOnt 2741, 13 C.P.C. (4th) 90, [2000] 1 C.T.C. 153 (Ont. C.A.) — referred to

    *Beardsley v. Ontario* (2001), 2001 CarswellOnt 4137, 151 O.A.C. 324, 57 O.R. (3d) 1, 17 C.P.C. (5th) 94 (Ont. C.A.) — considered

    *Canada (House of Commons) v. Vaid* (2005), 2005 SCC 30, 2005 CarswellNat 1272, 2005 CarswellNat 1273 (S.C.C.) — considered

    *Canadian Plasmapheresis Centres Ltd. v. Canadian Broadcasting Corp.* (1975), 1975 CarswellOnt 922, 8 O.R. (2d) 55 (Ont. H.C.) — considered

    *Church of Scientology of California v. Johnson-Smith* (1972), [1972] 1 Q.B. 522, [1972] 1 All E.R. 378 (Eng. Q.B.) — referred to

    *Copland v. Commodore Business Machines Ltd.* (1985), 52 O.R. (2d) 586, 3 C.P.C. (2d) 77, 1985 CarswellOnt 410 (Ont. Master) — considered

    *DeHeus v. Niagara Regional Police Services Board* (2001), 2001 CarswellOnt 3732 (Ont. C.A.) — referred to

    *Emonts v. McKeever* (1992), 1992 CarswellOnt 3845 (Ont. Gen. Div.) — considered

    *Greater Toronto Airports Authority v. Air Canada* (1999), 1999 CarswellOnt 2076 (Ont. S.C.J.) — referred to

    *Krahe v. TCN Channel Nine Pty Ltd.* (1986), 4 N.S.W.L.R. 536 (New South Wales S.C.) — referred to

    *Mundey v. Askin* (1982), [1982] 2 N.S.W.L.R. 369 (New South Wales C.A.) — considered

    *Owen Sound Lumber Co. v. Seaman Kent Co.* (1913), 5 O.W.N. 93, 1913 CarswellOnt 496, 25 O.W.R. 61 (Ont. S.C.) — referred to

    *Place Concorde East Ltd. Partnership v. Shelter Corp. of Canada Ltd.* (1999), 1999 CarswellOnt 2422 (Ont. S.C.J. [Commercial List]) — referred to

*Roach v. Now Communications Inc.* (2002), 2002 CarswellOnt 3765 (Ont. C.A.) — considered

*Robinson v. Club Epiphany Restaurant & Lounge* (March 1, 2001), Doc. 505/99 (Ont. S.C.J.) — referred to

*Roman Corp. v. Hudson's Bay Oil & Gas Co.* (1971), 1971 CarswellOnt 650, [1971] 2 O.R. 418, 18 D.L.R. (3d) 134 (Ont. H.C.) — referred to

*Roman Corp. v. Hudson's Bay Oil & Gas Co.* (1971), [1972] 1 O.R. 444, 23 D.L.R. (3d) 292, 1971 CarswellOnt 229 (Ont. C.A.) — referred to

*Roman Corp. v. Hudson's Bay Oil & Gas Co.* (1973), [1973] S.C.R. 820, 36 D.L.R. (3d) 413, 1973 CarswellOnt 228, 1973 CarswellOnt 228F (S.C.C.) — referred to

*Rotstein v. Globe & Mail (The)* (1997), 1997 CarswellOnt 4413, 18 C.P.C. (4th) 144 (Ont. Master) — referred to

*Searle v. Mirror Newspapers Ltd.* (1974), [1974] 1 N.S.W.L.R. 180 (New South Wales C.A.) — referred to

*Sentinel-Review Co. v. Robinson* (1928), [1928] S.C.R. 258, [1928] 3 D.L.R. 97, 1928 CarswellOnt 42 (S.C.C.) — considered

*Siddiqui v. Canadian Broadcasting Corp.* (2000), 2000 CarswellOnt 3517, 50 O.R. (3d) 607 (Eng.), *(*sub nom. *Siddiqui c. Société Radio-Canada)* 50 O.R. (3d) 616 (Fr.), 136 O.A.C. 308, 195 D.L.R. (4th) 440 (Ont. C.A.) — referred to

*Sigroum Office Management v. Milanis* (1985), 4 C.P.C. (2d) 243, 1985 CarswellOnt 525 (Ont. Dist. Ct.) — referred to

*Stopforth v. Goyer* (1979), 23 O.R. (2d) 696, 97 D.L.R. (3d) 369, 8 C.C.L.T. 172, 1979 CarswellOnt 670 (Ont. C.A.) — referred to

*Stuarts Furniture & Appliances v. No Frills Appliances & T.V. Ltd.* (1982), 40 O.R. (2d) 52, 31 C.P.C. 4, 1982 CarswellOnt 518 (Ont. H.C.) — considered

*Trottier v. John Blunt Publications Ltd.* (1950), [1950] O.W.N. 678, 1950 CarswellOnt 314 (Ont. H.C.) — considered

*Watson v. Southam Inc.* (2000), 2000 CarswellOnt 2336, 189 D.L.R. (4th) 695, 134 O.A.C. 139 (Ont. C.A.) — considered

*Weiss v. Sawyer* (2002), 2002 CarswellOnt 3003, 217 D.L.R. (4th) 129, 163 O.A.C. 2, 61 O.R. (3d) 526 (Ont. C.A.) — referred to

**Statutes considered:**

*Courts of Justice Act*, R.S.O. 1990, c. C.43

    s. 138 — referred to

*Libel and Slander Act*, R.S.O. 1990, c. L.12

    s. 5(1) — considered

    s. 7 — referred to

    s. 8 — referred to

*Proceedings Against the Crown Act*, R.S.O. 1990, c. P.27

    s. 7 — considered

    s. 7(1) — referred to

**Rules considered:**

*Rules of Civil Procedure*, R.R.O. 1990, Reg. 194

    Generally — referred to

    R. 1.04(1) — referred to

    R. 2.01 — referred to

    R. 6 — referred to

    R. 21 — referred to

    R. 21.01(1)(a) — considered

    R. 21.01(1)(b) — considered

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 5 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265

2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

    R. 21.01(2) — considered

    R. 21.01(3)(c) — referred to

    R. 21.01(3)(d) — referred to

    R. 25.06(3) — considered

    R. 25.06(3) — referred to

    R. 25.06(6) — considered

    R. 25.11(b) — referred to

    R. 25.11(c) — referred to

    R. 26.01 — referred to

    R. 37.06(b) — referred to

    R. 51.06 — considered

    R. 51.06(1) — considered

    R. 51.06(1)(c) — considered

    R. 51.06(2) — considered

    R. 56.01 — referred to

    R. 56.01(1)(c) — referred to

*Rules of Practice*, R.R.O. 1970, Reg. 545

    R. 124 — referred to

**Weiler J.A.:**

1    Section 5(1) of the *Libel and Slander Act*, R.S.O. 1990, c. L.12 (the "Act") provides, "No action...lies" for defamatory words in a newspaper or in a broadcast unless the plaintiff has given notice in writing to the defendant of the alleged defamation within six weeks from the time the plaintiff had knowledge of it.

2    The alleged defamation in this case began with two radio broadcasts that occurred on March 12 and March 16, 2003, that were simultaneously broadcast on the Internet. I will refer to them collectively as the March broadcasts. On March 26, 2003, a Member of the House of Commons raised a question in Parliament based on the allegedly libellous broadcasts.

3    As a result of the March broadcast and the question in Parliament, the plaintiff Janssen-Ortho Inc. ("Janssen") served a statement of claim on the defendants Amgen Canada Inc. ("Amgen") and Karisma Canada Inc. ("Karisma") on April 2, 2003, which claimed damages of $10,000,000. The claim alleged several causes of action, including defamation. At the same time, Janssen served a motion record seeking an injunction. On May 15, Janssen officially served a notice purporting to comply with s. 5(1) of the Act. On June 12, 2003, Janssen served a second statement of claim repeating the defamation allegations from its first statement of claim and adding a further allegation of defamation as a result of an article in Frank magazine.

4    The first issue in this appeal is whether the initiation of the April 2 litigation complied with s. 5(1) of the Act. Janssen acknowledges that the existing jurisprudence from this court requires the plaintiff to give notice to non-media defendants as well as to media defendants; however, Janssen asks us to reconsider this jurisprudence. Alternatively, if notice to non-media

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 6 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

defendants is required, Janssen submits that the motion record served on April 2, 2003, constituted notice. A further alternative argument is that the April 2 statement of claim constituted the requisite notice within sixty days for the radio broadcasts and salvages the June 12 statement of claim.

5     In addition to the substantive issues, Janssen raised procedural issues that require consideration of the *Rules of Civil Procedure*, R.R.O. 1990, Reg. 194, including rule 21.01(1)(b), providing for a motion to strike out a pleading as disclosing no reasonable cause of action; rule 21.01(1)(a), providing for a motion to determine a question of law; and rule 51.06(1), providing for an order resulting from an admission.

6     Having regard to the jurisprudence respecting s. 5(1) of the Act, the motions judge struck the claim in defamation relating to the March broadcasts from the April 2 statement of claim and I would uphold her conclusion in this regard. Because certain allegedly defamatory e-mails sent by Karisma are neither a broadcast or a newspaper and the s. 5(1) notice requirement does not apply to them, I would, however, stay that portion of the judgment striking the claim in defamation for thirty days so that, if Janssen wishes to do so, it may move on proper material before a judge of the Superior Court for leave to amend its pleading respecting the e-mails.

7     The motions judge refused to strike the June 12 statement of claim in relation to the March broadcasts on the basis that it was not plain and obvious that the paragraphs relating to the March broadcasts disclosed no cause of action. I disagree with her and would hold that the commencement of a second action on June 12 cannot salvage the defamation action respecting the March broadcasts. In view of my conclusion, it is not necessary to address whether the motions judge's refusal to strike the June 12 claim as frivolous, vexatious or an abuse of process was a final order.

8     Janssen also sued Amgen and Karisma in defamation due to the Member's question in Parliament and, although the Member was not sued, the motions judge struck the pleading in both statements of claim on the basis of parliamentary privilege. A subsidiary issue on this appeal is the extent of parliamentary privilege and whether the motions judge erred in striking the portion of the pleading relating to the Member's question in Parliament. I would hold that the motions judge did not err.

**The Factual Matrix Alleged**

9     The factual matrix in paragraphs 9-14 of these reasons is largely drawn from the allegations in Janssen's statements of claim and Karisma's statement of defence. Amgen has yet to file a statement of defence.

10    Janssen markets in Canada a drug called EPREX, which stimulates the production of red blood cells in patients with anaemia. Amgen, a competitor of Janssen, markets the only competing drug, which was launched in the Canadian market in August 2002. Karisma is a public relations firm that was retained by Amgen in February 2003 to assist in marketing and promoting its competing drug

11    On June 25, 2002, in consultation with and with the approval of Health Canada, Janssen issued a "Dear Healthcare Professional" letter regarding reports of a rare but serious condition, called pure red cell aplasia ("PRCA"), in chronic kidney disease patients treated with EPREX subcutaneously. The letter recommends intravenous administration of EPREX for these patients where feasible. In July 2002, the European Union Member States (EU) issued a similar letter, and in December 2002 a further letter from the EU contraindicated the subcutaneous administration of EPREX in chronic kidney disease patients. This change did not affect the other approved uses of EPREX.

12    On March 12, 2003, the radio station CFTR (680 News All News Radio) broadcast from Toronto and simultaneously on the Internet the news that EPREX was connected to thirty-seven deaths in Canada. The report concluded, "Canada is the only country that has not recommended that EPREX be removed".

13    On March 16, 2003, Peter Warren broadcast in major Canadian cities on the Corus Radio Network the statement that "a lot of other countries have withdrawn EPREX from the market". Following a written complaint by Janssen, he broadcast a correction one week later confirming that EPREX had not been withdrawn from any market.

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 7 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

14     In response to Janssen's investigations about the origin of CFTR's erroneous broadcast, CFTR forwarded a copy of an e-mail sent by Michelle Brun of Karisma to the CFTR reporter, Marlane Oliver, dated March 10, 2003. The e-mail states that health authorities in Europe and Australia decided that EPREX should not be used subcutaneously for patients with chronic kidney disease because it had been associated with PRCA, that one hundred forty-one cases had been reported worldwide, and that thirty-seven cases were Canadian. The e-mail concluded, "The story is that Canada has yet to take action. In fact, they are the ONLY country who has not recommended removal of EPREX."

15     On March 26, 2003, Member of Parliament Svend Robinson asked the House during Question Period, "Why won't this Minister join many other countries in Europe and Australia in contraindicating the use of EPREX in Canada? Or will it take another death before the Minister finally acts?"

16     Janssen alleges that the media disseminations are incorrect and misleading for several reasons including the facts that EPREX has not been connected with thirty-seven deaths in Canada and that no country has recommended that EPREX be removed from the market.

17     On April 2, 2003, Janssen issued a statement of claim in which it named Amgen and Karisma as defendants. In the statement of claim, Janssen alleged six causes of action, one of which was defamation. At the same time, Janssen served a motion record seeking an injunction against Amgen and Karisma. In support of the motion, Janssen filed the affidavit of Dr. Wendy Arnott, vice-president of Regulatory, Quality Medical and Linguistic Services for Janssen, dated April 2.

18     On April 15, 2003, Karisma filed a statement of defence, which it amended on April 17. Karisma stated Amgen retained it to help promote information about:

> the risks inherent in the subcutaneous (under the skin) administration of Eprex in patients with chronic renal failure and the fact that a number of EU states had contraindicated administration of the drug subcutaneously.

Karisma denied advising the CFTR broadcaster that there had been thirty-seven deaths and states that within one hour of the broadcast it advised the broadcaster that "cases" did not necessarily mean "deaths". Karisma admitted, however, that it erred in advising Oliver and Warren that EPREX had been recommended for removal from the market in countries outside of Canada. Its pleading characterized this error as "an honest mistake" and "without nefarious intent". In an action for defamation, it is not generally necessary to prove malice, only falsity: see *Adam v. Ward*, [1917] A.C. 309 (U.K. H.L.).

19     When Dr. Arnott was cross-examined on April 29, 2003, on her affidavit of April 2 and her further affidavit of April 20, she admitted that no notice had been delivered under s. 5(1) of the Act.

20     On May 21, 2003, Nordheimer J. dismissed the motion for an injunction on the basis that he was not satisfied that irreparable harm was shown. He also expressed concern that the relief requested was vague and overbroad.

21     On May 15, Ms. Podrebarac, counsel for Janssen, wrote a letter to counsel for Amgen and Karisma that reads, in part:

> In Mr. Di Pucchio's [counsel for Amgen's] submissions to Justice Nordheimer (and in Amgen's supporting factum) he correctly stated that a libel notice under Ontario's *Libel and Slander Act* had not yet been served on the defendants.
>
> As Ms. Tough indicated in her reply submissions, given that Amgen/Karisma's campaign against EPREX® was a deliberately covert operation, it was not immediately apparent who, if anyone, was behind the erroneous broadcasts on CFTR and on the Peter Warren Show.
>
> Enclosed please find a Notice under section 5 of the *Act* relating to these broadcasts.

22     On May 28, 2003, Janssen's counsel qualified this admission in a letter to both Amgen and Karisma. The letter reads in part as follows:

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 8 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

> You may regard this letter as a qualification to the answer to Question 214 posed on the Cross-Examination of Dr. Arnott, held April 29, 2003 *and a qualification to the first paragraph of my letter to you dated May 15, 2003, which was also addressed to Karisma Canada Inc.'s prior counsel, Mr. Blaier.* In other words, while no document entitled "Notice" under the *Act* was delivered prior to letters dated May 15 and 23, 2003, the motion record and claim satisfy the s.5(1) notice requirements in respect of a subsequent action.
>
> As I advised Mr. Gruber, my client intends to bring a fresh action, which will be restricted to the libel claims. As I also advised Mr. Gruber, it is our intent to amend the Statement of Claim to remove the allegation of libel in our current action, and to bring a motion (if your clients do not consent) to have the current action and the fresh action consolidated or heard at the same time [emphasis added].

23      Janssen issued a second statement of claim on June 12, 2003, alleging only defamation and repeating the allegations from its April statement of claim. There were, however, two substantive differences. First, the June 12 claim contained an additional allegation of defamation relating to an article that appeared in Frank Magazine on May 15, 2003, entitled "Health Canada neglects EPREX RX effects?" The article contained the statement, *inter alia*, that "[H]ealth authorities in the European Union and Australia...late last year banned the use of Eprex". Prior to issuing this statement of claim, Janssen served a s. 5(1) notice under the Act on Amgen and Karisma dated May 23, 2003, respecting the Frank Magazine article. Second, whereas the April 2 statement of claim was silent with respect to compliance with s. 5(1) of the Act, paragraph 47 of the June 12 statement of claim alleged service of such a notice.

24      Amgen requested particulars of the alleged notice in writing dated April 2, 2003. Janssen's response to Amgen's demand for particulars was:

> [N]otice in writing specifying the matters complained of as prescribed by Section 5 of the *Libel and Slander Act* was served personally on each of the Defendants on April 2, 2003, in the form of the Plaintiff's Motion Record in support of an interim, interlocutory and permanent injunction, which was served at the same time as the Statement of Claim.

25      Although Janssen's counsel indicated in her May 28 letter that she intended to discontinue the April 2 action with respect to defamation, this was not done. On August 25, 2003, Janssen amended its April 2 statement of claim to further allege defamation respecting the article in Frank Magazine.

26      Amgen brought a motion to strike the defamation claims from the April 2 statement of claim as amended as disclosing no cause of action because a notice was not served in accordance with s. 5(1) of the Act. Amgen alternatively requested the determination of a question of law, asking whether Janssen's claim was statute barred due to Janssen's failure to deliver a notice in accordance with s. 5(1). It also sought an order dismissing the June 12 statement of claim in its entirety on the basis that it was frivolous and vexatious or on the basis that another proceeding was pending respecting the same subject matter pursuant to rules 25.11(b) and (c) and s. 138 of the *Courts of Justice Act,* R.S.O. 1990, c. C.43. Under the heading "The Grounds for the Motion Are", Amgen stated:

> a) The Plaintiff *has admitted* in this proceeding that it did not provide a notice regarding the allegations of defamation contained in paragraphs 26 to 32 of the <u>Amended</u> Statement of Claim as required under section 5 of the *Libel and Slander Act*.
>
> b) In the alternative, the Plaintiff *has admitted in its Reply to a Demand for Particulars* served in connection with a second Statement of Claim (Court File No. 03-CV-250532-CM1) issued against these same defendants that it did not deliver the Section 5 Libel Notice prior to commencing the action.

Amgen relied on rules 21.01(1)(a) (determination of a question of law) and 21.01(1)(b) (pleading discloses no reasonable cause of action); 25.11(b) (pleading is scandalous, frivolous or vexatious) and 25.11(c) (pleading is an abuse of process); and 56.01(1)(c) (order for costs in the same proceeding remain unpaid)(*quaere* whether Amgen meant to refer to rule 51.06 respecting admissions).

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 9 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265

2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

27     Karisma brought a similar motion to strike out the paragraphs of the amended statement of claim as disclosing no reasonable cause of action on the basis that they were scandalous, frivolous, or vexatious, as well as for determination of a question of law. Under the heading, "The Grounds for the motion are", it too relied on Janssen's admission and on the reply to the demand for particulars.

28     Janssen brought a cross-motion under Rule 6 seeking that the action in its June 12 statement of claim be consolidated, case-managed, and tried together with the action begun on April 2. Janssen's counsel did not appreciate that the amended statement of claim continued to contain claims for defamation and when the motions were argued this became apparent.

**The Order of the Motions Judge**

29     The three motions were heard together by the motions judge. She struck the paragraphs pleading defamation in the April 2 statement of claim as amended. However, she left intact the paragraphs setting out the alleged facts relating to the two broadcasts as these same facts also grounded some of the other claims in that statement of claim. She dismissed Amgen's and Karisma's motions in relation to the June 12 statement of claim and refused to dismiss the June 12 action as being frivolous, vexatious, or an abuse of process. She also dismissed Janssen's motion for consolidation "without prejudice to [Janssen's] ability to bring the motion again after the close of pleadings".

**The Appeals**

30     Janssen appeals to the Court of Appeal the striking of its claim for defamation in the April 2 statement of claim. Amgen and Karisma cross-appeal on the basis that the motions judge erred in dismissing their motions to dismiss the second action as being frivolous, vexatious, or an abuse of process. Because the motions judge's order precluded any further argument on the issues in circumstances where the defence would have been determinative of the entire action, Amgen and Karisma submit that her order was a final order. They rely on *Abbott v. Collins* (2002), 62 O.R. (3d) 99 (Ont. C.A.), at 10.

31     Amgen and Karisma also sought leave to appeal to the Divisional Court the motions judge's refusal to strike the paragraphs setting out the alleged facts relating to the two broadcasts in the April 2 statement of claim. Ground J. refused leave on the basis that there was no good reason to doubt the correctness of her exercise of discretion. With respect to her order dismissing the motion to strike the June 12 claim in its entirety as an abuse of process or on the basis of a multiplicity of proceedings, he also held there was no error in principle in the exercise of her discretion and refused leave. However, he granted leave from her order declining to strike the paragraphs relating to the March broadcasts in the June 12 action. He held at para. 12:

> There is also ample authority for the proposition that the notice [pursuant to s. 5] must be given prior to the commencement of the proceeding and that the Statement of Claim in a proceeding cannot constitute notice for purposes of Section 5 of the *Libel Act*. Accordingly, in my view, there is good reason to doubt the correctness of Pepall J.'s Order in this regard. In addition, it does not appear that the essential question of whether a claim in defamation can be salvaged by the commencement of a second proceeding after failure to provide a Section 5 Notice in a first proceeding has ever been addressed by the courts in this province. In my view this is an issue of some importance to the administration of justice and the development of the law in that it could affect any libel proceeding in this province where there has been a failure to provide a Section 5 Notice prior to the commencement of the proceeding.

On consent, the appeal was then transferred from the Divisional Court to this court to be heard with the appeal and cross-appeal.

**Issues**

32     Janssen's appeal raises seven issues:

> 1. Does the s. 5(1) requirement to deliver a defamation notice apply to non-media defendants?
>
> 2. Were the preconditions to s. 5(1) met?

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 10 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

3. Did the April 2 statement of claim comply with s. 5(1)?

4. Was the motions judge entitled to strike the April 2 claim against Amgen on the basis of rule 51.06?

5. Did the motions judge err in holding that Karisma could not rely on rule 51.06?

6. Was the motions judge entitled to strike the April 2 claim against Karisma on the basis of rule 21.01(1)(a)?

7. Did the motions judge err in striking out the references in Janssen's claim for defamation to the comments made by Member of Parliament Svend Robinson?

33     The issue on Amgen and Karisma's cross-appeal is whether the motions judge's refusal to strike the June 12 claim as frivolous, vexations, or an abuse of process was a final order and, if so, whether the motions judge erred in not striking the claim on this basis. Amgen and Karisma's appeal transferred from the Divisional Court raises the issue of whether the motion judge erred in refusing to strike certain paragraphs in the June 12 statement of claim because it was not plain and obvious that no s. 5(1) notice was provided.

Analysis

*A. Janssen's Appeal*

*1. Does the s. 5(1) requirement to deliver a defamation notice apply to non-media defendants?*

34     In *Watson v. Southam Inc.* (2000), 189 D.L.R. (4th) 695, 134 O.A.C. 139 (Ont. C.A.), this court decided that s. 5(1) applies to both media and non-media defendants. The court also decided that the notice must be served before litigation commences. Janssen invites this court to reconsider its decision in this case in light of Doherty J.A.'s *obiter* comment in *Roach v. Now Communications Inc.*, [2002] O.J. No. 875 (Ont. C.A.) that the law respecting notice to non-media defendants may have to be reconsidered. In support of its position Janssen relies on Professor Brown's critique in *The Law of Defamation in Canada*, vol. 3, 2d ed. looseleaf (Toronto: Carswell, 2004) at heading 17.3(2)(b)(i)(C).

35     Professor Brown is of the opinion that the context of the other provisions in the Act indicates that the legislature did not intend the notice provisions to apply to non-media defendants and makes a number of other arguments in support of his position. However, he opines that the word defendant in conjunction with the words "newspaper" and "broadcaster" should be given a large and liberal construction that includes within their ambit "*all those who have some responsibility for the appearance of a libel in a newspaper or broadcast*" (emphasis added). In addition to reporters and other authors employed directly by the newspaper, he states:

> [The term] could also include freelance authors or persons who submit letters for publication or telephone in comments for a broadcast, or appear as a guest in a broadcast program, but this is more tenuous.

36     Indeed, a man calling a radio phone-in show who allegedly made defamatory comments during the program's broadcast was the subject of a lawsuit in *Emonts v. McKeever*, [1992] O.J. No. 1467 (Ont. Gen. Div.). Although the broadcaster was not sued, Goodearle J. held that the defendant was entitled to "have equal access to the prescriptive shield offered" in s. 5(1) of the Act.

37     In this case, the broadcasters did not fortuitously report comments that they heard. Instead, Karisma sent an e-mail about Janssen's product to a CFTR reporter for broadcast. Thus, even assuming the validity of Professor Brown's critique, Karisma, and its principal, Amgen, could come within the ambit of the construction of "broadcaster" proposed by Professor Brown, namely, a person having some responsibility for the appearance of the defamation in the broadcast.

38     The policy of the Act is to give media defendants an opportunity to mitigate damages by apologizing or printing a retraction. Although Karisma and Amgen would not have been in a position to make the decision as to whether or not a retraction would be printed or an apology made, they were in a position to make best efforts to cause retractions or apologies. They could also

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 11 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

have purchased paid advertising and apologized for providing part of the allegedly erroneous information that was broadcast. Therefore, the policy of the section supports its application to Amgen and Karisma.

39     Furthermore, this court has reaffirmed *Watson* in *DeHeus v. Niagara Regional Police Services Board*, [2001] O.J. No. 4201 (Ont. C.A.), *Siddiqui v. Canadian Broadcasting Corp.* (2000), 50 O.R. (3d) 607 (Eng.), and *Weiss v. Sawyer* (2002), 61 O.R. (3d) 526 (Ont. C.A.), the latter of which was decided after *Roach* , *supra*. This is not a situation of *per incuriam*. See *Al's Steak House & Tavern Inc. v. Deloitte & Touche* (1997), 102 O.A.C. 144, 13 C.P.C. (4th) 90 (Ont. C.A.).

40     Without going into the jurisprudence that explains when a court can depart from the values enshrined in the principle of *stare decisis* it is enough to say that the discretion to overrule a prior decision must be exercised in a principled manner. In this case, no principled reason has been shown to support exercising that discretion. The policy reasons for the notice requirement in s. 5(1) support giving notice to these defendants. Even if the construction of s. 5(1) were modified as suggested by Professor Brown, such that the notice requirement encompassed only persons alleged to have responsibility for the appearance of the defamation in the broadcasts, the notice requirements would still apply to Amgen and Karisma. Thus, overruling the *Watson* line of cases would have no practical effect in this case. Any modification of the law would lead to the same result. I would hold that Janssen was required to deliver a s. 5(1) defamation notice to Amgen and Karisma before starting litigation.

*2. Were the preconditions to s. 5(1) met?*

41     Sections 7 and 8 of the Act limit the application of the notice requirement in s. 5(1) to newspapers printed in and broadcasts made from Ontario. Janssen submits that the motions judge did not make the necessary findings of fact to support the application of s. 5(1) to the March broadcasts. In relation to the CFTR broadcast, there was no need for the motions judge to make any finding of fact as the statement of claim pleads the CFTR broadcast was from a station in Ontario. Insofar as the Warren broadcast is concerned, again, there was no need for her to make any finding of fact because the May 15 notice purportedly given pursuant to s. 5(1) indicates that one of the radio stations making the broadcast is in Ontario. The fact that the broadcast was also made from other stations outside Ontario does not matter: *Weiss* , *supra*. The decision in *Weiss* also answers the submission that an Internet broadcast is not a broadcast within the meaning of the Act. In *Weiss* , *supra*, at paragraphs 24-26, the court held that the word "paper" was broad enough to include a newspaper published on the Internet but left the issue until another evidentiary record would allow the court to make a more informed decision. Similarly, the definition of broadcasting is broad enough to include a broadcast over the Internet. In *Weiss* , the original newspaper was published in Ontario. The court did not discuss whether or not the online version was published in Ontario. However, the court held that a s. 5(1) notice was required. Thus, it seems the court inferred the online version was also published in Ontario. I would make the same inference here. The same station that initiated the radio waves also initiated the radio broadcast so it is a logical inference that the Internet broadcast was also in Ontario.

42     Insofar as the e-mails are concerned, Amgen and Karisma concede that the pleading in defamation can be sustained for the e-mails without the requirement that notice be given under s. 5(1). They submit, however, that the pleading was not based on the e-mails but rather on the subsequent March broadcasts. I agree. They further submit that the e-mails caused no damage. There may, however, be room for the application of rule 26.01 which provides:

> On motion at any stage of an action the court shall grant leave to amend a pleading on such terms as are just, unless prejudice would result that could not be compensated for by costs or an adjournment.

Following the release of this judgment, Janssen may wish to move to amend its pleading to plead defamation and consequential damages as a result of the e-mails.

*3. Did the April 2 statement of claim comply with s. 5(1)?*

43     The motions judge gave comprehensive reasons for her conclusion that the April 2 statement of claim did not comply with s. 5(1) of the Act, holding that notice was not delivered before the action was commenced. She said:

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 12 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

> There is considerable authority for the proposition that failure to serve a section 5 notice is an absolute bar to a defamation action: *Watson v. Southam*; *Grossman v. CFTO T.V. Ltd.*; *Frisina v. Southam Press Ltd.*; *Elliott v. Friesen*; *Misir v. Toronto Star Newspapers Ltd., Siddiqui v. CBC*; *Merling v. Southam Inc.*; and *Weiss v. Sawyer*.
>
> There are two timing requirements. Firstly, the notice must be served within six weeks of the alleged defamation and, secondly, the notice must be served before an action is commenced: *Siddiqui v. CBC*. As noted by Abella J.A. in that case, "The fact that the notice was served within six weeks of the alleged libel is only one-half of the timing requirements for service of the written notice; the other mandatory requirement, which was not satisfied in this case, is that the notice be served before an action is commenced."
>
> While proof of facts is not permitted on such a motion, as requested by Ms. Podrebarac on behalf of Janssen, I am prepared to consider the qualification made to the admission as set out in counsel's correspondence of May 28, 2003. It is clear from that qualification that the original statement of claim and the motion record for the injunctive relief constituted the first notice to Amgen of Janssen's intent to sue for defamation with respect to the two subject broadcasts. No prior notice was provided. As noted by Abella J.A. in *Watson v. Southam Inc.*, the discoverability principle applies to section 5 of the Libel and Slander Act but this is only of assistance with respect to meeting the six week timing requirement. Janssen was still required to meet the second requirement that notice must be served before an action is commenced. Notice enables the alleged offender to mitigate damages. It cannot be said that the original statement of claim constituted notice. Such a conclusion would neutralize the meaning and objective of section 5 as reflected in the case law. In this regard, see also *Stuarts Furniture & Appliances v. No Frills Appliances and TV Ltd*. Furthermore, the motion record on its own could not constitute prior notice as, given its action number, it is obvious that it was not served before the original statement of claim was issued. I do not accept Janssen's position that the law on whether notice is required in the circumstances of non-media defendants is unsettled. Although there may be legitimate criticism of the state of the law, it cannot be said that it is unsettled. The decision of the Court of Appeal in *Roach v. Now Communications Inc.* did not overrule *Watson v. Southam Inc.*

44   I agree with and adopt her analysis. The motions judge's reference to *Stuarts Furniture & Appliances v. No Frills Appliances & T.V. Ltd.* (1982), 40 O.R. (2d) 52 (Ont. H.C.) is apt. At 53, this Court stated, "[i]t is not a reasonable view of what the legislation contemplates to say that the alleged wrongdoer has every opportunity to apologize in the midst of litigation after receipt of the statement of claim".

45   As did the motions judge, I would reject Janssen's submission that the motion record for injunctive relief served on Amgen and Karisma constituted notice under s. 5(1) in relation to the April 2 statement of claim. As she noted, the number on the motion record indicated it was served after the statement of claim was issued. Secondly, Janssen's request for injunctive relief did not excuse it from complying with the requirement to serve a defamation notice. Thirdly, as I have said, the law is settled on the issue of whether non-media defendants are entitled to receive notice under s. 5(1) of the Act. Fourthly, although the discoverability rule applies, the submission that Janssen only discovered that the defendants were responsible for the broadcasts when it received Karisma's statement of defence and affidavit is disingenuous in light of its April 2 statement of claim against Amgen and Karisma. Therefore, the motions judge correctly held that no s. 5(1) notice was delivered with respect to the March broadcasts.

*4. Was the motions judge entitled to strike the April 2 claim against Amgen on the basis of rule 51.06?*

46   The motions judge began this portion of her reasons by setting out the principles applicable on a motion for an order based on an admission as set out in *Sigroum Office Management v. Milanis* (1985), 4 C.P.C. (2d) 243 (Ont. Dist. Ct.). She considered the qualification made to the admission by counsel for Janssen in correspondence dated May 28, 2003. As I have indicated above, she rejected the submission that the law was unsettled and held there was considerable authority for the proposition that failure to serve a s. 5(1) notice under the Act is an absolute bar to a defamation action. She concluded that Amgen should succeed on the admission as it related to the defamation claims arising out of the subject matter of the two broadcasts.

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 13 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

47   Rule 51.06(1) deals with admissions. It states:

> Where an admission of the truth of a fact or the authenticity of a document is made,
>
>> (a) in an affidavit filed by a party,
>>
>> (b) in the examination for discovery of a party or a person examined for discovery on behalf of a party; or
>>
>> (c) by a party on any other examination under oath or affirmation in or out of court,
>
> any party may make a motion to a judge in the same or another proceeding for such order as the party may be entitled to on the admission without waiting for the determination of any other question between the parties, and the judge may make such order as is just.

48   In its Notice of Motion, Amgen stated:

> The Plaintiff *has admitted* in this proceeding that it did not provide a notice regarding the allegations of defamation contained in paragraphs 26 to 32 of the Amended Statement of Claim as required under section 5 of the *Libel and Slander Act*.

49   In oral argument before us, Janssen submitted that the motions judge was not entitled to strike the April 2 claim in relation to Amgen because Amgen did not rely on rule 51.06 in its notice of motion, relying instead on rule 56.01. Although the Notice of Motion did not specifically refer to rule 51.06(1), as required by rule 37.06(b), the admission was clearly set out as a ground to be argued and it is apparent from the motions judge's reasons that argument was made in respect to it. Janssen was not prejudiced by Amgen's omission to specify the rule. In the circumstances, the failure to refer to rule 51.06(1) in Amgen's Notice of Motion was an irregularity that had no effect and can be cured by the application of rule 2.01. The motions judge was entitled to consider rule 51.06(1) in deciding the motions.

50   Janssen further submits that the admission made was not clear and definite as required by *Sigroum Office Management v. Milanis*, *supra*, but was rather a qualified, limited admission. Therefore, it argues that the motions judge erred in her application of rule 51.06(1). The admission that Janssen had not delivered a s. 5(1) notice prior to issuing the April 2 statement of claim was clear and definite. The subsequent letter on May 15 sought to bring in the discoverability rule and purported to give notice pursuant to s. 5(1). Implicitly, therefore, the May 15 letter confirmed the admission that no notice was given prior to the April 2 statement of claim. The discoverability argument was itself contradicted by the prior statement of claim. The May 28 letter stated that the motion record for the injunction constituted notice of the April 2 claim. The letter raised an argument in law that was rejected. The admission remained clear and unambiguous. The motions judge correctly applied the requirements of *Sigroum Office Management v. Milanis*, *supra*. The wording of the rule is broad enough to allow a judge to strike pleadings. The motions judge was entitled to make the order she did in relation to the March broadcasts pursuant to rule 51.06(1).

*5. Did the motions judge err in holding that Karisma could not rely on rule 51.06?*

51   The motions judge held:

> No paragraph [alleging defamation] is struck out as against Karisma pursuant to this Rule as no admission under oath on an examination was made with respect to this party as required by Rule 51.06(1)(c). Rule 51.06(2) requires an admission "in the same proceeding" and there was no admission relating to Karisma in the first action.

52   Karisma submits that the motions judge erred in failing to strike the defamation claim against it under rule 51.06(1). Janssen's position is that although it wrote letters to Karisma containing an admission, the only admission made under oath was made during Amgen's cross-examination of Dr. Arnott. Thus, Janssen submits that no admission under oath was made to Karisma and any admission was not made in the same proceeding as the defamation action against Karisma.

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 14 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265

2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

53      Rule 51.06(1) provides that, on admission by a party on any examination under oath, "*any* party may make a motion to a judge *in the same or another proceeding* for such order as the party may be entitled to on the admission" (emphasis added). Therefore, Karisma can rely on the admission made to Amgen.

54      Quite apart from the wording of the rule, it would be wasteful for each individual party to have to ask the same questions in cross-examination of a deponent and obtain the same answers in order for the admission to bind the party on whose behalf the deponent was examined: see by analogy *Place Concorde East Ltd. Partnership v. Shelter Corp. of Canada Ltd.*, 1999 CarswellOnt 2422 (Ont. S.C.J. [Commercial List]), *per* Farley J. at para 5. This practical consideration supports the interpretation of the words "any party" that I have adopted.

55      Rule 51.06(2), mentioned by the motions judge as the basis for refusing to grant judgment based on the admission in favour of Karisma, does not apply here. Rule 51.06(2) limits motions for judgment to the same proceeding where the admission is made in pleadings or pursuant to a request to admit. Here the admission was not made in the pleading that comprised the April 2 statement of claim and there has been no request to admit. Instead, the admission of Dr. Arnott, a vice-president of Janssen, was made during cross-examination on her affidavit and the applicable rule is 51.06(1)(c), which allows judgment in the same or *another* proceeding. Therefore, the motions judge erred in holding that Karisma was not entitled to rely on Dr. Arnott's admission to Amgen. Karisma was equally entitled to have the April 2 pleading in defamation respecting the March broadcasts struck against it based on the admission.

*6. Was the motions judge entitled to strike the April 2 claim against Karisma on the basis of rule 21.01(1)(a)?*

56      Rule 21.01(1)(a) states:

> A party may move before a judge,
>
> > (a) for the determination, before trial, of a question of law raised by a pleading in an action where the determination of the question may dispose of all or part of the action, substantially shorten the trial or result in a substantial saving of costs;
>
> . . . . .
>
> and a judge may make an order or grant judgment accordingly.

57      The motions judge first considered whether to grant leave to consider evidence on the motion under rule 21.01(2), which states:

> 21.01(2) No evidence is admissible on a motion,
>
> > (a) under clause (1)(a) except with leave of a judge or on consent of the parties
> >
> > (b) under clause (1)(b)

58      The motions judge concluded that it was appropriate to grant leave to consider "all of this evidence", namely, Dr. Arnott's cross-examination, the second statement of claim, and Janssen's reply to Amgen's demand for particulars. She held that Karisma should succeed in its motion under rule 21.01(1)(a).

59      Given my conclusion that Karisma could also have relied on the admission made to Amgen, it is not strictly speaking necessary to decide whether the motions judge was entitled to strike Karisma's pleading on the basis of rule 21.01(1)(a). On the other hand, having regard to the attention the parties gave to this issue and the likelihood of the issue arising again, I propose to express my view.

60      In *Beardsley v. Ontario* (2001), 57 O.R. (3d) 1 (Ont. C.A.), this court held that where notice is a necessary precondition to the right to sue, it would defeat the interests of justice to restrict the defendant's right to adduce evidence that notice was not given. In that case, the plaintiff issued a claim against the Crown and two police officers. The defendants moved to strike

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 15 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

the claim *before* filing a defence. The Crown moved on the basis that no notice had been provided pursuant to s. 7(1) of the *Proceedings Against the Crown Act*, R.S.O. 1990, c. P.27 ("*PACA*"). Section 7 states, "no action for a claim shall be commenced against the Crown unless the claimant has, at least sixty days before the commencement of the action, served on the Crown a notice of claim". The Crown sought leave to rely on a formal notice letter sent by the plaintiff the day *after* the statement of claim was issued to assert that the notice requirement had not been complied with.

61     This court ruled that the formal notice letter was properly admitted pursuant to the discretion contained in rule 21.01(2) to permit evidence on a motion under rule 21.01(1)(a). In addition, the Court held that service of the formal notice letter *after the action was commenced* could not satisfy the notice requirement in s. 7. It dismissed the plaintiff's claim against the Crown. However, this Court refused to strike the claim against the two officers on the basis of the expiry of the limitation period under s. 7(1). The Court ruled that the expiry of a limitation period, unlike the failure to give notice, does not render a cause of action a nullity. Rather, it is a defence that must be pleaded. Hence, no defence having been filed, the claim could not be struck at the rule 21.01(1)(a) stage.

62     Section 5(1) of the Act is similar to s. 7 of *PACA*. It states that "[*n*]*o action* for libel in a newspaper or in a broadcast lies *unless* the plaintiff has, within six weeks after the alleged libel has come to the plaintiff's knowledge, given to the defendant notice in writing, specifying the matter complained of" (emphasis added). As was the case with the plaintiff in *Beardsley* , Karisma alleges notice was provided after the commencement of the litigation.

63     Janssen argues that Karisma had to file a statement of defence pleading that notice had not been given. Janssen relies on *Canadian Plasmapheresis Centres Ltd. v. Canadian Broadcasting Corp.* (1975), 8 O.R. (2d) 55 (Ont. H.C.). In that case, Lieff J. stated that the s. 5(1) notice was a condition precedent that the plaintiff did not need to plead and that the defendant's motion under Rule 124 to decide a point of law was "premature". The present rule is the same in substance as Rule 124: Holmested and Watson, *Ontario Civil Procedure*, vol. 3 (Toronto: Carswell, 2004) at 25-28. *Plasmapheresis* has been followed in several Ontario cases that required the defendant to plead the failure to provide notice: see *Robinson v. Club Epiphany Restaurant & Lounge,* [2001] O.J. No. 2101 (Ont. S.C.J.), Epstein J. at para. 9; *Greater Toronto Airports Authority v. Air Canada*, [1999] O.J. No. 2532 (Ont. S.C.J.).

64     The court in *Beardsley* did not refer to *Plasmapheresis* nor did it refer to the presumption in rule 25.06(3), which states:

Allegations of the performance or occurrence of all conditions precedent to the assertion of a claim or defence of a party are implied in the party's pleading and need not be set out, and an opposite party who intends to contest the performance or occurrence of a condition precedent shall specify in the opposite party's pleading the condition and its non-performance or non-occurrence.

65     Another potentially relevant rule is rule 25.06(6), which deals specifically with notice. It states, "Where notice to a person is alleged, it is sufficient to allege notice as a fact unless the form or a precise term of the notice is material".

66     Rule 25.06(6) does not, however, specify *when* notice must be alleged. In relation to pleading conditions precedent Holmested and Watson state at 25-28 that:

By reason of rule 25.06(3) (condition precedent), there will usually be no obligation on the plaintiff to plead the giving of notice — it will be implied in the statement of claim. If the defendant wishes to contest that notice was given, he or she will have to specifically so plead in his or her defence.

67     The final rule that may have relevance is rule 1.04(1), which states, "These rules shall be liberally construed to secure the just, most expeditious and least expensive determination of every civil proceeding on its merits".

68     Both *Plasmapheresis* and *Beardsley* must be considered in this context and in the context of their own facts. In *Plasmapheresis*, the court had before it only the statement of claim on the motion to determine an issue before trial. The court held that the equivalent to what is now rule 25.06(3) — Rule 148 — meant that the motion was premature. In so doing, the court considered other decisions in which similar motions had been brought and noted that in those cases the pleadings were

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 16 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

complete. In one of them — *Trottier v. John Blunt Publications Ltd.*, [1950] O.W.N. 678 (Ont. H.C.), Gale J. refused to exercise his discretion to admit evidence obtained upon the cross-examination of the plaintiff, opining that the rule contemplated a decision on a point of law raised by the pleadings and that it was improper to look at evidence found in extraneous documents. Since the decision in *Trottier* , referred to by Lieff J. in *Plasmapheresis*, judges sometimes exercise their discretion to admit evidence. This court held that evidence of a formal notice letter delivered after the statement of claim was properly admitted as evidence under rule 21.01(1)(a) in *Beardsley* .

69     In *Roach* , *supra*, on appeal, but not before the motion judge, the appellant relied on *Plasmapheresis* and contended that a motion to strike a claim based on the failure to serve a s. 5(1) notice was premature because a statement of defence had not been filed. Doherty J.A. commented that there was "considerable merit to this submission". Noting that it had not been raised before the motion judge, he concluded, "Nothing would be gained by requiring Mr. Davis to recommence this motion after service of his statement of defence". In that case, Doherty J.A. held that the defamation notice was properly served and set aside the order striking the statement of claim.

70     From the foregoing I deduce the following principles. First, where notice is a precondition to the commencement of an action, the statement of claim need not contain a pleading that notice was given prior to the commencement of the action (rule 25.06(3)). Second, defendants generally should file a statement of defence pleading non-compliance with a precondition (rule 25.06(3)). Third, if the defendant tenders evidence that clearly shows that a precondition has not been met, thereby rebutting the presumption of compliance in rule 25.06(3), and the motion judge admits the evidence under rule 21.01(2) because it would be pointless to require the defendant to file a statement of defence before moving for summary judgment or an order under Rule 21, an appellate court will not interfere with the motion judge's exercise of discretion.

71     In the case before us, the motions judge exercised her discretion to admit evidence that clearly rebutted the presumption in rule 25.06(3). Accordingly she did not err in granting judgment to Karisma with respect to the March broadcasts.

72     Janssen also submitted that the requirement to give notice under s. 5(1) was akin to a limitation period and not a precondition. The Supreme Court determined that issue in *Sentinel-Review Co. v. Robinson*, [1928] S.C.R. 258 (S.C.C.), holding that the notice required under *the Act* is a condition precedent and not a defence.

*7. Did the motions judge err in striking out the references in Janssen's claim for defamation to the comments made by Member of Parliament Svend Robinson?*

73     The motions judge held:

> In my view, the fact that the statements made in Parliament do not form the basis of Janssen's defamation claims but support its other various claims is immaterial. The court may not inquire into the statements that are the subject matter of paragraph 33 of the amended statement of claim as they are protected by absolute privilege. Accordingly, paragraph 33 is struck both pursuant to Rule 21.01(1)(a) and Rule 25.11(b) and (c).

She also struck the corresponding paragraphs in the June 12 statement of claim.

74     In coming to her conclusion that the statements made in the House of Commons were privileged, the motions judge relied on *Stopforth v. Goyer* (1979), 23 O.R. (2d) 696 (Ont. C.A.) and *Roman Corp. v. Hudson's Bay Oil & Gas Co.*, [1971] 2 O.R. 418 (Ont. H.C.), aff'd (1971), [1972] 1 O.R. 444 (Ont. C.A.), aff'd [1973] S.C.R. 820 (S.C.C.), which adopted and followed the earlier decision of *Church of Scientology of California v. Johnson-Smith*, [1972] 1 Q.B. 522 (Eng. Q.B.). The appellant submits that the decisions on which the motions judge relied can be distinguished because the defamation actions in those cases were brought against the members of the House whereas here it is not.

75     The Appellant invokes the Australian case of *Mundey v. Askin*, [1982] 2 N.S.W.L.R. 369 (New South Wales C.A.) as support for its position that statements made in the House of Commons may be relied on to prove the fact that certain things were said in Parliament, thereby supporting a cause of action for defamation. However, in *Mundey* the Court cited *Church*

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 17 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

of *Scientology* as an accurate statement of the law. It also noted that the question it faced did not relate to the motives of a parliamentarian, but only to the admissibility of evidence, and thus did not offend against the absolute privilege.

76      In the recent decision of *Canada (House of Commons) v. Vaid*, 2005 SCC 30 (S.C.C.), Binnie J. reviewed and summarized the principles relating to parliamentary privilege. In doing so, he stated that the existence and scope of an inherent privilege is to be determined by asking whether the claimed privilege has been authoritatively established. If not, in order to sustain a claim of privilege it must be shown that the sphere of activity for which privilege is claimed is so closely and directly connected with the fulfilment of the member's functions, including holding the government to account, that outside interference would undermine the extent of the autonomy required by the member to do his or her work with dignity and efficiency.

77      In the present case, Janssen alleges that the defendants caused the Member of the House to make statements in the House that were defamatory. Hence, what caused the Member of the House to make the statement would be necessarily implicated in the litigation.

78      Freedom of speech within the House is a well-recognized category of parliamentary privilege. Further, the Member was engaged in the work of a legislator, calling the government to account, when he asked his question. What motivated the Member to make the statement is precisely what cannot be examined in the context of a civil action for defamation because it would undermine the level of autonomy required to enable the Member to do his work properly. Quite apart from the potential interference in internal matters of the House that such external intervention would cause, it would inevitably create delay, disruption, and uncertainty. No doubt there are cases in which it would not be possible at this stage to see clearly whether words spoken are privileged but this is not such a case. It follows that the motions judge was correct in striking Janssen's claim for defamation arising from the statements in the House.

*B. The Cross-Appeal by Amgen and Karisma*

79      The motions judge refused to dismiss the second action commenced June 12 pursuant to rule 21.01(3)(c) as being a multiplicity of proceedings because she struck the similar claims in the April 2 statement of claim. She refused to dismiss the June 12 action pursuant to rule 21.01(3)(d) as being frivolous, vexatious, or an abuse of process holding that, "the substantive issues in dispute between the parties should not be defeated on essentially procedural grounds".

80      Ground J. refused to grant leave to Amgen and Karisma to appeal the motions judge's refusal to dismiss the June 12 defamation action. Before us, Amgen and Karisma submit that leave is not necessary because the motions judge's refusal to dismiss the action is a final order.

81      In view of my conclusion below on the appeal transferred from the Divisional Court, it is not necessary to resolve the preliminary issue of whether the order was a final order. Accordingly, I would make no order on the cross-appeal.

*C. The Appeal Transferred from the Divisional Court*

82      The issue to be decided on this appeal is whether the motions judge erred in refusing to strike certain paragraphs alleging defamation in the June 12 statement of claim under rule 21.01(1)(b) as disclosing no cause of action.

83      In refusing to strike these paragraphs the motions judge held:

> In this second action, it is not plain and obvious that no section 5 notice was provided to the defendants. It is at least arguable that the defendants were served with notice of the claims in the particular circumstances of this case. It is not plain and obvious that the statement of claim discloses no reasonable cause of action.

84      Although a precondition need not be pleaded, the June 12 statement of claim alleged that notice of the defamation was given on April 2 and subsequent dates. Unless notice of the radio broadcasts was given on April 2, the s. 5(1) notice requirement was not met. Janssen submits that as no evidence is admissible on a motion under rule 21.01(1)(b) the pleading of notice in the June 12 statement of claim must be accepted on its face.

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 18 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

85     Before the panel heard argument on this issue, Janssen raised a preliminary point. It submitted that tabs 11 to 17 of Amgen and Karisma's appeal book were improper. Janssen's position is that the "evidence" at these tabs was not properly before the court and, prior to the hearing of this appeal, it brought a motion to that effect which was reserved to the full panel.

86     Tab 11 is Amgen's demand for particulars dated September 15, 2003; tab 12 is Janssen's reply to the demand dated January 12, 2004, that, for ease of reference, I have reproduced below:

> [N]otice in writing specifying the matters complained of as prescribed by Section 5 of the *Libel and Slander Act* was served personally on each of the Defendants on April 2, 2003, in the form of the Plaintiff's Motion Record in support of an interim, interlocutory and permanent injunction, which was served at the same time as the Statement of Claim. Full particulars of the matters complained of are set out in paragraphs 36 to 43 of Dr. Arnott's above referenced Affidavit (and exhibits K, L and M thereto), which was at Tab 2 of the Plaintiff's Motion Record.

87     Tabs 13-16 of the Appeal Book consist of the injunction motion record dated April 2, 2003, excerpts from the cross-examination of Dr. Wendy Arnott dated April 29, 2003, and correspondence from Janssen's counsel dated May 28 and August 25, 2003.

88     Janssen's position is that the demand for particulars, the reply, and all of the material referred to in the reply is evidence that cannot be considered on a rule 21.01(1)(b) motion.

89     Janssen's argument requires this court to consider the effect of particulars. Particulars are not evidence. As Master Sandler stated in the often-cited *Copland v. Commodore Business Machines Ltd.* (1985), 52 O.R. (2d) 586 (Ont. Master):

> Material facts must be pleaded; evidence must not be pleaded. In between the concept of "material facts" and the concept of "evidence", is the concept of "particulars". These are additional bits of information, or data, or detail, that flesh out the "material facts", but they are not so detailed as to amount to "evidence".

90     Particulars become part of the pleadings; they are not evidence: Raymond E. Brown, *The Law of Defamation in Canada* looseleaf vol. 3, 2d ed. (Toronto: Carswell, 2004) at 20.2 ("Since the particulars, when furnished, become part of the pleadings, the party delivering them may be confined at discovery, or at trial, to the matters given in the particulars" citing *Rotstein v. Globe & Mail (The)* (1997), 18 C.P.C. (4th) 144 (Ont. Master)); *Owen Sound Lumber Co. v. Seaman Kent Co.* (1913), 5 O.W.N. 93 (Ont. S.C.), at 94 (particulars are "supplementary to the pleadings, in fact, as an amendment to pleadings embarrassing by reason of lack of particularity").

91     Brown states at 20-4, "Particulars are particularly important in a cause of action as technical and complex as that of defamation". Further at 20-8 Brown states:

> If it is sufficiently clear that the particulars supplied by the plaintiff will not entitle him to get his case to the jury, the defendant may rely on those particulars to support an application to stay the action or strike out the pleadings.

For this proposition, Professor Brown cites *Searle v. Mirror Newspapers Ltd.*, [1974] 1 N.S.W.L.R. 180 (New South Wales C.A.), which was followed in *Krahe v. TCN Channel Nine Pty Ltd.* (1986), 4 N.S.W.L.R. 536 (New South Wales S.C.).

92     Janssen's submission ignores the particulars that were furnished respecting the allegation in its statement of claim. The particulars provided narrowed the scope of the statement of claim. Because particulars are not evidence, on a motion under rule 21.01(1)(b) the motions judge was entitled to consider as having been pleaded the fact that the alleged notice given on April 2 was in the form of the motion record in support of the injunction served at the same time as the statement of claim. This information was contained in the first sentence of the particulars. It is not necessary to rely on the information in tabs 13-16. Thus it is not necessary to decide whether the particulars incorporated by reference the material in these tabs.

Case 1:22-cv-00340-RDM   Document 22-32   Filed 06/24/22   Page 19 of 19

Janssen-Ortho Inc. v. Amgen Canada Inc., 2005 CarswellOnt 2265
2005 CarswellOnt 2265, [2005] O.J. No. 2265, 140 A.C.W.S. (3d) 58, 199 O.A.C. 89...

93     Having considered the procedural issue, I now propose to consider the substantive issue. The substantive issue is whether the issuance of the first statement of claim on April 2 and the motion for an injunction can serve as the requisite notice pursuant to s. 5(1) for the June 12 statement of claim insofar as the March broadcasts are concerned.

94     Service of the first statement of claim on April 2 cannot constitute notice for the June 12 statement of claim because the April 2 claim does not fulfil the requirement that the notice be given prior to the commencement of litigation. In addition, by permitting defamation claims that were struck from a previous action for lack of notice to be maintained in a second action, the motions judge's order undermines the principle established by this Court in *Watson*, *supra*, and *Weiss*, *supra*, that the failure to deliver notice constitutes an absolute bar to proceeding with these types of defamation claims.

95     Having regard to the particulars furnished respecting the June 12 statement of claim the motions judge erred in not striking the claim in regard to the March broadcasts.

*The Alleged Defamation in Frank Magazine*

96     Amgen and Karisma take no issue with Janssen's right to pursue a claim in defamation against Frank Magazine because notice of the claim was given in a timely fashion and prior to the issuance of the June 12 statement of claim. I would allow this claim to be consolidated with the April 2 action. In view of this, I do not propose to deal with the purported erroneous amendment to the April 2 statement of claim.

**Conclusion**

97     I would dismiss Janssen's appeal from the order striking the claim in defamation from the April 2 statement. For the reasons given, I would stay this portion of the judgment for thirty days so that, if Janssen wishes to do so, it may move on proper material before a judge of the Superior Court for leave to amend its pleading to allege defamation and damages respecting certain e-mails. I would allow the claim against Frank Magazine in the June 12 statement of claim to stand and I would consolidate that claim with the April 2 action. I would otherwise allow Amgen and Karisma's appeal and strike the June 12 statement of claim.

**Costs**

98     I would award costs to Amgen fixed in the amount of $11,000 including the motion before the Divisional Court, disbursements, and GST. Karisma was allied in interest with Amgen. Its factum adopted the arguments raised by Amgen, as did its brief oral submissions. Accordingly, I would award costs to Karisma fixed in the amount of $2,500 all included.

*Rosenberg J.A.*:

I agree.

*Lang J.A.*:

I agree.

**End of Document**     Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.