**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WE CHARITY,<br><br>　　　　　　　　*Plaintiff,*<br>vs.<br><br>THE CANADIAN BROADCASTING<br>CORPORATION,<br><br>　　　　　　　　*Defendant.* | Civil Action No.  22-00340-RDM |

**<u>JOINT STATUS REPORT</u>**

Pursuant to the Court's request of March 27, 2023, Plaintiff WE Charity and Defendant Canadian Broadcasting Corporation ("CBC") hereby submit this Joint Status Report concerning the parties' respective positions on whether they should begin limited discovery on WE Charity's defamation claim while CBC's motion to dismiss is pending a decision by the Court.

## PLAINTIFF WE CHARITY'S POSITION

WE Charity respectfully submits that the parties should begin engaging in limited discovery on WE Charity's defamation claim while CBC's motion to dismiss for *forum non conveniens* is pending. WE Charity did not seek discovery earlier because it sought to avoid the expense associated with the present dispute while awaiting the Court's ruling on CBC's motion. As discussed below, however, WE Charity recently learned that the journalist who led CBC's defamatory coverage of WE Charity, Harvey Cashore, has been contacting individuals that CBC named as potential witnesses in this action, seeking information and documents highly relevant to this case. Whether or not these activities are motivated by journalism or an attempt to obtain material for litigation is irrelevant—the information CBC is gathering is squarely relevant to this case and may be used by CBC for its legal defense. WE Charity lacks an equivalent means of gaining litigation-related information outside of the discovery process. By beginning discovery on the defamation claim, the Court would prevent WE Charity from being prejudiced by CBC's head start on discovery.

CBC opposes starting any discovery at this time, contending that WE Charity is attempting to silence its journalism and raising purported First Amendment concerns. These objections lack a basis in law: there is no First Amendment right to stay discovery pending a *forum non conveniens* motion, and CBC cites none. CBC's objections are also not grounded in fact: WE Charity is not asking this Court to restrict CBC's journalism, or to decide whether CBC's current newsgathering is "legitimate", or to make any decisions about the scope of discovery. The parties' dispute is

1

solely about *when* discovery begins.  WE Charity submits that CBC has failed to meet its burden to show that discovery should be stayed while the *forum non conveniens* motion is pending. Starting discovery now does not challenge any journalistic source protection laws, nor does it implicate First Amendment issues—especially given that the pending motion raises no First Amendment challenge to WE Charity's claims.  The limited scope of discovery that WE Charity proposes starting would expressly exclude any material post-dating the filing of this action, and therefore would not include any of CBC's ongoing journalism.

CBC's only real attempt to meet its burden to justify staying discovery is its argument that because Ontario's anti-SLAPP statute stays discovery, "should an [Ontario] anti-SLAPP motion be filed and granted, *there would never be any discovery at all in Ontario*."  Declaration of Joseph Kroetsch ("Kroetsch Decl.") Ex. A at 7 (emphasis added).  But the hypothetical possibility that a foreign court could dismiss a claim or limit discovery is inherent to litigation, not a basis for staying discovery.  Moreover, CBC's argument cannot be squared with the premise of its *forum non conveniens* motion, which argues that CBC needs extensive discovery—including perhaps *fifty* depositions—to litigate this case, even under defense-friendly U.S. law.  Ontario's courts have described an anti-SLAPP motion as "virtually the entire trial being played out in advance." Kroetsch Decl. Ex. D at 15.   It simply makes no sense that CBC could win such a proceeding without "any discovery at all in Ontario" when CBC contends in its *forum non conveniens* motion that its U.S. defense would require vast, purportedly inconvenient discovery in Ontario.

I.   **A Stay of Discovery Pending Resolution of the *Forum Non Conveniens* Motion is Not Appropriate.**

By default, the Federal Rules and Local Rules assume that discovery will commence while a motion to dismiss is pending.  *See, e.g.*, Fed. R. Civ. P. 26(f); L.R. 16.3(a).  "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  "[A]

stay of discovery pending determination of a motion to dismiss is rarely appropriate when the pending motion will not dispose of the entire case." *Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth*., 201 F.R.D. 1, 3 (D.D.C. 2001). Here, CBC's pending motion will not dispose of the dispute—it will only decide *where* discovery takes place, not *whether* it will occur. Courts deny discovery stays pending resolution of *forum non conveniens* motions because litigation will continue in another forum even if the motion is granted.[1]

---

[1]     *See, e.g.*, *Gen. Elec. Int'l, Inc. v. Thorco Shipping Am., Inc.*, No. 21 CIV. 6154 (JPC), 2022 WL 1748410, at *3 (S.D.N.Y. May 31, 2022) (denying discovery stay pending *forum non conveniens* motion "[g]iven that the parties will need to engage in substantively the same discovery whether or not they proceed with Plaintiffs' claims in this litigation or in the London Arbitration"); *HNA LH OD, LLC v. Loc. House Int'l, Inc.*, No. 21-CV-21022, 2021 WL 2767080, at *2 (S.D. Fla. July 2, 2021) (denying discovery stay pending ruling on *forum non conveniens* and other issues, holding, "even if the Court transfers this action to New York, the discovery at issue will nonetheless be produced"); *WindServe Marine, LLC v. US Workboats*, LLC, No. 20-CV-532 (ENV), 2021 WL 5749829 (E.D.N.Y. Mar. 2, 2021) (ruling defendant failed to show good cause for a stay of discovery when the motion to dismiss was based on *forum non conveniens*); *Turner v. Costa Crociere S.P.A.*, No. 1:20-CV-21481-KMM, 2020 WL 9071486, at *5 (S.D. Fla. Aug. 23, 2020) (finding stay of discovery was not warranted because "even if the Court were to grant Defendants' Forum Non Conveniens Motion, the need for discovery would not be eliminated. Rather, discovery would only be delayed because Plaintiff would be free to re-file the case in Italy.").

None of the cases CBC cites in contending that courts routinely stay discovery when *forum non conveniens* motions are pending address the circumstances here, where CBC's *only* challenge to the defamation claim is *forum non conveniens*. In one of CBC's cases, the defendants also moved to dismiss on personal jurisdiction grounds, raising a question about whether subjecting those defendants to discovery in the forum would be constitutional. *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma S.A.,* 623 F.3d 147, 154 (3d Cir. 2010). In another case, the pending motion to dismiss was based on subject-matter jurisdiction, not merely *forum non conveniens*, and the court altered an ongoing discovery schedule, rather than issue a discovery stay. *See DRFP LLC v. Republica Bolivariana de Venezuela,* 2008 WL 2227333 (S.D. Ohio May 27, 2008). *Dome Tech. LLC v. Golden Sands Gen. Contractors, Inc.*, 2017 WL 11577923, at *1 (D. Conn. July 24, 2017), concerns a stay in connection with a pending motion to compel arbitration under the Federal Arbitration Act. *See also id.* ("Defendant faces substantial prejudice if the stay is not granted, given that under certain circumstances, a party that commences litigation may waive its right to arbitration.") (quotation omitted). The Second Circuit decision cited in *Dome Tech* and referenced by CBC, *Transunion Corp. v. PepsiCo, Inc.* did not concern the issue before this Court, but rather addressed whether extensive discovery is required to develop facts for a *forum non conveniens* motion itself, holding that "Motions to dismiss for *forum non conveniens* may be

Because this dispute will proceed whether or not CBC prevails on its pending motion, CBC cannot justify a stay here.  WE Charity offered during the meet and confer process to limit discovery prior to the Court's ruling on the pending motion to "(1) party discovery; (2) without depositions; (3) concerning the defamation claim; (4) with a scope similar to what could be obtained under Ontario procedure."  Kroetsch Decl. Ex. A at 9.  This proposal was aimed at minimizing any purported burden that beginning discovery while the motion is pending would pose, and was an attempt to mirror the scope of discovery that CBC would otherwise have to conduct in Ontario if CBC succeeds on its pending motion.[2]  During this discovery period, WE Charity expressly does not seek to conduct discovery into CBC's ongoing journalism and will not seek information or documents post-dating the filing of the Complaint.

CBC nevertheless rejected WE Charity's proposal to conduct only limited discovery pending resolution of the motion, arguing that an Ontario court could theoretically dismiss WE Charity's claim prior to discovery, and therefore discovery might not proceed at all in Canada.  *Id.* at 7–8.  But the possibility that a foreign court could dismiss a claim or limit discovery is inherent to litigation, and no basis for staying discovery.  For example, in *Gen. Elec. Int'l, Inc.*, 2022 WL 1748410, at *3, the court denied a motion to stay discovery while a *forum non conveniens* motion

---

decided on the basis of affidavits."  811 F.2d 127, 130 (2d Cir. 1987).  Finally, in *Norex*, the Court analyzed a request to lift a discovery stay so that the plaintiff could conduct discovery on issues relevant to the pending *forum non conveniens* motion itself, and such motions are typically decided on the basis of affidavits only, meaning the plaintiff had the burden of justifying the discovery. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, No. 02CIV.1499(LTS)(KNF), 2003 WL 1484269, at *2 (S.D.N.Y. Mar. 21, 2003).  The opinion and available record include no information about why the stay was granted in the first place or how the defendant met its burden.

[2]      CBC argues that the limited discovery WE Charity seeks would likely proceed differently in Ontario, but does not explain how such party document discovery differs.  CBC also questions the logic of starting with the limited discovery WE Charity seeks, but WE Charity believes that discovery of the parties' documents will inform the discovery process and is a necessary prelude to non-party and deposition discovery.

was pending despite the defendant's argument that U.S. disclosure could force it to disclose information that would not be subject to disclosure in the alternative forum, a London arbitration. 21-cv-06154-JPC, ECF No. 21 at 4.  The mere hypothetical possibility that CBC could prevail on an anti-SLAPP motion in Ontario does not warrant staying discovery here.  And, of course, if CBC were to file an *unsuccessful* anti-SLAPP motion in Ontario, that would delay discovery, but not prevent it.  CBC chose not to file a 12(b)(6) motion in this action; it is not certain that CBC would even file an anti-SLAPP motion in Ontario, much less prevail.[3]

CBC claims that it could prevail on an anti-SLAPP motion because an Ontario court would weigh evidence, not only law, despite the absence of discovery.[4]  And indeed, Ontario's courts have described an anti-SLAPP motion as "virtually the entire trial being played out in advance." Kroetsch Decl. Ex. D at 15.  But CBC's claim that it could win such a pseudo-trial without any discovery at all in Ontario is irreconcilable with its argument in its *forum non conveniens* motion (which WE Charity disputes) that it needs vast amounts of highly inconvenient discovery in Canada to muster a defense in the U.S., where the law is more favorable to CBC.  *See, e.g*., ECF No. 16-1 at 17–20, 28–32.[5]  At oral argument, CBC said it could take potentially *fifty* depositions,

---

[3]     As the Ontario Court of Appeal recently observed, "anti-SLAPP motions have become expensive, time-consuming and open to abuse" by defendants who can delay litigation for years. Kroetsch Decl. Ex. D at 15. Resolution of a typical anti-SLAPP motion takes years despite the ostensible 60-day turnaround required by statute. *Id.* ¶ 13 ("the mandatory 60-day time limit for resolving these motions is routinely ignored").

[4]     CBC also contends that an Ontario court would be allowed to engage in a free-form balancing test under which it could dismiss meritorious libel claims if it concluded that the tens of millions of dollars of harm to WE Charity caused by CBC's falsehoods "does not outweigh the public interest in protecting" CBC's falsehoods. Kroetsch Decl. Ex. A at 2–3. This outcome seems highly speculative, and insufficient to warrant staying discovery.

[5]     WE Charity, of course, disagrees, as most of the material non-party witnesses (such as WE Charity's U.S.-based donors and individuals in Kenya) are located in the U.S. or foreign countries other than Canada. *See* ECF No. 21 at 25–28.

but counsel could not identify the number of potential witnesses without discovery, stating, "I don't know how many people, because we'll need to take discovery to try to figure this all out." Hr'g Tr. at 34:22–35:5, 76:1-5.  For example, CBC argued that for its defense, it needs information about the Pinball Clemons Foundation ("PCF"), a WE Charity donor, saying "what we're going to need to do is take discovery of WE, figure out who were the people in the Michael Clemons Foundation that they dealt with, and who were the WE employees. . . . They're all likely to be in Ontario." Hr'g Tr. at 34:15–18.  CBC also said it would "require a substantial amount of discovery on all the evidence about [whether funds for Kenya were misspent]."  Hr'g. Tr. at 77:21–78:6.[6]

These arguments are in deep tension with CBC's assertion that it will be able to defend its case in Ontario with no discovery at all.  But regardless of which hat CBC is wearing, discovery should not be stayed.  If CBC needs discovery for its defense even under favorable U.S. law, then it surely needs that discovery in Ontario—without it, CBC's anti-SLAPP motion would fail, and discovery would proceed.  And if CBC believes it can win a trial without any discovery, there should be no inconvenience in proceeding in the U.S., rendering Ontario's anti-SLAPP law moot.

## II.   **WE Charity Will Be Prejudiced by a Discovery Stay Because CBC Will Continue to Obtain Information and Documents for its Defense, Placing WE Charity at an Unfair Disadvantage.**

Discovery should not be stayed for the additional reason that CBC, through Mr. Cashore, has been engaging in unilateral discovery for this action by making inquiries that (1) concern the subject matter of this lawsuit, WE Charity's education funding; and (2) are directed at sources who CBC identified as potential witnesses in its Motion to Dismiss.  *See generally* Kroetsch Decl. Ex.

---

[6]      Asked by the Court why CBC would need so much discovery in Ontario in light of its pre-publication investigation, CBC claimed this journalistic investigation was insufficient for litigation defense, arguing, "I've been doing this many years, Your Honor, and there's a difference between conducting journalistic investigations and conducting a legal defense where you have subpoena power and things like that."  Hr'g Tr. at 76:7–76:23.

B at 2–3; ¶¶ 6–7 & Exs. E–F.  It does not matter whether Mr. Cashore's conduct is good-faith newsgathering or an attempt to obtain evidence for this litigation—indeed, it could be both. Regardless of Mr. Cashore's motives, WE Charity is prejudiced if CBC is able to get an informal jump-start on discovery while WE Charity must wait.  CBC fails to meet its burden to justify a discovery stay irrespective of any prejudice to WE Charity—but the prejudice WE Charity faces is unfair, and further demonstrates why discovery should begin now.

It is clear that Mr. Cashore's recent newsgathering is relevant to CBC's litigation defense. First, Mr. Cashore is gathering information and documents concerning WE Charity's use of donor funds in developing countries, which is precisely what this lawsuit is about.  Kroetsch Decl. Ex. B at 2–3; Kroetsch Decl. ¶¶ 6–7 & Exs. E–F; Compl. ¶¶ 1-3.  Mr. Cashore has also been seeking information about documents that CBC filed in support of its *forum non conveniens* motion, such as WE Charity's state regulatory filings in North Carolina.  *See* ECF No. 16-3 (regulatory filing attached to CBC motion).  Throughout 2022, right around the time CBC filed its motion to dismiss, and immediately prior to oral argument, Mr. Cashore made numerous inquiries about these filings. *See* Kroetsch Decl. Ex. B at 2–3.

Second, the relevance of the information CBC is gathering is evident from its reliance on sources whom CBC identified in its Motion to Dismiss as potential witnesses.  In particular, Defendant described PCF as "one of the most important" witnesses (Hr'g Tr. at 33:22) and "by far, the biggest source of donations that is reflected in the program" aired by the CBC defaming WE (*id.* at 80:12–14)  WE Charity understands that, outside of the discovery process, Mr. Cashore has repeatedly contacted PCF to obtain information about the foundation's donations to WE Charity to support education in developing countries.  *See* Kroetsch Decl. ¶ 6 & Ex. E.  Likewise, there is a clear connection between the litigation and Mr. Cashore's recent outreach to Halton school

district: a Halton-based school's donation to WE Charity was the subject of one of the two donor interviews included in CBC's false and defamatory documentary.

In response, CBC contends that WE Charity cannot demonstrate that CBC intends to use any information it gathers for any purpose other than journalism, but CBC fails to explain why WE Charity needs to make such a showing. The prejudice to WE Charity is the same regardless of CBC's motivations. CBC does not dispute that the information Mr. Cashore is gathering is relevant to this litigation, and CBC does not deny that it may use the information he gathers in this litigation. WE Charity is not challenging CBC's ability to do this—but WE Charity likewise should be able to gather facts and information relevant to this litigation.

CBC next makes a baseless accusation that WE Charity's request to begin limited discovery is an attempt to silence CBC's journalism. To be clear: WE Charity is expressly *not* asking the Court to silence or restrict CBC's journalism. Starting discovery would not interfere with *any* of CBC's reporting. Nothing would prevent CBC from continuing any journalism—WE Charity would simply be at less of a disadvantage compared with CBC.

CBC lacks a credible basis for delaying discovery that will inevitably occur somewhere, so it instead attempts to conjure a threat to the free press that does not exist. CBC mischaracterizes WE Charity as having spent the last year trying to silence its reporting. In fact, the only time WE Charity asked CBC to cease any conduct was in response to Mr. Cashore's repeated efforts to elicit *privileged* information from four lawyers representing WE Charity or its principals, the charity co-founder's personal medical doctor, and WE Charity's auditor in New York. CBC contends these were routine calls for comment and wholly unconnected to the litigation, but consider one example. On April 22, 2022, Mr. Cashore called WE Charity's in-house counsel, Nicole Davidson, and asked about the preparation of a WE Charity filing. Kroetsch Decl. Ex. B at 4. As the

questions infringed on privilege, she said she could not respond.  *Id.* Mr. Cashore subsequently

sent her the filing: WE Charity's license renewal application for North Carolina.  Less than two

weeks after the April call, on May 4, 2022, CBC filed the same North Carolina license application

as Exhibit 11 to Mr. Siegel's declaration in support of CBC's *forum non conveniens* motion.  Dkt.

16-14.  Mr. Cashore did not contact Ms. Davidson again until the afternoon before the December

13, 2022 oral argument on CBC's motion.  Ms. Davidson had since left WE Charity's employment,

so Mr. Cashore wrote, "You may recall we spoke back in April relating to WE Charity. At that

time you stated you could not respond to my questions. *I am wondering whether circumstances*

*might have changed.*"  Kroetsch Decl. Ex. B at 4 (emphasis added).[7]

WE Charity continues to believe Mr. Cashore's actions were improper, but the Court need

not reach that issue.  CBC wrongly assumes that so long as its newsgathering conduct is motivated

by journalism rather than litigation, CBC has a right to prejudice WE Charity by gathering

information relevant to this litigation while preventing WE Charity from doing the same.  CBC

cites no support for this position.  And even if CBC's motives were relevant, CBC's conclusory

dismissal of the relationship between Mr. Cashore's actions and this litigation would not hold

water.  *See* Kroetsch Decl. Ex. B at 4.

---

[7]        CBC says Mr. Cashore's questioning about WE Charity's U.S. state regulatory filings filed
with CBC's *forum non conveniens* motion was reporting on a "political controversy that had long
received widespread coverage in the Canadian media" but cites no coverage having anything to do
with these filings.  With respect to the "apparent inconsistency" with Canadian parliamentary
documents that CBC cites below, WE Charity refers to its January 26, 2023 correspondence
showing there is no inconsistency.  Kroetsch Decl. Ex. B at 3-4.  Note that the January letter reflects
that at the same time Mr. Cashore was asking about WE Charity's North Carolina license renewal
application, the North Carolina Secretary of State's charitable solicitation division wrote WE
Charity regarding the same "apparent inconsistency" with Canadian documents that no one other
than Mr. Cashore had ever raised.  *Id.* at 4.  Counsel for CBC wrote that CBC had "nothing to do
with" North Carolina's inquiry.  Kroetsch Ex. C at 2.  North Carolina resolved its inquiry once
WE Charity provided it with the facts and relevant law.

CBC warns the Court of the "consequences" of WE Charity's position, contending that it would chill journalism because any party involved in litigation against a journalist could then seek discovery into legitimate, ongoing journalism about the party. But WE Charity is *not* seeking to begin discovery into CBC's post-filing newsgathering; CBC's threatened consequences are a strawman.[8]  CBC also portrays WE Charity as advocating a rule that will prevent the press from obtaining a discovery stay whenever it continues its reporting after a lawsuit is filed, but this flips the burden on its head.  CBC has the burden to justify a stay.  CBC would have the Court create a new rule that discovery *must be stayed* if a media defendant continues its reporting post-lawsuit. CBC cites no precedent for that.[9]

The consequences of discovery are the same whether discovery begins now or once the motion to dismiss is ruled upon.  To the extent the parties disagree on the proper scope of discovery, that disagreement will exist regardless of *when* discovery begins.[10]  But while CBC is incented at present to portray discovery as inevitably complex and acrimonious, WE Charity is

---

[8]    Some documents related to CBC's recent newsgathering may prove to be relevant to this litigation at a later date, but that issue is not before the Court and may never be.

[9]    The circumstances here are, in any event, too unusual to establish any new rule.  It is rare that a media defendant sued for defamation does not file a motion to dismiss asserting First Amendment defenses.  It is rarer still that the only basis for a media defendant's motion to dismiss a defamation claim is *forum non conveniens*—we have found no precedent.  A First Amendment objection to discovery has firmer grounding when the motion is rooted in the First Amendment.

[10]    To date, the parties' only disagreement about the potential scope of discovery has concerned CBC's obligation to preserve documents concerning its ongoing newsgathering. Contrary to CBC's assertions, this brief correspondence regarding document preservation proved well-justified, but entirely civil.  As counsel for WE Charity wrote to CBC's counsel in correspondence regarding CBC's document preservation obligations: "as your April 1 email makes clear, we disagree about the scope of those obligations—whether or not Mr. Cashore's ongoing reporting about my clients is, or is not, 'the subject' of this action. By necessary implication, then, your April 1 email justifies the very concerns it attempts to dismiss. Setting forth our position on your clients' discovery obligations is hardly censorious."  Siegel Decl. Ex. B.

optimistic that once such incentives are gone, the parties will agree to a streamlined scope of discovery that can be overseen with minimal Court intervention.

**CANADIAN BROADCASTING CORPORATION'S POSITION**

As WE Charity ("WE") implicitly acknowledges, discovery in this case has not commenced for more than a year because both parties elected to wait until the Court ruled on the pending *forum non conveniens* motion.   That is not unusual.  Indeed, even when (unlike here) a plaintiff seeks to begin discovery soon after a lawsuit is commenced, it is common for federal courts to grant discovery stays pending the outcome of a dispositive *forum non conveniens* motion.

WE  provides only one reason for changing its mind and disturbing this year-long *status quo*: that CBC is engaging in on-going journalism concerning WE, which it also dubs (falsely) to be "discovery."  The logic of WE's position is that once a news organization is sued, if it continues to engage in journalism about the plaintiff, it effectively waives any right to seek a discovery stay. That position has no precedent *ever* and is an obvious anathema to the First Amendment.

Specifically, WE claims that CBC is contacting sources who may have information relevant to the claims in this lawsuit, and, therefore, even if CBC is engaged in journalism, WE is "prejudiced" and therefore discovery should begin.  How WE is supposedly "prejudiced" by CBC's journalism is unclear.  And, in any event, WE apparently does not even seek CBC's current communications with these sources that is supposedly causing it prejudice; it instead uses CBC's journalism as a pretext to begin general party discovery supposedly unrelated to that journalism. This position makes little sense and is not a sound reason to suddenly commence discovery after the pending *forum non conveniens* motion has been *sub judice* for more than three months.

**I.**     **Courts Routinely, Affirmatively Stay Discovery Pending a Transnational *Forum Non Conveniens* Motion**

At the outset, even ignoring the journalistic context of this lawsuit, there is nothing unusual

about the status quo in this case.  To the contrary, even where (unlike here) the issue is raised much earlier in the process and a defendant therefore affirmatively moves to stay discovery, federal courts often grant such motions where (1) there is a pending *forum non conveniens* motion that would dispose of any litigation in the United States and (2) the discovery sought is not tailored toward responding to the pending motion.  *See, e.g.*, *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma S.A.,* 623 F.3d 147, 154 (3d Cir. 2010) (noting that district court had stayed discovery pending resolution of *forum non conveniens* motion); *DRFP LLC v. Republica Bolivariana de Venezuela,* 2008 WL 2227333 (S.D. Ohio May 27, 2008) (court stays discovery because "it is now more prudent to address preliminarily the legal threshold questions of jurisdiction, including forum non conveniens");  *Norex Petroleum Ltd. v. Access Indus, Inc.*, 2003 WL 1484269, at *3 (S.D.N.Y. March 21, 2003) (declining to lift stay of discovery pending *forum non conveniens* motion, except to permit depositions of foreign law experts who submitted affidavits to support the motion); *cf. Dome Tech. LLC v. Golden Sands Gen. Contractors, Inc.*, 2017 WL 11577923, at *1 (D. Conn. July 24, 2017) (holding "[w]hen a dispositive motion would remove the litigation to another forum, good cause may require a stay" and citing to Second Circuit decision upholding stay of discovery pending decision on *forum non conveniens* motion because "permitting discovery would defeat the purpose of the motion").[11]

---

[11]     WE attempts to distinguish some of these cases by asserting that the *forum non conveniens* motions also included other arguments, such as lack of personal jurisdiction and subject matter jurisdiction.  But that asserts a distinction without a difference; indeed, CBC's *forum non conveniens* motion also argues that this Court lacks subject matter jurisdiction over Counts II – IV of WE's Complaint.  More importantly, CBC cited those cases precisely because those courts grounded their decision to stay merits discovery on the fact that there were pending *forum non conveniens* arguments.  Indeed, in *Norex Petroleum*—a case where the pending motion argued only *forum non conveniens*, res judicata/estoppel, and comity—the court explicitly stated that the plaintiff's request for discovery, "runs afoul of the proscription against permitting a party to engage in extensive discovery that develops details going to the entire case when a motion to dismiss for

WE claims that discovery is warranted because a *forum non conveniens* motion is "not dispositive as to whether discovery takes place," just "when" it takes place.  In support, WE cites to a few, select cases where courts have permitted discovery to occur despite a pending *forum non conveniens* motion because the same discovery would be required regardless of the venue where the case ultimately proceeds.  Yet half the cases WE cites involve motions made in the context of domestic motions to transfer venue, not motions to dismiss because the appropriate forum is another country.  *See WindServe Marine, LLC v. US Workboats, LLC*, 2021 WL 5749829, at *1 (E.D.N.Y. Mar. 2, 2021) (refusing to stay discovery when *forum non conveniens* motion argued proper forum was Eastern District of North Carolina rather than Eastern District of New York); *HNA LH OD, LLC v. Loc. House Int'l, Inc.*, 2021 WL 2767080, at *2 (S.D. Fla. July 2, 2021) (refusing to stay discovery pending *forum non conveniens* motion arguing that proper jurisdiction was New York rather than Florida).  There are obvious differences between the interests raised by multi-national motions and those raised when the only question is in which United States venue the case will proceed.

Indeed, contrary to WE's position, courts have routinely characterized *forum non conveniens* motions as dispositive—regardless of the fact that discovery could later proceed if the plaintiff re-files the case in a different jurisdiction—and have refused to order merits discovery on that basis.  *See, e.g., Baldwin v. Athens Gate*, 2018 WL 11431443, *2 (D. Col. Nov. 9, 2018) (staying all merits discovery "[i]n the face of two potentially dispositive defense motions" [to

---

*forum non conveniens* is being entertained by a court." 2003 WL 1484269, at *2.  In addition, WE claims that in *DRFP*, the court was merely altering a discovery schedule, rather than staying discovery.  But WE ignores that the court was altering the discovery schedule so that it could "address preliminarily the legal threshold questions of jurisdiction, including *forum non conveniens*" prior to the parties engaging in merits discovery because proceeding with discovery "could cause an unnecessary expenditure of judicial resources." 2008 WL 2227333, at *3.

dismiss for FNC and lack of personal jurisdiction]); *Vivendi, S.A. v. T-Mobile USA, Inc.*, 2007 WL 1168819, *2 (W.D. Wash. April 18, 2007) ("Because it may be dispositive in this case", court precludes any discovery pending FNC motion except for discovery limited to that motion); *Mara v. Papandreou*, 33, F. Supp. 2d 17, 17 (D.D.C. 1999) (staying any discovery because resolution of FNC motion "could potentially dispose of the case").

That result also comports with common sense.  Discovery is likely to proceed differently if it is conducted in different legal systems in different countries, and if this case were to be litigated in Ontario it would be preferable to allow the Ontario court that will be responsible for the case to supervise any discovery.  Moreover, as explained in Section III below, maintaining the status quo is appropriate for the additional reason that ordering discovery to commence at this time would effectively require CBC to waive some of its potential rights under the Ontario anti-SLAPP statute, should the case be litigated there.

## II.      CBC Is Conducting Journalism, Not Discovery

Not only is it entirely common and appropriate to defer discovery while CBC's motion is pending, the *only* rationale WE offers for changing its mind about proceeding with discovery—that any ongoing journalism about the same subject of a lawsuit is "unilateral, discovery" that "prejudices" the plaintiff—is both factually and legally baseless.  And the remedy WE seeks from this Court—to begin party document discovery while excluding discovery into the very conduct that is supposedly the reason discovery needs to start—has no internal logic.

First, the premise that CBC is undertaking "unilateral discovery" into WE is simply and categorically false.  To the contrary, WE's current effort to use CBC's journalism as a pretext to commence discovery is the culmination of a year-long campaign by WE to silence CBC's on-going journalism, by threatening it with all manner of legal consequence if it does not cease further

investigation into WE.

WE's claim that it only "recently learned" of CBC's on-going journalism is false; the origins of this dispute actually go back more than a year. Starting in March 2022, WE has repeatedly complained to CBC about its journalism and consistently claimed to CBC that its "actions bear no resemblance to legitimate journalism" at all. Kroetsch Decl. Ex. B at 1. Rather, WE has maintained that all inquiries by CBC reporters since this lawsuit was filed were some kind of disguised discovery conducted under the false aegis of journalism. *Id.*

Those accusations began only a month after the undersigned counsel accepted service of the Complaint. WE's lead counsel called CBC's counsel to complain that "the Fifth Estate team continue[s] to reach out to potential new sources for new research on WE Charity". Siegel Decl. Ex. A. Counsel's initial complaint was quickly followed by similar ones, replete with threats to seek punitive damages, to take discovery of any such newsgathering, and attendant demands to preserve documents. Siegel Decl. Ex. B.

CBC's counsel then heard nothing more for about ten months, until WE's counsel leveled a new charge about six weeks *after* the pending *forum non conveniens* motion was argued. Based on a self-concocted "timeline", WE claimed that CBC journalist Harvey Cashore had for the previous nine months been conducting "discovery" tied to key dates in the litigation of CBC's *forum non conveniens* motion. *See* Kroetsch Dec. Ex. B at 2-3. WE alleged Mr. Cashore did that for the purpose of obtaining some unspecified "advantage in civil litigation", including specifically in CBC's motion to dismiss. *Id.* at 1. That letter concluded with explicit threats to both seek punitive damages and to somehow use Mr. Cashore's conduct as a basis to expose the identities of CBC's confidential sources in discovery. *Id.* at 6.

The many reasons why WE's charges were baseless are summed up in CBC's counsel's

letter responding to them, to which CBC refers the Court rather than repeating here. *See* Kroetsch Decl. Ex. C. And the unmistakable message WE conveyed from the inception of this correspondence is that so long as "the Fifth Estate team continue[s] to reach out to potential new sources for new research on WE Charity" (Siegel Dec. Ex. A), it does so at its peril.

In this Joint Status Report, WE's present characterization of CBC's journalism is more agnostic, and indeed self-contradictory. On the one hand, WE now asserts that it does not know whether CBC journalists are engaging in journalism, discovery, or "it could be both." On the other hand, it continues to echo its prior accusations by attaching communications from a CBC journalist to try to imply that he is indeed engaging in discovery under the false guise of journalism. On that basis, WE continues to assert that CBC journalists are "obtaining information and documents *for its defense*", thus supposedly "placing WE Charity at an unfair disadvantage."

Yet both then and now, WE makes those accusations without providing a shred of evidence (because there is none) that CBC ever used *any* of the fruits of its journalism for any purpose in this case, including in *any* of the voluminous briefs, exhibits or arguments submitted in support of its *forum non conveniens* motion.

Instead, WE claims generically that CBC's journalists are "gather[ing] information and documents concerning WE Charity's use of donor funds in developing countries." Literally, that is true. As WE is well aware, CBC has been gathering information about WE's use of donor funds since 2020. And it has every right under fundamental free speech principles in both the United States and Canada to continue to do so, regardless of whether it has been sued.

But what WE fails to provide is any evidence at all (because there is none) that CBC journalists have been gathering such information for any purpose other than journalism. Instead, WE attaches a few texts (concerning Ghana) and a statement by the Pinball Clemons Foundation

concerning its contributions to WE projects in numerous countries around the world. *See* Kroetsch Decl. Exs. E and F. But those documents merely confirm that CBC journalists are continuing to ask questions about WE's use of funds in developing countries. Nothing in those documents connects them to "discovery". The only thing that does are the invented accusations of WE's counsel.

The same is true with respect to the other email WE attaches, from Mr. Cashore to a former WE in-house counsel. WE continues to insinuate that Mr. Cashore was attempting to discover information to help support CBC's *forum non conveniens* motion. But as WE's own correspondence makes plain, the subject of Mr. Cashore's inquiries had nothing to do with *forum non conveniens*. Rather, it concerned a political controversy that had long received widespread coverage in the Canadian media, concerning the efforts of a Canadian Parliamentary Committee to compel testimony from WE's CFO, Victor Li, in March and April of 2021. *See* Kroetsch Decl. Ex. B at 3–4. *See, e.g.,* https://www.bloomberg.com/news/articles/2021-02-19/canadian-parliament-panel-will-compel-we-charity-cfo-to-testify#xj4y7vzkg; https://www.westernstandard.news/news/we-charity-cfo-threatened-with-jail-if-he-doesn-t-show-up-for-questioning/article_d11f5914-12fa-543c-88ad-f2d8292eedba.html.[12]

---

[12] When called to testify, Mr. Li's counsel stated to Parliament that Mr. Li could not appear because he had been on medical leave since the summer of 2020 and had not been performing the duties of CFO. Mr. Li ultimately provided written answers to many of Parliament's questions, but stated that due to his leave he did not have access to company records and therefore could not fully answer all questions. Yet in his capacity as CFO, Mr. Li signed under oath (notarized by WE's former in-house counsel) regulatory filings covering this same time period in which he attested to the accuracy of detailed information about WE's finances. As WE's correspondence makes clear, the apparent inconsistency between those representations to Parliament and regulatory agencies is what Mr. Cashore "asked about" when he contacted WE's in-house counsel, Ms. Davidson, in April 2022. And the "circumstances that might have changed" in December 2022 were that Ms. Davidson had left her employment at WE. *See* Kroetsch Decl. Ex. B at 3.

Mr. Cashore's inquiries had nothing to do with CBC's *forum non conveniens* motion. In

Moreover, in this litigation it is CBC's undersigned counsel that would responsible for conducting CBC's discovery. And it was CBC's counsel that filed the pending *forum non conveniens* motion. Logically, the only way that Mr. Cashore's inquiries could have been undertaken for use in that motion, or more broadly for "discovery", would be if CBC's undersigned counsel were somehow involved in directing those inquiries. Yet even WE does not go so far as to accuse CBC's counsel of doing that (at least not explicitly), which would be categorically false. In fact, as WE's own submission makes clear, the opposite is the case. It is WE's counsel that is conducting "unilateral discovery" of CBC's newsgathering, which renders absurd the notion that WE is somehow prejudiced by CBC's journalism.

Over the past year, WE has complained four times to CBC's counsel about roughly two dozen phone calls, emails, texts, and other materials involving a CBC journalist, including most recently the communications attached to Mr. Kroetsch's Declaration. But as that Declaration makes plain, the reason WE has all of this information (and no doubt considerably more) is *because WE's principals and counsel have unilaterally obtained it. See* Kroetsch Decl. ¶¶ 6-7. Thus, if there is any party that is conducting "unilateral discovery" in this case, it is WE who is conducting discovery of CBC's on-going newsgathering. By contrast, CBC's undersigned counsel knew nothing about any of the communications or materials WE is complaining about until receiving WE's letters and its draft of this Status Report. CBC has no basis to suggest there is anything wrong with the informal discovery WE has been conducting. But it makes no sense to use the

---

that motion, CBC attached multiple regulatory filings that have been submitted by the Plaintiff in the United States solely to demonstrate that WE's U.S. affiliate is being entirely directed by multiple Canadian executives. Whether Mr. Li did or did not mislead Canada's Parliament may be a newsworthy question, but it has nothing to do with the most convenient forum in which to litigate this lawsuit.

fruits of those efforts to suggest that it is WE who has been prejudiced by "premature discovery."[13]

Moreover, WE's present position simply makes no sense.  If it really believed that CBC is somehow gaining an advantage in litigation by conducting "unilateral discovery", then the only logical remedy for that would be to seek the supposed fruits of that discovery.  Yet now WE disclaims any intent to do so.  That merely reinforces that WE's professed concerns about "unilateral discovery" are a pretext for changing the status quo (or punishing CBC for engaging in on-going journalism) when there is no bona-fide reason to do so.

But most importantly, while WE asserts that it is not asking this Court to "silence" punish CBC's journalism, that is precisely the effect of its request.  In essence, WE argues that if a news organization that has been sued continues to conduct newsgathering into the plaintiff, that alone warrants denying it a stay of discovery pending a dispositive motion.  The necessary corollary to WE's position is that if a news organization ceases its journalism upon being sued, discovery could potentially be stayed, saving the news organization both the expense of such discovery and the intrusion into the details of its prior newsgathering.  CBC is aware of no case that draws such a line.  And for good reason:  it is not hard to see how accepting WE's position would impinge on news organizations' First Amendment rights.

---

[13] The very fact that WE's accusations put CBC in the position of having to defend its ongoing journalism to any degree at all further illustrates why WE's protestations that its position here has no impact on CBC's First Amendment interests ring hollow.  CBC's position is that its newsgathering after the documentaries at issue were aired is irrelevant to this case and would be privileged from any discovery by applicable reporter's privilege laws.  So while CBC could respond further to WE's accusations by providing detailed affidavits from Mr. Cashore and CBC editors explaining exactly what issues they are have been exploring over the past year and why they believe they are newsworthy subjects to investigate, that would require CBC to waive the very journalistic privileges that it believes protect that information from disclosure and use in this litigation by either party.

Under WE's logic, any dissatisfied subject of a news report could sue a news organization and then claim a right to immediate discovery if that news organization dared to conduct any additional reporting on the same subject.  For example, in October 2022, former president Donald Trump sued CNN for, among other things, calling him an "insurrectionist" and propagator of the "big lie" (that the 2020 election was stolen).  *See* Case No. 2022-cv-61842 (S.D. Fla. 2022).  Under WE's logic, if CNN continued to report on Trump's disputing of the 2020 election and relationship to the January 6 riots, he would be entitled to immediate discovery even though CNN has filed a dispositive motion, because all such reporting could also double as "unilateral discovery."   If, however, CNN engaged in self-censorship and stopped its reporting on these subjects, it would be more reasonable to stay such upfront discovery.  Moreover, WE's arguments would also require the conclusion that CNN (unlike all other news organizations) must immediately cease trying to obtain any comment from any of Trump's lawyers in the course of its on-going reporting, because to do so would be an impermissible attempt to elicit "privileged" information.[14]

Thus, WE's claim that there is no First Amendment "right" to a discovery stay is red herring.  CBC claims no such right, and indeed for the reasons stated in Sections I and III of CBC's position there would be good reason to continue the status quo even if this suit had nothing to do with journalism.  However, the fact that the *only* reason WE offers to disturb the status quo is that CBC journalists continue to investigate its conduct is an especially compelling reason to maintain it.   CBC has not received any kind of "unfair advantage" by continuing to perform its role as

---

[14]     Seeking comment from a person or organization's counsel (be it current or former counsel) is commonplace in journalism, regardless of whether a news organization may also be in litigation with the subject.  The notion that merely asking a lawyer to respond to questions—to which the lawyer is of course free to decline—is an impermissible attempt to elicit privileged information has no basis in law.   Ironically, WE's Complaint in this case repeatedly charges that CBC engaged in reckless journalism because it allegedly did not sufficiently engage with CBC's counsel.  *See, e.g.*, Compl. ¶¶ 135-36.

Canada's national journalistic entity, nor has WE been prejudiced in this litigation.  Since WE's claims to the contrary are its principal justification for starting discovery, its request should be denied and the status quo should be maintained.

### III.   The Ontario Anti-SLAPP Statute Further Supports The Status Quo

WE's arguments about the Ontario anti-SLAPP statute are largely a distraction from the most important issues raised by this dispute.  Federal courts regularly defer discovery pending trans-national *forum non conveniens* motions regardless of whether the alternative country has an anti-SLAPP statute (almost none of them do).  And for all the reasons discussed above, WE's primary rationale for commencing discovery now is simply meritless.

Rather, the relevance of the anti-SLAPP statute is that it provides yet one more reason why the *status quo* should be maintained under the circumstances of this case.  In the course of the parties' meet and confer discussions, one of the reasons WE's counsel argued party document discovery should commence was his contention that the rules governing such discovery in the two jurisdictions do not materially differ.  Kroetsch Decl. Ex. A at 4.  Solely in response to that specific claim about Ontario law, CBC noted that was not accurate because, in Ontario, CBC would have the option to file an anti-SLAPP motion, which would stay party document discovery.[15]  *Id.* at 2. Thus, while CBC opposes commencing discovery for all the other reasons discussed above, the fact that the respective laws of the two jurisdictions are quite different is yet one more reason to wait until this Court resolves the pending motion.  *Id.*

WE does not, and indeed cannot, dispute this simple point of law—that the laws of the

---

[15]     Such a motion would not stay all discovery.  Each party would have the right to take up to seven hours of depositions (or "cross-examinations" in Canadian parlance) of the opposing party's witnesses regarding any evidence submitted to support or oppose the motion. *Courts of Justice Act,* R.S.O. 1990, c.43 § 137.2(4).

United States and Ontario are different.  Instead, WE now asserts that the fact that Ontario has different procedures whereby a case might be resolved without party document discovery has no bearing on whether such discovery should commence here.  WE cites no case that says anything of the kind, and indeed the only case it points to suggests the opposite.  *See Gen Elec. Int'l, Inc. v. Thorco Shipping Am., Inc.*, 2022 WL 1748410, at *3 (S.D.N.Y. May 31, 2022) (holding that parties would need to engage in "substantively the same discovery" in London arbitration).   In effect, commencing discovery here would deprive CBC of the opportunity to fully exercise its rights in Ontario should litigation proceed there.  That is exactly the kind of reason why a discovery stay is appropriate in the context of a *forum non conveniens* motion.

Otherwise, WE essentially argues that CBC could not win an anti-SLAPP motion in Ontario.  CBC respectfully disagrees, but that is beside the point.  The status quo here should not depend on the Court's predictions about who would win an anti-SLAPP motion in Ontario.  Rather, the only relevance of that statute to this dispute over discovery is that it refutes the claim that the two jurisdictions employ essentially identical procedures with respect to pre-trial party document discovery.

WE also claims that filing an anti-SLAPP motion would be "irreconcilable" with CBC's arguments that, if the case were to proceed in the United States, it would need to take multiple depositions of witnesses in Canada.[16]  To the contrary, the anti-SLAPP statute is one of several reasons why Ontario is the more convenient forum for this case.  CBC's position has always been that litigating this case in the United States would require far more reliance on depositions, and the use of cumbersome international procedures to take those depositions in Canada.  By contrast,

---

[16]     WE incorrectly states CBC's counsel told the Court it might take up to 50 depositions in the case.  That figure was actually the Court's guesstimate of what the total number of depositions taken by both parties might be, and CBC's counsel agreed that "it could be."  Tr. at 35.

that would not be required if the case were litigated in Ontario, under either the anti-SLAPP statute or its regular rules of procedure.

If CBC filed an anti-SLAPP motion in Ontario, depositions would be limited to seven hours per side and affidavits could be used in lieu of any others.  Moreover, the statute includes a balancing test that weighs the interests presented by the case, apart from weighing the merits. Indeed, in CBC's view, the fact that WE now seeks to employ American discovery procedures to interfere with CBC's on-going journalism about matters of overwhelmingly Canadian public interest would be an important factor for an Ontario court to weigh in applying the anti-SLAPP statute.

Putting aside the anti-SLAPP statute, if the case were to proceed in Ontario, witnesses would be available to be summoned at trial because they are almost all located in Canada, with the vast majority in Ontario.  By contrast, in the United States, there would be no non-party witnesses who could be compelled to appear at trial. So they would all need to be deposed, primarily in Canada, through the use of letters rogatory.

 Finally while WE now contends discovery would be likely to proceed in this jurisdiction with "minimal Court interference", both the record and even the genesis and existence of this very dispute suggests the contrary.  Regrettably, that WE has already been accusing CBC of all manner of litigation misconduct even before discovery has commenced makes plain that discovery in this case is unlikely to be a simple exercise.  It would therefore be prudent to allow the Court in which this case is ultimately going to be litigated the full opportunity to oversee this litigation, including whatever discovery may or may not be available, from its inception.

Dated: April 7, 2023

Respectfully submitted,

/s/ Joseph F. Kroetsch

Joseph F. Kroetsch (*pro hac vice*)
Brooke A. Alexander (*pro hac vice*)
BOIES SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300
jkroetsch@bsfllp.com
balexander@bsfllp.com

Jonathan H. Sherman (Bar No. 468539)
Amy L. Neuhardt (Bar No. 996791)
BOIES, SCHILLER & FLEXNER, LLP
1401 New York Avenue, NW
11th Floor
Washington, DC 20005
Tel: (202) 274-1137
Fax: (202) 237-6131
jsherman@bsfllp.com
aneuhardt@bsfllp.com

Rodney A. Smolla (Bar No. 6327)
164 Chelsea St
South Royalton, VT 05068
Tel: (864)-373-3882
rodsmolla@gmail.com

Sabina Mariella
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel: (212) 754-4541
smariella@bsfllp.com

*Attorneys for Plaintiff WE Charity*

/s/ Nathan E. Siegel

Nathan E. Siegel (Bar No. 446253)
Rachel F. Strom (*pro hac vice*)
Courtney DeThomas (Bar. No 888304075)
DAVIS WRIGHT TREMAINE, LLP

1301 K Street, NW
Suite 500 East
Washington, DC 20005
Tel: (202) 973-4237
Fax: (202) 973-4499
nathansiegel@dwt.com
courtneydethomas@dwt.com

*Attorneys for Defendant Canadian Broadcasting Corporation*