# Exhibit B



January 26, 2023

**BY EMAIL**

Nathan Siegel
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005-3317
nathansiegel@dwt.com

Re: <u>WE Charity v. Canadian Broadcasting Corporation</u>

Nathan,

I write regarding CBC's ongoing efforts to circumvent the discovery process, obtain privileged information, and instigate government action against WE Charity for the purpose of gaining an advantage in civil litigation. Please consider this letter notice that WE Charity will seek appropriate relief from the Court in the event the CBC's misconduct continues. We understand that CBC is a news organization and do not expect it to cease legitimate journalism concerning WE Charity while our lawsuit is pending, but as discussed below, CBC's actions bear no resemblance to legitimate journalism.

I wrote you on March 16, 2022 to ask that CBC preserve all documents and communications regarding CBC's outreach to third parties about WE Charity after the filing of our lawsuit. On March 29, 2022, I wrote to you again after CBC's Harvey Cashore repeatedly contacted Craig Kielburger's personal medical doctor, Dr. Elaine Chin, and I explained that his outreach flouted principles of doctor-patient confidentiality. Since that time, and particularly in recent days, CBC's improper conduct has escalated, as described below.

The timing and content of Mr. Cashore's communications with third parties demonstrate that his outreach is plainly linked to the litigation between CBC and WE Charity. Shortly after the lawsuit was filed in February 2022, Mr. Cashore began contacting individuals whom he knew possess privileged information regarding WE Charity—information that would not be obtainable in the course of the litigation. Targets of Mr. Cashore's outreach include two of WE Charity Canada's in-house legal counsel,



WE Charity Canada's tax counsel, WE Charity CFO's personal attorney, WE Charity's co-founder's medical doctor, and WE Charity US's auditor.[1]

Mr. Cashore's actions coincide with key dates in our litigation. A burst of activity preceded CBC's filing of its motion to dismiss. Then, after months of apparent inactivity, Mr. Cashore renewed his outreach to WE Charity's former in-house counsel, Nicole Davidson, on December 12, 2022, the afternoon before the December 13, 2022 oral argument on the CBC's motion to dismiss.

A timeline of CBC's efforts to obtain privileged information outside of the discovery process is set forth below:

1. **February 8, 2022 – *WE Charity v. CBC* complaint filed.**
2. March 28, 2022 – Harvey Cashore calls Dr. Elaine Chin, Craig Kielburger's personal medical doctor.
3. April 4, 2022 – Harvey Cashore emails Megan Savard, Victor Li's attorney, regarding his medical leave.
4. April 6, 2022 – Harvey Cashore emails Randall Mang, a WE Charity donor, about his donations to WE Charity.
5. April 20, 2022 – Harvey Cashore emails Dr. Elaine Chin.
6. April 22, 2022 – Harvey Cashore calls WE Charity in-house counsel Nicole Davidson at appx. 4:15pm EST asking why Victor Li signed a document as Treasurer when he or his lawyers said he did not act as CFO.
7. **May 4, 2022 – CBC files Motion to Dismiss ("MTD").**
8. May 31, 2022 – Harvey Cashore emails WE Charity Canada tax attorney Raymond Adlington at Miller Thompson.
9. **June 10, 2022 – WE Charity files MTD Opposition.**
10. **June 24, 2022 – CBC files MTD Reply Brief.**
11. **October 7, 2022 – Court Orders Oral Argument on MTD for December 13, 2022.**

---

[1] These actions would not be ethically permissible if undertaken by CBC's attorneys. For example, the Rules of Professional Conduct in the District of Columbia prohibit an attorney from disregarding "legal restrictions on methods of obtaining evidence from third persons and unwarranted intrusion into privileged relationships, such as the client-lawyer relationship." Rule 4.4, Comment 1. To be clear, we have no reason to doubt that you and your colleagues were unaware of CBC's actions.



12. December 12, 2022 – Harvey Cashore emails Nicole Davidson after she quit working at WE Charity and asks, "You may recall we spoke back in April relating to WE Charity. At that time you stated you could not respond to my questions. I am wondering whether circumstances might have changed."

13. **December 13, 2022 – Oral Argument on MTD at 10am EST in Washington, D.C.**

14. December 29, 2022 – Harvey Cashore emails Nicole Davison about "documents filed with the North Carolina Secretary of State Charitable Solicitation Licensing Division."

15. January 19, 2023 – WE Charity receives letter dated Jan. 5, 2023, from the Director of the North Carolina Secretary of State Charitable Solicitation Licensing Division, citing Victor Li's responses to questions from a Canadian Parliamentary committee.

16. January 20, 2023 – Harvey Cashore calls Roy Pasieka, WE Charity's U.S. auditor.

17. January 26, 2023 – Harvey Cashore emails Yvonne Mazurak, WE Charity's in-house legal counsel regarding North Carolina charitable solicitation license form.

Most of Mr. Cashore's inquiries concern U.S. state regulatory filings by WE Charity that CBC filed with the Court in support of its motion to dismiss.[2]  In his communications, Mr. Cashore contends that it was inconsistent for WE Charity's CFO, Victor Li, to tell legislators in Canada that he was medically unable to provide live testimony while he continued to sign U.S. state filings as WE Charity's CFO.  There is no contradiction between these facts; as CBC knows, Mr. Li provided written answers to the Parliamentary Committee's questions.  We understand that Mr. Cashore has incorrectly told individuals that Mr. Li did not hold the title of CFO while he was on medical leave, and Mr. Li therefore should not have signed U.S. regulatory filings as WE Charity's CFO. But as Mr. Cashore knows (and wrote in an email), Mr. Li remained an officer of the charity

---

[2] To our knowledge CBC never previously reported on these filings.  Nor, to our knowledge, does CBC normally report on U.S. state regulatory filings by organizations that have *not* sued the CBC.

Indeed, the CBC did not take care to ensure its *own* filings with the California Secretary of State were accurate. In a December 8, 2021 filing, a CBC representative certified that it was "true and correct" that "[t]here has been no change in any of the information contained in the previous complete Statement of Information filed with the California Secretary of State." That does not appear to have been true: the designated agent for service of process identified in the CBC's 2018 filing, Kim Brunhuber, moved from CBC to CNN in 2020.  https://www.adweek.com/tvnewser/cnn-international-taps-top-cbc-reporter-kim-brunhuber-to-anchor-european-morning-editions-of-cnn-newsroom/443535/.



while on medical leave and he told the Parliamentary committee, "I am still the CFO of WE Charity."

Mr. Cashore has contacted at least four lawyers, one doctor and WE Charity's U.S. auditor to obtain privileged information about WE Charity. Mr. Cashore's inquiries have sought legal and medical information that CBC undoubtedly is aware is privileged. For example, when Mr. Cashore contacted WE Charity's in-house counsel, Ms. Davidson, on April 22, 2022, she told him that she could not answer his questions. Apparently aware that she had since left employment by WE Charity, Mr. Cashore invited Ms. Davidson on December 12, 2022 to violate her privilege obligations to WE Charity, stating, "You may recall we spoke back in April relating to WE Charity. At that time you stated you could not respond to my questions. I am wondering whether circumstances might have changed." These efforts to obtain privileged information through extra-judicial means are highly improper.

CBC cannot credibly claim that Mr. Cashore's actions are legitimate newsgathering. It is not a coincidence that, to our knowledge, the *only* reporter from any news organization seeking information about WE Charity in nearly a year is the lead reporter on the CBC's coverage challenged in our lawsuit.[3] Nor is it a coincidence that Mr. Cashore's questions focus on documents filed in the litigation, coincide with developments in the lawsuit, and target sources of privileged information concerning WE Charity and its principals whose information is protected from discovery.

More concerning, CBC appears to have reported WE Charity to the North Carolina Secretary of State's charitable solicitation licensing division in an effort to put pressure on its litigation opponent. On December 29, 2022, Mr. Cashore sent Ms. Davidson an email attaching two North Carolina charitable solicitation license applications. He said, "There are two specific documents filed with the North Carolina Secretary of State, Charitable Solicitation Licensing Division that I am particularly interested in understanding from your perspective." Mr. Cashore wrote (misstating facts), "I am trying to understand why these documents – describing Victor Li's active role with the charity – were filed with state regulators during the same time period that WE Charity, Victor Li, and his lawyer told Canadian parliamentarians that Li was on a medical leave of absence from the charity."

On January 19, 2023, WE Charity received a letter from the director of the North Carolina Secretary of State, Charitable Solicitation Licensing Division, addressed to Victor

---

[3] The only quasi-exception was an outreach on March 30, 2022 from Roberto Rocha, a journalist who identified himself as working for the Investigative Journalism Foundation ("IJF"), but is identified by the CBC as a CBC journalist. https://www.cbc.ca/news/canada/montreal/author/roberto-rocha-1.3527929 (Mr. Rocha's CBC bio, current as of January 25, 2023). This inquiry led to no reporting because, as Mr. Rocha wrote to WE Charity on June 9, 2022, IJF concluded there was not enough to justify reporting.

4



Li. The letter states, "We are in receipt of a response you prepared for the Canadian Standing Committee on Access to Information, Privacy and Ethics dated March 15, 2021." The letter requests information concerning purportedly "conflicting testimony" to the Canadian committee and the North Carolina Secretary of State on WE Charity's 2021 and 2022 license renewal applications. These forms and this testimony were the precise subject of Mr. Cashore's inquiries; the 2021 form cited in the letter is attached as Exhibit 11 to the May 4, 2022 Declaration of Nathan Siegel (Dkt. 16-14) and was attached to Mr. Cashore's email to Ms. Davidson on December 29, 2022. It defies belief to suggest that this is a coincidence, that North Carolina's charitable licensing director merely happened across Canadian parliamentary files and reached the same wrongheaded conclusion as Mr. Cashore on an issue never raised by anyone else.

None of this is normal. CBC's conduct regarding WE Charity constitutes a stark deviation from legitimate journalistic conduct. Journalists do not report subjects to the government. They do not seek to persuade lawyers, doctors, and accountants to violate their ethical and legal confidentiality obligations.

Individuals close to WE Charity are all too familiar with CBC's track record of malicious and untruthful reporting on the organization. When a CBC reporter—especially Mr. Cashore—calls about WE Charity, that inquiry embeds an inherent threat of further false reporting. Mr. Cashore's communications have an inquisitorial tone that reinforces this latent threat. For example, in his email to Victor Li's attorney, Megan Savard, Mr. Cashore quotes at length letters she sent to Parliament on Mr. Li's behalf. Without any other context, Mr. Cashore asks Ms. Savard whether she told the committee the truth. He cites no basis for basis for contending her statements were untruthful and does not describe the story he is working on. Mr. Cashore asks Ms. Savard whether her statements were "accurate at the time they were made," and whether they "need clarification or correction." He adds, "Is there anything else you would like to discuss or feel that I should be aware of?" despite having disclosed nothing about his planned reporting. Mr. Cashore's December 29, 2022 email to Ms. Davidson is equally menacing.

As we have told you and your client before, WE Charity does not object to truthful journalism regarding the organization, even if it is critical. But no objective observer of Mr. Cashore's actions would conclude that he is merely acting as any good reporter would.[4] CBC is abusing its journalistic credentials in search of litigation advantage and WE Charity

---

[4] Mr. Cashore's disregard for the truth in the course of reporting on WE Charity further discredits any suggestion that he is being idiosyncratically dogged in his reporting. He could not be bothered to look at the hundreds of schools in Kenya that he reported did not exist, even while he was in Kenya and near the communities where the schools are located. He did not attempt to check many factual allegations with WE Charity before publishing them. The plainly selective nature of Mr. Cashore's efforts betrays his conduct's purpose.


reserves all rights to seek appropriate relief from the Court, including an order precluding use of material obtained by circumventing the discovery process.[5] WE Charity also reserves the right to assert that CBC has waived any applicable journalistic privileges, including reporter shield laws. And WE Charity reserves its right to introduce evidence of CBC's most recent misconduct as additional evidence in support of a punitive damages award.

Sincerely,

Joseph F. Kroetsch

---

[5] "When a party wrongfully obtains documents outside the normal discovery process, a number of different types of sanctions are available. These include dismissal of the action, the compelled return of all documents, restrictions regarding the use of the documents at trial, disqualification of counsel and monetary sanctions." *Lynn v. Gateway Unified Sch. Dist.*, No. 2:10-CV-00981-JAM, 2011 WL 6260362, at *5 (E.D. Cal. Dec. 15, 2011), *as amended* (Dec. 16, 2011), citing *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324–27 (S.D.N.Y.1997).