# Exhibit C



Suite 500 East
1301 K Street NW
Washington, D.C.  20005-3317

**Nathan Siegel**
 tel (202) 973-4200
 fax (202) 973-4499

nathansiegel@dwt.com

February 10, 2023

Joseph F. Kroetsch
Boies Schiller Flexner
55 Hudson Yards, 20th Floor
New York, NY 10001

       Re:    *We Charity v. Canadian Broadcasting Corporation*
             (Case No. 22-cv-00340)

Dear Joseph:

      I write in response to your January 26, 2023 letter (the "Letter") in which you suggest, based on a completely self-created "timeline," that my client, the Canadian Broadcasting Corporation ("CBC"), is attempting to "circumvent the discovery process" in the above-captioned action by contacting your clients and other third-parties in connection with its ongoing reporting on WE Charity.  Please let me disabuse you of this notion at the outset—neither CBC nor any of its journalists is attempting to evade the discovery process or gain an improper "litigation advantage" in this case.

      Your manufactured "timeline" that purportedly shows that Harvey Cashore's newsgathering, "coincide[s]e with key dates in our litigation," is absurd.  *See* Ltr. at 2.  For starters, by beginning this "timeline" on the date WE Charity filed the Complaint, February 8, 2022, you purposefully omit CBC's years of prior reporting on WE Charity, making it appear as though CBC ramped up its reporting only after this lawsuit was filed.  And more than a third of your purported examples happened after the date the motion to dismiss was heard and submitted, which contradicts your own purported theory.  Otherwise, your "timeline" merely notes six dates over a period of about ten months and lists a few cherry-picked examples of newsgathering activity over that same time.  Any party that is suing any news organization which continues to engage in investigative reporting about that party could invent a similar "timeline".

      Even so, WE Charity's accusations of misconduct are especially baseless.  For example, CBC attached regulatory filings to its motion to dismiss to establish WE Charity's ties to Canada for *forum non conveniens* purposes.  Your letter does not even purport to try to relate any of Mr. Cashore's newsgathering to a dispute about the appropriate venue.  For the purpose of litigating the appropriate forum, the documents filed by both parties addressed many aspects of WE Charity's history, fundraising, expenditures, legal structure, regulatory oversight, and personnel. Almost any question asked by any news reporter about your client could equally be said to concern "documents filed in this litigation," as you misleadingly put it.

Joseph F. Kroetsch
February 10, 2023
Page 2

Rather, it is your own client's motivations that are becoming all the more clear.  As it has from the outset, WE Charity continues to use this lawsuit to attempt to intimidate CBC into ceasing its newsgathering on WE Charity.  In fact, the only part of your "timeline" that actually lays out the timing of two related events is that WE Charity sent a letter threatening CBC a mere *one week* after it received a letter from North Carolina's Secretary of State questioning its charitable filings. *See* Ltr. at 2.  It is WE Charity's motivations—not CBC's—that are evident: to prevent CBC from asking legitimate questions about WE Charity that might cause government agencies or others to question WE Charity.

While CBC has nothing to do with the North Carolina Secretary of State's exercise of its regulatory authority, if, in fact, that office inquired into WE Charity after receiving questions from a journalist, that would be anything but "unique".   Scores of government inquires and investigations result from journalistic activity; indeed, that is one of the most fundamental functions of a free press.  To note just one example (of which you are aware because your firm was involved), the government's investigation into Theranos commenced after John Carreyrou's investigative reporting in the *Wall Street Journal* exposed the company as a fraud.  Please know that CBC has been engaged in newsworthy reporting on your client years before this lawsuit was instituted, and it will not cease its reporting merely because WE Charity sued it.

Moreover, rather than simply stand on the merits of its Complaint, WE Charity is also using CBC's legitimate journalism post-filing as a pretext to try to manufacture claims about "discovery" and "privilege" unrelated to the merits, as well as threaten retaliatory exposure of confidential sources who criticized the charity.  Should your client actually pursue any of the frivolous claims your letter threatens in any country or jurisdiction, CBC will assert all appropriate remedies in response.

In a last-ditch attempt to frame Mr. Cashore's legitimate reporting as improper, you note that if Mr. Cashore was being directed by litigation defense counsel to contact individuals represented by you to gather WE Charity's privileged information for use in the litigation, that would be improper.  Indeed it would, and we appreciate your acknowledgment there is no basis to suggest that is what happened.  Otherwise, the purported basis of your accusations—that journalists never ask "lawyers, doctors or accountants" to disclose confidential information—is once again baseless and reflects a fundamental misunderstanding of journalism.  Not only is there is no rule that prohibits journalists from asking sources about—or publishing—privileged or confidential information, the First Amendment protects their right to do both. *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) (recognizing that news organization has a constitutional privilege to publish information that was unlawfully intercepted); *Huggins v. Nat'l Broad. Co.*, 1996 WL 763337, at *4 (Sup. Ct. N.Y. Cty. Feb. 7, 1996) (recognizing that news organization has constitutional right to publish information obtained in violation of gag order).

 Finally, if there is any "timeline" over the past year that is relevant here, it is that within a month of WE Charity's filing this lawsuit you began contacting me with complaints and veiled

Joseph F. Kroetsch
February 10, 2023
Page 3

threats about CBC's ongoing journalism. Your recent letter is now the third example of the same. I again reiterate, as I stated in my previous communications, that using a lawsuit to chill CBC's investigative journalism is entirely inappropriate.

CBC fully intends to defend the claims in WE Charity's Complaint on the merits in whatever forum this litigation may ultimately land.  And we have no doubt you will zealously do the same with respect to pursuing the merits of those claims.  We continue to trust that going forward your efforts will be more appropriately directed to the merits.  In the meantime, CBC expressly reserves all rights, remedies, and defenses—including pursuant to relevant anti-SLAPP laws.

Sincerely,

Davis Wright Tremaine LLP

Nathan Siegel