# Exhibit B

TEXT.htm                                                                                              **ATTACHMENT**

Let's pick this matter back up after the Christmas Break. Get some rest everyone and stay warm. Happy Holidays.
\>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
\>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

### A. Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal" is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

**B. Information provided to the House of Commons ethics committee in Ottawa:**

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan_savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social

will be able to continue building our business. Managing her client's current workload could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704