# EXHIBIT 1

MAIL

| | |
|---|---|
| **From:** | harvey.cashore@cbc.ca |
| **To:** | liz proctor |
| **CC:** | Gail Eluwa |
| **Subject:** | [Caution: External Mail] Re: [Caution: External Mail] Re: Questions from the Canadian Broadcasting Corporation |
| **Date:** | 19-Jan-2023 11:21 |
| **Attachments:** | TEXT.htm  [Save]  [Open] |
| | Mime.822   *(excluded from export)* |
| | headers.822  [Save]  [Open] |
| **Creation Date:** | 19-Jan-2023 11:20 |
| **Store Date:** | 19-Jan-2023 18:44 |
| **Status:** | opened,read |
| **Box Type:** | received |
| **Folder:** | Gail Eluwa Home > Management > Mailbox |
| **Message Id:** | 63C96E01.domain.GWIA.200.20000F3.1.870346.1 |

Hi Liz,

Just wanted to check in on this.  Do you know when you will be able to respond to this?

Thanks again for your time.

Harvey

On Tue, 17 Jan 2023 at 16:33, Harvey Cashore <harvey.cashore@cbc.ca> wrote:

> Hi Liz,
>
> Today I noticed that there are two new documents filed with the North
> Carolina Secretary of State relating to WE Charity.
>
> On January 13, 2023, WE Charity filed form 8868 and stated that the books
> of WE Charity are "in the care of" Victor Li.
>
> This morning, on January 17, 2023, lead document examiner Demian Silvers
> wrote to Victor Li, granting him permission to extend WE Charity's federal
> tax filing extension until April 15, 2023.
>
> Has the North Carolina Secretary of State determined that Victor Li is now
> acting as the CFO of WE Charity and that he has custody of the books of WE
> Charity?
>
> Could you let me know how you came to this determination?
>
> Thanks again for all your help with our understanding of this file.
>

> Harvey
>
> On Thu, 5 Jan 2023 at 17:47, liz proctor <lproctor@sosnc.gov> wrote:
>
>> Hi Harvey,
>>
>> North Carolina statute requires the notary to administer to the treasurer
>> or chief financial officer, under penalty of perjury, that they are in fact
>> treasurer or chief financial officer and that the information provided to
>> North Carolina is true and correct to the best of the knowledge of that
>> person.  This helps affirm that the substance of the information being
>> provided is materially accurate and encourages transparency for North
>> Carolina's giving public.
>>
>> It should also be noted that generally, if concerns are raised about
>> inaccuracies in the substance of information provided in filings it is our
>> practice to give the organizations in question the opportunity to cure,
>> correct or supplement the information they have provided.
>>
>>
>> Liz Proctor
>> Public Information Officer
>> NC Dept. of the Secretary of State
>> (919) 814-5341
>> lproctor@sosnc.gov
>>
>>
>>
>>
>> Connect with us!
>>
>> On the Web: http://www.sosnc.gov/
>> <http://www.sosnc.gov>
>>
>> Facebook: https://www.facebook.com/NCSecState
>> <https://www.facebook.com/NCSecState>
>>
>> Twitter: https://twitter.com/NCSecState
>> <https://twitter.com/NCSecState>
>>
>> YouTube: https://www.youtube.com/c/NCSecState
>> <https://www.youtube.com/c/NCSecState>
>>

>> Confidentiality Notice: This e-mail message, including any attachments,
>> is for the sole use of the intended recipient (s) and may contain
>> confidential and privileged information. Any unauthorized use, disclosure,
>> or distribution is prohibited.
>>
>> >>> Harvey Cashore <harvey.cashore@cbc.ca> 1/3/2023 3:21 PM >>>
>> Hi Gail and Liz,
>>
>> Happy New Year.
>>
>> Just wanted to check in on this and see when we might be getting a
>> response.
>>
>> If you would like to talk more on the phone that would be great as well.
>>
>> Harvey
>>
>> On Thu, 22 Dec 2022 at 14:46, Harvey Cashore <harvey.cashore@cbc.ca>
>> wrote:
>>
>>> Dear Gail Eluwa,
>>>
>>> Thank you for the phone call yesterday.
>>>
>>> As I said on the phone, I am a journalist with the Canadian Broadcasting
>>> Corporation. I work for an investigative documentary program called "The
>>> Fifth Estate."
>>>
>>> I am reaching out about a story we are preparing relating to a
>>> Canadian-based charity, WE Charity. WE Charity also has tax-exempt status
>>> with the IRS and holds charity solicitation licenses in several states.
>>>
>>> I have some questions for which I am hoping the North Carolina Secretary
>>> of State, Charitable Solicitation Licensing division could provide answers.
>>> My story may be published on our website – cbcnews.ca
>>> <http://cbcnews.ca>
>>> – sometime early in the New Year.
>>>
>>> My questions relate to documents that WE Charity supplied to your office
>>> between 2020 and 2022 as part of its charity license renewal applications.
>>> (I am also reaching out to other state charity licensing offices as well).
>>>
>>> Specifically, my questions relate to Victor Li, who is stated in the

>>> documents provided to your office to be acting as the CFO of WE Charity. In
>>> the period between the fall of 2020 and 2022, Victor Li's name and
>>> signature appear on numerous documents that were sent to your office by WE
>>> Charity.
>>>
>>> To put this all in context, I am trying to understand the significance
>>> of the documents that were filed by WE Charity to your office – as compared
>>> with other information that Victor Li and his lawyer provided to the
>>> Canadian House of Commons parliamentary committee that was looking into WE
>>> Charity's finances in 2021.
>>>
>>> In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on
>>> several occasions that Victor Li has been on leave from the charity.
>>> Specifically, Victor Li stated to the Parliamentary committee that he went
>>> on leave from the charity in the summer of 2020 and that he has not been
>>> acting as its CFO since then.
>>>
>>> In short, I am trying to understand the significance of the information
>>> provided to Canadian members of Parliament with the information WE Charity
>>> has provided to state licensing boards in the United States.
>>>
>>> I am hoping you can help me with these questions.
>>>
>>>
>>>    1. Documentation filed with your office:
>>>
>>>
>>> Records provided to your office show that Victor Li signed numerous
>>> documents as CFO of WE Charity in the period after he stated he was on
>>> leave from the charity, after the summer of 2020.
>>>
>>> For example, documents provided to your office on July 22, 2021, and
>>> October 13, 2022, respectively stated that Victor Li was the Treasurer or
>>> CFO of WE Charity, and that he had "final responsibility for custody and/or
>>> final distribution of contributions" and that he had "custody of
>>> applicant's financial records."
>>>
>>> Victor Li signed these documents alongside a form that stated:
>>> "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who
>>> has administered the following oath: I swear or affirm that the information
>>> furnished in this application and all supplemental forms, reports,
>>> documents and attachments are true and correct to the best of my knowledge
>>> under the penalty of perjury."

>>>

>>> As required for charities operating in North Carolina, notaries for WE

>>> Charity provided their stamp to go along with Victor Li's signature, both

>>> in 2021 and 2022.

>>>

>>> North Carolina records also show that on October 13, 2022, you sent a

>>> letter addressed to Victor Li, stating that the WE Charity application was

>>> "incomplete" and that the Notary Stamp/Seal" is "still not showing".

>>>

>>> The records show that WE Charity responded to your letter the same day.

>>> This time they provided the notary stamp of a lawyer for WE Charity, Yvonne

>>> Mazurak, along with her signature.

>>>

>>> The records also show that WE Charity provided North Carolina with

>>> copies of the Form 990s that they had filed with the IRS. Those form 990

>>> documents show that on November 21, 2020, Victor Li signed Form 990 for the

>>> year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990

>>> for the year ending August 31, 2021.

>>>

>>> In both of those Form 990s, Victor Li is listed as a "key employee" and

>>> "the principal officer" of the Charity. The form also states that the books

>>> are "in the care of Victor Li" and that Victor Li "possesses the

>>> organization's books and records."

>>>

>>> Under Victor Li's signature, the Form 990 documents state: "Under

>>> penalties of perjury, I declare that I have examined this return, including

>>> accompanying schedules and statements, and to the best of my knowledge and

>>> belief, it is true, correct, and complete...."

>>>

>>>

>>>    1. Information provided to the House of Commons ethics committee in

>>>    Ottawa:

>>>

>>>

>>> I am trying to understand the significance of the above information

>>> provided to your office compared with the information that Victor Li and

>>> his lawyer provided to the Canadian House of Commons parliamentary

>>> committee that was examining WE Charity's finances in 2021.

>>>

>>> According to Victor Li and his lawyer, Li had been on medical leave from

>>> WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE

>>> Charity was publicly stated on several occasions:

>>>

>>> For example, on March 24 2021, Victor Li's lawyer sent a letter to the
>>> Canadian Parliamentary committee that was probing WE Charity's finances.
>>> His lawyer, Megan Savard, also sent out a tweet that republished the letter
>>> she sent to the committee. Here is the tweet:
>>>
>>> https://twitter.com/megan__savard/status/1374831474873139201/photo/2
>>> <https://twitter.com/megan__savard/status/1374831474873139201/photo/2>
>>>
>>> In that March 2021 letter, Megan Savard states that Victor Li had
>>> already had "a months-long absence from the workplace". The letter states
>>> that Victor Li had the inability to concentrate for more than short periods
>>> of time. Savard stated that Li's medical condition "currently prevents him
>>> from returning to work and his doctor cannot say if he ever will be able to
>>> return." As you can see from reading the attached, Victor Li's lawyer
>>> stated that a return to work could cause her client undue stress that could
>>> lead to his death.
>>>
>>> In the March 2021 letter, Li summed up his medical leave: "I am still
>>> the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on
>>> medical leave since the summer 2020. Since I was placed on medical leave,
>>> WE Charity's finances have been handled by a team of accountants led by
>>> members of the executive team as well as a director in the Finance
>>> department who is a CPA."
>>>
>>> On April 29, 2021, Victor Li's lawyer sent another letter to the
>>> Parliamentary committee in Ottawa. [See attached].
>>>
>>> In that letter, Victor Li's lawyer again stated that Li "is on
>>> indefinite medical leave due to serious health issues." His lawyer said
>>> that Li is "unable to review or analyze large numbers of documents, or
>>> easily access company records" and that, because of this, "he asked WE
>>> Charity to help answer the Committee's numerous questions."
>>>
>>> In that April 29, 2021 letter Victor Li made the additional statement:
>>> "On my doctor's advice, I have been on medical leave since the summer of
>>> 2020. I have not been performing the duties of CFO or participating in the
>>> daily business of WE Charity or its associated organizations since I
>>> started my medical leave. My health issues have significantly impeded, and
>>> continue to impede, my ability to work."
>>>
>>> Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity
>>> CFO is on medical leave":
>>>

>>> https://twitter.com/WE_Comms/status/1363935728258932747

>>> <https://twitter.com/WE_Comms/status/1363935728258932747>

>>>

>>> As well, in May of this year (2022), a former WE Charity board member,

>>> Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala

>>> stated that Li's medical condition limited his ability to speak for a

>>> length of time: "I could only interview Victor briefly- fifteen minutes,

>>> and only in the morning, was all the energy he could muster."

>>>

>>> Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book

>>> stating that Victor Li had been "off for months" when the Parliamentary

>>> Committe had asked Victor Li to testify (in March and April of 2021.)

>>>

>>> Questions for your office:

>>>

>>> Here are my questions:

>>>

>>> What is the reason that North Carolina requires that a notary affirms

>>> the signature of a charity's treasurer or CFO when providing documentation

>>> to the North Carolina charity licensing office?

>>>

>>> How important is it that a charity provides accurate information about

>>> its officers and its finances to the North Carolina Secretary of State?

>>>

>>> How significant would it be if the sworn information provided to your

>>> office is not correct?

>>>

>>> In your opinion, how significant is it that the information that WE

>>> Charity provided to your office, along with Victor Li's signature, is not

>>> the same as the information that Victor Li and his lawyer provided to the

>>> Canadian Parliamentary committee referenced above?

>>>

>>> In summary, I am hoping to understand, from your perspective, how one

>>> can reconcile WE Charity and Victor Li's statements in Canada -- that he was

>>> on medical leave from WE Charity, absent from the workplace, that he was

>>> not handling the finances of the charity and that he could not "easily

>>> access" company records nor concentrate for a length of time -- with

>>> documents provided to your office, in the same time period, stating that he

>>> was a "key" employee and "principal officer" of WE Charity, and stating

>>> that he signed those submissions, under penalty of perjury, affirming the

>>> accuracy of the contents of the documents and stating he had responsibility

>>> for "custody and/or final distribution of contributions" and that he had

>>> "control of the financial records and for signing cheques."

>>>

>>> Any responses you can provide me to the above questions would be greatly

>>> appreciated.

>>>

>>> Thanks again,

>>>

>>> Harvey Cashore

>>>

>>> --

>>> Harvey Cashore

>>> Producer, The Fifth Estate

>>> Pronouns: he and him

>>>

>>> Cell: 416-526-4704

>>>

>>>

>>

>> --

>> Harvey Cashore

>> Producer, The Fifth Estate

>> Pronouns: he and him

>>

>> Cell: 416-526-4704

>>

>>

>

> --

> Harvey Cashore

> Producer, The Fifth Estate

> Pronouns: he and him

>

> Cell: 416-526-4704

>

>


--

Harvey Cashore

Producer, The Fifth Estate

Pronouns: he and him


Cell: 416-526-4704

TEXT.htm                                                                                    ATTACHMENT

Hi Liz,

Just wanted to check in on this.  Do you know when you will be able to respond to this?

Thanks again for your time.

Harvey

On Tue, 17 Jan 2023 at 16:33, Harvey Cashore < harvey.cashore@cbc.ca> wrote:
  Hi Liz,

  Today I noticed that there are two new documents filed with the North Carolina Secretary of State relating to WE Charity.

  On January 13, 2023, WE Charity filed form 8868 and stated that the books of WE Charity are "in the care of" Victor Li.

  This morning, on January 17, 2023, lead document examiner Demian Silvers wrote to Victor Li, granting him permission to extend WE Charity's federal tax filing extension until April 15, 2023.

  Has the North Carolina Secretary of State determined that Victor Li is now acting as the CFO of WE Charity and that he has custody of the books of WE Charity?

  Could you let me know how you came to this determination?

  Thanks again for all your help with our understanding of this file.

  Harvey

  On Thu, 5 Jan 2023 at 17:47, liz proctor < lproctor@sosnc.gov> wrote:
    Hi Harvey,

    North Carolina statute requires the notary to administer to the treasurer or chief financial officer, under penalty of perjury, that they are in fact treasurer or chief financial officer and that the information provided to North Carolina is true and correct to the best of the knowledge of that person.  This helps affirm that the substance of the information being provided is materially accurate and encourages transparency for North Carolina's giving public.

    It should also be noted that generally, if concerns are raised about inaccuracies in the substance of information provided in filings it is our practice to give the organizations in question the opportunity to cure, correct or supplement the information they have provided.


    Liz Proctor
    Public Information Officer
    NC Dept. of the Secretary of State
    (919) 814-5341
    lproctor@sosnc.gov



    Connect with us!

    On the Web: http://www.sosnc.gov/

    Facebook: https://www.facebook.com/NCSecState

    Twitter: https://twitter.com/NCSecState

On the Web: http://www.sosnc.gov/

Facebook: https://www.facebook.com/NCSecState

Twitter: https://twitter.com/NCSecState

YouTube: https://www.youtube.com/c/NCSecState

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient (s) and may contain confidential and privileged information. Any unauthorized use, disclosure, or distribution is prohibited.

>>> Harvey Cashore <harvey.cashore@cbc.ca> 1/3/2023 3:21 PM >>>
Hi Gail and Liz,

Happy New Year.

Just wanted to check in on this and see when we might be getting a response.

If you would like to talk more on the phone that would be great as well.

Harvey

On Thu, 22 Dec 2022 at 14:46, Harvey Cashore < harvey.cashore@cbc.ca> wrote:
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

**A. Documentation filed with your office:**

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the

I am hoping you can help me with these questions.

## A. Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete…."

## B. Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan_savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time.

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was

... signature on documents that the lawyer gave to... Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

**MAIL**

| | |
|---|---|
| From: | geluwa@sosnc.gov |
| To: | liz proctor |
| CC: | William Toole, Gail Eluwa, Tim Crowley |
| Subject: | see my comments to you - Harvey Cashore |
| Date: | 18-Jan-2023 08:50 |
| Attachments: | TEXT.htm [Save] [Open] |
| | IMAGE.jpeg [Save] [Open] |
| Creation Date: | 18-Jan-2023 08:50 |
| Store Date: | 18-Jan-2023 18:41 |
| Status: | opened,read |
| Box Type: | received |
| Folder: | Gail Eluwa Home > Management > Mailbox |
| Message Id: | 63C7F92E.domain.PO.200.2000041.1.A253B.1 |

CSL does not rescind a charitable license nor ask them to cease and desist solicitation activities based upon an allegation. WE Charity is still under review to determine if a violation of the statue has occurred.

Gail

**************************************************************************

Hi Liz,

Today I noticed that there are two new documents filed with the North Carolina Secretary of State relating to WE Charity.

On January 13, 2023, WE Charity filed form 8868 and stated that the books of WE Charity are "in the care of" Victor Li.

This morning, on January 17, 2023, lead document examiner Demian Silvers wrote to Victor Li, granting him permission to extend WE Charity's federal tax filing extension until April 15, 2023.

Has the North Carolina Secretary of State determined that Victor Li is now acting as the CFO of WE Charity and that he has custody of the books of WE Charity?

Could you let me know how you came to this determination?

Thanks again for all your help with our understanding of this file.

Harvey

Harvey Cashore
Producer, The Fifth Estate

Post Office Box 29622Raleigh, NC
27626www.sosnc.govgeluwa@sosnc.govhttps://www.facebook.com/NCSecState/@NCSecState
( https://twitter.com/NCSecState) Tel: (919) 814-5281Fax: (919) 807-2220

CSL does not rescind a charitable license nor ask them to cease and desist solicitation activities based upon an allegation.  WE Charity is still under review to determine if a violation of the statue has occurred.

Gail

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Hi Liz,

Today I noticed that there are two new documents filed with the North Carolina Secretary of State relating to WE Charity.

On January 13, 2023, WE Charity filed form 8868 and stated that the books of WE Charity are "in the care of" Victor Li.

This morning, on January 17, 2023, lead document examiner Demian Silvers wrote to Victor Li, granting him permission to extend WE Charity's federal tax filing extension until April 15, 2023.

Has the North Carolina Secretary of State determined that Victor Li is now acting as the CFO of WE Charity and that he has custody of the books of WE Charity?

Could you let me know how you came to this determination?

Thanks again for all your help with our understanding of this file.

Harvey

Harvey Cashore
Producer, The Fifth Estate

Post Office Box 29622 Raleigh, NC  27626 www.sosnc.gov geluwa@sosnc.gov https://www.facebook.com /NCSecState/ @NCSecState Tel: (919) 814-5281 Fax: (919) 807-2220

**MAIL**

| | |
|---|---|
| From: | harvey.cashore@cbc.ca |
| To: | liz proctor |
| CC: | Gail Eluwa |
| Subject: | [Caution: External Mail] Re: [Caution: External Mail] Re: Questions from the Canadian Broadcasting Corporation |
| Date: | 17-Jan-2023 16:33 |
| Attachments: | TEXT.htm [Save] [Open] |
| | headers.822 [Save] [Open] |
| | Mime.822 *(excluded from export)* |
| Creation Date: | 17-Jan-2023 16:33 |
| Store Date: | 17-Jan-2023 19:42 |
| Status: | opened,read |
| Box Type: | received |
| Folder: | liz proctor Home > Mailbox |
| Message Id: | 63C71436.domain.GWIA.200.2000038.1.86E2F2.1 |

Hi Liz,

Today I noticed that there are two new documents filed with the North
Carolina Secretary of State relating to WE Charity.

On January 13, 2023, WE Charity filed form 8868 and stated that the books
of WE Charity are "in the care of" Victor Li.

This morning, on January 17, 2023, lead document examiner Demian Silvers
wrote to Victor Li, granting him permission to extend WE Charity's federal
tax filing extension until April 15, 2023.

Has the North Carolina Secretary of State determined that Victor Li is now
acting as the CFO of WE Charity and that he has custody of the books of WE
Charity?

Could you let me know how you came to this determination?

Thanks again for all your help with our understanding of this file.

Harvey

On Thu, 5 Jan 2023 at 17:47, liz proctor <lproctor@sosnc.gov> wrote:

> Hi Harvey,
>
> North Carolina statute requires the notary to administer to the treasurer
> or chief financial officer, under penalty of perjury, that they are in fact
> treasurer or chief financial officer and that the information provided to
> North Carolina is true and correct to the best of the knowledge of that
> person. This helps affirm that the substance of the information being

> provided is materially accurate and encourages transparency for North
> Carolina's giving public.
>
> It should also be noted that generally, if concerns are raised about
> inaccuracies in the substance of information provided in filings it is our
> practice to give the organizations in question the opportunity to cure,
> correct or supplement the information they have provided.
>
>
> Liz Proctor
> Public Information Officer
> NC Dept. of the Secretary of State
> (919) 814-5341
> lproctor@sosnc.gov
>
>
>
>
> Connect with us!
>
> On the Web: http://www.sosnc.gov/
> <http://www.sosnc.gov>
>
> Facebook: https://www.facebook.com/NCSecState
> <https://www.facebook.com/NCSecState>
>
> Twitter: https://twitter.com/NCSecState
> <https://twitter.com/NCSecState>
>
> YouTube: https://www.youtube.com/c/NCSecState
> <https://www.youtube.com/c/NCSecState>
>
> Confidentiality Notice: This e-mail message, including any attachments, is
> for the sole use of the intended recipient (s) and may contain confidential
> and privileged information. Any unauthorized use, disclosure, or
> distribution is prohibited.
>
> >>> Harvey Cashore <harvey.cashore@cbc.ca> 1/3/2023 3:21 PM >>>
> Hi Gail and Liz,
>
> Happy New Year.
>
> Just wanted to check in on this and see when we might be getting a

> response.
>
> If you would like to talk more on the phone that would be great as well.
>
> Harvey
>
> On Thu, 22 Dec 2022 at 14:46, Harvey Cashore <harvey.cashore@cbc.ca>
> wrote:
>
>> Dear Gail Eluwa,
>>
>> Thank you for the phone call yesterday.
>>
>> As I said on the phone, I am a journalist with the Canadian Broadcasting
>> Corporation. I work for an investigative documentary program called "The
>> Fifth Estate."
>>
>> I am reaching out about a story we are preparing relating to a
>> Canadian-based charity, WE Charity. WE Charity also has tax-exempt status
>> with the IRS and holds charity solicitation licenses in several states.
>>
>> I have some questions for which I am hoping the North Carolina Secretary
>> of State, Charitable Solicitation Licensing division could provide answers.
>> My story may be published on our website – cbcnews.ca
>> <http://cbcnews.ca>
>> – sometime early in the New Year.
>>
>> My questions relate to documents that WE Charity supplied to your office
>> between 2020 and 2022 as part of its charity license renewal applications.
>> (I am also reaching out to other state charity licensing offices as well).
>>
>> Specifically, my questions relate to Victor Li, who is stated in the
>> documents provided to your office to be acting as the CFO of WE Charity. In
>> the period between the fall of 2020 and 2022, Victor Li's name and
>> signature appear on numerous documents that were sent to your office by WE
>> Charity.
>>
>> To put this all in context, I am trying to understand the significance of
>> the documents that were filed by WE Charity to your office – as compared
>> with other information that Victor Li and his lawyer provided to the
>> Canadian House of Commons parliamentary committee that was looking into WE
>> Charity's finances in 2021.
>>

>> In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on
>> several occasions that Victor Li has been on leave from the charity.
>> Specifically, Victor Li stated to the Parliamentary committee that he went
>> on leave from the charity in the summer of 2020 and that he has not been
>> acting as its CFO since then.
>>
>> In short, I am trying to understand the significance of the information
>> provided to Canadian members of Parliament with the information WE Charity
>> has provided to state licensing boards in the United States.
>>
>> I am hoping you can help me with these questions.
>>
>>
>>    1. Documentation filed with your office:
>>
>>
>> Records provided to your office show that Victor Li signed numerous
>> documents as CFO of WE Charity in the period after he stated he was on
>> leave from the charity, after the summer of 2020.
>>
>> For example, documents provided to your office on July 22, 2021, and
>> October 13, 2022, respectively stated that Victor Li was the Treasurer or
>> CFO of WE Charity, and that he had "final responsibility for custody and/or
>> final distribution of contributions" and that he had "custody of
>> applicant's financial records."
>>
>> Victor Li signed these documents alongside a form that stated: "APPLICANT
>> SIGNATURE: To be signed in the presence of a Notary Public who has
>> administered the following oath: I swear or affirm that the information
>> furnished in this application and all supplemental forms, reports,
>> documents and attachments are true and correct to the best of my knowledge
>> under the penalty of perjury."
>>
>> As required for charities operating in North Carolina, notaries for WE
>> Charity provided their stamp to go along with Victor Li's signature, both
>> in 2021 and 2022.
>>
>> North Carolina records also show that on October 13, 2022, you sent a
>> letter addressed to Victor Li, stating that the WE Charity application was
>> "incomplete" and that the Notary Stamp/Seal" is "still not showing".
>>
>> The records show that WE Charity responded to your letter the same day.
>> This time they provided the notary stamp of a lawyer for WE Charity, Yvonne

>> Mazurak, along with her signature.

>>

>> The records also show that WE Charity provided North Carolina with copies

>> of the Form 990s that they had filed with the IRS. Those form 990 documents

>> show that on November 21, 2020, Victor Li signed Form 990 for the year

>> ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for

>> the year ending August 31, 2021.

>>

>> In both of those Form 990s, Victor Li is listed as a "key employee" and

>> "the principal officer" of the Charity. The form also states that the books

>> are "in the care of Victor Li" and that Victor Li "possesses the

>> organization's books and records."

>>

>> Under Victor Li's signature, the Form 990 documents state: "Under

>> penalties of perjury, I declare that I have examined this return, including

>> accompanying schedules and statements, and to the best of my knowledge and

>> belief, it is true, correct, and complete...."

>>

>>

>>    1. Information provided to the House of Commons ethics committee in

>>    Ottawa:

>>

>>

>> I am trying to understand the significance of the above information

>> provided to your office compared with the information that Victor Li and

>> his lawyer provided to the Canadian House of Commons parliamentary

>> committee that was examining WE Charity's finances in 2021.

>>

>> According to Victor Li and his lawyer, Li had been on medical leave from

>> WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE

>> Charity was publicly stated on several occasions:

>>

>> For example, on March 24 2021, Victor Li's lawyer sent a letter to the

>> Canadian Parliamentary committee that was probing WE Charity's finances.

>> His lawyer, Megan Savard, also sent out a tweet that republished the letter

>> she sent to the committee. Here is the tweet:

>>

>> https://twitter.com/megan__savard/status/1374831474873139201/photo/2

>> <https://twitter.com/megan__savard/status/1374831474873139201/photo/2>

>>

>> In that March 2021 letter, Megan Savard states that Victor Li had already

>> had "a months-long absence from the workplace". The letter states that

>> Victor Li had the inability to concentrate for more than short periods of

>> time. Savard stated that Li's medical condition "currently prevents him
>> from returning to work and his doctor cannot say if he ever will be able to
>> return." As you can see from reading the attached, Victor Li's lawyer
>> stated that a return to work could cause her client undue stress that could
>> lead to his death.
>>
>> In the March 2021 letter, Li summed up his medical leave: "I am still the
>> CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on
>> medical leave since the summer 2020. Since I was placed on medical leave,
>> WE Charity's finances have been handled by a team of accountants led by
>> members of the executive team as well as a director in the Finance
>> department who is a CPA."
>>
>> On April 29, 2021, Victor Li's lawyer sent another letter to the
>> Parliamentary committee in Ottawa. [See attached].
>>
>> In that letter, Victor Li's lawyer again stated that Li "is on indefinite
>> medical leave due to serious health issues." His lawyer said that Li is
>> "unable to review or analyze large numbers of documents, or easily access
>> company records" and that, because of this, "he asked WE Charity to help
>> answer the Committee's numerous questions."
>>
>> In that April 29, 2021 letter Victor Li made the additional statement:
>> "On my doctor's advice, I have been on medical leave since the summer of
>> 2020. I have not been performing the duties of CFO or participating in the
>> daily business of WE Charity or its associated organizations since I
>> started my medical leave. My health issues have significantly impeded, and
>> continue to impede, my ability to work."
>>
>> Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO
>> is on medical leave":
>>
>> https://twitter.com/WE_Comms/status/1363935728258932747
>> <https://twitter.com/WE_Comms/status/1363935728258932747>
>>
>> As well, in May of this year (2022), a former WE Charity board member,
>> Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala
>> stated that Li's medical condition limited his ability to speak for a
>> length of time: "I could only interview Victor briefly- fifteen minutes,
>> and only in the morning, was all the energy he could muster."
>>
>> Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book
>> stating that Victor Li had been "off for months" when the Parliamentary

>> Committe had asked Victor Li to testify (in March and April of 2021.)

>>

>> Questions for your office:

>>

>> Here are my questions:

>>

>> What is the reason that North Carolina requires that a notary affirms the

>> signature of a charity's treasurer or CFO when providing documentation to

>> the North Carolina charity licensing office?

>>

>> How important is it that a charity provides accurate information about

>> its officers and its finances to the North Carolina Secretary of State?

>>

>> How significant would it be if the sworn information provided to your

>> office is not correct?

>>

>> In your opinion, how significant is it that the information that WE

>> Charity provided to your office, along with Victor Li's signature, is not

>> the same as the information that Victor Li and his lawyer provided to the

>> Canadian Parliamentary committee referenced above?

>>

>> In summary, I am hoping to understand, from your perspective, how one can

>> reconcile WE Charity and Victor Li's statements in Canada -- that he was on

>> medical leave from WE Charity, absent from the workplace, that he was not

>> handling the finances of the charity and that he could not "easily access"

>> company records nor concentrate for a length of time -- with documents

>> provided to your office, in the same time period, stating that he was a

>> "key" employee and "principal officer" of WE Charity, and stating that he

>> signed those submissions, under penalty of perjury, affirming the accuracy

>> of the contents of the documents and stating he had responsibility for

>> "custody and/or final distribution of contributions" and that he had

>> "control of the financial records and for signing cheques."

>>

>> Any responses you can provide me to the above questions would be greatly

>> appreciated.

>>

>> Thanks again,

>>

>> Harvey Cashore

>>

>> --

>> Harvey Cashore

>> Producer, The Fifth Estate

>> Pronouns: he and him
>>
>> Cell: 416-526-4704
>>
>>
>
> --
> Harvey Cashore
> Producer, The Fifth Estate
> Pronouns: he and him
>
> Cell: 416-526-4704
>
>


--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

TEXT.htm                                                                    **ATTACHMENT**

Hi Liz,

Today I noticed that there are two new documents filed with the North Carolina Secretary of State relating to WE Charity.

On January 13, 2023, WE Charity filed form 8868 and stated that the books of WE Charity are "in the care of" Victor Li.

This morning, on January 17, 2023, lead document examiner Demian Silvers wrote to Victor Li, granting him permission to extend WE Charity's federal tax filing extension until April 15, 2023.

Has the North Carolina Secretary of State determined that Victor Li is now acting as the CFO of WE Charity and that he has custody of the books of WE Charity?

Could you let me know how you came to this determination?

Thanks again for all your help with our understanding of this file.

Harvey

On Thu, 5 Jan 2023 at 17:47, liz proctor < lproctor@sosnc.gov> wrote:
  Hi Harvey,

  North Carolina statute requires the notary to administer to the treasurer or chief financial officer, under penalty of perjury, that they are in fact treasurer or chief financial officer and that the information provided to North Carolina is true and correct to the best of the knowledge of that person. This helps affirm that the substance of the information being provided is materially accurate and encourages transparency for North Carolina's giving public.

  It should also be noted that generally, if concerns are raised about inaccuracies in the substance of information provided in filings it is our practice to give the organizations in question the opportunity to cure, correct or supplement the information they have provided.


  Liz Proctor
  Public Information Officer
  NC Dept. of the Secretary of State
  (919) 814-5341
  lproctor@sosnc.gov



  Connect with us!

  On the Web: http://www.sosnc.gov/

  Facebook: https://www.facebook.com/NCSecState

  Twitter: https://twitter.com/NCSecState

  YouTube: https://www.youtube.com/c/NCSecState

  Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient (s) and may contain confidential and privileged information. Any unauthorized use, disclosure, or distribution is prohibited.

  >>> Harvey Cashore <harvey.cashore@cbc.ca> 1/3/2023 3:21 PM >>>
  Hi Gail and Liz,

  Happy New Year.

contain confidential and privileged information. Any unauthorized use, disclosure, or distribution is prohibited.

>>> Harvey Cashore <harvey.cashore@cbc.ca> 1/3/2023 3:21 PM >>>
Hi Gail and Liz,

Happy New Year,

Just wanted to check in on this and see when we might be getting a response,

If you would like to talk more on the phone that would be great as well.

Harvey

On Thu, 22 Dec 2022 at 14:46, Harvey Cashore < harvey.cashore@cbc.ca> wrote:
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021,

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

**A. Documentation filed with your office:**

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information

Victor as was the treasurer of CFC of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete…."

**B. Information provided to the House of Commons ethics committee in Ottawa:**

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave,

WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave,

WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and /or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704


--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704


--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

**MAIL**

| | |
|---|---|
| **From:** | lproctor@sosnc.gov |
| **To:** | Gail Eluwa, Harvey Cashore |
| **Subject:** | Re: [Caution: External Mail] Re: Questions from the Canadian Broadcasting Corporation |
| **Date:** | 05-Jan-2023 17:47 |
| **Attachments:** | TEXT.htm [Save] [Open] |
| **Creation Date:** | 05-Jan-2023 17:47 |
| **Store Date:** | 13-Jan-2023 00:41 |
| **Status:** | opened,read |
| **Box Type:** | received |
| **Folder:** | Gail Eluwa Home > Management > Mailbox |
| **Message Id:** | 63B7537D.domain.PO.200.20000BA.1.F77C4.1 |

Hi Harvey,


North Carolina statute requires the notary to administer to the treasurer or chief financial officer, under penalty of perjury, that they are in fact treasurer or chief financial officer and that the information provided to North Carolina is true and correct to the best of the knowledge of that person. This helps affirm that the substance of the information being provided is materially accurate and encourages transparency for North Carolina's giving public.
It should also be noted that generally, if concerns are raised about inaccuracies in the substance of information provided in filings it is our practice to give the organizations in question the opportunity to cure, correct or supplement the information they have provided.

Liz Proctor
Public Information Officer
NC Dept. of the Secretary of State
(919) 814-5341
lproctor@sosnc.gov




>>> Harvey Cashore <harvey.cashore@cbc.ca> 1/3/2023 3:21 PM >>>
Hi Gail and Liz,

Happy New Year.

Just wanted to check in on this and see when we might be getting a response.

If you would like to talk more on the phone that would be great as well.

Harvey

On Thu, 22 Dec 2022 at 14:46, Harvey Cashore <harvey.cashore@cbc.ca> wrote:

Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal" is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause

her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

Questions for your office:

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada -- that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time -- with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

TEXT.htm                                                                    **ATTACHMENT**

Hi Harvey,

North Carolina statute requires the notary to administer to the treasurer or chief financial officer, under penalty of perjury, that they are in fact treasurer or chief financial officer and that the information provided to North Carolina is true and correct to the best of the knowledge of that person. This helps affirm that the substance of the information being provided is materially accurate and encourages transparency for North Carolina's giving public.

It should also be noted that generally, if concerns are raised about inaccuracies in the substance of information provided in filings it is our practice to give the organizations in question the opportunity to cure, correct or supplement the information they have provided.

Liz Proctor
Public Information Officer
NC Dept. of the Secretary of State
(919) 814-5341
lproctor@sosnc.gov

>>> Harvey Cashore <harvey.cashore@cbc.ca> 1/3/2023 3:21 PM >>>
Hi Gail and Liz,

Happy New Year.

Just wanted to check in on this and see when we might be getting a response.

If you would like to talk more on the phone that would be great as well.

Harvey

On Thu, 22 Dec 2022 at 14:46, Harvey Cashore < harvey.cashore@cbc.ca> wrote:
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

**A. Documentation filed with your office:**

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal" is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

**B. Information provided to the House of Commons ethics committee in Ottawa:**

examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

**B. Information provided to the House of Commons ethics committee in Ottawa:**

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached.]

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704


--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

**MAIL**

| | |
|---|---|
| **From:** | tcrowley@sosnc.gov |
| **To:** | William Toole, Gail Eluwa, liz proctor |
| **Subject:** | Re: Fwd: [Caution: External Mail] Questions from the Canadian Broadcasting Corporation |
| **Date:** | 05-Jan-2023 15:24 |
| **Attachments:** | TEXT.htm [Save] [Open] |
| | IMAGE.jpeg [Save] [Open] |
| **Creation Date:** | 05-Jan-2023 15:24 |
| **Store Date:** | 13-Jan-2023 06:23 |
| **Status:** | |
| **Box Type:** | received |
| **Folder:** | William Toole > Mailbox > Agency Groups > CSL > Complaints > WE Charity |
| **Message Id:** | 63B731FB.domain.PO.200.2000022.1.12B11B.1 |

Nice work. Bill and I reviewed. We are good with adding the additional language straight from the form. Let me know if anyone sees red flags with this.



North Carolina statute requires the notary to administer to the treasurer or chief financial officer, under penalty of perjury, that they are in fact treasurer or chief financial officer and that the information provided to North Carolina is true and correct to the best of the knowledge of that person. This helps affirm that the substance of the information being provided is materially accurate and encourages transparency for North Carolina's giving public.

It should also be noted that generally, if concerns are raised about inaccuracies in the substance of information provided in filings it is our practice to give the organizations in question the opportunity to cure, correct or supplement the information they have provided.

>>> liz proctor 1/5/2023 2:56 PM >>>
My suggested responses are below in bold. This may be the extent of the response we want to provide to Mr. Cashore's questions at this point.

North Carolina requires notarization of signatures on applications for charitable solicitation licenses to help affirm that the substance of the information being provided is materially accurate and to encourage transparency for North Carolina's giving public. It should also be noted that generally, if concerns are raised about inaccuracies in the substance of information provided in filings it is our practice to give the organizations in question the opportunity to cure, correct or supplement the information they've provided.
Thanks,

Liz


Liz Proctor
Public Information Officer
NC Dept. of the Secretary of State
(919) 814-5341

lproctor@sosnc.gov


>>> Gail Eluwa 1/4/2023 11:40 AM >>>
I spoke with Liz briefly yesterday regarding the questions from Harvey Cashore.  When is good time to discuss this inquiry?



Post Office Box 29622Raleigh, NC
27626www.sosnc.govgeluwa@sosnc.govhttps://www.facebook.com/NCSecState/@NCSecState
( https://twitter.com/NCSecState) Tel: (919) 814-5281Fax: (919) 807-2220


>>> Tim Crowley 12/22/2022 5:18 PM >>>
Let's pick this matter back up after the Christmas Break.   Get some rest everyone and stay warm.  Happy Holidays.
>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office -- as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal" is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

Questions for your office:

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore


--
Harvey Cashore
Producer, The Fifth Estate

Pronouns: he and him

Cell: 416-526-4704

Nice work. Bill and I reviewed. We are good with adding the additional language straight from the form. Let me know if anyone sees red flags with this.


North Carolina statute requires the notary to administer to the treasurer or chief financial officer, under penalty of perjury, that they are in fact treasurer or chief financial officer and that the information provided to North Carolina is true and correct to the best of the knowledge of that person. This helps affirm that the substance of the information being provided is materially accurate and encourages transparency for North Carolina's giving public.

It should also be noted that generally, if concerns are raised about inaccuracies in the substance of information provided in filings it is our practice to give the organizations in question the opportunity to cure, correct or supplement the information they have provided.

>>> liz proctor 1/5/2023 2:56 PM >>>
My suggested responses are below in bold. This may be the extent of the response we want to provide to Mr. Cashore's questions at this point.

North Carolina requires notarization of signatures on applications for charitable solicitation licenses to help affirm that the substance of the information being provided is materially accurate and to encourage transparency for North Carolina's giving public.
It should also be noted that generally, if concerns are raised about inaccuracies in the substance of information provided in filings it is our practice to give the organizations in question the opportunity to cure, correct or supplement the information they've provided.
Thanks,

Liz


Liz Proctor
Public Information Officer
NC Dept. of the Secretary of State
(919) 814-5341
lproctor@sosnc.gov


>>> Gail Eluwa 1/4/2023 11:40 AM >>>
I spoke with Liz briefly yesterday regarding the questions from Harvey Cashore. When is good time to discuss this inquiry?


Post Office Box 29622 Raleigh, NC 27626 www.sosnc.gov geluwa@sosnc.gov https://www.facebook.com /NCSecState/ @NCSecState Tel: (919) 814-5281 Fax: (919) 807-2220

>>> Tim Crowley 12/22/2022 5:18 PM >>>
Let's pick this matter back up after the Christmas Break.  Get some rest everyone and stay warm. Happy Holidays.
>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>

Dear Gail Eluwa,

Thank you for the phone call yesterday.

Cashore's questions are at the end of the email.

>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>

Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

### A. Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal" is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete…."

**B. Information provided to the House of Commons ethics committee in Ottawa:**

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of

that, because of this, he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

Cell: 416-526-4704

**MAIL**

| | |
|---|---|
| **From:** | lproctor@sosnc.gov |
| **To:** | William Toole, Tim Crowley, Gail Eluwa |
| **Subject:** | Re: Fwd: [Caution: External Mail] Questions from the Canadian Broadcasting Corporation |
| **Date:** | 05-Jan-2023 14:56 |
| **Attachments:** | TEXT.htm  [Save]  [Open] |
| | IMAGE.jpeg  [Save]  [Open] |
| **Creation Date:** | 05-Jan-2023 14:56 |
| **Store Date:** | 13-Jan-2023 03:17 |
| **Status:** | accepted,opened,read,replied |
| **Box Type:** | sent |
| **Folder:** | liz proctor Home > Sent Items |
| **Message Id:** | 63B72B68.domain.PO.200.20000BA.1.F7737.1 |

My suggested responses are below in bold. This may be the extent of the response we want to provide to Mr. Cashore's questions at this point.

North Carolina requires notarization of signatures on applications for charitable solicitation licenses to help affirm that the substance of the information being provided is materially accurate and to encourage transparency for North Carolina's giving public.
It should also be noted that generally, if concerns are raised about inaccuracies in the substance of information provided in filings it is our practice to give the organizations in question the opportunity to cure, correct or supplement the information they've provided.

Thanks,


Liz


Liz Proctor
Public Information Officer
NC Dept. of the Secretary of State
(919) 814-5341
lproctor@sosnc.gov




>>> Gail Eluwa 1/4/2023 11:40 AM >>>
I spoke with Liz briefly yesterday regarding the questions from Harvey Cashore.  When is good time to discuss this inquiry?

Post Office Box 29622Raleigh, NC

27626www.sosnc.govgeluwa@sosnc.govhttps://www.facebook.com/NCSecState/@NCSecState

( https://twitter.com/NCSecState) Tel: (919) 814-5281Fax: (919) 807-2220

>>> Tim Crowley 12/22/2022 5:18 PM >>>

Let's pick this matter back up after the Christmas Break.   Get some rest everyone and stay warm.  Happy Holidays.

>>> liz proctor 12/22/2022 3:52 PM >>>

Cashore's questions are at the end of the email.

>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>

Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

Questions for your office:

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

~

Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him


Cell: 416-526-4704

TEXT.htm                                                                                    **ATTACHMENT**

My suggested responses are below in bold. This may be the extent of the response we want to provide to Mr. Cashore's questions at this point.

**North Carolina requires notarization of signatures on applications for charitable solicitation licenses to help affirm that the substance of the information being provided is materially accurate and to encourage transparency for North Carolina's giving public.**

**It should also be noted that generally, if concerns are raised about inaccuracies in the substance of information provided in filings it is our practice to give the organizations in question the opportunity to cure, correct or supplement the information they've provided.**

Thanks,


Liz



Liz Proctor
Public Information Officer
NC Dept. of the Secretary of State
(919) 814-5341
lproctor@sosnc.gov


>>> Gail Eluwa 1/4/2023 11:40 AM >>>
I spoke with Liz briefly yesterday regarding the questions from Harvey Cashore. When is good time to discuss this inquiry?



Post Office Box 29622 Raleigh, NC  27626 www.sosnc.gov geluwa@sosnc.gov https://www.facebook.com /NCSecState/ @NCSecState Tel: (919) 814-5281 Fax: (919) 807-2220

>>> Tim Crowley 12/22/2022 5:18 PM >>>
Let's pick this matter back up after the Christmas Break.  Get some rest everyone and stay warm.  Happy Holidays.
>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

**A. Documentation filed with your office:**

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and

the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

**B. Information provided to the House of Commons ethics committee in Ottawa:**

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

**MAIL**

| | |
|---|---|
| From: | geluwa@sosnc.gov |
| To: | William Toole, Tim Crowley, Gail Eluwa, liz proctor |
| Subject: | Re: Fwd: [Caution: External Mail] Questions from the Canadian Broadcasting Corporation |
| Date: | 05-Jan-2023 14:45 |
| Attachments: | TEXT.htm [Save] [Open] |
| | IMAGE_10.jpeg [Save] [Open] |
| Creation Date: | 05-Jan-2023 14:45 |
| Store Date: | 13-Jan-2023 00:41 |
| Status: | opened,read |
| Box Type: | received |
| Folder: | Gail Eluwa Home > Management > Mailbox |
| Message Id: | 63B728E8.domain.PO.200.2000041.1.A1D2F.1 |

I think we should focus on the specific questions the reporter asked and provide a general response as you have crafted.




Post Office Box 29622Raleigh, NC

27626www.sosnc.govgeluwa@sosnc.govhttps://www.facebook.com/NCSecState/@NCSecState ( https://twitter.com/NCSecState )Tel: (919) 814-5281Fax: (919) 807-2220


>>> Tim Crowley 12/22/2022 5:18 PM >>>
Let's pick this matter back up after the Christmas Break.   Get some rest everyone and stay warm.  Happy Holidays.
>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

Questions for your office:

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--

Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

TEXT.htm                                  **ATTACHMENT**

I think we should focus on the specific questions the reporter asked and provide a general response as you have crafted.

Post Office Box 29622 Raleigh, NC  27626 www.sosnc.gov geluwa@sosnc.gov https://www.facebook.com /NCSecState/ @NCSecState Tel: (919) 814-5281 Fax: (919) 807-2220

>>> Tim Crowley 12/22/2022 5:18 PM >>>
Let's pick this matter back up after the Christmas Break.  Get some rest everyone and stay warm.  Happy Holidays.
>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

A. Documentation filed with your office:

with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

## A. Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

## B. Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committee had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

**MAIL**

| | |
|---|---|
| From: | tcrowley@sosnc.gov |
| To: | William Toole, Gail Eluwa, liz proctor |
| Subject: | Re: Fwd: [Caution: External Mail] Questions from the Canadian Broadcasting Corporation |
| Date: | 04-Jan-2023 13:01 |
| Attachments: | TEXT.htm [Save]  [Open] |
| | IMAGE.jpeg [Save]  [Open] |
| Creation Date: | 04-Jan-2023 13:01 |
| Store Date: | 13-Jan-2023 00:40 |
| Status: | opened,read |
| Box Type: | received |
| Folder: | Gail Eluwa Home > Management > Mailbox |
| Message Id: | 63B5BEE3.domain.PO.200.2000022.1.12AED3.1 |

sent invite for a phone call at 4pm.  I will call each of your cell phones and merge you into a call with Bill and I.

>>> Gail Eluwa 1/4/2023 11:40 AM >>>

I spoke with Liz briefly yesterday regarding the questions from Harvey Cashore.  When is good time to discuss this inquiry?

Post Office Box 29622Raleigh, NC

27626www.sosnc.govgeluwa@sosnc.govhttps://www.facebook.com/NCSecState/@NCSecState

( https://twitter.com/NCSecState) Tel: (919) 814-5281Fax: (919) 807-2220

>>> Tim Crowley 12/22/2022 5:18 PM >>>

Let's pick this matter back up after the Christmas Break.   Get some rest everyone and stay warm.  Happy Holidays.

>>> liz proctor 12/22/2022 3:52 PM >>>

Cashore's questions are at the end of the email.

>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>

Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

Questions for your office:

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

TEXT.htm                                                                    **ATTACHMENT**

sent invite for a phone call at 4pm.  I will call each of your cell phones and merge you into a call with Bill and I.
>>> Gail Eluwa 1/4/2023 11:40 AM >>>
I spoke with Liz briefly yesterday regarding the questions from Harvey Cashore.  When is good time to discuss this inquiry?

Post Office Box 29622 Raleigh, NC  27626 **www.sosnc.gov geluwa@sosnc.gov https://www.facebook.com /NCSecState/** @NCSecState Tel: (919) 814-5281 Fax: (919) 807-2220

>>> Tim Crowley 12/22/2022 5:18 PM >>>
Let's pick this matter back up after the Christmas Break.  Get some rest everyone and stay warm. Happy Holidays.
>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

## A. Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete…."

## B. Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

**MAIL**

| | |
|---|---|
| **From:** | geluwa@sosnc.gov |
| **To:** | William Toole, Tim Crowley, Gail Eluwa, liz proctor |
| **Subject:** | Re: Fwd: [Caution: External Mail] Questions from the Canadian Broadcasting Corporation. |
| **Date:** | 04-Jan-2023 11:40 |
| **Attachments:** | TEXT.htm [Save]  [Open] |
| | IMAGE_7.jpeg. [Save]  [Open] |
| **Creation Date:** | 04-Jan-2023 11:40 |
| **Store Date:** | 12-Jan-2023 20:41 |
| **Status:** | opened,read,replied |
| **Box Type:** | received |
| **Folder:** | Timothy Crowley > Mailbox |
| **Message Id:** | 63B5AC0E.domain.PO.200.2000041.1.A1CA3.1 |

I spoke with Liz briefly yesterday regarding the questions from Harvey Cashore.  When is good time to discuss this inquiry?

Post Office Box 29622Raleigh, NC

27626www.sosnc.govgeluwa@sosnc.govhttps://www.facebook.com/NCSecState/@NCSecState ( https://twitter.com/NCSecState )Tel: (919) 814-5281Fax: (919) 807-2220

>>> Tim Crowley 12/22/2022 5:18 PM >>>
Let's pick this matter back up after the Christmas Break.   Get some rest everyone and stay warm.  Happy Holidays.
>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website -- cbcnews.ca -- sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office -- as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

Questions for your office:

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time -- with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

TEXT.htm                                                                    **ATTACHMENT**

I spoke with Liz briefly yesterday regarding the questions from Harvey Cashore.  When is good time to discuss this inquiry?

Post Office Box 29622 Raleigh, NC  27626 www.sosnc.gov geluwa@sosnc.gov https://www.facebook.com /NCSecState/ @NCSecState Tel: (919) 814-5281 Fax: (919) 807-2220

>>> Tim Crowley 12/22/2022 5:18 PM >>>
Let's pick this matter back up after the Christmas Break,   Get some rest everyone and stay warm.  Happy Holidays.
>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

A.  **Documentation filed with your office:**

with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

## A. Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal" is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete…."

## B. Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li was "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

**MAIL**

| | |
|---|---|
| **From:** | lproctor@sosnc.gov |
| **To:** | Tim Crowley |
| **Subject:** | Fwd: [Caution: External Mail] Re: Questions from the Canadian Broadcasting Corporation |
| **Date:** | 03-Jan-2023 16:20 |
| **Attachments:** | TEXT.htm [Save]  [Open] |
| **Creation Date:** | 03-Jan-2023 16:20 |
| **Store Date:** | 13-Jan-2023 03:17 |
| **Status:** | accepted,opened,read |
| **Box Type:** | sent |
| **Folder:** | liz proctor Home > Sent Items |
| **Message Id:** | 63B49C2A.domain.PO.200.20000BA.1.F7330.1 |

Hey Tim --

Gail and I are going over the documents that Cashore sent just before the Christmas break but I wanted to see if you and Bill have had any further conversations about this request.

Thanks,

Liz

>>> Harvey Cashore <harvey.cashore@cbc.ca> 1/3/2023 3:21 PM >>>
Hi Gail and Liz,

Happy New Year.

Just wanted to check in on this and see when we might be getting a response.

If you would like to talk more on the phone that would be great as well.

Harvey

On Thu, 22 Dec 2022 at 14:46, Harvey Cashore <harvey.cashore@cbc.ca> wrote:


Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New

Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office -- as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal" is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

Questions for your office:

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time -- with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

TEXT.htm                                                                          **ATTACHMENT**

Hey Tim --

Gail and I are going over the documents that Cashore sent just before the Christmas break but I wanted to see if you and Bill have had any further conversations about this request.

Thanks,

Liz
>>> Harvey Cashore <harvey.cashore@cbc.ca> 1/3/2023 3:21 PM >>>
Hi Gail and Liz,

Happy New Year.

Just wanted to check in on this and see when we might be getting a response.

If you would like to talk more on the phone that would be great as well.

Harvey

On Thu, 22 Dec 2022 at 14:46, Harvey Cashore < harvey.cashore@cbc.ca> wrote:
  Dear Gail Eluwa,

  Thank you for the phone call yesterday.

  As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

  I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

  I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New Year.

  My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

  Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

  To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

  In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

  In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

### A. Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal" is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

### B. Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committee had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704


--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

**MAIL**

| | |
|---|---|
| **From:** | harvey.cashore@cbc.ca |
| **To:** | Gail Eluwa |
| **CC:** | liz proctor |
| **Subject:** | [Caution: External Mail] Re: Questions from the Canadian Broadcasting Corporation |
| **Date:** | 03-Jan-2023 15:22 |
| **Attachments:** | TEXT.htm [Save] [Open] |
| | headers.822 [Save] [Open] |
| | Mime.822 *(excluded from export)* |
| **Creation Date:** | 03-Jan-2023 15:21 |
| **Store Date:** | 13-Jan-2023 03:17 |
| **Status:** | forwarded,opened,read,replied |
| **Box Type:** | received |
| **Folder:** | liz proctor Home > Mailbox |
| **Message Id:** | 63B48E68.domain.GWIA.200.2000061.1.84C1E4.1 |

Hi Gail and Liz,

Happy New Year.

Just wanted to check in on this and see when we might be getting a response.

If you would like to talk more on the phone that would be great as well.

Harvey

On Thu, 22 Dec 2022 at 14:46, Harvey Cashore <harvey.cashore@cbc.ca> wrote:

> Dear Gail Eluwa,
>
> Thank you for the phone call yesterday.
>
> As I said on the phone, I am a journalist with the Canadian Broadcasting
> Corporation. I work for an investigative documentary program called "The
> Fifth Estate."
>
> I am reaching out about a story we are preparing relating to a
> Canadian-based charity, WE Charity. WE Charity also has tax-exempt status
> with the IRS and holds charity solicitation licenses in several states.
>
> I have some questions for which I am hoping the North Carolina Secretary
> of State, Charitable Solicitation Licensing division could provide
> answers. My story may be published on our website – cbcnews.ca –
> sometime early in the New Year.
>
> My questions relate to documents that WE Charity supplied to your office
> between 2020 and 2022 as part of its charity license renewal applications.

> (I am also reaching out to other state charity licensing offices as well).
>
> Specifically, my questions relate to Victor Li, who is stated in the
> documents provided to your office to be acting as the CFO of WE Charity.
> In the period between the fall of 2020 and 2022, Victor Li's name and
> signature appear on numerous documents that were sent to your office by WE
> Charity.
>
> To put this all in context, I am trying to understand the significance of
> the documents that were filed by WE Charity to your office – as compared
> with other information that Victor Li and his lawyer provided to the
> Canadian House of Commons parliamentary committee that was looking into WE
> Charity's finances in 2021.
>
> In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on
> several occasions that Victor Li has been on leave from the charity.
> Specifically, Victor Li stated to the Parliamentary committee that he went
> on leave from the charity in the summer of 2020 and that he has not been
> acting as its CFO since then.
>
> In short, I am trying to understand the significance of the information
> provided to Canadian members of Parliament with the information WE Charity
> has provided to state licensing boards in the United States.
>
> I am hoping you can help me with these questions.
>
>
> 1.
>
> Documentation filed with your office:
>
>
> Records provided to your office show that Victor Li signed numerous
> documents as CFO of WE Charity in the period after he stated he was on
> leave from the charity, after the summer of 2020.
>
> For example, documents provided to your office on July 22, 2021, and
> October 13, 2022, respectively stated that Victor Li was the Treasurer or
> CFO of WE Charity, and that he had "final responsibility for custody and/or
> final distribution of contributions" and that he had "custody of
> applicant's financial records."
>
> Victor Li signed these documents alongside a form that stated: "APPLICANT

> SIGNATURE: To be signed in the presence of a Notary Public who has
> administered the following oath:  I swear or affirm that the information
> furnished in this application and all supplemental forms, reports,
> documents and attachments are true and correct to the best of my knowledge
> under the penalty of perjury."
>
> As required for charities operating in North Carolina, notaries for WE
> Charity provided their stamp to go along with Victor Li's signature, both
> in 2021 and 2022.
>
> North Carolina records also show that on October 13, 2022, you sent a
> letter addressed to Victor Li, stating that the WE Charity application was
> "incomplete" and that the Notary Stamp/Seal" is "still not showing".
>
> The records show that WE Charity responded to your letter the same day.
> This time they provided the notary stamp of a lawyer for WE Charity, Yvonne
> Mazurak, along with her signature.
>
> The records also show that WE Charity provided North Carolina with copies
> of the Form 990s that they had filed with the IRS.    Those form 990
> documents show that on November 21, 2020, Victor Li signed Form 990 for the
> year ending August 31, 2020.  On January 8, 2022, Victor Li signed Form 990
> for the year ending August 31, 2021.
>
> In both of those Form 990s, Victor Li is listed as a "key employee" and
> "the principal officer" of the Charity. The form also states that the books
> are "in the care of Victor Li" and that Victor Li "possesses the
> organization's books and records."
>
> Under Victor Li's signature, the Form 990 documents state:  "Under
> penalties of perjury, I declare that I have examined this return, including
> accompanying schedules and statements, and to the best of my knowledge and
> belief, it is true, correct, and complete…."
>
>
> 1.
>
> Information provided to the House of Commons ethics committee in
> Ottawa:
>
>
> I am trying to understand the significance of the above information
> provided to your office compared with the information that Victor Li and

> his lawyer provided to the Canadian House of Commons parliamentary
> committee that was examining WE Charity's finances in 2021.
>
> According to Victor Li and his lawyer, Li had been on medical leave from
> WE Charity as of the summer of 2020.  In Canada, Li's medical leave from WE
> Charity was publicly stated on several occasions:
>
> For example, on March 24 2021, Victor Li's lawyer sent a letter to the
> Canadian Parliamentary committee that was probing WE Charity's finances.
> His lawyer, Megan Savard, also sent out a tweet that republished the letter
> she sent to the committee. Here is the tweet:
>
> https://twitter.com/megan__savard/status/1374831474873139201/photo/2
>
> In that March 2021 letter, Megan Savard states that Victor Li had already
> had "a months-long absence from the workplace". The letter states that
> Victor Li had the inability to concentrate for more than short periods of
> time.  Savard stated that Li's medical condition "currently prevents him
> from returning to work and his doctor cannot say if he ever will be able to
> return."  As you can see from reading the attached, Victor Li's lawyer
> stated that a return to work could cause her client undue stress that could
> lead to his death.
>
>
> In the March 2021 letter, Li summed up his medical leave: "I am still the
> CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on
> medical leave since the summer 2020. Since I was placed on medical leave,
> WE Charity's finances have been handled by a team of accountants led by
> members of the executive team as well as a director in the Finance
> department who is a CPA."
>
> On April 29, 2021, Victor Li's lawyer sent another letter to the
> Parliamentary committee in Ottawa.  [See attached].
>
> In that letter, Victor Li's lawyer again stated that Li "is on indefinite
> medical leave due to serious health issues."   His lawyer said that Li is
> "unable to review or analyze large numbers of documents, or easily access
> company records" and that, because of this, "he asked WE Charity to help
> answer the Committee's numerous questions."
>
> In that April 29, 2021 letter Victor Li made the additional statement:
> "On my doctor's advice, I have been on medical leave since the summer of
> 2020. I have not been performing the duties of CFO or participating in the

> daily business of WE Charity or its associated organizations since I
> started my medical leave. My health issues have significantly impeded, and
> continue to impede, my ability to work."
>
> Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO
> is on medical leave":
>
> https://twitter.com/WE_Comms/status/1363935728258932747
>
> As well, in May of this year (2022), a former WE Charity board member,
> Tawfiq Rangwala, published a book about WE Charity.  In the book Rangwala
> stated that Li's medical condition limited his ability to speak for a
> length of time:  "I could only interview Victor briefly- fifteen minutes,
> and only in the morning, was all the energy he could muster."
>
> Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book
> stating that Victor Li had been "off for months" when the Parliamentary
> Committe had asked Victor Li to testify (in March and April of 2021.)
>
> Questions for your office:
>
> Here are my questions:
>
> What is the reason that North Carolina requires that a notary affirms the
> signature of a charity's treasurer or CFO when providing documentation to
> the North Carolina charity licensing office?
>
> How important is it that a charity provides accurate information about its
> officers and its finances to the North Carolina Secretary of State?
>
> How significant would it be if the sworn information provided to your
> office is not correct?
>
> In your opinion, how significant is it that the information that WE
> Charity provided to your office, along with Victor Li's signature, is not
> the same as the information that Victor Li and his lawyer provided to the
> Canadian Parliamentary committee referenced above?
>
> In summary, I am hoping to understand, from your perspective, how one can
> reconcile WE Charity and Victor Li's statements in Canada – that he was on
> medical leave from WE Charity, absent from the workplace, that he was not
> handling the finances of the charity and that he could not "easily access"
> company records nor concentrate for a length of time – with documents

> provided to your office, in the same time period, stating that he was a
> "key" employee and "principal officer" of WE Charity, and stating that he
> signed those submissions, under penalty of perjury, affirming the accuracy
> of the contents of the documents and stating he had responsibility for
> "custody and/or final distribution of contributions" and that he had
> "control of the financial records and for signing cheques."
>
> Any responses you can provide me to the above questions would be greatly
> appreciated.
>
> Thanks again,
>
> Harvey Cashore
>
> --
> Harvey Cashore
> Producer, The Fifth Estate
> Pronouns: he and him
>
> Cell: 416-526-4704
>
>


--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

TEXT.htm                                                                    **ATTACHMENT**

Hi Gail and Liz,

Happy New Year.

Just wanted to check in on this and see when we might be getting a response.

If you would like to talk more on the phone that would be great as well.

Harvey

On Thu, 22 Dec 2022 at 14:46, Harvey Cashore < harvey.cashore@cbc.ca> wrote:
   Dear Gail Eluwa,

   Thank you for the phone call yesterday.

   As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation.  I work for an investigative
   documentary program called "The Fifth Estate."

   I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity.  WE Charity also
   has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

   I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing
   division could provide answers.  My story may be published on our website -- cbcnews.ca -- sometime early in the
   New Year.

   My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its
   charity license renewal applications.  (I am also reaching out to other state charity licensing offices as well).

   Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as
   the CFO of WE Charity.  In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on
   numerous documents that were sent to your office by WE Charity.

   To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity
   to your office -- as compared with other information that Victor Li and his lawyer provided to the Canadian House of
   Commons parliamentary committee that was looking into WE Charity's finances in 2021.

   In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been
   on leave from the charity.   Specifically, Victor Li stated to the Parliamentary committee that he went on leave from
   the charity in the summer of 2020 and that he has not been acting as its CFO since then.

   In short, I am trying to understand the significance of the information provided to Canadian members of Parliament
   with the information WE Charity has provided to state licensing boards in the United States.

   I am hoping you can help me with these questions.

   **A. Documentation filed with your office:**

   Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the
   period after he stated he was on leave from the charity, after the summer of 2020.

### A. Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal" is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

### B. Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not

handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key"

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

**MAIL**

| | |
|---|---|
| From: | csl@sosnc.gov |
| To: | Harvey Cashore |
| Subject: | Re: [Caution: External Mail] Canadian Broadcasting Corporation inquiry |
| Date: | 28-Dec-2022 09:57 |
| Attachments: | TEXT.htm  [Save]  [Open] |
| Creation Date: | 28-Dec-2022 09:57 |
| Store Date: | 28-Dec-2022 17:32 |
| Status: | accepted,opened,read |
| Box Type: | sent |
| Folder: | CSL Home > Sent Items |
| Message Id: | 63AC595D.domain.PO.200.2000079.1.AF145.1 |

Good morning Harvey,

Please contact Liz Proctor regarding any questions you may have.

(919) 814-5341

Thanks,



NC Department of the Secretary of State

Charitable Solicitation Licensing Division (CSL)
Post Office Box 29622
Raleigh, NC 27626-0622
919.814-5400
919.807-2220 (Fax)

>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/18/2022 9:54 AM >>>
To Whom It May Concern:

I am a journalist with the Canadian Broadcasting Corporation.

I am researching a story about a Canadian-based charity, WE Charity.

I would like to speak with someone in your office about the filings WE Charity made to North Carolina this year as part of its solicitation license application.

I have some specific questions about particular documents that you were provided, and how they compare to additional documentation in the research.

Would it be possible to discuss this more on the phone?

I can be reached at 416-526-4704 and at this email address.

I look forward to hearing back from you.

Best regards,

Harvey Cashore
Producer, CBC - The Fifth Estate

TEXT.htm                                                                    **ATTACHMENT**

Good morning Harvey,

Please contact Liz Proctor regarding any questions you may have.

(919) 814-5341

Thanks,

NC Department of the Secretary of State

Charitable Solicitation Licensing Division (CSL)
Post Office Box 29622
Raleigh, NC 27626-0622
919.814-5400
919.807-2220 (Fax)

>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/18/2022 9:54 AM >>>
To Whom It May Concern:

I am a journalist with the Canadian Broadcasting Corporation.

I am researching a story about a Canadian-based charity, WE Charity.

I would like to speak with someone in your office about the filings WE Charity made to North Carolina this year as part of its solicitation license application.

I have some specific questions about particular documents that you were provided, and how they compare to additional documentation in the research.

Would it be possible to discuss this more on the phone?

I can be reached at 416-526-4704 and at this email address.

I look forward to hearing back from you.

Best regards,

Harvey Cashore
Producer, CBC - The Fifth Estate

**MAIL**

| | |
|---|---|
| From: | tcrowley@sosnc.gov |
| To: | William Toole, Gail Eluwa, liz proctor |
| Subject: | Fwd: [Caution: External Mail] Questions from the Canadian Broadcasting Corporation |
| Date: | 22-Dec-2022 17:18 |
| Attachments: | TEXT.htm [Save] [Open] |
| | 2021 04 09 Victor Li lawyer letter to Parliamentary Committee.pdf [Save] [Open] |
| Creation Date: | 22-Dec-2022 17:18 |
| Store Date: | 22-Dec-2022 19:08 |
| Status: | opened, read, replied |
| Box Type: | received |
| Folder: | William Toole > Mailbox > Agency Groups > CSL > Complaints > WE Charity |
| Message Id: | 63A4D7CE.domain.PO.200.2000022.1.12A38D.1 |

Let's pick this matter back up after the Christmas Break.   Get some rest everyone and stay warm.  Happy Holidays.
>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing division could provide answers. My story may be published on our website -- cbcnews.ca – sometime early in the New Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to your office -- as compared with other information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

Documentation filed with your office:

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

Information provided to the House of Commons ethics committee in Ottawa:

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining

WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committe had asked Victor Li to testify (in March and April of 2021.)

Questions for your office:

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704

Let's pick this matter back up after the Christmas Break.   Get some rest everyone and stay warm.  Happy Holidays.
>>> liz proctor 12/22/2022 3:52 PM >>>
Cashore's questions are at the end of the email.
>>> Harvey Cashore <harvey.cashore@cbc.ca> 12/22/2022 2:46 PM >>>
Dear Gail Eluwa,

Thank you for the phone call yesterday.

As I said on the phone, I am a journalist with the Canadian Broadcasting Corporation. I work for an investigative
documentary program called "The Fifth Estate."

I am reaching out about a story we are preparing relating to a Canadian-based charity, WE Charity. WE Charity also
has tax-exempt status with the IRS and holds charity solicitation licenses in several states.

I have some questions for which I am hoping the North Carolina Secretary of State, Charitable Solicitation Licensing
division could provide answers. My story may be published on our website – cbcnews.ca – sometime early in the New
Year.

My questions relate to documents that WE Charity supplied to your office between 2020 and 2022 as part of its charity
license renewal applications. (I am also reaching out to other state charity licensing offices as well).

Specifically, my questions relate to Victor Li, who is stated in the documents provided to your office to be acting as the
CFO of WE Charity. In the period between the fall of 2020 and 2022, Victor Li's name and signature appear on
numerous documents that were sent to your office by WE Charity.

To put this all in context, I am trying to understand the significance of the documents that were filed by WE Charity to
your office – as compared with other information that Victor Li and his lawyer provided to the Canadian House of
Commons parliamentary committee that was looking into WE Charity's finances in 2021.

In Canada, Victor Li, his lawyer, and WE Charity have publicly stated on several occasions that Victor Li has been on
leave from the charity. Specifically, Victor Li stated to the Parliamentary committee that he went on leave from the
charity in the summer of 2020 and that he has not been acting as its CFO since then.

In short, I am trying to understand the significance of the information provided to Canadian members of Parliament
with the information WE Charity has provided to state licensing boards in the United States.

I am hoping you can help me with these questions.

**A. Documentation filed with your office:**

Records provided to your office show that Victor Li signed numerous documents as CFO of WE Charity in the period
after he stated he was on leave from the charity, after the summer of 2020.

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor
Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution

For example, documents provided to your office on July 22, 2021, and October 13, 2022, respectively stated that Victor Li was the Treasurer or CFO of WE Charity, and that he had "final responsibility for custody and/or final distribution of contributions" and that he had "custody of applicant's financial records."

Victor Li signed these documents alongside a form that stated: "APPLICANT SIGNATURE: To be signed in the presence of a Notary Public who has administered the following oath: I swear or affirm that the information furnished in this application and all supplemental forms, reports, documents and attachments are true and correct to the best of my knowledge under the penalty of perjury."

As required for charities operating in North Carolina, notaries for WE Charity provided their stamp to go along with Victor Li's signature, both in 2021 and 2022.

North Carolina records also show that on October 13, 2022, you sent a letter addressed to Victor Li, stating that the WE Charity application was "incomplete" and that the Notary Stamp/Seal" is "still not showing".

The records show that WE Charity responded to your letter the same day. This time they provided the notary stamp of a lawyer for WE Charity, Yvonne Mazurak, along with her signature.

The records also show that WE Charity provided North Carolina with copies of the Form 990s that they had filed with the IRS. Those form 990 documents show that on November 21, 2020, Victor Li signed Form 990 for the year ending August 31, 2020. On January 8, 2022, Victor Li signed Form 990 for the year ending August 31, 2021.

In both of those Form 990s, Victor Li is listed as a "key employee" and "the principal officer" of the Charity. The form also states that the books are "in the care of Victor Li" and that Victor Li "possesses the organization's books and records."

Under Victor Li's signature, the Form 990 documents state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete…."

**B. Information provided to the House of Commons ethics committee in Ottawa:**

I am trying to understand the significance of the above information provided to your office compared with the information that Victor Li and his lawyer provided to the Canadian House of Commons parliamentary committee that was examining WE Charity's finances in 2021.

According to Victor Li and his lawyer, Li had been on medical leave from WE Charity as of the summer of 2020. In Canada, Li's medical leave from WE Charity was publicly stated on several occasions:

For example, on March 24 2021, Victor Li's lawyer sent a letter to the Canadian Parliamentary committee that was probing WE Charity's finances. His lawyer, Megan Savard, also sent out a tweet that republished the letter she sent to the committee. Here is the tweet:

https://twitter.com/megan__savard/status/1374831474873139201/photo/2

In that March 2021 letter, Megan Savard states that Victor Li had already had "a months-long absence from the workplace". The letter states that Victor Li had the inability to concentrate for more than short periods of time. Savard stated that Li's medical condition "currently prevents him from returning to work and his doctor cannot say if he ever will be able to return." As you can see from reading the attached, Victor Li's lawyer stated that a return to work could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social

will be able to not have to go through a review that an ailing man or a very sick man could cause her client undue stress that could lead to his death.

In the March 2021 letter, Li summed up his medical leave: "I am still the CFO of WE Charity and ME to WE Social Enterprises Inc. I have been on medical leave since the summer 2020. Since I was placed on medical leave, WE Charity's finances have been handled by a team of accountants led by members of the executive team as well as a director in the Finance department who is a CPA."

On April 29, 2021, Victor Li's lawyer sent another letter to the Parliamentary committee in Ottawa. [See attached].

In that letter, Victor Li's lawyer again stated that Li "is on indefinite medical leave due to serious health issues." His lawyer said that Li is "unable to review or analyze large numbers of documents, or easily access company records" and that, because of this, "he asked WE Charity to help answer the Committee's numerous questions."

In that April 29, 2021 letter Victor Li made the additional statement: "On my doctor's advice, I have been on medical leave since the summer of 2020. I have not been performing the duties of CFO or participating in the daily business of WE Charity or its associated organizations since I started my medical leave. My health issues have significantly impeded, and continue to impede, my ability to work."

Earlier, on February 22, 2021 WE Charity had tweeted that "WE Charity CFO is on medical leave":

https://twitter.com/WE_Comms/status/1363935728258932747

As well, in May of this year (2022), a former WE Charity board member, Tawfiq Rangwala, published a book about WE Charity. In the book Rangwala stated that Li's medical condition limited his ability to speak for a length of time: "I could only interview Victor briefly- fifteen minutes, and only in the morning, was all the energy he could muster."

Scott Baker, the COO of WE Charity, was also quoted in Rangwala's book stating that Victor Li had been "off for months" when the Parliamentary Committee had asked Victor Li to testify (in March and April of 2021.)

**Questions for your office:**

Here are my questions:

What is the reason that North Carolina requires that a notary affirms the signature of a charity's treasurer or CFO when providing documentation to the North Carolina charity licensing office?

How important is it that a charity provides accurate information about its officers and its finances to the North Carolina Secretary of State?

How significant would it be if the sworn information provided to your office is not correct?

In your opinion, how significant is it that the information that WE Charity provided to your office, along with Victor Li's signature, is not the same as the information that Victor Li and his lawyer provided to the Canadian Parliamentary committee referenced above?

In summary, I am hoping to understand, from your perspective, how one can reconcile WE Charity and Victor Li's statements in Canada – that he was on medical leave from WE Charity, absent from the workplace, that he was not handling the finances of the charity and that he could not "easily access" company records nor concentrate for a length of time – with documents provided to your office, in the same time period, stating that he was a "key" employee and "principal officer" of WE Charity, and stating that he signed those submissions, under penalty of perjury, affirming the accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

accuracy of the contents of the documents and stating he had responsibility for "custody and/or final distribution of contributions" and that he had "control of the financial records and for signing cheques."

Any responses you can provide me to the above questions would be greatly appreciated.

Thanks again,

Harvey Cashore

--
Harvey Cashore
Producer, The Fifth Estate
Pronouns: he and him

Cell: 416-526-4704