**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WE CHARITY,

                          *Plaintiff,*

vs.

THE CANADIAN BROADCASTING
CORPORATION,

                          *Defendant.*

Civil Action No.  22-00340-RDM

## JOINT DISCOVERY REPORT AND PROPOSED SCHEDULING ORDER

Pursuant to Local Rule 16.3, Plaintiff WE Charity and Defendant Canadian Broadcasting Corporation ("CBC") conducted a Rule 26(f) discovery conference on July 10, 2023, and hereby submit this written report outlining all agreements reached on the topics listed in Local Rule 16.3(c), each party's positions on topics about which they disagree, and each party's respective positions on a scheduling order.

### 1.    Dispositive Motions (Local Rule 16.3(c)(1) and (6))

CBC anticipates filing a motion for summary judgment.  Subject to further developments in discovery, Plaintiff WE Charity does not currently anticipate filing a motion for summary judgment.  WE Charity contends that disputed issues of material fact will preclude dismissal of this matter at the summary judgment stage.  The parties agree that the Court's scheduling order should include a deadline for the filing of any dispositive motions approximately 30 days after the close of expert discovery, as proposed in the parties' respective proposed schedules below.  *See* Part 11, *infra*.  There are currently no dispositive motions pending, nor do the parties anticipate filing any dispositive motions that would require a stay of discovery.

1

2.     **Amendment and Joinder (Local Rule 16.3(c)(2))**

The parties agree that the deadline for joinder and amendment should be approximately halfway through fact discovery to provide the parties with the opportunity to review discovery prior to determining whether joinder or amendment is necessary.

The parties are not currently aware of any factual or legal issues that can be agreed upon or narrowed.  Opportunities to discuss narrowing such issues may arise once CBC files its answer to WE Charity's Complaint, which is currently due on September 8, 2023, or at other points in the progress of the case.

3.     **Settlement (Local Rule 16.3(c)(4) and (5))**

The parties do not believe that there is a realistic possibility of settling at this time.  WE Charity believes that there may be points in the future, such as after conducting some fact discovery, at which it would be open to revisiting the possibility of settlement, including through the Court's ADR procedures.

4.     **Initial Disclosures (Local Rule 16.3(c)(7))**

The parties do not agree to entirely dispensing with initial disclosures, but have agreed to limit the scope of initial disclosures to the requirement of Rule 26(a)(1)(A)(i)—"the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."[1]  The parties agree that they will exchange these limited initial disclosures on August 11, 2023.

---

[1]     The parties reserve the right to ask each other for the information required by Rule 26(a)(1)(A)(iv) through requests for production and/or interrogatories.

**5.**     **Extent of Discovery, Discovery Schedule, Discovery Limitations, and Protective Order (Local Rule 16.3(c)(8))**

    A.   <u>Extent of Discovery</u>

The parties are continuing to confer over the scope of discovery in this case. They anticipate that they may ultimately disagree on what is relevant and proportional to the needs of the case, what the relevant time period for discovery should be, and with respect to disclosure of source information as discussed in Part 7 below. The parties intend to work in good faith to resolve these issues as discovery proceeds and will raise any issues that they cannot resolve with the Court.

    B.   <u>Discovery Schedule</u>

The parties are in general agreement that the scheduling order in this matter should include interim deadlines so that discovery can proceed in phases. The parties agree that:

1. The first phase of discovery should consist of party document discovery, although Requests for Admission may be served at any time during the discovery period;

2. Party and third-party depositions generally should not occur until after the deadline for the parties to exchange discovery;[2]

3. Expert discovery should not occur until after all fact discovery is complete; and

4. The parties would be permitted to serve Rule 45 subpoenas for documents on third parties at any time during the discovery period, and would be permitted to file any necessary applications for securing foreign depositions at any time in order to ensure foreign depositions occur within the discovery period. To the extent both parties anticipate seeking depositions of third parties, the parties will meet and

---

[2] The parties agree that they will not seek to schedule any depositions until after the deadline, but may take depositions earlier than the deadline for the parties to exchange discovery if (1) a deposition is ordered to occur on an earlier date by a foreign court, or (2) the parties agree to do so for purposes of their convenience and/or the convenience of a witness.

confer to ensure that third parties are noticed to sit only once for a coordinated deposition.

The proposed scheduling orders below reflect the parties' agreement as to the phasing of discovery, although the parties disagree about the length of each phase.

**WE Charity's Position**:  WE Charity proposes that fact discovery should take place over one year, with the parties having six months to exchange responsive materials with each other and another six months to conduct depositions.  After this year-long period of fact discovery, the parties would conduct expert discovery over 2.5 months, which would have this matter ready for trial in approximately two years' time from service of initial disclosures.

This lawsuit concerns one claim against CBC for defamation based on several publications arising out of a common nucleus of facts.  WE Charity submits that CBC's proposed schedule—including two years of discovery—is unnecessary, especially given the head start on discovery that CBC should have from its months-long investigation into the journalism at issue.  A lengthy schedule is furthermore likely to prejudice WE Charity by delaying the organization's ability to repair the reputational damage CBC's falsehoods have caused.   Quick resolution of this matter is critical to restoring WE Charity's ability to continue providing charitable services in the United States and abroad.

WE Charity disagrees with CBC's position regarding the scope of discovery relevant to substantial truth.  CBC cannot engage in a broad fishing expedition in a purported effort to prove its published falsehoods substantially true.  The parties should provide the Court with full briefing on this issue in connection with a ripe discovery dispute or at the Court's request.

**CBC's Position**:  The deposition period for fact discovery should be at least one year, with both parties reserving the right to seek an extension if needed.  Six months is completely unrealistic

4

and highly prejudicial to CBC. As a practical matter, CBC will need to review WE Charity's likely substantial document production in order to prepare for all depositions (including both party and non-party depositions), a process that itself will likely take a couple of months once the materials are produced. CBC anticipates that its review of that production will affect its decisions about who to depose – including, for example, non-party witnesses who worked at foundations and other institutional donors that interacted with WE over a period of a decade. Many if not most of those witnesses are likely to be Canadian, and some might be in other countries. The timing for securing depositions in Canada or anywhere else abroad are largely outside of the parties' control given the need for judicial proceedings in those jurisdictions. CBC submits that having successfully opposed CBC's motion for *forum non conveniens* in significant part on the grounds that the process for obtaining depositions abroad would not be a practical obstacle to litigation here, it is manifestly unfair for WE Charity to seek a discovery schedule that would erect a practical obstacle to obtaining discovery in foreign jurisdictions.

Moreover, CBC believes that in this case it is something of a misnomer to refer to this period as "fact discovery." As discussed below in the discussion of deposition limits, CBC doubts that many, if any, non-party witnesses whose testimony it may wish to offer at any trial would voluntarily travel to this Court. As a result, it anticipates that many of the depositions it will seek to take in this period would also be for purposes of presenting testimony at any trial, if necessary. Six months is not a realistic amount of time for CBC to both pursue discovery and obtain trial testimony, much of which will likely be in Canada.

As to the claim that CBC had a "head start" on discovery due to its investigation, this is a *non sequitur*. For purposes of establishing the substantial truth of the allegedly defamatory allegations, CBC is not limited to information it obtained during its investigation. With a handful

of exceptions CBC did not have access to WE's documents, so the scope of evidence in this case is likely to be far broader than what was available at the time of CBC's broadcast. Moreover, CBC's investigation focused on Kenya. But WE Charity raised funds for and constructed schoolhouses in many countries, and so relevant evidence regarding whether it had a pattern of misleading donors is not limited to Kenya.

    C.   <u>Discovery Limitations</u>

The parties do not believe any modifications to Rule 33's 25-interrogatory limit are necessary at this time. The parties further agree that more than 10 fact depositions per side will be necessary in this matter due to the number of witnesses with potentially relevant information. The parties also agree that, absent agreement or leave of court, depositions should be limited to seven hours each. The parties disagree, however, on what limit the Court should impose on the number of fact depositions.

**WE Charity's Position**: WE Charity contends that the Court should limit each party to 15 fact depositions, without prejudice to any party filing a motion to exceed the limit after its 15 depositions have been exhausted. WE Charity envisions deposing the CBC employees most closely involved with the reporting at issue in this case (which we understand to be between four and five individuals); certain of the four non-party individuals interviewed in the defamatory publications at issue; and other third parties, such as damages witnesses. Accordingly, WE Charity contends that a 15-deposition limit is sufficient. If discovery reveals that additional depositions are necessary, either party may submit a motion to the Court requesting leave to take additional depositions, outline with specificity why good cause exists to take additional depositions, and explain how many additional depositions are necessary in light of the discovery already completed.

CBC's proposal of a 25-deposition limit could result in 50 depositions being taken in this case, which is not proportionate to the needs of the case, unduly burdensome on WE Charity, and

premature given that the parties have not even begun discovery. Because CBC's proposal allows for the parties to take so many depositions, it could encourage the parties to depose witnesses only tangentially relevant to the case, rather than conducting targeted depositions. WE Charity's proposal of a 15-deposition limit, without prejudice to asking the Court for leave to take more depositions only once those 15 depositions are exhausted, will ensure that the parties are focused and efficient in taking discovery.

**CBC's Position**: CBC proposes a 25-deposition limit, with similar ability to seek to vary that limitation if necessary. WE Charity's claim that will result in 50 depositions and/or encourage parties to take unnecessary depositions is not well-taken, because nothing compels WE Charity (or CBC) to take more than 15 depositions should that be all they believe is necessary. The reality, however, is that the scope of necessary discovery for CBC is likely to be materially broader than the corresponding scope for WE, and much of the "fact discovery" will also be for purposes of preserving trial testimony.

Most of the CBC investigation at issue took place over a period of approximately 8-9 months, and as WE Charity notes most of the work was done by a discrete core of journalists already known to WE. By contrast, for purposes of establishing substantial truth, the scope of WE Charity's conduct that is at issue took place over about fifteen years. It involved far more WE Charity employees in multiple countries around the world, as well as interactions with multiple key donors, particularly institutional donors. During CBC's investigation alone there were at least six key WE Charity employees who interacted substantially with CBC, so the combination of those witnesses, damage witnesses and others identified as likely witnesses by WE would alone likely use up most, if not all of a 15 deposition limit – leaving CBC with little opportunity to obtain what

will likely be the most important evidence related to substantial truth from non-party donors, former WE employees and others to be identified after reviewing WE Charity's production.

That is especially so given that, other than party-witnesses, as noted above it is likely that few, if any witnesses would be available to voluntarily travel to testify at any trial. As a result, it is likely that most trial testimony would be by way of depositions and, even if CBC were to prevail on summary judgment, that testimony will need to be obtained during the discovery period. Given the need to use depositions for purposes of both discovery and trial, a 15 deposition limit would not provide CBC with sufficient opportunity to both engage in discovery of witnesses identified by WE Charity and use depositions to affirmatively present testimony by anyone else.

D.   Protective Order

The parties intend to submit a proposed protective order governing the exchange and use of confidential discovery materials to the Court, which also makes clear that information exchanged in discovery cannot be used by CBC for journalism. WE Charity anticipates requesting one or more attorneys'-eyes-only provisions to restrict those CBC journalists who continue to report on WE Charity from accessing or reviewing certain confidential information. It is WE Charity's position that it will be impossible in practice for a CBC reporter to segregate case knowledge from reporting knowledge. WE Charity further submits that given the large number of reporters available to CBC, it should be feasible for CBC to continue its journalism on WE Charity without involving the few journalists involved in this case.

CBC, by contrast, submits that attempting to prohibit CBC's journalists from reviewing core documents would severely prejudice CBC's ability to defend the case because those journalists are in the best position to assess the relevance and significance of those documents to the investigation that is at issue in this lawsuit. And WE Charity's suggestion that journalists who

have been investigating a complex topic for almost three years may simply be swapped out without impacting (or even effectively stopping) the underlying journalism is not reasonable.  .

The parties are continuing to confer on a joint proposed protective order in this matter in an effort to resolve their differences, and agree to submit any such proposed protective order no later than August 30, 2023.  If the parties are unable to agree to a proposed protective order, WE Charity will submit a motion for a protective order on or before that date.

## 6.   **Electronically Stored Information (Local Rule 16.3(c)(9))**

The parties agree to submit to the Court a joint ESI protocol governing the form in which ESI should be produced, and agree to do so by August 30, 2023.

## 7.   **Privilege (Local Rule 16.3(c)(10))**

The parties agree that for each production from which documents are withheld on the basis of privilege, they will produce a privilege log within three weeks.  The parties agree to log both withheld documents and redactions, unless the redacted document itself makes clear the time and date of the document, the sender(s) and recipient(s) of the document where applicable, the type of privilege invoked, and the general subject-matter of the withheld information.   Information withheld on the basis of any privilege, including source privilege or any other newsgathering privilege, will be logged.  However, any log for source or newsgathering privileges would be appropriately prepared so as not to potentially reveal the privileged information, such as the identity of a confidential source. The parties are continuing to meet and confer regarding the appropriate scope of attorney-client and attorney work product logging obligations.

CBC intends to withhold certain information, including the identity of confidential sources, based on an assertion of source privilege.   The parties anticipate a dispute regarding the applicability and scope of the source privilege and whether information withheld pursuant to confidential source privilege can be used at trial.  The parties agree that typically, Courts are not

asked until summary judgment to decide whether to preclude a media defendant from relying on confidential information that was withheld from discovery.  The parties disagree as to whether it would be more efficient in this action to address this issue earlier in the discovery period.

**WE Charity's Position**:  During the parties' conferral, CBC stated that it intended to invoke the source privilege of either New York of the District of Columbia to withhold the identity of confidential sources on which its reporters purportedly relied and the content of their communications.[3]  CBC stated that it intends to rely on such withheld source material for its defense, such as by contending its reporters believed their reporting was true because they relied on confidential sources about whom no information is disclosed.  Allowing CBC to use its confidential sources as a sword and a shield would prejudice WE Charity, which bears a heavy burden to prove that CBC acted with actual malice.

WE Charity submits that the parties should brief this issue to the Court early in the litigation. The Court's ruling will affect the scope of discovery and the way that WE Charity develops the evidence it will present at trial.  For example, should the Court rule at an early stage in this litigation that CBC is not allowed to rely on withheld source material, WE Charity could limit its motions to compel production of such source material.  If the issue is deferred until summary judgment or pre-trial motions, WE Charity will need to take a broader approach in seeking to compel disclosure of withheld source information to preserve its right to challenge such withheld information at summary judgment or trial.  The fairest and most efficient route, therefore, is for the Court to determine at an early stage of discovery whether CBC may withhold source information and then rely on its purported existence at trial to rebut actual malice.

---

[3]     The parties disagree about which jurisdictions' laws to apply, but agree the determination of which source privilege law applies should be deferred until the issue is fully briefed.

**CBC's Position**:  CBC believes that it would be premature to brief and try to resolve this issue before CBC, in fact, actually relies on any information from a confidential source.  On the merits, CBC's position is that if it does choose to rely on any confidential sources, it may do so and the question of how to assess that evidence would be one for the Court to consider in the context of all other evidence.  Indeed, the reason why courts have typically addressed this issue in the context of adjudicating the defendant's motion for summary judgment or in pre-trial motions is because it is premature to address this question as a purely hypothetical, abstract issue prior to that juncture.  While CBC reserves the right to do so, at this point the CBC does not and cannot know the extent to which it might, if at all, rely on confidential sources for purposes of a motion for summary judgment and/or trial.   It is possible that some sources who were previously confidential at the time of the *Fifth Estate* documentary might agree to waive anonymity.  There is also considerable non-confidential, corroborating information that supported the journalism at issue, which CBC will rely on in addition to any information from sources.  And in some cases, information provided by a source was not confidential even if the identity of the source was.  All of those factors, and likely others tied to the specific facts of this case as they develop, may be relevant to the Court's consideration of this issue, if it eventually needs to be addressed.

Moreover, although it would not weigh in favor of addressing a hypothetical issue even if WE Charity's vague claims about "motions to compel" were correct, in fact CBC maintains that discovery will not be impacted either way.  Both New York and D.C. law provide an absolute privilege for confidential sources, period.  There would therefore be no basis for any motions to compel such information.

## 8.  **Expert Disclosures (Local Rule 16.3(c)(11))**

The parties agree that the requirements of Rule 26(a)(2) should not be modified.  The parties further agree to exchange expert disclosures approximately 45 days after the close of fact

discovery, to serve rebuttal reports 45 days thereafter, and to complete expert discovery within 30 days of service of rebuttal reports, as proposed in the parties' respective proposed schedules below. The parties anticipate that they may request to defer certain expert discovery until after summary judgment is decided to the extent that any expert witness's testimony does not bear on the issues presented at summary judgment (e.g., damages).

**9.      Bifurcation & Phasing (Local Rule 16.3(c)(13))**

The parties agree that neither trial nor discovery should be bifurcated.  The parties further agree that discovery should be managed in phases, as described in Part 5 and in the proposed schedules below.

**10.      Pretrial Conference & Trial Date (Local Rule 16.3(c)(14) & (15))**

The parties were unable to agree as to a date for the pretrial conference and whether the Court should set a firm trial date at the scheduling conference.

**WE Charity's Position**:  WE Charity requests that the Court set dates for a pretrial conference and trial.  CBC has stated that it does not view this case as likely to settle, and it is WE Charity's view that the action is unlikely to be resolved on summary judgment. Given that the Court will be the factfinder at trial, summary judgment motions on largely the same material that will be presented at trial are likely to be inefficient.  Trial in this case therefore appears likely, and a trial date should be set.

**CBC's Position**:  Most defamation claims are resolved on summary judgment, and indeed the point about the Court being the factfinder may cut the other way since the Court can determine for itself whether it believes there are any disputes of material fact about which it needs to hear more evidence.  And, even if the case is not fully resolved, it is highly likely than the issues will be narrowed.  Therefore, the CBC believes it would be in the best interest of the Court and the

parties to postpone putting in the time and expense of preparing for trial until the Court has determined that a trial should go forward and the scope of that trial.

11.  **Proposed Schedules**

The parties agreeing on phasing discovery in the manner outlined in the below schedules, but disagree as to the length of each phase of discovery and the total length of discovery.

| Deadline | WE Charity Proposal | CBC Proposal |
|---|---|---|
| Initial Disclosures | August 11, 2023 | August 11, 2023 |
| Protective Order & ESI Protocol | August 30, 2023 | August 30, 2023 |
| Final Requests for Production to Parties | November 24, 2023 | November 24, 2023 |
| Party Document Productions | January 24, 2024 | January 24, 2024 |
| First Date on Which Parties Can Conduct Merits Depositions | January 24, 2024 | January 24, 2024 |
| Motions to Amend or Join | February 23, 2024 | February 23, 2024 |
| Close of Fact Discovery | July 24, 2024 | January 31, 2025 |
| Expert Reports | September 6, 2024 | March 17, 2025 |
| Rebuttal Expert Reports | October 21, 2024 | May 2, 2025 |
| Close of Expert Discovery | November 20, 2024 | June 2, 2025 |
| Dispositive Motions | December 20, 2024 | July 2, 2025 |
| Oppositions to Dispositive Motions | February 18, 2025 | September 1, 2025 |
| Replies in Support of Dispositive Motions | March 11, 2025 | October 1, 2025 |
| Pretrial Conference | Spring 2025, subject to the Court's availability | Determined after summary judgment motions are decided |
| Trial Date | Summer 2025, subject to the Court's availability | Determined after summary judgment motions are decided |

Dated: July 24, 2023                              Respectfully submitted,

                                                  /s/ Joseph F. Kroetsch

                                                  Joseph F. Kroetsch (*pro hac vice*)
                                                  Brooke A. Alexander (*pro hac vice*)
                                                  BOIES SCHILLER & FLEXNER LLP

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300
jkroetsch@bsfllp.com
balexander@bsfllp.com

Jonathan H. Sherman (Bar No. 468539)
Amy L. Neuhardt (Bar No. 996791)
BOIES, SCHILLER & FLEXNER, LLP
1401 New York Avenue, NW
11th Floor
Washington, DC 20005
Tel: (202) 274-1137
Fax: (202) 237-6131
jsherman@bsfllp.com
aneuhardt@bsfllp.com

Rodney A. Smolla (Bar No. 6327)
164 Chelsea St
South Royalton, VT 05068
Tel: (864)-373-3882
rodsmolla@gmail.com

Sabina Mariella (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel: (212) 754-4541
smariella@bsfllp.com

*Attorneys for Plaintiff WE Charity*

/s/ Nathan E. Siegel

Nathan E. Siegel (Bar No. 446253)
Rachel F. Strom (*pro hac vice*)
Courtney DeThomas (Bar. No 888304075)
DAVIS WRIGHT TREMAINE, LLP
1301 K Street, NW
Suite 500 East
Washington, DC 20005
Tel: (202) 973-4237
Fax: (202) 973-4499
nathansiegel@dwt.com
rachelstrom@dwt.com

14

courtneydethomas@dwt.com

*Attorneys for Defendant Canadian*
*Broadcasting Corporation*