**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WE CHARITY**,<br><br>    *Plaintiff*,<br><br> v.<br><br>**CANADIAN BROADCASTING CORPORATION**,<br><br>    *Defendant*. | Civil Action No. 22-340 (RDM) |

**SUPPLEMENTAL BRIEF REGARDING PROTECTIVE ORDER**

Nathan E. Siegel (Bar No. 446253)
Rachel F. Strom (*pro hac vice*)
Courtney DeThomas (Bar No. 888304075)
DAVIS WRIGHT TREMAINE LLP
1301 K Street, NW
Suite 500 East
Washington, DC 20005
Tel:  (202) 973-4237
Fax: (202) 973-4499
nathansiegel@dwt.com
rachelstrom@dwt.com
courtneydethomas@dwt.com

*Attorneys for Defendant Canadian Broadcasting Corporation*

1

CBC respectfully submits this supplemental briefing regarding the burdens the Court would apply in assessing alleged violations of the protective order.

Put simply, the burden should be whatever the law already requires it to be, which is well-established.  The premise of WE Charity's position seems to be that every federal district has the authority to decide for itself, essentially *de novo* on a case-by-case basis, what the burden of proof will be should a party seek sanctions for an alleged violation of one of its orders.  But while district courts certainly have broad discretion to impose sanctions, CBC is aware of no authority suggesting that discretion reaches that broadly.  In short, the relevant question presented here is not what either party thinks the burden(s) of proof *should* be with respect to some hypothetical sanctions motion.  Rather, the only question is what the governing law would *require* the burden to be, should an actual motion for sanctions ever be filed.

With respect to that question, the law is clear.  The question of whether a party violated a protective order could only arise in the context of seeking some kind of sanction, for which there might be two potential sources.  Some courts have looked to Federal Rule of Civil Procedure 16(f), which authorizes courts to fashion orders to respond to a party's violation of a pretrial order, while more often the inherent authority of courts to protect the integrity of their judicial processes is invoked, particularly if a finding of contempt is sought.  *See, e.g.*, *Klayman v. Judicial Watch, Inc.*, 2009 WL 10695030, at *2 (D.D.C. Oct. 13, 2009).  *See also Shepherd v. American Broad. Cos.*, 62 F.3d 1469, 1474-75 (D.C. Cir. 1995).  Regardless of the bases employed, "the party seeking sanctions has the burden to show that they are warranted." *Thomas v. Moreland*, 2022 WL 19560135, at *1 (D.D.C. Mar. 23, 2022) (denying motion for sanctions based on, *inter alia*, violations of protective order); *see also Cogan v. Scott*, 2022 WL 2191696 at *2-3 (D.D.C. June 17, 2022) (citing cases).  Courts across the country have articulated the

same standard when parties have sought sanctions for alleged violation of protective orders.  *See, e.g.*, *Jay v. Spectrum Brands Holdings, Inc.*, 2015 WL 6437581, at *6 (S.D.N.Y. Oct. 20, 2015) ("As Defendants are seeking sanctions, they have the initial burden of demonstrating Plaintiff's noncompliance"); *GWACS Armory, LLC v. KE Arms, LLC*, 2022 WL 17547783, at *2 (N.D. Okla. Dec. 9, 2022) ("Despite its repeated, generalized statements of protective-order violations, Armory has offered no evidence that any protected information has been misused or disclosed.").

      Moreover, within the context of courts' exercising their inherent authority, this Circuit holds that the specific burden of proof depends on the nature of the sanction sought.  If the sanctions sought are penal in nature – including "dismissals and default judgments, as well as contempt orders, awards of attorneys' fees, and the imposition of fines" – the burden is clear and convincing evidence.  If lesser, "issue-related" sanctions are sought (such as adverse evidentiary rulings), the burden is a preponderance of the evidence.  *Shepherd*, 62 F.3d at 1477-78.  *See also Beck v. Test Masters Educational Svs., Inc.*, 289 F.R.D. 374, 378 (D.D.C. 2013).  And with respect to burden-shifting, to CBC's knowledge the law recognizes only one example, which is far narrower than WE Charity's proposal.  A party charged with contempt may assert, and has the burden of proving, a defense of "good faith substantial compliance" with a court order.  *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1017-18 (D.C. Cir. 1997).  Thus, WE Charity's proposal to alter *a priori* those burdens of proof not only violates binding Circuit authority, it would raise serious due process concerns.

      Furthermore, with respect to the specific hypothetical scenario WE Charity posits here (albeit with no legitimate basis) – a media entity allegedly reporting information obtained in discovery pursuant to a protective order – *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), is also instructive.  That case likewise involved a defamation claim filed by a non-profit

3

organization against a media entity.  The Court held that where "a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, *and does not restrict the dissemination of the information if gained from other sources*, it does not offend the First Amendment."  *Id.* at 2209-2210 (emphasis added).  As the D.C. Circuit has explained, *Seattle Times* thus recognizes that parties to litigation have a right to disseminate any materials obtained independent of discovery, which courts have no authority to restrict through any protective order.  *In re Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988).  Thus, what WE Charity seeks to do here is to subtly alter the careful balance of constitutional interests struck by *Seattle Times* by, in effect, imposing upon the respondent to a sanctions motion the burden of justifying the exercise of its presumptive First Amendment rights.

Even if it was legally permissible (which it is not), WE Charity's proposed abstract, hypothetical burden-shifting rule makes little practical sense.  WE Charity's proposal seems to presuppose some hypothetical scenario in which the only question presented would be whether a party relied on independent information.  But in reality sanctions litigation is highly fact-specific, so how the Court would assess whether the moving party has met its burden of proof in any specific dispute would depend on multiple factors.  Those might include the particular circumstances of the alleged violation, the nature of the specific sanctions sought, the alleged harm caused by any alleged violation, and numerous other case-specific considerations.

For example, *Klayman* presented what was an unusually straightforward example of an alleged violation.  In that case the plaintiff attached actual, Bates-stamped copies of documents marked "Confidential" to his response to a motion to dismiss he filed in a separate action.  2009 WL 10695030, at *2.  Thus, there was no dispute that the plaintiff had used actual documents subject to the protective order.  The defendants moved to dismiss the case as a sanction.  *Id*. at

4

\*1.  Nonetheless, the plaintiff maintained that any violation was "inadvertent" because he allegedly had obtained independently identical copies of the same documents.  *Id*. at \*2.  The court reviewed the evidence the plaintiff submitted and "confirm[ed] that Klayman had independent access to copies of at least the majority of the material he attached to his filing."  *Id*.  Accordingly, "it [wa]s not beyond reason to expect that Klayman would have had independent access to these materials."  *Id*.  The court continued to observe:

> Ultimately, although the Court does not minimize the seriousness of violations of the Protective Order, it finds that **Defendants have failed to show that the severe sanction of dismissal is warranted** in the circumstances at hand.  Defendants urge this Court to find Klayman in contempt and dismiss his remaining claims with prejudice, but **have not provided the particularized showing necessary** to demonstrate that such a severe sanction is either appropriate or warranted . . . **Defendants have made no showing**, nor does the Court find, that Klayman's conduct in this instance has severely hampered their ability to present their case, has placed an intolerable burden on the district court's operations, or rises to the level of disrespectful conduct warranting the severe sanction of dismissal.

*Id*. at \*3 (emphasis added).  In short, in the circumstances of that case, regardless of the formal allocation of burdens, the nature and quality of rebuttal evidence that the plaintiff submitted was obviously quite material to the Court's ultimate decision.  Yet even though the plaintiff had failed to demonstrate that he had independently obtained all of the material at issue (merely "the majority" of it), the Court concluded that, considering the totality of the circumstances, the defendants had not met their burden to justify sanctions.  *See also Smith v. City of Greensboro*, 2021 WL 10280330, at \*3 (M.D.N.C. Aug. 2, 2021) (finding sanctions were not warranted because "[p]laintiff, in her responses to both motions, has demonstrated that the information her attorneys have shared with the public and press were available from sources other than the discovery designated as confidential by Defendants . . . [specifically] from public sources.").

By contrast, the facts presented by *Szany v. Garcia*, 2019 WL 5027394, at \*5 (N.D. Ind. July 3, 2019), were more complex and did not involve the physical dissemination of actual

5

documents. Rather, the defendant alleged that protected material was the basis of certain oral statements the plaintiff's counsel made to a reporter, and sought a finding of contempt. The plaintiff's counsel maintained that some of the information came from an independent source, while other information was merely premised on "rumor" and speculation. *Id*. at *6. The court held that "[i]n light of Szany's counsel's representations of the origins of the information behind his statements," the defendant "has not presented clear and convincing evidence that Szany's counsel violated the Protective Order." *Id*. at *14. It is far from clear how WE Charity's proposal would even apply in such a multi-faceted scenario in which it was not obvious that protected information was ever used in the first place, and where even so only a portion of the information at issue was said to be based on an independent source.[1]

Indeed, WE Charity's proposal would be especially prejudicial, should CBC ever decide to publish any future news report concerning it. WE Charity will likely produce as "Confidential" a large volume of information about its present and past operations, such that almost any report about the charity might, in theory, be alleged to have derived from "Confidential" information. By thus increasing the risk that almost any report could become a pretext for WE Charity to subject CBC to sanctions litigation in which the presumptions would be stacked against CBC, WE Charity's proposal would have the effect of, and indeed is likely intended to, chill the exercise of the very First Amendment rights that *Seattle Times* recognized.

For these reasons and the ones CBC set forth in the Joint Motion, CBC respectfully requests that the Court enter CBC's proposed Protective Order.

---

[1] WE Charity's proposal seems ostensibly to be premised on the hypothetical concern that CBC might assert that it obtained information independently, from confidential sources. But in the event that scenario was to ensue, the Court would assess whether it should or should not have any impact on the ultimate outcome - just as any court would in any dispute in which a party invokes a privilege. Such "what ifs" have nothing to do with how the law requires that burdens of proof be allocated.

Dated: October 20, 2023

/s/  *Nathan Siegel*

Nathan E. Siegel (Bar No. 446253)
Rachel F. Strom (*pro hac vice*)
Courtney DeThomas (Bar No. 888304075)
DAVIS WRIGHT TREMAINE LLP
1301 K Street, NW
Suite 500 East
Washington, DC 20005
Tel: (202) 973-4237
Fax: (202) 973-4499
nathansiegel@dwt.com
rachelstrom@dwt.com
courtneydethomas@dwt.com

*Attorneys for Defendant Canadian Broadcasting Corporation*