```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
        WE CHARITY,                    ) Civil Action
 3                                     ) No. 1:22-CV-340
                         Plaintiff,    )
 4                                     ) SCHEDULING CONFERENCE
        vs.                            )
 5                                     )
        CANADIAN BROADCASTING          ) Washington, D.C.
 6      CORPORATION,                   ) Date:  August 29, 2023
                                       ) Time:  11:02 A.M.
 7                         Defendant.  )

 8

                    TRANSCRIPT OF SCHEDULING CONFERENCE
 9        HELD BEFORE THE HONORABLE JUDGE RANDOLPH D. MOSS
                    UNITED STATES DISTRICT JUDGE
10      _____

11                    A P P E A R A N C E S

12      For Plaintiff:          MR. JOSEPH F. KROETSCH
                                Boies Schiller Flexner LLP
13                              333 Main Street
                                Armonk, NY 10504
14
                                MS. AMY L. NEUHARDT
15                              Boies Schiller Flexner LLP
                                1401 New York Avenue, NW
16                              11th Floor
                                Washington, DC 20005
17
        For Defendant:          NATHAN E. SIEGEL
18                              COURTNEY TURCO DeTHOMAS
                                Davis Wright Tremaine LLP
19                              1301 K Street, NW, Suite 500 East
                                Washington, DC 20005
20
                                RACHEL F. STROM
21                              Davis Wright Tremaine LLP
                                1251 Avenue of the Americas, 21st Floor
22                              New York, NY 10020

23      Court Reporter:         Tamara M. Sefranek, RMR, CRR, CRC
                                Official Court Reporter
24                              United States Courthouse, Room 6714
                                333 Constitution Avenue, NW
25                              Washington, D.C. 20001
                                202-354-3246
```

```
 1                    P R O C E E D I N G S

 2            THE COURTROOM DEPUTY:  Civil Case No. 22-340,

 3    WE Charity v. Canadian Broadcasting Corporation.

 4            Would counsel please approach the podium, state your

 5    name for the record, starting with plaintiff's counsel.

 6            MR. KROETSCH:  Good morning, Your Honor.  Joseph

 7    Kroetsch for WE Charity.

 8            THE COURT:  Good morning.

 9            MR. KROETSCH:  Good morning.

10            MS. NEUHARDT:  Amy Neuhardt from Boies Schiller, also

11    for the plaintiff.

12            THE COURT:  Good morning to you as well.

13            MR. SIEGEL:  Good morning, Your Honor.  Nathan

14    Siegel, along with Rachel Strom and Courtney DeThomas, for CBC.

15            THE COURT:  Okay.  Good morning to all of you.

16            So we're here for a scheduling conference.  I have

17    the parties' various proposals in front of me, which may

18    require some slight modification just because today's

19    scheduling conference is occurring a little bit later than we

20    had originally anticipated.

21            Why don't I hear from Mr. Kroetsch to start with, and

22    then I'll hear from Mr. Siegel.

23            MR. KROETSCH:  Thank you, Your Honor.  And first I

24    want to thank the Court for being so accommodating and moving

25    this hearing a few times.  Thank you for that.  I'm feeling
```

1    much better.

2              THE COURT:  Glad to hear it.

3              MR. KROETSCH:  So the main disagreement, I think, we

4    have in terms of the schedule here is that we think the case is

5    discrete enough that it should not take years of discovery,

6    particularly on depositions, to get to a point where this case

7    is ready for trial.  I think we agree on --

8              THE COURT:  But aren't you only six months apart,

9    maybe six or seven months apart?  It's not a huge difference.

10             MR. KROETSCH:  That's right.  That's right.

11             THE COURT:  Okay.

12             MR. KROETSCH:  So we both agreed that roughly six

13   months would be right for document discovery.  We've already

14   served a document request, and we're expecting a response very

15   soon.

16             Then on depositions, we think it should take about

17   six months.  It's a relatively discrete group of individuals

18   responsible for the reporting and responsible for the relevant

19   roles at the charity.  There will be witnesses, but I think

20   between the two parties, there are only 21 parties that were

21   identified on the initial disclosures because there was a fair

22   amount of overlap that the parties exchanged.

23             So, respectfully, we don't think it should take a

24   year to conduct those depositions

25             THE COURT:  How long does it take to obtain the

1   necessary process to take a deposition either in Canada or

2   Kenya or anywhere else outside the United States?

3            MR. KROETSCH:  Well, it can vary.  But when it comes

4   to Canada, I think what we're anticipating are largely, if not

5   entirely, voluntary depositions.

6            So, for example, if we're talking about the

7   deposition of Ken Froese, we're not going to have to engage in

8   a letter rogatory.  He'll just sit for the deposition, and we

9   can do it by Zoom; we can do it in person.

10            In the event that there are any unwilling deponents,

11   it should not take that long; plus, what the parties have

12   agreed is that we can start that process now.  Even though

13   we're not starting depositions, we have a whole six-month head

14   start on that process.

15            If it turns out that it is taking a really long time,

16   we're flexible.  We're not suggesting that, simply because

17   international process takes a long time, that the parties

18   should be deprived of crucial evidence.  But I don't think that

19   at this stage there's a reason to anticipate that happening.

20            THE COURT:  Have the parties exchanged the initial

21   disclosures already, or were you waiting for me to enter an

22   order?

23            MR. KROETSCH:  No.  We have exchanged them.

24            THE COURT:  Okay.

25            MR. KROETSCH:  The parties agreed to limit it to just

1    identifying the witnesses required by the rules, but those have

2    been exchanged.

3              THE COURT:  And when can you submit your proposals

4    for a protective order?

5              MR. KROETSCH:  We've been discussing that.  What we

6    had originally contemplated was submitting that tomorrow.  As

7    you alluded to, moving this hearing has probably resulted us in

8    needing to delay that.  We talked yesterday, and I think we

9    agreed that next Friday would be a date where we could do that.

10             THE COURT:  Okay.  Anything else you want to add

11   before I hear from Mr. Siegel?

12             MR. KROETSCH:  No, Your Honor.

13             THE COURT:  All right.  Thank you.  Mr. Siegel?

14             MR. SIEGEL:  Thank you, Your Honor.  I think Your

15   Honor is right to zone in on the fact that, essentially, the

16   disagreement here is over should fact discovery be 6 months or

17   12 months, right?  That's what we're talking about.

18             And if you can, I'd like to give Your Honor a little

19   bit of a sense of what we anticipate doing in discovery to

20   explain.  The bottom line is -- for us, we don't think

21   plaintiff's 230-page complaint presents a discrete case.  And

22   let me explain why, okay?

23             I agree, actually, to some degree that for plaintiff,

24   this is an error case.  Because, fundamentally, if you look at

25   the two most important issues in a defamation case -- right? --

1    which are truth and actual malice here, plaintiff can largely

2    establish and I think he intends to try to put on their truth

3    case through their own party witnesses and documents.  And with

4    respect to fault, basically, the question is what did the CBC

5    know and believe and when did they believe it.

6         And it's correct that there are a relatively discrete

7    number of CBC personnel who were primarily engaged in this, and

8    you can probably, within 15 depositions, do that.  But our job

9    is quite different.  Let me explain why we think that's so.

10        If you look at -- we talked about -- or Mr. Kroetsch

11   mentioned initial disclosures.  So if you look at the first

12   task in discovery -- right? -- which I'll call standard

13   discovery -- right? -- which is, basically, to depose their

14   witnesses, the people that we know.

15        They have disclosed already, essentially, 11 to 12

16   witnesses.  And that's just now.  We all know that we're all

17   probably going to disclose more.  They have seven party

18   witnesses, an outside accountant.  I think, realistically, they

19   didn't include their CFO, who is a pretty important witness.

20   That's nine right there.

21        We think both sides are going to take a 30(b)(6) to

22   sort of clean everything up.  And they've identified three

23   nonparties who were interviewed on the broadcast.  Probably

24   both of us would want to take their deposition, so let's call

25   that one and a half.  That's 11 and a half depositions.

1          That leaves us three and a half depositions for

2     everything else in the case.  That's just not realistic with

3     respect to the number of depositions or time.  I'm going to try

4     to identify both.

5          As we see it, there really are three primary meta

6     tasks that we need to accomplish in discovery.  There are

7     little ones, too, but, you know, this can sort of capture the

8     big picture.  One is what we would call follow the marketing,

9     right?  What was WE telling donors about school building, what

10    was -- what were their internal marketing strategies, what were

11    they telling foundations who are a big part of -- and who was

12    doing the talking.  We know from our reporters some of that,

13    but we don't know all of it.  We certainly don't know the full

14    story.

15          So what we anticipate is we will get their document

16    production, which, presumably, will be completed in January.

17    It will undoubtedly take us a couple of months to review all of

18    that, analyze it, figure out what we want to do from there and

19    who we want to depose.

20          We think we will likely want to depose a few

21    nonparties and/or subpoena docs, for example, from some of

22    these foundations which are in different countries.

23          So, as a practical matter, as we see it, that leaves

24    us four months, really, to accomplish all of that.  We just

25    don't think that's realistic.  The same thing is true -- oh,

1    and I should mention, Your Honor -- and this is --

2            THE COURT:  I'm sorry.  Are you assuming that you get

3    the documents at the end of the six-month document discovery?

4            MR. SIEGEL:  I think what will happen is there will

5    be rolling productions.  We will be submitting requests.  We'll

6    be submitting follow-up requests.  I think we'll get all the

7    documents by the end of the -- and I think that will be true on

8    both sides.

9            What's really important, Your Honor, is there is a

10   16-year period, as we see it, that is relevant here.  Okay?

11   That is -- roughly, from 2004 to 2020 is when WE Charity writ

12   large -- and we're not going to get into who is the plaintiff

13   and who is not.  WE Charity writ large, previously Free the

14   Children, was actually building schools themselves in Kenya.

15           The next topic is follow the money.  Again, over that

16   16-year period, you know, on a microlevel, where did specific

17   donations by specific donors that we know go to; on a macro

18   level, where and was money donated to Kenya actually spent.

19   Part of that will be done through experts, undoubtedly, on both

20   sides.  But there's going to be an enormous amount of document

21   discovery on that.

22           There have been both raw data and partial reports

23   already done by two outside Canadian accountants.  Again, we

24   doubt that absorbing all of that information and then having

25   four months to figure out what we need to do to follow up on

1     that is enough.

2          Then the last thing is -- I think this is really

3     critical, actually, maybe more than anything else.  We're

4     not -- because of the nature of this case, we're not really

5     just talking about discovery, right?  We're talking about trial

6     witnesses.

7          Because there is nobody that we anticipate calling or

8     that we might call that's going to be, you know, subject to

9     subpoena at trial.  We see two potential groups of those.

10    Number one is former WE employees either who were sources and

11    might agree to testify -- we don't know yet -- and/or that we

12    learn about in discovery.

13         And the second is, you know, frankly, donors who

14    believe they were funding a schoolhouse, most of whom are in

15    Canada.

16         And we don't think, you know, six months is enough --

17    and the reason that's important is we can't call those people,

18    so the only way to present them, if there is a trial in the

19    case -- obviously, we hope there's not -- but if there is, is

20    to take their depositions

21         THE COURT:  I can't imagine a world in which law

22    firms of this caliber would be calling witnesses at trial who

23    they didn't depose, in any event.

24         MR. SIEGEL:  Yes, that's true.

25         THE COURT:  I think the fact that they will,

1   essentially, be trial witnesses actually means, if anything,

2   just that the depositions will be an hour or two longer because

3   there may be a cross or the equivalent of a direct.

4          MR. SIEGEL:  I think that's right.  Just

5   hypothetically -- I mean, I think you're right because we -- I

6   mean, hypothetically right; if we were in a different

7   situation, we could try to get an affidavit from someone.  If

8   they were voluntarily -- and if they would voluntarily agree to

9   come to trial or we could subpoena them, right?  We can't count

10  on doing that, right?  So we have to take their depositions; an

11  affidavit is not going to be sufficient.

12         So for all of those reasons, we just don't think

13  that -- what we're really talking about in many cases is four

14  months is realistic to do that.  And, candidly, we don't think

15  we're asking for the moon here.  We don't think that a year is

16  an unreasonable amount of time to do fact depositions in this

17  case.

18         So that pretty much sums up what our position is on

19  that.

20         THE COURT:  Okay.

21         MR. SIEGEL:  There was one other issue, but I don't

22  know if the Court wants to address it.  I mean, they raised the

23  possibility of briefing, the admissibility of confidential

24  sources, essentially, now.  I mean, we think that's way too

25  premature, but --

1          THE COURT:  I can tell you-all what my preliminary

2     view is on that, and you can tell me if you think I'm wrong

3     about this.  My preliminary view about it is just to follow the

4     normal course.

5          MR. SIEGEL:  Right.

6          THE COURT:  And if you decline to make a witness

7     available, decline to answer a question in discovery where the

8     plaintiff is seeking the identification of witnesses and you

9     assert the privilege, if they think they have a basis for

10    challenging that, they can file a motion to compel, and we'll

11    deal with discovery during discovery.

12          And when we get to the summary judgment and perhaps

13    the trial stage, we'll get to questions of what is and is not

14    admissible evidence and whether it's permissible for you to

15    argue or to present evidence that someone relied on a

16    confidential source when the plaintiff has not had the

17    opportunity to confirm that that is actually true and that

18    confidential source said what your witness said that

19    confidential source said.

20          MR. SIEGEL:  Right.  I mean, we view it as classic

21    evidentiary issues.  Frankly, there are cases on both sides.

22    And the reason the case is -- I'll address it at that stage; it

23    depends on the context.  It's like any other evidentiary issue.

24    You need to know what other evidence is out there, how does it

25    relate, how important is it or not.

1            So, yes, that's our view.

2            THE COURT:  Okay.  That's -- I'm happy to hear from

3     plaintiff's counsel on that, but that's at least my preliminary

4     view.  They're welcome to file a motion to compel if they think

5     they have a basis to do so.  Okay.

6            MR. SIEGEL:  That's all.

7            THE COURT:  Anything else then?

8            MR. SIEGEL:  No, Your Honor.

9            THE COURT:  Mr. Kroetsch --

10           MR. KROETSCH:  It's Kroetsch.

11           THE COURT:  Kroetsch.  Thank you.  So I just -- I

12     don't pronounce the O, I guess, is the answer.  Mr. Kroetsch?

13           MR. KROETSCH:  Germans are efficient with many

14     things, but not with spelling.

15           THE COURT:  I've seen some rather long sentences in

16     German as well.

17           MR. KROETSCH:  Quickly, in responding to what my

18     friend just said, I do want to clarify a few things.  One, the

19     CFO of WE Charity is on the initial disclosures; she is Serena

20     Zhang.  I think what they're citing is the former CEO is not on

21     there.  He is sick, as they know.

22           On the source privilege issue, we certainly respect

23     your views in this, and we agree that the normal course is

24     exactly to do what you described; to do the motion to compel,

25     and then later to do some sort of motion in limine or deal with

1    it in summary judgment.

2         The reason we're proposing that it potentially be

3    done differently here is because we think it will streamline

4    discovery, probably in two ways.

5         First, if Your Honor does conclude that, as we

6    believe most courts, likewise, conclude, that the CBC should

7    not be allowed to assert a source privilege and then rely on

8    the existence of that witness at trial and say, trust us, they

9    said what I wrote, then we think they'll assert it fewer times.

10   There will be fewer motions to compel if those are the

11   ramifications

12        THE COURT:  Although I do think that Mr. Siegel is

13   experienced in these things and he understands that risk now --

14        MR. KROETSCH:  Right.

15        THE COURT:  -- and knows the case law and is probably

16   in a position -- frankly, he probably is in a better position

17   to guess what I'm going to do right now than I am at this

18   point.  And he can just make those assessments based on his

19   experience.

20        And you're right, he runs a gamble.  He may decide to

21   assert it -- assert the privilege a great deal, and he may have

22   to live with some adverse consequences of that.  He, in

23   consultation with his client, can just make that judgment about

24   how risk averse they are.

25        MR. KROETSCH:  Well, likewise, there's a bit of a

1     gamble for us.  The way that the system works by default, what

2     we have to do to preserve this issue is we need to move to

3     compel every single document, every single witness, everything

4     that they withhold on source privilege to be able to preserve

5     that issue so that, look, if we win a motion to compel, then

6     it's a moot point because they're compelled, and they have to

7     provide it.  But if we lose, then later we can move,

8     potentially, a year later --

9          THE COURT:  Is that what the case law says?  Because

10    the way I read the defendant's submission is their view is that

11    the privilege is clear and absolute and that they're not

12    required to produce the material in discovery.  And that the

13    question of what ramifications are for that at trial are

14    unsettled or may be case-specific or fact-specific.

15         Perhaps maybe one way to deal with this is just ask

16    Mr. Siegel whether he would waive any obligation on your part

17    to file a motion to compel in order to preserve the issue.

18         MR. KROETSCH:  I think that would partially work.

19    The catch with that is that we also would then still have an

20    incentive to need to guess who their sources were, right?

21         So what would happen if Your Honor were to conclude

22    at the end of this case that, even if we didn't have to move to

23    compel on a million different things, that they're not

24    precluded from relying upon these confidential sources at

25    trial, we will find ourselves thinking, we should have guessed.

1    We should have just -- we've got 50 people we think might have

2    been their sources.  We should have tried to subpoena them all.

3    And that's the gamble on our side that deferring this issue

4    creates.

5           THE COURT:  Let me see what Mr. Siegel says about

6    this question about whether you need to preserve by raising --

7    by moving to compel in each instance, because that may have

8    some bearing on this.  Let me -- Mr. Siegel?

9           MR. SIEGEL:  There are two different points, I think,

10   that were just addressed.  One is would we waive the need to

11   move -- to file a motion to compel to preserve, yes.

12          THE COURT:  Yes, you will waive?

13          MR. SIEGEL:  Yes, we will waive.

14          THE COURT:  Okay.  I will accept that then.

15          MR. SIEGEL:  Does the -- the only thing I do want to

16   make clear is one factor courts sometimes do look at is how

17   much of an effort has the plaintiff made to -- separate and

18   apart from a motion to compel, sort of reasonably learn the

19   information itself through discovery.

20          So I don't think what Mr. Kroetsch is saying under

21   any universe would be -- even if it wasn't an absolute

22   privilege, that would be their obligation to do.  So --

23          THE COURT:  I think he is agreeing with you because

24   he -- the other point that he made is that if I don't resolve

25   the issue now, they're going to have to take more depositions

1    to try and figure out who the sources are.

2              MR. SIEGEL:  Correct.

3              THE COURT:  I think we're in agreement on this issue.

4    And then -- so for purposes of this case, then I will hold you

5    all to the understanding that the plaintiff need not move to

6    compel with respect to confidential sources in order to

7    preserve the argument for purposes of summary judgment or at

8    trial that the defense should be precluded from itself relying

9    upon the confidential sources or anything the confidential

10   sources may have said in support of their position.

11             With respect to the, perhaps, fishing expedition or

12   trying to figure out who the confidential sources are, I am

13   sympathetic to that concern, and I do want to try and

14   streamline the case here, but I also think that it is going to

15   be hard for me to resolve this issue in the abstract and -- why

16   don't I leave it this way:

17             For present purposes, I'm going to hold that you

18   should wait until summary judgment or trial to raise the issue,

19   but if, in the course of discovery, things become more

20   crystallized and you think you can present the issue to me in a

21   more crystallized way, and if you can show me that there is an

22   undue burden in waiting, I'll let you renew your request to

23   file the motion at that point in time to do so.

24             That's the way I'll proceed on that issue.

25   Mr. Kroetsch, anything else you wanted to add in response to

1    anything that Mr. Siegel said?

2            MR. KROETSCH:  I think the other -- the other major

3    point of disagreement here is about the scope of discovery.  It

4    may be premature at this hearing to determine that.  We do not

5    agree with the CBC about how broad discovery should be.

6            We have a long complaint, but we also had a very

7    specific complaint.  We outlined very specific false statements

8    of fact, quoted them, and said this is not true.

9            Many of them -- not all of them, but many of them are

10   as specific as, WE Charity documents say that they built only

11   360 schools.  You don't need to go through 16 years of records

12   to figure out if that's true or false.  What records were they

13   talking about; do they say that?

14           And it's not going to be rendered true by finding out

15   that, even though they completely made up what a document said,

16   by dumb luck something else said it, that's a different story.

17           Likewise, if you look at their proposal on the

18   scheduling order, they say, well, that was -- the coverage was

19   limited to Kenya, but our discovery isn't going to be limited

20   to Kenya.

21           We respectfully submit that makes no sense.  It's not

22   consistent with the law.  That is a fishing expedition.  They

23   cannot prove their story to be substantially true by showing

24   that they supposedly could have published a completely

25   different story that would have been just as bad.  That is not

1    what substantial truth is.

2              THE COURT:  So -- okay.  Anything else you wanted to

3    add?

4              MR. KROETSCH:  No.

5              THE COURT:  I have to say, I think this is --

6    reflects the fact that I do think that there are -- this case

7    is one with very good lawyers who have been very thoughtful,

8    and there's some truth to what you both are saying on all of

9    these issues.

10             I'll start, Mr. Kroetsch, with your issue about the

11   scope of discovery.  I am sympathetic to the notion that being

12   a plaintiff in a defamation case doesn't mean that, by bringing

13   the suit, you expose yourself to any type of discovery that may

14   show anything embarrassing or anything that reflects poorly on

15   the plaintiff in the case, and that discovery needs to be more

16   targeted than that.

17             And that there ought not be, in some sense, an in

18   terrorem effect in defamation cases where you're afraid to

19   bring a defamation case because, if you do so, the result is

20   that it's the equivalent of being audited by the most

21   aggressive IG in the country to see if there's anything that

22   can be found that's embarrassing.

23             At the same time, I think there is something to the

24   defendant's view that, if there were a pattern of similar

25   conduct involving other countries, that it could be relevant to

1   showing that it wasn't an accident here or supporting the

2   defense view of the case.

3           So I think with respect to this issue, as in all

4   things, it's a matter of balance and reasonableness.  And I

5   hope that you-all can work these things out amongst yourselves,

6   and it may be that defendant -- or the defendant is entitled to

7   probe somewhat with respect to other issues, but it has to be

8   fairly closely tied, and it ought not be unduly burdensome.

9           And all of this, under the federal rules, I do need

10  to engage in a balancing with respect to how probative the

11  discovery is and what the burden is of the discovery.  I hope

12  you-all can strike that as a reasonable balance as to the scope

13  of discovery.

14          With respect to the number of depositions, I

15  understand that, quite frankly, a case with 30 depositions is a

16  lot; 15 per side.  But I also understand that there are a lot

17  of issues that need to be covered here and a lot of potential

18  witnesses.  Again, I think you all -- both sides are reasonable

19  about this.

20          And I think for present purposes what I'm going to

21  conclude is that each side should be limited to 20 depositions.

22  If an experience -- either side concludes that that's resulting

23  in depositions that are unnecessary and unduly costly and are

24  not likely to lead to probative evidence in the case, you're

25  welcome to come back to me and say that that should be limited.

1          And, on the other hand, if it turns out that

2     discovery reveals that there are more witnesses that I might

3     anticipate now or if you have really good reason to need more

4     than 20 per side, I'll allow that as well.  But I think there

5     is likely to be some overlap.  I know there will be some

6     overlap as to who you want to depose.

7          So when I say 20 depositions per side, it really is

8     probably more like 25 or even more than 25 of the witnesses

9     that you really want to hear from that you're going to be able

10    to depose.  That strikes me as likely sufficient, but we'll see

11    as things proceed with the case.

12         As to timing, again, I'm not simply splitting the

13    difference here because it's the easiest thing to do.  I'm

14    splitting the difference here because I actually think that

15    you-all have taken what is a reasonable position and staked out

16    on either side the outer edge of the reasonableness with

17    respect to timing, and so what I'll provide then is the six

18    months, which everyone seems to agree upon, for purposes of the

19    fact discovery.

20         And then -- what I really mean is the six months of

21    the initial fact discovery because I won't close fact

22    discovery, but the initial fact discovery which you anticipate,

23    the six months.  And then we'll add on another nine months

24    after that.

25         So you've already done the initial disclosures, and

1    so I'll just adopt your proposal of August 11th.  I don't know

2    if that was the exact date, but that's taken care of, in any

3    event.

4              With respect to submissions, as to the protective

5    order, I'll direct that you file those by -- is it

6    September 8th you were suggesting?  September 8th for those.

7    Final requests for production from the parties, November 24th.

8    Party document productions by January 24, 2024.  Depositions

9    can be -- can commence on the 24th of January.  Any motions to

10   amend or to join parties on or before February 23rd, 2024.

11             I don't have my '24 calendar in front of me here.

12   Let me see.  Do you have one for me?  Thank you.

13             All right.  The close of fact discovery on

14   October 25th, 2024.  Expert reports by December 6th, 2024.

15   Since it's the holidays, I'll give you a little bit more time

16   for the rebuttal reports.  Rebuttal reports by January 31st,

17   2025.  And the close of expert discovery on March 28th, 2025.

18             And then what I'd like to do is schedule a

19   post-discovery status conference at which we'll discuss a

20   schedule for summary judgment.  I'm sure you have already done

21   this.  But if you haven't, consult my standing order with

22   respect to dispositive motions.  And if you want to file a

23   dispositive motion before the post-discovery status conference,

24   you'll need to file the statement required by my standing order

25   and do it early enough since -- or your opponent can file the

```
 1     counter-statement.
 2              And then at that post-discovery status conference, I
 3     can set a schedule for summary judgment briefing, and we can
 4     talk about what that briefing is going to look like in a way
 5     that, hopefully, will focus things as much as possible.
 6              So let me ask the deputy clerk if she can find a date
 7     in April of 2025 for that status.
 8              THE COURTROOM DEPUTY:  Yes, Your Honor.  April 3,
 9     2025.  That's a Thursday at 10:00.
10              THE COURT:  All right.  Is that available for
11     everyone?  It's far enough out that I would hope so.
12              MR. SIEGEL:  I have to check if it's Passover.
13              THE COURTROOM DEPUTY:  April 3rd.
14              THE COURT:  Passover is on the 13th.  Okay.  We'll
15     put it down for April 3rd at 10:00 a.m., and let's do that here
16     in person.
17              Anything else, Mr. Kroetsch, you want to bring up
18     today before we adjourn?
19              MR. KROETSCH:  Only, Your Honor, that we know your
20     calendar fills up very quickly, and we would ask that you
21     consider setting a trial date.
22              THE COURT:  How many weeks or how much time do you
23     think you need for trial?
24              MR. KROETSCH:  I think, at the most, two weeks.  This
25     might be a little different because it's a bench trial, and
```

1    there are a lot of materials you may choose that you want to

2    review, like depositions, in chambers.  So it could be shorter.

3              THE COURT:  I'll tell you what, let's take this up

4    later.  It's a bench trial.  And as you proceed with the case,

5    there may be ways to streamline things.  I'm perfectly happy to

6    hear in person from witnesses.

7              It may be that you, by mutual agreement, just want me

8    to read some depositions.  I'm happy to do that type of thing;

9    or if you have video depositions, just watch the depositions,

10   which makes scheduling easier.

11             But let's take this up at the post-discovery status.

12   Among other things, I don't know how substantial the summary

13   judgment motion is likely to be, but I think it's probably

14   something which is going to take me some time to work through.

15   I don't know exactly how long it will take to resolve that

16   motion.

17             So let's -- let's take it up.  I do think -- I'm

18   hopeful, by the time we get to the spring of 2025, that our

19   excessively busy trial calendar in this court will ease up

20   somewhat.

21             MR. KROETSCH:  No one could have seen this coming.

22             THE COURT:  That's true.

23             MR. KROETSCH:  If we could put a week on, that would

24   be great, but we understand you want to wait.

25             THE COURT:  Let's go ahead and wait on that.

```
 1                    MR. KROETSCH:  Thank you, Your Honor.

 2                    MR. SIEGEL:  Two, I think, relatively minor things.

 3     One is I just wanted to ask the Court -- and I haven't talked

 4     to Mr. Kroetsch about this.  It occurred to me as we were

 5     sitting here -- if it's okay -- so we don't have to come back,

 6     if we find ourselves in a situation where both sides agree that

 7     the other one has made reasonable efforts to subpoena somebody

 8     in Canada or something, and it just works out that their

 9     deposition can't get scheduled either because of a court or the

10     witness until month ten, if we agree among ourselves, we can go

11     ahead and do that; we don't need to come back to the Court?  Is

12     that --

13                    THE COURT:  I think that's okay, except for the fact

14     that what I would request that you do is just file a

15     stipulation to that effect --

16                    MR. SIEGEL:  Okay.

17                    THE COURT:  -- on the record.  I can tell you that if

18     both parties agree in a stipulation, the likelihood that I will

19     say no to that is -- approaches zero.  So that won't be a

20     problem.

21                    But I think it will keep the record clear, for

22     depositions that occur outside the window, that we actually

23     have some documentation of that.

24                    MR. SIEGEL:  Okay.  And the second one is -- and I

25     think Mr. Kroetsch doesn't oppose this -- we wanted -- the
```

1     principal person in our client who we need to discuss various

2     issues in the answer with has been on annual leave, which, as

3     you may know, Canadians guard very sacrosanct.

4            So we just wanted to ask if we could have another

5     week on the answer, so it would be due September 15th instead

6     of September 8th.

7            THE COURT:  That's granted.

8            MR. SIEGEL:  Okay.  Thank you.

9            THE COURT:  All right.  Thank you.  Good luck.  You

10    have a lot of work ahead of you, I know.

11            (The hearing adjourned at 11:40 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3            I, TAMARA M. SEFRANEK, do hereby certify that the

4    above and foregoing constitutes a true and accurate transcript

5    of my stenographic notes and is a full, true, and complete

6    transcript of the proceedings to the best of my ability.

7              Dated this 3rd day of September, 2023.

8

9                        /s/ Tamara M. Sefranek_____
                         Tamara M. Sefranek, RMR, CRR, CRC
10                       Official Court Reporter
                         Room 6714
11                       333 Constitution Avenue, N.W.
                         Washington, D.C.  20001
12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'24** [1] - 21:11

**/**

**/s** [1] - 26:9

**1**

**10020** [1] - 1:22
**10504** [1] - 1:13
**10:00** [2] - 22:9, 22:15
**11** [2] - 6:15, 6:25
**11:02** [1] - 1:6
**11:40** [1] - 25:11
**11th** [2] - 1:16, 21:1
**12** [2] - 5:17, 6:15
**1251** [1] - 1:21
**1301** [1] - 1:19
**13th** [1] - 22:14
**1401** [1] - 1:15
**15** [2] - 6:8, 19:16
**15th** [1] - 25:5
**16** [1] - 17:11
**16-year** [2] - 8:10, 8:16
**1:22-CV-340** [1] - 1:3

**2**

**20** [3] - 19:21, 20:4, 20:7
**20001** [2] - 1:25, 26:11
**20005** [2] - 1:16, 1:19
**2004** [1] - 8:11
**202-354-3246** [1] - 1:25
**2020** [1] - 8:11
**2023** [2] - 1:6, 26:7
**2024** [4] - 21:8, 21:10, 21:14
**2025** [5] - 21:17, 22:7, 22:9, 23:18
**21** [1] - 3:20
**21st** [1] - 1:21
**22-340** [1] - 2:2
**230-page** [1] - 5:21
**23rd** [1] - 21:10
**24** [1] - 21:8
**24th** [2] - 21:7, 21:9
**25** [2] - 20:8
**25th** [1] - 21:14
**28th** [1] - 21:17
**29** [1] - 1:6

**3**

**3** [1] - 22:8
**30** [1] - 19:15
**30(b)(6** [1] - 6:21

**31st** [1] - 21:16
**333** [3] - 1:13, 1:24, 26:11
**360** [1] - 17:11
**3rd** [3] - 22:13, 22:15, 26:7

**5**

**50** [1] - 15:1
**500** [1] - 1:19

**6**

**6** [1] - 5:16
**6714** [2] - 1:24, 26:10
**6th** [1] - 21:14

**8**

**8th** [3] - 21:6, 25:6

**A**

**a.m** [2] - 22:15, 25:11
**A.M** [1] - 1:6
**ability** [1] - 26:6
**able** [2] - 14:4, 20:9
**absolute** [2] - 14:11, 15:21
**absorbing** [1] - 8:24
**abstract** [1] - 16:15
**accept** [1] - 15:14
**accident** [1] - 19:1
**accommodating** [1] - 2:24
**accomplish** [2] - 7:6, 7:24
**accountant** [1] - 6:18
**accountants** [1] - 8:23
**accurate** [1] - 26:4
**Action** [1] - 1:2
**actual** [1] - 6:1
**add** [4] - 5:10, 16:25, 18:3, 20:23
**address** [2] - 10:22, 11:22
**addressed** [1] - 15:10
**adjourn** [1] - 22:18
**adjourned** [1] - 25:11
**admissibility** [1] - 10:23
**admissible** [1] - 11:14
**adopt** [1] - 21:1
**adverse** [1] - 13:22
**affidavit** [2] - 10:7, 10:11
**afraid** [1] - 18:18
**aggressive** [1] - 18:21
**agree** [10] - 3:7, 5:23,

9:11, 10:8, 12:23, 17:5, 20:18, 24:6, 24:10, 24:18
**agreed** [4] - 3:12, 4:12, 4:25, 5:9
**agreeing** [1] - 15:23
**agreement** [2] - 16:3, 23:7
**ahead** [3] - 23:25, 24:11, 25:10
**allow** [1] - 20:4
**allowed** [1] - 13:7
**alluded** [1] - 5:7
**amend** [1] - 21:10
**Americas** [1] - 1:21
**amount** [3] - 3:22, 8:20, 10:16
**Amy** [1] - 2:10
**AMY** [1] - 1:14
**analyze** [1] - 7:18
**annual** [1] - 25:2
**answer** [4] - 11:7, 12:12, 25:2, 25:5
**anticipate** [6] - 4:19, 5:19, 7:15, 9:7, 20:3, 20:22
**anticipated** [1] - 2:20
**anticipating** [1] - 4:4
**apart** [2] - 3:8, 3:9, 15:18
**approach** [1] - 2:4
**approaches** [1] - 24:19
**April** [4] - 22:7, 22:8, 22:13, 22:15
**argue** [1] - 11:15
**argument** [1] - 16:7
**Armonk** [1] - 1:13
**assert** [5] - 11:9, 13:7, 13:9, 13:21
**assessments** [1] - 13:18
**assuming** [1] - 8:2
**audited** [1] - 18:20
**August** [2] - 1:6, 21:1
**available** [2] - 11:7, 22:10
**Avenue** [4] - 1:15, 1:21, 1:24, 26:11
**averse** [1] - 13:24

**B**

**bad** [1] - 17:25
**balance** [2] - 19:4, 19:12
**balancing** [1] - 19:10
**based** [1] - 13:18
**basis** [2] - 11:9, 12:5
**bearing** [1] - 15:8

**become** [1] - 16:19
**BEFORE** [1] - 1:9
**bench** [2] - 22:25, 23:4
**best** [1] - 26:6
**better** [2] - 3:1, 13:16
**between** [1] - 3:20
**big** [2] - 7:8, 7:11
**bit** [4] - 2:19, 5:19, 13:25, 21:15
**Boies** [3] - 1:12, 1:15, 2:10
**bottom** [1] - 5:20
**briefing** [3] - 10:23, 22:3, 22:4
**bring** [2] - 18:19, 22:17
**bringing** [1] - 18:12
**broad** [1] - 17:5
**broadcast** [1] - 6:23
**Broadcasting** [1] - 2:3
**BROADCASTING** [1] - 1:5
**building** [2] - 7:9, 8:14
**built** [1] - 17:10
**burden** [2] - 16:22, 19:11
**burdensome** [1] - 19:8
**busy** [1] - 23:19

**C**

**calendar** [3] - 21:11, 22:20, 23:19
**caliber** [1] - 9:22
**Canada** [4] - 4:1, 4:4, 9:15, 24:8
**Canadian** [2] - 2:3, 8:23
**CANADIAN** [1] - 1:5
**Canadians** [1] - 25:3
**candidly** [1] - 10:14
**cannot** [1] - 17:23
**capture** [1] - 7:7
**care** [1] - 21:2
**case** [26] - 3:4, 3:6, 5:21, 5:24, 5:25, 6:3, 7:2, 9:4, 9:19, 10:17, 11:22, 13:15, 14:9, 14:14, 14:22, 16:4, 16:14, 18:6, 18:12, 18:15, 18:19, 19:2, 19:15, 19:24, 20:11, 23:4
**Case** [1] - 2:2
**case-specific** [1] - 14:14
**cases** [3] - 10:13, 11:21, 18:18

**catch** [1] - 14:19
**CBC** [5] - 2:14, 6:4, 6:7, 13:6, 17:5
**CEO** [1] - 12:20
**certainly** [2] - 7:13, 12:22
**CERTIFICATE** [1] - 26:1
**certify** [1] - 26:3
**CFO** [2] - 6:19, 12:19
**challenging** [1] - 11:10
**chambers** [1] - 23:2
**Charity** [6] - 2:3, 2:7, 8:11, 8:13, 12:19, 17:10
**charity** [1] - 3:19
**CHARITY** [1] - 1:2
**check** [1] - 22:12
**Children** [1] - 8:14
**choose** [1] - 23:1
**citing** [1] - 12:20
**civil** [1] - 2:2
**Civil** [1] - 1:2
**clarify** [1] - 12:18
**classic** [1] - 11:20
**clean** [1] - 6:22
**clear** [3] - 14:11, 15:16, 24:21
**clerk** [1] - 22:6
**client** [2] - 13:23, 25:1
**close** [3] - 20:21, 21:13, 21:17
**closely** [1] - 19:8
**COLUMBIA** [1] - 1:1
**coming** [1] - 23:21
**commence** [1] - 21:9
**compel** [12] - 11:10, 12:4, 12:24, 13:10, 14:3, 14:5, 14:17, 14:23, 15:7, 15:11, 15:18, 16:6
**compelled** [1] - 14:6
**complaint** [3] - 5:21, 17:6, 17:7
**complete** [1] - 26:5
**completed** [1] - 7:16
**completely** [2] - 17:15, 17:24
**concern** [1] - 16:13
**conclude** [4] - 13:5, 13:6, 14:21, 19:21
**concludes** [1] - 19:22
**conduct** [2] - 3:24, 18:25
**conference** [5] - 2:16, 2:19, 21:19, 21:23, 22:2
**CONFERENCE** [2] -

1:4, 1:8
**confidential** [9] -
10:23, 11:16, 11:18,
11:19, 14:24, 16:6,
16:9, 16:12
**confirm** [1] - 11:14
**consequences** [1] -
13:22
**consider** [1] - 22:21
**consistent** [1] - 17:22
**constitutes** [1] - 26:4
**Constitution** [2] -
1:24, 26:11
**consult** [1] - 21:21
**consultation** [1] -
13:23
**contemplated** [1] - 5:6
**context** [1] - 11:23
**CORPORATION** [1] -
1:6
**Corporation** [1] - 2:3
**correct** [2] - 6:6, 16:2
**costly** [1] - 19:23
**counsel** [3] - 2:4, 2:5,
12:3
**count** [1] - 10:9
**counter** [1] - 22:1
**counter-statement** [1]
- 22:1
**countries** [2] - 7:22,
18:25
**country** [1] - 18:21
**couple** [1] - 7:17
**course** [3] - 11:4,
12:23, 16:19
**COURT** [45] - 1:1, 2:8,
2:12, 2:15, 3:2, 3:8,
3:11, 3:25, 4:20,
4:24, 5:3, 5:10, 5:13,
8:2, 9:21, 9:25,
10:20, 11:1, 11:6,
12:2, 12:7, 12:9,
12:11, 12:15, 13:12,
13:15, 14:9, 15:5,
15:12, 15:14, 15:23,
16:3, 18:2, 18:5,
22:10, 22:14, 22:22,
23:3, 23:22, 23:25,
24:13, 24:17, 25:7,
25:9, 26:1
**court** [2] - 23:19, 24:9
**Court** [7] - 1:23, 1:23,
2:24, 10:22, 24:3,
24:11, 26:10
**Courthouse** [1] - 1:24
**COURTNEY** [1] - 1:18
**Courtney** [1] - 2:14
**COURTROOM** [3] -
2:2, 22:8, 22:13
**courts** [2] - 13:6,

15:16
**coverage** [1] - 17:18
**covered** [1] - 19:17
**CRC** [2] - 1:23, 26:9
**creates** [1] - 15:4
**critical** [1] - 9:3
**cross** [1] - 10:3
**CRR** [2] - 1:23, 26:9
**crucial** [1] - 4:18
**crystallized** [2] -
16:20, 16:21

## D

**D.C** [3] - 1:5, 1:25,
26:11
**data** [1] - 8:22
**Date** [1] - 1:16
**date** [4] - 5:9, 21:2,
22:6, 22:21
**Dated** [1] - 26:7
**Davis** [1] - 1:18
**davis** [1] - 1:21
**DC** [2] - 1:16, 1:19
**deal** [4] - 11:11, 12:25,
13:21, 14:15
**December** [1] - 21:14
**decide** [1] - 13:20
**decline** [2] - 11:6, 11:7
**defamation** [4] - 5:25,
18:12, 18:18, 18:19
**default** [1] - 14:1
**Defendant** [2] - 1:7,
1:17
**defendant** [2] - 19:6
**defendant's** [2] -
14:10, 18:24
**defense** [2] - 16:8,
19:2
**deferring** [1] - 15:3
**degree** [1] - 5:23
**delay** [1] - 5:8
**deponents** [1] - 4:10
**depose** [6] - 6:13,
7:19, 7:20, 9:23,
20:6, 20:10
**deposition** [5] - 4:1,
4:7, 4:8, 6:24, 24:9
**depositions** [25] - 3:6,
3:16, 3:24, 4:5, 4:13,
6:8, 6:25, 7:1, 7:3,
9:20, 10:2, 10:10,
10:16, 15:25, 19:14,
19:15, 19:21, 19:23,
20:7, 21:8, 23:2,
23:8, 23:9, 24:22
**deprived** [1] - 4:18
**deputy** [1] - 22:6
**DEPUTY** [3] - 2:2,
22:8, 22:13

**described** [1] - 12:24
**determine** [1] - 17:4
**DeThomas** [2] - 1:18,
2:14
**difference** [3] - 3:9,
20:13, 20:14
**different** [8] - 6:9,
7:22, 10:6, 14:23,
15:9, 17:16, 17:25,
22:25
**differently** [1] - 13:3
**direct** [2] - 10:3, 21:5
**disagreement** [3] -
3:3, 5:16, 17:3
**disclose** [1] - 6:17
**disclosed** [1] - 6:15
**disclosures** [5] - 3:21,
4:21, 6:11, 12:19,
20:25
**discovery** [38] - 3:5,
3:13, 5:16, 5:19,
6:12, 6:13, 7:6, 8:3,
8:21, 9:5, 9:12, 11:7,
11:11, 13:4, 14:12,
15:19, 16:19, 17:3,
17:5, 17:19, 18:11,
18:13, 18:15, 19:11,
19:13, 20:2, 20:19,
20:21, 20:22, 21:13,
21:17, 21:19, 21:23,
22:2, 23:11
**discrete** [4] - 3:5,
3:17, 5:21, 6:6
**discuss** [2] - 21:19,
25:1
**discussing** [1] - 5:5
**dispositive** [2] -
21:22, 21:23
**DISTRICT** [3] - 1:1,
1:1, 1:9
**docs** [1] - 7:21
**document** [8] - 3:13,
3:14, 7:15, 8:3, 8:20,
14:3, 17:15, 21:8
**documentation** [1] -
24:23
**documents** [4] - 6:3,
8:3, 8:7, 17:10
**donated** [1] - 8:18
**donations** [1] - 8:17
**done** [5] - 8:19, 8:23,
13:3, 20:25, 21:20
**donors** [3] - 7:9, 8:17,
9:13
**doubt** [1] - 8:24
**down** [1] - 22:15
**due** [1] - 25:5
**dumb** [1] - 17:16
**during** [1] - 11:11

## E

**early** [1] - 21:25
**ease** [1] - 23:19
**easier** [1] - 23:10
**easiest** [1] - 20:13
**East** [1] - 1:19
**edge** [1] - 20:16
**effect** [2] - 18:18,
24:15
**efficient** [1] - 12:13
**effort** [1] - 15:17
**efforts** [1] - 24:7
**either** [5] - 4:1, 9:10,
19:22, 20:16, 24:9
**embarrassing** [2] -
18:14, 18:22
**employees** [1] - 9:10
**end** [3] - 8:3, 8:7,
14:22
**engage** [2] - 4:7,
19:10
**engaged** [1] - 6:7
**enormous** [1] - 8:20
**enter** [1] - 4:21
**entirely** [1] - 4:5
**entitled** [1] - 19:6
**equivalent** [2] - 10:3,
18:20
**error** [1] - 5:24
**essentially** [4] - 5:15,
6:15, 10:1, 10:24
**establish** [1] - 6:2
**event** [3] - 4:10, 9:23,
21:3
**evidence** [5] - 4:18,
11:14, 11:15, 11:24,
19:24
**evidentiary** [2] -
11:21, 11:23
**exact** [1] - 21:2
**exactly** [2] - 12:24,
23:15
**example** [2] - 4:6, 7:21
**except** [1] - 24:13
**excessively** [1] -
23:19
**exchanged** [4] - 3:22,
4:20, 4:23, 5:2
**existence** [1] - 13:8
**expecting** [1] - 3:14
**expedition** [2] - 16:11,
17:22
**experience** [2] -
13:19, 19:22
**experienced** [1] -
13:13
**expert** [2] - 21:14,
21:17

**experts** [1] - 8:19
**explain** [3] - 5:20,
5:22, 6:9
**expose** [1] - 18:13

## F

**fact** [13] - 5:15, 5:16,
9:25, 10:16, 14:14,
17:8, 18:6, 20:19,
20:21, 20:22, 21:13,
24:13
**fact-specific** [1] -
14:14
**factor** [1] - 15:16
**fair** [1] - 3:21
**fairly** [1] - 19:8
**false** [2] - 17:7, 17:12
**far** [1] - 22:11
**fault** [1] - 6:4
**February** [1] - 21:10
**federal** [1] - 19:9
**few** [3] - 2:25, 7:20,
12:18
**fewer** [2] - 13:9, 13:10
**figure** [5] - 7:18, 8:25,
16:1, 16:12, 17:12
**file** [10] - 11:10, 12:4,
14:17, 15:11, 16:23,
21:5, 21:22, 21:24,
21:25, 24:14
**fills** [1] - 22:20
**final** [1] - 21:7
**firms** [1] - 9:22
**first** [3] - 2:23, 6:11,
13:5
**fishing** [2] - 16:11,
17:22
**flexible** [1] - 4:16
**Flexner** [2] - 1:12,
1:15
**Floor** [2] - 1:16, 1:21
**focus** [1] - 22:5
**follow** [5] - 7:8, 8:6,
8:15, 8:25, 11:3
**follow-up** [1] - 8:6
**FOR** [1] - 1:1
**foregoing** [1] - 26:4
**former** [2] - 9:10,
12:20
**foundations** [2] -
7:11, 7:22
**four** [3] - 7:24, 8:25,
10:13
**frankly** [4] - 9:13,
11:21, 13:16, 19:15
**Free** [1] - 8:13
**Friday** [1] - 5:9
**friend** [1] - 12:18
**Froese** [1] - 4:7

**front** [2] - 2:17, 21:11
**full** [2] - 7:13, 26:5
**fundamentally** [1] -
5:24
**funding** [1] - 9:14

## G

**gamble** [3] - 13:20,
14:1, 15:3
**German** [1] - 12:16
**Germans** [1] - 12:13
**glad** [1] - 3:2
**granted** [1] - 25:7
**great** [2] - 13:21,
23:24
**group** [1] - 3:17
**groups** [1] - 9:9
**guard** [1] - 25:3
**guess** [3] - 12:12,
13:17, 14:20
**guessed** [1] - 14:25

## H

**half** [3] - 6:25, 7:1
**hand** [1] - 20:1
**happy** [3] - 12:2, 23:5,
23:8
**hard** [1] - 16:15
**head** [1] - 4:13
**hear** [7] - 2:21, 2:22,
3:2, 5:11, 12:2, 20:9,
23:6
**hearing** [4] - 2:25, 5:7,
17:4, 25:11, 19:17
**HELD** [1] - 1:9
**hereby** [1] - 26:3
**hold** [2] - 16:4, 16:17
**holidays** [1] - 21:15
**Honor** [15] - 2:6, 2:13,
2:23, 5:12, 5:14,
5:15, 5:18, 8:1, 8:9,
12:8, 13:5, 14:21,
22:8, 22:19, 24:1
**HONORABLE** [1] - 1:9
**hope** [4] - 9:19, 19:5,
19:11, 22:11
**hopeful** [1] - 23:18
**hopefully** [1] - 22:5
**hour** [1] - 10:2
**huge** [1] - 3:9
**hypothetically** [2] -
10:5, 10:6

## I

**identification** [1] -
11:8
**identified** [2] - 3:21,

6:22
**identify** [1] - 7:4
**identifying** [1] - 5:1
**IG** [1] - 18:21
**imagine** [1] - 9:21
**important** [5] - 5:25,
6:19, 8:9, 9:17,
11:25
**IN** [1] - 1:1
**incentive** [1] - 14:20
**include** [1] - 6:19
**individuals** [1] - 3:17
**information** [2] - 8:24,
15:19
**initial** [7] - 3:21, 4:20,
6:11, 12:19, 20:21,
20:22, 20:25
**instance** [1] - 15:7
**instead** [1] - 25:5
**intends** [1] - 6:2
**internal** [1] - 7:10
**international** [1] -
4:17
**interviewed** [1] - 6:23
**involving** [1] - 18:25
**issue** [15] - 10:21,
11:23, 12:22, 14:2,
14:5, 14:17, 15:3,
15:25, 16:3, 16:15,
16:18, 16:20, 16:24,
18:10, 19:3
**issues** [6] - 5:25,
11:21, 18:9, 19:7,
19:17, 25:2
**itself** [2] - 15:19, 16:8

## J

**January** [4] - 7:16,
21:8, 21:9, 21:16
**job** [1] - 6:8
**join** [1] - 21:10
**Joseph** [1] - 2:6
**JOSEPH** [1] - 1:12
**JUDGE** [2] - 1:9, 1:9
**judgment** [8] - 11:12,
13:1, 13:23, 16:7,
16:18, 21:20, 22:3,
23:13

## K

**keep** [1] - 24:21
**Ken** [1] - 4:7
**Kenya** [5] - 4:2, 8:14,
8:18, 17:19, 17:20
**knows** [1] - 13:15
**Kroetsch** [11] - 2:7,
2:21, 6:10, 12:9,
12:10, 12:11, 12:12,

15:20, 16:25, 18:10,
22:17, 24:4, 24:25
**KROETSCH** [25] -
1:12, 2:6, 2:9, 2:23,
3:3, 3:10, 3:12, 4:3,
4:23, 4:25, 5:5, 5:12,
12:10, 12:13, 12:17,
13:14, 13:25, 14:18,
17:2, 18:4, 22:19,
22:24, 23:21, 23:23,
24:1

## L

**large** [2] - 8:12, 8:13
**largely** [2] - 4:4, 6:1
**last** [1] - 9:2
**law** [4] - 9:21, 13:15,
14:9, 17:22
**lawyers** [1] - 18:7
**lead** [1] - 19:24
**learn** [2] - 9:12, 15:18
**least** [1] - 12:3
**leave** [2] - 16:16, 25:2
**leaves** [2] - 7:1, 7:23
**letter** [1] - 4:8
**level** [1] - 8:18
**likelihood** [1] - 24:18
**likely** [5] - 7:20, 19:24,
20:5, 20:10, 23:13
**likewise** [2] - 13:6,
13:25, 17:17
**limine** [1] - 12:25
**limit** [1] - 4:25
**limited** [4] - 17:19,
19:21, 19:16
**line** [1] - 5:20
**live** [1] - 13:22
**LLP** [4] - 1:12, 1:15,
1:18, 1:21
**look** [5] - 5:24, 6:10,
6:11, 14:5, 15:16,
17:17, 22:4
**lose** [1] - 14:7
**luck** [2] - 17:16, 25:9

## M

**macro** [1] - 8:17
**main** [1] - 3:3
**Main** [1] - 1:13
**major** [1] - 17:2
**malice** [1] - 6:1
**March** [1] - 21:17
**marketing** [2] - 7:8,
7:10
**material** [1] - 14:12
**materials** [1] - 23:1
**matter** [2] - 7:23, 19:4
**mean** [7] - 10:5, 10:6,

10:22, 10:24, 11:20,
18:12, 20:20
**means** [1] - 10:1
**mention** [1] - 8:1
**mentioned** [1] - 6:11
**meta** [1] - 7:5
**microlevel** [1] - 8:16
**might** [5] - 9:8, 9:11,
15:1, 20:2, 22:25
**million** [1] - 14:23
**minor** [1] - 24:2
**modification** [1] - 2:18
**money** [2] - 8:15, 8:18
**month** [3] - 4:13, 8:3,
24:10
**months** [15] - 3:8, 3:9,
3:13, 3:17, 5:16,
5:17, 7:17, 7:24,
8:25, 9:16, 10:14,
20:18, 20:20, 20:23
**moon** [1] - 10:15
**moot** [1] - 14:6
**morning** [6] - 2:6, 2:8,
2:9, 2:12, 2:13, 2:15
**MOSS** [1] - 1:9
**most** [5] - 5:25, 9:14,
13:6, 18:20, 22:24
**motion** [12] - 11:10,
12:4, 12:24, 12:25,
14:5, 14:17, 15:11,
15:18, 16:23, 21:23,
23:13, 23:16
**motions** [3] - 13:10,
21:9, 21:22
**move** [5] - 14:2, 14:7,
14:22, 15:11, 16:5
**moving** [3] - 2:24, 5:7,
15:7
**MR** [44] - 1:12, 2:6,
2:9, 2:13, 2:23, 3:3,
3:10, 3:12, 4:3, 4:23,
4:25, 5:5, 5:12, 5:14,
8:4, 9:24, 10:4,
10:21, 11:5, 11:20,
12:6, 12:8, 12:10,
12:13, 12:17, 13:14,
13:25, 14:18, 15:9,
15:13, 15:15, 16:2,
17:2, 18:4, 22:12,
22:19, 22:24, 23:21,
23:23, 24:1, 24:2,
24:16, 24:24, 25:8
**MS** [2] - 1:14, 2:10
**mutual** [1] - 23:7

## N

**N.W** [1] - 26:11
**name** [1] - 2:5
**NATHAN** [1] - 1:17

**Nathan** [1] - 2:13
**nature** [1] - 9:4
**necessary** [1] - 4:1
**need** [16] - 7:6, 8:25,
11:24, 14:2, 14:20,
15:6, 15:10, 16:5,
17:11, 19:9, 19:17,
20:3, 21:24, 22:23,
24:11, 25:1
**needing** [1] - 5:8
**needs** [1] - 18:15
**NEUHARDT** [2] - 1:14,
2:10
**Neuhardt** [1] - 2:10
**New** [1] - 1:15
**new** [1] - 1:22
**next** [2] - 5:9, 8:15
**nine** [2] - 6:20, 20:23
**nobody** [1] - 9:7
**nonparties** [2] - 6:23,
7:21
**normal** [2] - 11:4,
12:23
**notes** [1] - 26:5
**notion** [1] - 18:11
**November** [1] - 21:7
**number** [4] - 6:7, 7:3,
9:10, 19:14
**NW** [3] - 1:15, 1:19,
1:24
**NY** [2] - 1:13, 1:22

## O

**obligation** [2] - 14:16,
15:22
**obtain** [1] - 3:25
**obviously** [1] - 9:19
**occur** [1] - 24:22
**occurred** [1] - 24:4
**occurring** [1] - 2:19
**October** [1] - 21:14
**OF** [3] - 1:1, 1:8, 26:1
**OFFICIAL** [1] - 26:1
**Official** [1] - 1:23,
26:10
**one** [14] - 6:25, 7:8,
9:10, 10:21, 12:18,
14:15, 15:10, 15:16,
18:7, 21:12, 23:21,
24:3, 24:7, 24:24
**ones** [1] - 7:7
**opponent** [1] - 21:25
**opportunity** [1] -
11:17
**oppose** [1] - 24:25
**order** [8] - 4:22, 5:4,
14:17, 16:6, 17:18,
21:5, 21:21, 21:24
**originally** [2] - 2:20,

5:6
**ought** [2] - 18:17, 19:8
**ourselves** [3] - 14:25, 24:6, 24:10
**outer** [1] - 20:16
**outlined** [1] - 17:7
**outside** [4] - 4:2, 6:18, 8:23, 24:22
**overlap** [3] - 3:22, 20:5, 20:6
**own** [1] - 6:3

## P

**part** [3] - 7:11, 8:19, 14:16
**partial** [1] - 8:22
**partially** [1] - 14:18
**particularly** [1] - 3:6
**parties** [10] - 3:20, 3:22, 4:11, 4:17, 4:20, 4:25, 21:7, 21:10, 24:18
**parties'** [1] - 2:17
**party** [3] - 6:3, 6:17, 21:8
**Passover** [1] - 22:12
**passover** [1] - 22:14
**pattern** [1] - 18:24
**people** [3] - 6:14, 9:17, 15:1
**per** [3] - 19:16, 20:4, 20:7
**perfectly** [1] - 23:5
**perhaps** [3] - 11:12, 14:15, 16:11
**period** [2] - 8:10, 8:16
**permissible** [1] - 11:14
**person** [4] - 4:9, 22:16, 23:6, 25:1
**personnel** [1] - 6:7
**picture** [1] - 7:8
**Plaintiff** [2] - 1:3, 1:12
**plaintiff** [10] - 2:11, 5:23, 6:1, 8:12, 11:8, 11:16, 15:17, 16:5, 18:12, 18:15
**plaintiff's** [3] - 2:5, 5:21, 12:3
**plus** [1] - 4:11
**podium** [1] - 2:4
**point** [6] - 3:6, 13:18, 14:6, 15:24, 16:23, 17:3
**points** [1] - 15:9
**poorly** [1] - 18:14
**position** [5] - 10:18, 13:16, 16:10, 20:15
**possibility** [1] - 10:23

**possible** [1] - 22:5
**post** [4] - 21:19, 21:23, 22:2, 23:11
**post-discovery** [4] - 21:19, 21:23, 22:2, 23:11
**potential** [2] - 9:9, 19:17
**potentially** [2] - 13:2, 14:8
**practical** [1] - 7:23
**precluded** [2] - 14:24, 16:8
**preliminary** [3] - 11:1, 11:3, 12:3
**premature** [2] - 10:25, 17:4
**present** [5] - 9:18, 11:15, 16:17, 16:20, 19:20
**presents** [1] - 5:21
**preserve** [6] - 14:2, 14:4, 14:17, 15:6, 15:11, 16:7
**presumably** [1] - 7:16
**pretty** [2] - 6:19, 10:18
**previously** [1] - 8:13
**primarily** [1] - 6:7
**primary** [1] - 7:5
**principal** [1] - 25:1
**privilege** [7] - 11:9, 12:22, 13:7, 13:21, 14:4, 14:11, 15:22
**probative** [2] - 19:10, 19:24
**probe** [1] - 19:7
**problem** [1] - 24:20
**proceed** [2] - 16:24, 20:11, 23:4
**proceedings** [1] - 26:6
**process** [4] - 4:1, 4:12, 4:14, 4:17
**produce** [1] - 14:12
**production** [2] - 7:16, 21:7
**productions** [2] - 8:5, 21:8
**pronounce** [1] - 12:12
**proposal** [2] - 17:17, 21:1
**proposals** [2] - 2:17, 5:3
**proposing** [1] - 13:2
**protective** [2] - 5:4, 21:4
**prove** [1] - 17:23
**provide** [2] - 14:7, 20:17
**published** [1] - 17:24
**purposes** [5] - 16:4,

16:7, 16:17, 19:20, 20:18
**put** [3] - 6:2, 22:15, 23:23

## Q

**questions** [1] - 11:13
**quickly** [2] - 12:17, 22:20
**quite** [2] - 6:9, 19:15
**quoted** [1] - 17:8

## R

**RACHEL** [1] - 1:20
**Rachel** [1] - 2:14
**raise** [1] - 16:18
**raised** [1] - 10:22
**raising** [1] - 15:6
**ramifications** [2] - 13:11, 14:13
**RANDOLPH** [1] - 1:9
**rather** [1] - 12:15
**raw** [1] - 8:22
**read** [2] - 14:10, 23:8
**ready** [1] - 3:7
**realistic** [3] - 7:2, 7:25, 10:14
**realistically** [1] - 6:18
**really** [11] - 4:15, 7:5, 7:24, 8:9, 9:2, 9:4, 10:13, 20:3, 20:7, 20:9, 20:20
**reason** [5] - 4:19, 9:17, 11:22, 13:2, 20:3
**reasonable** [4] - 19:12, 19:18, 20:15, 24:7
**reasonableness** [2] - 19:4, 20:16
**reasonably** [1] - 15:18
**reasons** [1] - 10:12
**rebuttal** [2] - 21:16
**record** [3] - 2:5, 24:17, 24:21
**records** [2] - 17:11, 17:12
**reflects** [2] - 18:6, 18:14
**relate** [1] - 11:25
**relatively** [3] - 3:17, 6:6, 24:2
**relevant** [3] - 3:18, 8:10, 18:25
**relied** [1] - 11:15
**rely** [1] - 13:7
**relying** [2] - 14:24, 16:8

**rendered** [1] - 17:14
**renew** [1] - 16:22
**REPORTER** [1] - 26:1
**Reporter** [3] - 1:23, 1:23, 26:10
**reporters** [1] - 7:12
**reporting** [1] - 3:18
**reports** [4] - 8:22, 21:14, 21:16
**request** [3] - 3:14, 16:22, 24:14
**requests** [3] - 8:5, 8:6, 21:7
**require** [1] - 2:18
**required** [3] - 5:1, 14:12, 21:24
**resolve** [3] - 15:24, 16:15, 23:15
**respect** [12] - 6:4, 7:3, 12:22, 16:6, 16:11, 19:3, 19:7, 19:10, 19:14, 20:17, 21:4, 21:22
**respectfully** [2] - 3:23, 17:21
**responding** [1] - 12:17
**response** [3] - 3:14, 16:25
**responsible** [2] - 3:18
**result** [1] - 18:19
**resulted** [1] - 5:7
**resulting** [1] - 19:22
**reveals** [1] - 20:2
**review** [2] - 7:17, 23:2
**risk** [2] - 13:13, 13:24
**RMR** [2] - 1:23, 26:9
**rogatory** [1] - 4:8
**roles** [1] - 3:19
**rolling** [1] - 8:5
**Room** [2] - 1:24, 26:10
**roughly** [2] - 3:12, 8:11
**rules** [2] - 5:1, 19:9
**runs** [1] - 13:20

## S

**sacrosanct** [1] - 25:3
**schedule** [4] - 3:4, 21:18, 21:20, 22:3
**scheduled** [1] - 24:9
**SCHEDULING** [2] - 1:4, 1:8
**scheduling** [4] - 2:16, 2:19, 17:18, 23:10
**Schiller** [3] - 1:12, 1:15, 2:10
**school** [1] - 7:9
**schoolhouse** [1] -

9:14
**schools** [2] - 8:14, 17:11
**scope** [3] - 17:3, 18:11, 19:12
**second** [2] - 9:13, 24:24
**see** [8] - 7:5, 7:23, 8:10, 9:9, 15:5, 18:21, 20:10, 21:12
**seeking** [1] - 11:8
**Sefranek** [3] - 1:23, 26:9, 26:9
**SEFRANEK** [1] - 26:3
**sense** [3] - 5:19, 17:21, 18:17
**sentences** [1] - 12:15
**separate** [1] - 14:18
**September** [5] - 21:6, 25:5, 25:6, 26:7
**Serena** [1] - 12:19
**served** [1] - 3:14
**set** [1] - 22:3
**setting** [1] - 22:21
**seven** [2] - 3:9, 6:17
**shorter** [1] - 23:2
**show** [2] - 16:21, 18:14
**showing** [2] - 17:23, 19:1
**sick** [1] - 12:21
**side** [7] - 15:3, 19:16, 19:21, 19:22, 20:4, 20:7, 20:16
**sides** [6] - 6:21, 8:8, 8:20, 11:21, 19:18, 24:6
**SIEGEL** [20] - 1:17, 2:13, 5:14, 8:4, 9:24, 10:4, 10:21, 11:5, 11:20, 12:6, 12:8, 15:9, 15:13, 15:15, 16:2, 22:12, 24:2, 24:16, 24:24, 25:8
**Siegel** [9] - 2:14, 2:22, 5:11, 5:13, 13:12, 14:16, 15:5, 15:8, 17:1
**similar** [1] - 18:24
**simply** [2] - 4:16, 20:12
**single** [2] - 14:3
**sit** [1] - 4:8
**sitting** [1] - 24:5
**situation** [2] - 10:7, 24:6
**six** [10] - 3:8, 3:9, 3:12, 3:17, 4:13, 8:3, 9:16, 20:17, 20:20, 20:23
**six-month** [2] - 4:13,

8:3
**slight** [1] - 2:18
**someone** [2] - 10:7, 11:15
**sometimes** [1] - 15:16
**somewhat** [2] - 19:7, 23:20
**soon** [1] - 3:15
**sorry** [1] - 8:2
**sort** [4] - 6:22, 7:7, 12:25, 15:18
**source** [6] - 11:16, 11:18, 11:19, 12:22, 13:7, 14:4
**sources** [10] - 9:10, 10:24, 14:20, 14:24, 15:2, 16:1, 16:6, 16:9, 16:10, 16:12
**specific** [7] - 8:16, 8:17, 14:14, 17:7, 17:10
**spelling** [1] - 12:14
**spent** [1] - 8:18
**splitting** [2] - 20:12, 20:14
**spring** [1] - 23:18
**stage** [3] - 4:19, 11:13, 11:22
**staked** [1] - 20:15
**standard** [1] - 6:12
**standing** [2] - 21:21, 21:24
**start** [4] - 2:21, 4:12, 4:14, 18:10
**starting** [2] - 2:5, 4:13
**state** [1] - 2:4
**statement** [2] - 21:24, 22:1
**statements** [1] - 17:7
**STATES** [2] - 1:1, 1:9
**States** [2] - 1:24, 4:2
**status** [5] - 21:19, 21:23, 22:2, 22:7, 23:11
**stenographic** [1] - 26:5
**still** [1] - 14:19
**stipulation** [2] - 24:15, 24:18
**story** [4] - 7:14, 17:16, 17:23, 17:25
**strategies** [1] - 7:10
**streamline** [3] - 13:3, 16:14, 23:5
**Street** [2] - 1:13, 1:19
**strike** [1] - 19:12
**strikes** [1] - 20:10
**STROM** [1] - 1:20
**Strom** [1] - 2:14
**subject** [1] - 9:8

**submission** [1] - 14:10
**submissions** [1] - 21:4
**submit** [2] - 5:3, 17:21
**submitting** [3] - 5:6, 8:5, 8:6
**subpoena** [5] - 7:21, 9:9, 10:9, 15:2, 24:7
**substantial** [2] - 18:1, 23:12
**substantially** [1] - 17:23
**sufficient** [2] - 10:11, 20:10
**suggesting** [2] - 4:16, 21:6
**suit** [1] - 18:13
**Suite** [1] - 1:19
**summary** [7] - 11:12, 13:1, 16:7, 16:18, 21:20, 22:3, 23:12
**sums** [1] - 10:18
**support** [1] - 16:10
**supporting** [1] - 19:1
**supposedly** [1] - 17:24
**sympathetic** [2] - 16:13, 18:11
**system** [1] - 14:1

**T**

**TAMARA** [1] - 26:3
**Tamara** [3] - 1:23, 26:9, 26:9
**targeted** [1] - 18:16
**task** [1] - 6:12
**tasks** [1] - 7:6
**ten** [1] - 24:10
**terms** [1] - 3:4
**terrorem** [1] - 18:18
**testify** [1] - 9:11
**THE** [49] - 1:1, 1:1, 1:9, 2:2, 2:8, 2:12, 2:15, 3:2, 3:8, 3:11, 3:25, 4:20, 4:24, 5:3, 5:10, 5:13, 8:2, 9:21, 9:25, 10:20, 11:1, 11:6, 12:2, 12:7, 12:9, 12:11, 12:15, 13:12, 13:15, 14:9, 15:5, 15:12, 15:14, 15:23, 16:3, 18:2, 18:5, 22:8, 22:10, 22:13, 22:14, 22:22, 23:3, 23:22, 23:25, 24:13, 24:17, 25:7, 25:9
**themselves** [1] - 8:14

**they've** [1] - 6:22
**thinking** [1] - 14:25
**thoughtful** [1] - 18:7
**three** [3] - 6:22, 7:1, 7:5
**Thursday** [1] - 22:9
**tied** [1] - 19:8
**timing** [2] - 20:12, 20:17
**today** [1] - 22:18
**today's** [1] - 2:18
**tomorrow** [1] - 5:6
**topic** [1] - 8:15
**transcript** [2] - 26:4, 26:6
**TRANSCRIPT** [1] - 1:8
**Tremaine** [2] - 1:18, 1:21
**trial** [18] - 3:7, 9:5, 9:9, 9:18, 9:22, 10:1, 10:9, 11:13, 13:8, 14:13, 14:25, 16:8, 16:18, 22:21, 22:23, 22:25, 23:4, 23:19
**tried** [1] - 15:2
**true** [11] - 7:25, 8:7, 9:24, 11:17, 17:8, 17:12, 17:14, 17:23, 23:22, 26:4, 26:5
**trust** [1] - 13:8
**truth** [4] - 6:1, 6:2, 18:1, 18:8
**try** [5] - 6:2, 7:3, 10:7, 16:1, 16:13
**trying** [1] - 16:12
**TURCO** [1] - 1:18
**turns** [2] - 4:15, 20:1
**two** [9] - 3:20, 5:25, 8:23, 9:9, 10:2, 13:4, 15:9, 22:24, 24:2
**type** [2] - 18:13, 23:8

**U**

**under** [2] - 15:20, 19:9
**undoubtedly** [2] - 7:17, 8:19
**undue** [1] - 16:22
**unduly** [2] - 19:8, 19:23
**United** [2] - 1:24, 4:2
**UNITED** [2] - 1:1, 1:9
**universe** [1] - 15:21
**unnecessary** [1] - 19:23
**unreasonable** [1] - 10:16
**unsettled** [1] - 14:14
**unwilling** [1] - 4:10
**up** [11] - 6:22, 8:6,

8:25, 10:18, 17:15, 22:17, 22:20, 23:3, 23:11, 23:17, 23:19

**V**

**various** [2] - 2:17, 25:1
**vary** [1] - 4:3
**video** [1] - 23:9
**view** [8] - 11:2, 11:3, 11:20, 12:1, 12:4, 14:10, 18:24, 19:2
**views** [1] - 12:23
**voluntarily** [2] - 10:8
**voluntary** [1] - 4:5
**vs** [1] - 1:4

**W**

**wait** [3] - 16:18, 23:24, 23:25
**waiting** [2] - 4:21, 16:22
**waive** [4] - 14:16, 15:10, 15:12, 15:13
**wants** [1] - 10:22
**Washington** [5] - 1:5, 1:16, 1:19, 1:25, 26:11
**watch** [1] - 23:9
**ways** [2] - 13:4, 23:5
**WE** [9] - 1:2, 2:3, 2:7, 7:9, 8:11, 8:13, 9:10, 12:19, 17:10
**week** [2] - 23:23, 25:5
**weeks** [2] - 22:22, 22:24
**welcome** [2] - 12:4, 19:25
**whole** [1] - 4:13
**win** [1] - 14:5
**window** [1] - 24:22
**withhold** [1] - 14:4
**witness** [6] - 6:19, 11:6, 11:18, 13:8, 14:3, 24:10
**witnesses** [14] - 3:19, 5:1, 6:3, 6:14, 6:16, 6:18, 9:6, 9:22, 10:1, 11:8, 19:18, 20:2, 20:8, 23:6
**works** [2] - 14:1, 24:8
**world** [1] - 9:21
**Wright** [2] - 1:18, 1:21
**writ** [2] - 8:11, 8:13
**wrote** [1] - 13:9

**Y**

**year** [3] - 3:24, 10:15, 14:8
**years** [2] - 3:5, 17:11
**yesterday** [1] - 5:8
**York** [2] - 1:15, 1:22
**you-all** [4] - 11:1, 19:5, 19:12, 20:15
**yourself** [1] - 18:13
**yourselves** [1] - 19:5

**Z**

**zero** [1] - 24:19
**Zhang** [1] - 12:20
**zone** [1] - 5:15
**Zoom** [1] - 4:9