UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WE CHARITY,<br><br>                             Plaintiff,<br><br>  v.<br><br>CANADIAN BROADCASTING CORPORATION,<br><br>                            Defendant. | Case no. 22-cv-340-RDM-MJS |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF WE CHARITY'S REQUEST FOR THE ISSUANCE OF LETTERS ROGATORY TO JOHN NJIRU AND ISHMAEL AZELI**

In accordance with 28 U.S.C. § 1781(b)(2) and Federal Rule of Civil Procedure 28(b), Plaintiff WE Charity ("Plaintiff" or "WE") respectfully requests that the Court issue two Letters Rogatory (the "Letters") in the form attached hereto, addressed to the Central Authority in Kenya (i.e., the Registrar of the High Court of Kenya), to compel documents and testimony from foreign witnesses John Njiru and Ishmael Azeli. Defendant consents to this request.[1]

### BACKGROUND

This action arises from several defamatory publications that Defendant Canadian Broadcasting Corporation ("Defendant" or "CBC") published in 2021 and 2022, which falsely accused WE Charity of making misrepresentations to its donors and failing to deliver on schoolrooms WE Charity promised to build in Kenya (the "Defamatory Publications"). Plaintiff

---

[1] Specifically, in November 2024, CBC's counsel informed Plaintiff's counsel via email that CBC has no objection to Plaintiff seeking the issuance of letters rogatory as to these two witnesses.

1

initiated this suit in February 2022.  (ECF No. 1 ("Compl.").)  In May 2022, Defendant filed a Motion to Dismiss on the basis of, among other things, *forum non conveniens*, which the Court largely denied.  (ECF Nos. 16, 33.)  The parties have been engaged in discovery since the summer of 2023.

Plaintiff now requests that this Court issue the Letters pursuant to the 28 U.S.C. § 1781(b)(2) and Rule 28(b), so that it can obtain needed evidence from two third-party foreign witnesses residing in Kenya, Mr. Njiru and Mr. Azeli.  Mr. Njiru and Mr. Azeli directly assisted in the production of the Defamatory Publications by acting as local liaisons for CBC when CBC visited Kenya, and witnessed (or potentially aided) CBC's improper conduct in Kenya.

As alleged in the Complaint, CBC did not obtain the adequate legal permissions to film at schools that WE Charity built or renovated in Kenya, but falsely stated in the Defamatory Publications that WE Charity was responsible for CBC's inability to visit and film at these schools.  (*See, e.g.*, Compl. ¶¶ 641–74.)  WE Charity personnel warned CBC reporters in advance of their Kenya visit that it was necessary "to get government permission to visit and film" at the schools in Kenya.  (*Id*. ¶ 226.)  CBC ignored this advice, and failed to obtain permission before filming at Kenyan schools.  (*Id*. ¶ 229).  This resulted in the Kenyan government sending a letter to CBC which "object[ed] in the strongest terms to the actions of the Canadian Broadcast Corporation" vis-à-vis the unlawful filming.  (*Id*. ¶ 243).  Additionally, the governor of Narok County, Kenya, wrote a letter to the CBC complaining of the improper conduct that Mr. Njiru engaged in on behalf of CBC during the Kenya visit, which included a "bad faith" and misleading interview request that Mr. Njiru proposed to the governor.  (*Id*. ¶ 245)

Mr. Njiru and Mr. Azeli both possess discoverable information relevant to CBC's false allegations about the Kenya trip.  In CBC's responses to WE Charity's interrogatories, CBC

stated that "Mr. Njiru conducted all communications with persons and officials within Kenya, including but not limited to obtaining any permission, if needed, to conduct filming, arranged for CBC's travel and accommodations within Kenya including obtaining the services of a driver, and generally imparted information concerning Kenya." Declaration of Joseph Kroetsch, dated January 24, 2025 ("Kroetsch Decl."), Ex. A at 6. Further, in the defamatory publications, CBC reported that it was Mr. Njiru who communicated that the journalists were no longer welcome to visit WE Charity schools. *See* Compl. ¶ 388 ("Our colleague, journalist John Njiru, who has reported on WE Charity in Kenya, tells us we're no longer welcome.")

Mr. Azeli also assisted in CBC's reporting in Kenya, by operating a drone to obtain video footage of WE Charity schools and facilities in Kenya. *See* Kroetsch Decl., Ex. A at 6 (CBC interrogatory response stating that "Mr. Azeli primarily filmed video footage, including by operating a drone"). Furthermore, both Mr. Azeli and Mr. Njiru likely possess relevant information about what areas the CBC journalists visited, what areas they did not, and whether the journalists provided instructions about what should—and should not—be recorded during their trip. Accordingly, these witnesses are relevant to the truth/falsity of CBC's core allegation in the Defamatory Publications that WE Charity blocked it from filming at schools in Kenya, in addition to whether CBC knew those allegations were false at the time of publication.

## ARGUMENT

A letter rogatory "is simply a 'request by a domestic court to a foreign court to take evidence from a certain [foreign] witness.'" *In re Urethane Antitrust Litig.*, 267 F.R.D. 361, 363-64 (D. Kan. 2010); *see also SPS Techs., LLC v. Briles Aerospace, Inc.,* 2020 WL 12740646, at *1 (C.D. Cal. Apr. 14, 2020) (defining letter rogatory as a "formal request from a court in which

3

an action is pending to a foreign court to perform some judicial act"). [2] "A letter rogatory can also include requests for the production of documents," *Asis Internet Servs. v. Optin Glob., Inc.*, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007), or requests for "the taking of depositions within foreign countries," *SPS Techs.*, 2020 WL 12740646, at *1.

"In the United States . . . Rule 28(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1781(b)(2) authorize federal courts to issue letters rogatory that enable a U.S. litigant to obtain non-party discovery from a foreign entity." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012). Rule 28(b) provides that a deposition may be taken "in a foreign country," pursuant to a letter rogatory which is issued "on appropriate terms after an application and notice of it." Fed. R. Civ. P. 28(b)(2)(A). Similarly, 28 U.S.C. § 1781(b)(2) allows for the "transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner." 28 U.S.C. § 1781(b)(2).

"Where U.S. courts issue and then transmit letters rogatory directly to foreign courts for enforcement, courts in the receiving country enforce the letters rogatory pursuant to domestic statute or common law, or through bilateral treaties with the United States." *Lantheus*, 841 F. Supp. 2d at 777. "Both the issuance and enforcement of letters rogatory by U.S. and foreign courts 'rest entirely upon the comity of courts toward each other,'" and "request[s] for assistance

---

[2] A letter rogatory "is essentially a form of letter of request," and in general "the two terms are essentially interchangeable." *In re Urethane Antitrust Litig.*, 267 F.R.D. at 363 n.7.

4

from one court to another [are] 'usually granted.'" *Id*. at 777-78 (citations omitted).[3]

Granting a letter rogatory is a matter of the court's discretion. *See DBMS Consultants Ltd. v. Computer Assocs. Int'l, Inc.,* 131 F.R.D. 367, 369 (D. Mass. 1990) ("It is settled that the courts have inherent authority to issue letters rogatory."); *Asis*, 2007 WL 1880369, at *3 ("A court is inherently vested with the authority to issue letters rogatory . . . Whether to issue such a letter is a matter of discretion for the court.") (citations omitted). District courts should generally issue letters rogatory "whenever it is determined on a case-by-case basis that their use will facilitate discovery." *Lantheus*, 841 F. Supp. 2d at 776 (citation omitted); *see also Image Processing*, 2011 WL 13312041, at *1 ("In general, then, courts routinely issue [letters rogatory] where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence.") (cleaned up). Moreover, "it is generally the burden of the party opposing issuance to show good reason that the letter rogatory should not issue." *Id.*

"In considering the issuance of letters rogatory, U.S. courts apply the discovery principles contained in Rule 26"—for example, in evaluating requests for letters rogatory, courts have considered "arguments as to breadth, relevance, and the availability of information sought from other sources," as well as whether "the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *Lantheus*, 841 F. Supp. 2d at 776 (citations omitted). However, pursuant to Rule 28, the movant is expressly <u>not</u> required to show "that taking the deposition in another manner is impracticable or inconvenient."

---

[3] Because Kenya is not a signatory to the Hague Convention on the Taking of Evidence Abroad (*see* "Kenya Judicial Assistance Information," <u>U.S. Dept. of State</u>, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Kenya.html), "compulsion of evidence in [Kenya] from an unwilling witness can only be achieved on the basis of comity, pursuant to a letter rogatory." *Image Processing*, 2011 WL 13312041, at *2.

Fed. R. Civ. P. 28(b)(2)(B). Similarly, "a court will generally not weigh the evidence sought from the discovery request nor will it attempt to predict whether that evidence will actually be obtained" from the foreign state. *Asis*, 2007 WL 1880369, at *3; *see also In re Urethane*, 267 F.R.D. at 364 (noting that there is no requirement "that a party seeking foreign assistance" via a letter rogatory is "required to show that the evidence sought will actually be attained").

District courts have granted requests for letters rogatory (as to non-Hague Convention nations) where the movant made a reasonable showing that the evidence sought was (1) relevant and important to the movant's claims; (2) specific and narrowly tailored to the movant's claims; (3) not available through other sources or means; and (4) not unduly burdensome. S*ee, e.g., Image Processing*, 2011 WL 13312041, at *1-2 (granting request for letter rogatory seeking documents and testimony from several Japanese witnesses, where the evidence sought was relevant to plaintiff's causes of action, plaintiff had attempted to obtain the evidence from US entities "to no avail," and there had been no showing of "good cause for the denial of the requested discovery device"); *SPS Techs.,* 2020 WL 12740646, at *2 (granting request for letter rogatory seeking documents and testimony from several Canadian witnesses, where "the requested discovery is narrowly tailored and relevant to Plaintiff's claims and Defendants' defenses," the requested discovery "is not unduly burdensome," defendants had "attempted to obtain the requested information from other sources and through other means without success," and there is "no alternative source for the information sought").

Plaintiff's request here meets all relevant criteria. First, a letter rogatory is appropriate because the evidence sought is relevant and material to a key component of Plaintiff's defamation claim against CBC. CBC reporters visited Kenya in September 2021 to conduct interviews and obtain video footage of various schools that Plaintiff had built or renovated in Kenya. (Compl.

¶¶ 222-231.) In CBC's subsequent reporting about its visit, CBC repeatedly accused Plaintiff of hampering and obstructing CBC's ability to investigate in Kenya (e.g., by falsely stating that Plaintiff would not permit reporters to visit schoolhouses, and falsely stating that CBC was "not welcome" in Kenya). (*Id.* ¶¶ 222-247, 388.) This issue is one of the core false allegations by CBC which gives rise to Plaintiff's defamation claim. (*See id.* ¶ 425(i) ("Core Allegation: WE Charity obstructed the CBC's investigation in Kenya, preventing it from seeing the schools funded by WE Charity.")).

The testimony of Mr. Njiru is highly relevant to this core allegation because Mr. Njiru acted as a translator, liaison, and "local handler for the [CBC] team" during their Kenya visit. (*Id.* ¶ 246.) In fact, it was Mr. Njiru who first allegedly conveyed to CBC reporters the message that "your presence is not welcome" at WE Charity schoolhouses. (*Id.* ¶¶ 388, 646(b).) Further, in interrogatory responses, CBC stated that "Mr. Njiru conducted all communications with persons and officials within Kenya, including but not limited to obtaining any permission, if needed, to conduct filming, arranged for CBC's travel and accommodations within Kenya including obtaining the services of a driver, and generally imparted information concerning Kenya." Kroetsch Decl., Ex. A at 6. Thus, the testimony of Mr. Njiru will show key details regarding what messages were conveyed to CBC reporters about their Kenya visit (and the accuracy of those messages), as well as the conduct of CBC reporters on the ground, and any communications between Mr. Njiru and local Kenyan community members regarding CBC's visit. The testimony of Mr. Azeli, who served as a cameraman and drone operator for CBC during its Kenya visit, is material and relevant for similar reasons—to show the conduct of CBC reporters while in Kenya, and to show what CBC reporters knew or didn't know about the illegality of their drone filming activities. Furthermore, both Mr. Azeli and Mr. Njiru likely have

relevant information about where the CBC reporters went, where they did not go, and whether the reporters provided instructions about what to film (and what not to film).

Second, Plaintiff's discovery request is narrowly tailored. Plaintiff seeks discovery from witnesses Njiru and Azeli relating to only one topic—CBC's false allegation that "WE Charity obstructed the CBC's investigation in Kenya, preventing it from seeing the schools funded by WE Charity." (Compl. ¶ 425(i).) Specifically, Plaintiff seeks documents and information relating to: (1) any communications between the witnesses and CBC personnel regarding CBC's 2021 Kenya visit; (2) any communications between the witnesses and Kenyan government officials regarding CBC's 2021 Kenya visit; (3) any communications between the witnesses and local Kenyan community members regarding CBC's 2021 Kenya visit; and (4) any communications between the witnesses and WE Charity employees or affiliates regarding CBC's 2021 Kenya visit.

Third, a letter rogatory is appropriate because this evidence is not reasonably available through other means, and there is no alternative source for the information sought. Plaintiff seeks documents from and deposition testimony of Mr. Njiru and Mr. Azeli (who are both residents of Kenya, and neither of whom is a current employee of CBC), regarding events that occurred entirely abroad. Further, CBC has taken the position that these two individuals are not in its control because they were independent contractors, and not CBC's employees. Moreover, Plaintiff has independently sought information from Mr. Njiru and Mr. Azeli via email but has received no response. Kroetsch Decl., ¶ 4.

Fourth, complying with this request will not be unduly burdensome for Mr. Njiru or Mr. Azeli. Plaintiff has been informed that, once the letters rogatory are granted, the Kenyan authorities will most likely permit examinations of the witnesses to take place virtually via

videoconference.[4] Attending a virtual deposition and producing documents is not unduly burdensome for a witness.

Thus, Plaintiff's request meets all criteria under both 28 U.S.C. § 1781(b)(2) and Rule 28(b).

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court execute the proposed Letters Rogatory for Mr. Njiru and Mr. Azeli (which are attached hereto as Exhibits B and C), and return the executed versions to Plaintiff for delivery to the appropriate judicial authority in Kenya.

Dated: January 29, 2025

/s/ Joseph Kroetsch

BOIES SCHILLER FLEXNER LLP

Joseph F. Kroetsch (pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300
jkroetsch@bsfllp.com

Amy L. Neuhardt (Bar No. 996791)
1401 New York Avenue, NW
11th Floor
Washington, DC 20005
Tel: (202) 274-1137

---

[4] *See* Kenya Judicature Act (Ch. 8), Civil Procedure Act (Ch. 21), High Court Organization and Administration Act, §§ 30 – 35, https://kenyalaw.org/kl/index.php?id=11536 (setting rules and procedures for the "conduct of virtual hearings" and for "witnesses during virtual hearings," and stating that "the court may deliver its rulings and judgments in a Virtual Court Session"); *Virtual Courts*, Kenya Judiciary, https://judiciary.go.ke/virtual-courts-3/ ("The Kenya Judiciary's adoption of virtual courts has been a game-changer, promoting unprecedented access to justice across the nation."); *CMS Expert Guide to Digital Litigation in Kenya*, https://cms.law/en/int/expert-guides/cms-expert-guide-to-digital-litigation/kenya ("The [Kenyan] courts primarily conduct court proceedings on virtual platforms.").

Fax: (202) 237-6131
aneuhardt@bsfllp.com

John LaSalle (pro hac vice)
Sabina Mariella (pro hac vice)
55 Hudson Yards
New York, NY 10001
Tel: (212) 754-4541
jlasalle@bsfllp.com
smariella@bsfllp.com

*Attorneys for Plaintiff WE Charity*