**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| WE CHARITY,<br><br>                    *Plaintiff,*<br>vs.<br><br>THE CANADIAN BROADCASTING<br>CORPORATION,<br><br>                    *Defendant.* | Civil Action No. 22-00340-RDM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
<u>PLAINTIFF'S OBJECTIONS TO DISCOVERY RULINGS</u>**

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................ 1

    A.    The Discovery at Issue ............................................................................. 1

    B.    The Proceedings Before Magistrate Judge Sharbaugh ........................... 2

LEGAL STANDARD ................................................................................................... 5

ARGUMENT ................................................................................................................ 6

I.      PLAINTIFF'S PROCEDURAL OBJECTIONS ARE MERITLESS ................................. 6

II.     THE DISCOVERY ORDER WAS NOT CLEARLY ERRONEOUS ............................. 8

    A.    The Court Properly Found that the Relevance of the Information Sought Is Attenuated ............................................................................... 8

    B.    The Discovery Sought Was Highly Invasive of The Privacy of CBC Journalists 12

    C.    Magistrate Judge Sharbaugh Correctly Balanced the Breadth and Propriety of the Discovery ........................................................................ 14

CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Baylor v. Mitchell Rubenstein & Associates, P.C.*,
  857 F.3d 939 (D.C. Cir. 2017)..................................................................................5

*Bethea v. Comcast*,
  218 F.R.D. 328 (D.D.C. 2003)..................................................................................12

*Buie v. Dist. of Columbia*,
  No. CV 16-1920-CKK, 2019 WL 4345712 (D.D.C. Sept. 12, 2019)........................6

*Citizens Union of City of New York v. Attorney General of New York*,
  408 F.Supp.3d 478 (S.D.N.Y., 2019)........................................................................13

*Crawford-El v. Britton*,
  523 U.S. 574 (1998)..................................................................................................6

*Edwards v. Gordon & Co.*,
  94 F.R.D. 584 (D.D.C. 1982)....................................................................................7

*Graham v. Mukasey*,
  608 F. Supp. 2d 50 (D.D.C. 2009)............................................................................5

*Haughton v. Dist. of Columbia*,
  161 F. Supp. 3d 100 (D.D.C. 2014)..........................................................................5

*Jewish War Veterans of the U.S., Inc. v. Gates*,
  506 F. Supp. 2d 30 ....................................................................................................12

*Keaveney v. SRA Int'l, Inc.*,
  No. 13-00855, 2017 WL 1842544 (D.D.C. May 3, 2017)........................................8

*Laxalt v. McClatchy*,
  258 U.S. App. D.C. 44, 809 F.2d 885 (D.C. Cir. 1987) ..........................................6

*Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*,
  1171, 357 U.S. 449 (1958)........................................................................................13

*Palin v. New York Times Co.*,
  113 F.4th 245 (2d Cir. 2024) ....................................................................................11, 12

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984)....................................................................................................7, 8

*Sillas v. City of Los Angeles*,
  2018 WL 10731133 (C.D. Cal 2018)......................................................................14

*Strike 3 Holdings, LLC v. Doe*,
  Civil Action No. 22-cv-663 (RC/RMM), 2023 U.S. Dist. LEXIS 21776 (D.D.C. Feb. 9, 2023)
  ................................................................................................................................7

*U.S. v. U.S. Gypsum Co.*,
  333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746 (1948)..................................................6

*United States v. Microsoft Corp.*,
  334 U.S. App. D.C. 165, 165 F.3d 952 (D.C. Cir. 1999) .........................................6

**Rules**

Fed. R. Civ. P. 26 ......................................................................................................6

Fed. R. Civ. P. 72 ......................................................................................................5

Local Civil Rule 72.2 ................................................................................................5

Defendant Canadian Broadcasting Corporation ("CBC") respectfully submits this Memorandum of Law in Opposition to Plaintiff WE Charity's ("Plaintiff" or "WE Charity") Objections to Discovery Rulings. Dkt. 85 (the "Objection" or "Obj."). Plaintiff has not met its burden of establishing that Magistrate Judge Sharbaugh's denial of Plaintiff's request for an order compelling the production of evidence pursuant to Plaintiff's Requests for Production Nos. 80, 81, and 90 was clearly erroneous. To the contrary, Magistrate Judge Sharbaugh's well-reasoned Discovery Order (Dkt. 78) was manifestly correct and should be affirmed.

## **BACKGROUND**

### A.    The Discovery at Issue

On November 24, 2023, Plaintiff propounded several requests for production of documents on CBC that sought extraordinarily broad discovery seeking (1) all personal charitable, non-profit and political donations made by CBC journalists since 2013; (2) all communications to or from non-profit and political organizations and those journalists concerning those donations since 2013; and (3) all "fundraising activities" by each of those journalists for any charitable or political cause since 2013. Plaintiff requested:

- All Communications since 2013 that Harvey Cashore, Diana Swaine, Brodie Fenlon, Matthew Pierce, Kate McKenna, Cecil Rosner, or Mark Kelley received from charities, political entities, political candidate, or non-profits soliciting donations or support, describing the impact of their donations or support, or thanking them for donations or support. [Request No. 80]

- All Communications since 2013 between Harvey Cashore, Diana Swaine, Brodie Fenlon, Matthew Pierce, Kate McKenna, Cecil Rosner, or Mark Kelley and charities, political entities, political candidates, or non-profits Concerning donations or contributions they made. [Request No. 81]

- All Documents and Communications Concerning any fundraising activities undertaken by Harvey Cashore, Diana Swaine, Brodie Fenlon, Matthew Pierce, Kate McKenna, Cecil Rosner, or Mark Kelley for any charitable or political cause since 2013. [Request No. 90]

*See* Dkt. 74-2 (Ex. A) at 20-21, 26.  CBC objected that Plaintiff's requests were irrelevant, disproportionate to the needs of the case, highly invasive of journalists' privacy, and were an abuse of the discovery process for the purpose of punishing journalists for engaging in investigative reporting that was critical of Plaintiff.

On July 11, 2024, Plaintiff deposed Jack Nagler, who is CBC's public Ombudsman. Because CBC is a public broadcaster, it maintains an independent Ombudsman to whom the public may direct complaints about CBC's reporting.[1]  By the very nature of the position, Mr. Nagler has no involvement in any CBC reporting or editing, including the reporting of the CBC publications in this case.  Mr. Nagler's only connection to this case is that a donor who was interviewed for a brief news report about Plaintiff which aired on March 7, 2021 – and is not even one of the allegedly "Defamatory Publications" at issue in this case (see Compl. ¶ 302), complained that excerpts of her interview were misedited.  Pursuant to his mandate, Mr. Nagler investigated the complaint and issued a report concluding that CBC had adhered to its journalistic standards, while offering some suggestions in which the editing could have been improved.[2]

Nonetheless, during his deposition Plaintiff's counsel asked Mr. Nagler to disclose all charitable donations he personally has made.  *See* Transcript of Feb. 14, 2025 Hearing (Dkt. 79) 28:6-28:11; Transcript of Dec. 19, 2024 Hearing (Dkt. 69) 14:21-14:24.  CBC objected to Plaintiff's line of questioning and instructed Mr. Nagler not to answer.  Dkt. 69 at 14.

**B.    The Proceedings Before Magistrate Judge Sharbaugh**

After discovery in this action was referred to Magistrate Judge Sharbaugh, he issued a Minute Order governing the process for adjudicating discovery disputes.  Minute Order Dated

---

[1] "Ombudsman Mandate," CBC, available at https://cbc.radio-canada.ca/en/ombudsman/mandate-ombuds (last accessed March 14, 2025).
[2] *See* "CBC and WE", CBC, Dec. 20, 2021, available at https://cbc.radio-canada.ca/en/ombudsman/reviews/CBC_and_WE

Nov. 15, 2024. The Order specifically directed that "[u]nless and until directed by the Court, the parties shall not file any motion related to discovery without prior leave of court." *Id.* Instead, Magistrate Judge Sharbaugh directed the parties to file a joint status report regarding outstanding disputes. *Id.*

In the joint report, with respect to personal donations, Plaintiff made clear that it sought both the documents requested in its RFPs, and the right to ask questions at depositions of any CBC employees similar to the questions it posed to Mr. Nagler. Dkt. 65 at 1 ("CBC instructed a witness not to answer questions at a deposition about his charitable donations and CBC stated it will similarly instruct other witnesses not to answer."). Plaintiff argued that this information was relevant to actual malice, because it alleges CBC's reporting had mischaracterized "impact reports" that WE Charity had sent to donors about their donations. *Id.* Plaintiff maintained that if the journalists had personal experiences with other charities that issued "impact reports", that could be probative of their state of mind regarding the meaning of WE Charity's impact reports. *Id.*

Magistrate Judge Sharbaugh subsequently conducted a hearing lasting more than two hours. Once again, Plaintiff sought leave to ask the same questions at depositions it had posed to Mr. Nagler. Dkt. 69 at 10. And the only purported, specific basis it offered for all the discovery it sought was a single "impact report" sent to one donor that was included in the CBC Documentary at issue, and provided to the Court, *id.* at 10-11, 22-23, and another impact report counsel referenced orally that he said was mentioned in CBC's interrogatory responses. *Id.* at 12; 22-23. Finally, Plaintiff's counsel baldly asserted that when WE Charity told donors that it would build a school if a donor gave $10,000 for that purpose, WE Charity did not really mean it, because, according to counsel, that is "not how charities work." *Id.* at 28. At the conclusion of the hearing, Magistrate Judge Sharbaugh permitted the parties to file supplemental briefs. *Id.* at 88.

Prior to filing its supplemental brief, Plaintiff offered a purported "compromise" that ostensibly "narrowed" its requests with respect to documents.  Obj. at 3.  Specifically, Plaintiff proposed that CBC produce:

- Personalized communications from charities to Harvey Cashore, Diana Swaine, Brodie Fenlon, Matthew Pierce, Kate McKenna, Cecil Rosner, or Mark Kelley, concerning such journalists' donations or their charitable impact.

- Communications from charities to the above journalists which reference a specific potential impact—e.g., providing specific goods, or relief for a particular disaster.

- Documents concerning the above journalists' personal participation in charitable fundraising efforts—i.e., raising funds, not merely giving funds.

*See* Dkt. 74-4 (Ex. C).  Plaintiff also proposed that CBC could redact the name of the charity and the amount that was donated, on the condition that CBC not rely on the name or amount.  Finally, in its supplemental brief Plaintiff reiterated the same arguments regarding impact reports (once again, focusing on the same single impact report regarding the same single donor, Watson Jordan) and its bare assertions that its representations to donors were merely "demonstrative."  Dkt. 74. at 4-5.

On February 14, 2025, after holding a second hearing, Magistrate Judge Sharbaugh stated on the record his rulings regarding all pending discovery disputes, including this one, and the basis for those rulings.  Dkt. 79 at 25-44.  With respect to the issue of personal donations, the Court concluded that the combinations of the "breadth, burden and invasiveness of the discovery outweighs" any relevance it may have to the issue of actual malice.  *Id*. at 25-32.  The Court provided its detailed reasoning with regard to each one of these factors.

With respect to relevance, the Court assumed that the discovery might have some relevance to the issue of actual malice, but found any relevance to be "attenuated" and "overstated" by Plaintiff.  The Court noted that Plaintiff's argument relied "heavily" on impact reports, but found

that record established that impact reports were merely one small piece of a much larger basis for CBC's reporting.  *Id.* at 28-29.

Regarding breadth and burden, the Court concluded that the breadth of the requests were "considerable", requiring journalists to search for and produce a "wide swath" of charitable activities and communications over a period of a dozen years.  *Id.* at 30.  The Court further found that the requests were highly "intrusive" and would "invade the privacy" of CBC journalists by exposing the "full range of personal charitable giving."  *Id.* at 30:25-31:4.  The Court also held that Plaintiff's proposed compromise would not ameliorate that intrusion, because the substance of charitable communications typically "reveal the nature of the charity and its cause."  *Id.* at 31.

Finally, the Court found some merit in CBC's arguments that Plaintiff's purported grounds for this discovery was little more than a pretext to punish journalists for investigative reporting.  The Court noted that Plaintiff's insistence on posing the same questions to Mr. Nagler "undercuts the legitimacy of the proffered discovery".  *Id.* at 28.  The Court also expressed concern about the chilling effect on journalism that could result from permitting highly intrusive discovery into the personal lives of journalists in defamation cases.  *Id.* at 31.

## LEGAL STANDARD

Under Fed. R. Civ. P. 72(a)**,** a district judge must "consider timely objections" to a magistrate judge's order, and must "set aside any part of the order that is clearly erroneous or is contrary to law."  Local Civil Rule 72.2(c); *see Baylor v. Mitchell Rubenstein & Associates, P.C.*, 857 F.3d 939, 945-46 (D.C. Cir. 2017).   When a district court considers an objection to a magistrate judge's decision under the clearly erroneous standard "on a non-dispositive matter like a discovery ruling," the decision "is entitled to great deference" and a court's review of the "findings of fact is critically limited."  *Haughton v. Dist. of Columbia*, 161 F. Supp. 3d 100, 102 (D.D.C. 2014) (citation omitted);  *see also Graham v. Mukasey*, 608 F. Supp. 2d 50, 52 (D.D.C.

2009) (citations omitted). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)) (internal quotations marks omitted); *see also Buie v. Dist. of Columbia*, No. CV 16-1920-CKK, 2019 WL 4345712, at *3 (D.D.C. Sept. 12, 2019) (citations omitted).

"Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). And "it is appropriate for the court, in exercising its discretion…, to undertake some substantive balancing of interests…." *Laxalt v. McClatchy*, 258 U.S. App. D.C. 44, 809 F.2d 885, 890 (D.C. Cir. 1987); *see United States v. Microsoft Corp.*, 334 U.S. App. D.C. 165, 165 F.3d 952, 960 (D.C. Cir. 1999) (holding that Rule 26(c)'s "'good cause' standard … is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case").

## ARGUMENT

### I.   PLAINTIFF'S PROCEDURAL OBJECTIONS ARE MERITLESS

As a threshold matter, Plaintiff contends that Magistrate Judge Sharbaugh committed fundamental procedural errors. It asserts half a dozen times that Magistrate Judge Sharbaugh supposedly denied "WE Charity's motion to compel document discovery" (Obj. at 1; *see also id.* at 3, 4 & 5), while contending that he erred in applying the principles of Rule 26(c) because CBC "did not move for a protective order." *Id.* at 2; *see also id.* at 5, 11. Plaintiff also contends that Magistrate Judge Sharbaugh erred in precluding deposition testimony on the same topic, contending that "the issue of how the outcome of this dispute might apply to the scope of allowable deposition testimony" was never addressed by either party. *Id.* at 13.

These arguments are utterly meritless. The record makes plain that *neither party* filed any motions – to compel, for a protective order, or for anything else – because the Court's November

15, 2024 minute order directed the parties not to.[3]  Instead, the Court established a more informal, and indeed far more efficient procedure for resolving discovery disputes, which is quite similar to this Court's procedures.  Plaintiff provides no authority that a court lacks the discretion to resolve discovery disputes by applying the Federal Rules through such procedures, and in any event it is well-established that "trial courts have broad discretion to issue and set the terms of a protective order and may do so *sua sponte*." *Strike 3 Holdings, LLC v. Doe*, Civil Action No. 22-cv-663 (RC/RMM), 2023 U.S. Dist. LEXIS 21776, at *5 (D.D.C. Feb. 9, 2023); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, (1984); *Edwards v. Gordon & Co.*, 94 F.R.D. 584, 587 (D.D.C. 1982) (issuing protective order *sua sponte* in light of plaintiff's motion to compel).  Indeed, the logic of Plaintiff's position would require the conclusion that the Discovery Order should be affirmed because, just as CBC never moved for a protective order, Plaintiff never sought or filed a motion to compel, and the Court therefore had no basis to compel any discovery from CBC.  But it would be equally improper for CBC to make that argument.

Finally, equally meritless is the argument that Magistrate Judge Sharbaugh improperly addressed the issue of deposition testimony.  To the contrary, the record makes clear that it was *Plaintiff* who raised the issue and sought leave to ask any CBC witness the same questions it had posed to Mr. Nagler.  Moreover, even if Plaintiff had not, given that a dispute over the same information in Plaintiff's document requests had already arisen at a deposition, it would have been well within the Court's discretion to address the issue prospectively to avoid any need to litigate essentially the same dispute twice. *Keaveney v. SRA Int'l, Inc.*, No. 13-00855, 2017 WL 1842544,

---

[3] The Discovery Order properly characterizes Plaintiff's efforts below for what they were – a "request" to compel information pursuant to the informal procedures established by the Court.  Dkt. 78.

*2 (D.D.C. May 3, 2017) (quoting *Seattle Times*, 467 U.S. at 36) (a court has "'broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required.'").[4]

Far from committing any procedural error, Magistrate Judge Sharbaugh conducted a careful review of an extraordinarily extensive record – comprising two rounds of briefing, two hearings, and as the Discovery Order noted over 700 pages of total submissions – to issue several rulings that, *in toto,* did not grant either party all the relief it sought regarding all the disputes that were before the Court.

## II.    THE DISCOVERY ORDER WAS NOT CLEARLY ERRONEOUS

### A.    The Court Properly Found that the Relevance of the Information Sought Is Attenuated

Magistrate Judge Sharbaugh's findings regarding relevance were well-supported by the record. The Court correctly noted that Plaintiff's proffered basis for the discovery it sought heavily relied on the supposed centrality of impact reports to CBC's reporting. One of two examples of such reports were always the primary, and at least initially, the sole proffered basis.

However, the record supported that CBC's conclusions that WE Charity misled hundreds of donors into thinking they fully funded the construction of primary school houses were not based on generic inferences about what  charitable "impact reports" mean. Rather, CBC's findings were based on a plethora of sources of information (rarely involving "impact reports" at all) that were *specific to WE Charity.* Those sources included direct statements by donors to CBC reporters, numerous actual solicitations and public statements by WE Charity and its partners, online postings and videos specifically crediting scores of specific primary classrooms to specific donors,

---

[4] Magistrate Judge Sharbaugh noted that his Discovery Order does not preclude Plaintiff from asking questions about other professional experiences of CBC journalists reporting about charities. At the end of the hearing, CBC's counsel noted that while it understood that this order did not preclude Plaintiff from asking such questions, CBC has already objected to requests for production of unpublished information about such reporting on newsgathering privilege grounds. The Court clarified that its order was not intended to preclude CBC from asserting any privileges it might choose to, and any resulting disputes would be addressed in due course. Dkt. 79 at 41-42.

tax filings by donors stating that they built dozens of primary schoolrooms, interviews with multiple confidential sources including ex-WE Charity employees, WE Charity's own line item budgets, and many other sources

Indeed, after Plaintiff's counsel asserted at the initial hearing that CBC's interrogatory responses supported Plaintiff's claims about impact reports – but did not provide those responses – CBC provided its response to the Court in its supplemental briefing. Those responses describe well over 250 examples of photographs, videos, web postings, written communications, interviews, tax filings, and other information specific to WE Charity that contributed to CBC's conclusions about the charity's fundraising tactics. Only about four of those examples were impact reports. Dkt.71-1 (Ex. 1 at 3); *Id.* (Ex. 2 at 2, 4).[5]

The same is true with respect to Plaintiff's assertions about CBC's supposed reliance on generic fundraising language. CBC's reporting focused on why there is overwhelming evidence that *WE Charity* specifically intended for its donors to believe they were actually building a school, based on numerous specific statements by the charity, its partners, and its donors. CBC's Interrogatory Responses cited many examples of statements, photos and videos over many years referencing hundreds of actual schoolhouses in Kenya and crediting the construction of each specific school entirely to a $10,000 (or, in earlier years, an $8500) contribution by a specific named donor. *See, e.g.*, Dkt.71-1 (Ex. 3) (press release stating that by 2011 the Michael Pinball Clemons Foundation had built "80 fully funded schools at $8500 per school", many of which actually had "MPCF" logos painted next to the schoolhouse doors); *Id.* (Ex. 4) (website pages containing pictures of 110 specific schoolhouses in Kenya, each credited to a specific $8500 and later $10,000 donor by name); *Id.* (Ex. 5) (website of WE Charity partner Change Heroes, which funded about 65 schools in Kenya, stating that for $10,000 a

---

[5] The documents previously filed under seal in Dkt. 71-1 have been filed publicly in Dkt. 90-1.

donor could "fully fund a school in Kenya for 1,000 children"); *Id.* (Ex. 1 at 3-4) (referencing dozens of videos sent by Change Heroes to an individual donor, each shot in front of a schoolhouse in Kenya thanking the donor, by name, for building it); *Id.* (Ex. 6) (donor posted a picture of specific schoolhouse sent to it by WE Charity, saying "Our schoolhouse is now complete and open to classes!"); *Id.* (Ex. 1 at 3) (quoting a posting by a foundation donor stating "So far there are 22 primary school houses that the Unstoppable Foundation alone has funded in this area.").

Finally, the record showed that even the single impact report Plaintiff repeatedly highlighted, sent to donor Watson Jordan, was not the principal basis for CBC's reporting about him. For example, Mr. Jordan told CBC that the charity told him that "there was a need for schoolhouses in the village, and *we would build one*." Dkt. 71-1 (Ex. 11). He also provided CBC with emails with WE Charity that confirmed the same (Dkt. 71-1 (Ex. 12)); a fundraising webpage the charity helped him set up which stated a school would be built in memory of Jordan's deceased son (Dkt. 71-1 (Ex. 13)); and other similar materials. And Mr. Jordan repeatedly confirmed at his deposition that he understood from the charity there would be an actual school built in Kenya in memory of his son. Dkt. 69 at 24-25. In fact. Mr. Jordan ultimately came to believe he was funding *the entire village* – which further contextualizes that particular impact report about the village entitled "In Loving Memory of William Jordan" (his deceased son). *Id.* at 25.

In short, the record shows that the premise for seeking this extraordinarily broad and intrusive discovery is essentially a straw man – a self-constructed supposed basis for CBC's reporting that bears no resemblance to the actual CBC documentary at issue, nor the record in this case to date. Plaintiff's Objections merely reinforce that conclusion. Plaintiff contends the Court erred because it supposedly accepted CBC's "mischaracterizing WE Charity's discovery requests as only seeking impact reports." Obj. at 7. But neither CBC nor the Court *ever* suggested that

Plaintiff only sought discovery about impact reports.  Quite the opposite.  CBC maintained that the scope of the discovery sought was extraordinarily broad and was wholly untethered to the purported relevance of charity impact reports.

Finally, Plaintiff's Objections make plain that the entire premise for the purported relevance of this discovery rests on bald speculation, unsupported by anything in the record.  Plaintiff speculates that "the journalists' understanding of what they claimed are deceptive WE Charity donor solicitations *must have been informed by* their own personal experience."  *Id*. at 1-2 (emphasis added).  Yet CBC has now produced more than ten thousand documents, videotapes, audio recordings and other materials, including thousands of communications between its journalists, hundreds of pages of transcripts of interviews with sources, and dozens of hours of videotape recording journalists' activities and conversations.  Plaintiff did not point to any evidence from that extensive record – let alone from any of the publications at issue –  that the journalists' personal experiences with charities had any material impact on their reporting about WE Charity.  Based on this record, it was certainly not clearly erroneous for the Court to conclude that Plaintiff's arguments about relevance were "overstated".

Plaintiff's reliance on *Palin v. New York Times Co.*, 113 F.4th 245 (2d Cir. 2024) to support its relevance argument likewise underscores why the discovery it seeks here is improper.  Plaintiff argues that the case stands broadly for the proposition that "the reporter's personal experience with the subject matter of the reporting made it more likely he knew his story was false." Obj. at 8.  *Palin* says no such thing.  That is because the only "subject matter of the reporting" at issue was a specific act (a crosshairs map) by a specific person (Sarah Palin) – not, for example, anything to do with "politics".  The reason *Palin* found the evidence that the reporter's brother was running for U.S. Senate was relevant was because Senator Bennet had connections related to both Ms.

Palin and the crosshairs map, including two supporters who were on the map. That evidence, the court concluded, "gave [the reporter] a reason to *personally dislike* Palin and that it was therefore more likely that he intentionally or recklessly, rather than inadvertently, connected her to the Loughner shooting . . .". *Palin*, 113 F.4th at 275 (emphasis added). Here, the analogous "subject-matter" would be WE Charity – not charities in general.

Moreover, *Palin* had nothing to do with the scope of discovery. All the evidence at issue in that case were all public facts. They were not the fruits of discovery into private communications between the two brothers, or anything of the kind. Finally, Magistrate Judge Sharbaugh correctly distinguished all the other authority Plaintiff relied on below, and continues to rely on here. *See* Dkt. 79 at 29:5-30:6

As the party requesting to compel discovery, Plaintiff bore "the burden of demonstrating the relevance of the information" whose production it sought to compel. *Bethea v. Comcast*, 218 F.R.D. 328, 329 (D.D.C. 2003); *see Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007 (same). For the reasons set forth above and in Magistrate Judge Sharbaugh's opinion, it was not clearly erroneous to deny Plaintiff's motion to compel in light of its failure to meet this burden.

**B.     The Discovery Sought Was Highly Invasive of The Privacy of CBC Journalists**

Plaintiff does not dispute that Magistrate Judge Sharbaugh had broad discretion to consider the privacy implications of any proposed disclosure. Instead, Plaintiff dismisses the notion that a person's choices and practices regarding charitable donations is legitimately private. It was hardly clearly erroneous for the Court to differ with Plaintiff's self-serving views about privacy. Moreover, the law has long recognized the donations to and membership in non-profits organizations can implicate privacy and associational interests. *See Nat'l Ass'n for Advancement*

*of Colored People v. State of Ala. ex rel. Patterson*, 1171, 357 U.S. 449, 460 (1958); *Citizens Union of City of New York v. Attorney General of New York*, 408 F.Supp.3d 478, 504-06 (S.D.N.Y., 2019). While some donors may choose to publicize specific donations on social media or otherwise, that does not negate any right to privacy for donors who do not.

Moreover, the privacy interests at stake are not limited to CBC's journalists. Plaintiff seeks all "documents concerning the [CBC] journalists' personal participation in charitable fundraising efforts: i.e. raising funds, not merely giving funds." Dkt. 74-4 (Ex. C). Thus, Plaintiff demands that CBC journalists sift through all their personal emails and texts to produce every communication with a friend, colleague, family member, etc. asking or encouraging them to donate to any charity. That would not only invade the journalists' privacy, it would invade the privacy of everyone from whom funds may have been solicited. Such a blunderbuss request is not reasonably or even remotely calculated to actually focus on journalists' knowledge about how other international development charities supposedly operate, even generally.

Likewise, the analogy Plaintiff attempts to draw between CBC journalists' donations and those of WE Charity donors is a quintessential false equivalence. Obj. at 13. WE Charity was required to produce donation records because it brought a lawsuit that turns on what those records show, and CBC's right to mount an effective defense required access to them. A more apt comparison would be discovery into the general charitable giving of Marc and Craig Kielburger – the founders of WE Charity – since they instituted the charity's policy of making explicit promises to donors about the specific projects donations would fund. But CBC did not propound discovery on that subject.

Similarly, it was hardly clearly erroneous to conclude that Plaintiff's proposed "compromise" was a chimera. Common sense supports Magistrate Judge Sharbaugh's finding that

merely redacting names and/or amounts would not mitigate privacy concerns because "the substance of the communications in these contexts often reveals the nature of the charity and its cause". Dkt. 79 at 31:8-38:10. Indeed, if this were not so, then redacting names and amounts would negate the purported relevance of the information. It would be difficult to draw any inference about a reporter's personal experience with charities wholly divorced from the identity of the charities involved and/or knowledge about whether the donation was financially significant.

Finally, Plaintiff's argument that the existing protective order adequately protects the implicated privacy interests fails for two reasons. First, while some limited intrusion into privacy rights may be sufficiently addressed by a protective order, more substantial intrusions are often not. *See, e.g. Sillas v. City of Los Angeles*, 2018 WL 10731133, at *4 (C.D. Cal 2018) (even with protective order, refusing to compel various documents as "plaintiffs have not presented substantial reasons to compromise Defendants' privacy rights in this area."). And the interests at stake here – emanating from foundational constitutionally protected information – are substantial and not at all cured by their proposed "compromise". Second, should Plaintiff seek to include any such information in the record, regardless of whether it is actually relevant, Judge Sharbaugh has already made clear that any effort to seal it would carry a heavy burden. Dkt. 79 at 44-45. Magistrate Judge Sharbaugh's balancing of the privacy interests at stake was not clearly erroneous.

### C.    Magistrate Judge Sharbaugh Correctly Balanced the Breadth and Propriety of the Discovery

Finally, Magistrate Judge Sharbaugh correctly pointed to evidence suggesting that Plaintiff's extraordinarily broad requests may well have been propounded for an improper purpose. As the Court noted, there is not even a colorable argument that the personal experiences with charities of CBC's public Ombudsman, Jack Nagler, has any relevance to the issue of actual malice

in this case. Dkt. 79 at 28. Yet Plaintiff's counsel sought to elicit the same broad information from him at this deposition.

Moreover, the only brief reference to that deposition in Plaintiff's Objections further reinforces the conclusion that its arguments for such discovery are merely pretextual  Plaintiff asserts that "it was not improper for WE Charity to ask the person at CBC responsible for overseeing CBC's journalistic standards and practices whether he had familiarity with the subject matter of CBC's reporting prior to moving on to questions specific to that reporting." Obj. at 6 n.1. But Plaintiff's counsel did not question Mr. Nagler about "the subject matter of CBC's reporting." She asked for all donations he personally has made. Such information has nothing to do with whether WE Charity deceived its donors regarding funding primary schoolhouses in Kenya.

Finally, Plaintiff's Objections to Magistrate Judge Sharbaugh's conclusions regarding such discovery's potential chilling effect on journalism are themselves chilling. At bottom, Plaintiff argues that broad discovery into journalists' personal lives should be presumptively permitted in defamation cases, with only the hypothetical possibility of some limited exception in some future case. Obj. at 11 ("neither the Order nor CBC identifies any legal basis for granting journalists special privacy protection over their personal actions."). The intended, punitive impact of that proposition on investigative reporting is self-evident.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff has failed to establish that the findings underlying the discovery order are contrary to law or the result of clear error, and accordingly, Plaintiff's objections to Magistrate Judge Sharbaugh's discovery order should be overruled.

Dated: March 14, 2025

Respectfully submitted,

*/s/ Nathan E. Siegel*
Nathan E. Siegel (Bar No. 446253)
Hilary Oran (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE, LLP
1301 K Street, NW
Suite 500 East
Washington, DC 20005
Tel: (202) 973-4237
Fax: (202) 973-4499
nathansiegel@dwt.com

*Attorneys for Defendant Canadian
Broadcasting Corporation*

16