**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WE CHARITY**,<br><br>**Plaintiff**,<br><br>**v.**<br><br>**THE CANADIAN BROADCASTING CORPORATION**,<br><br>**Defendant.** | Civil Action No. 22-00340-RDM |

**DEFENDANT CANADIAN BROADCASTING CORPORATION'S**
**PRE-SUMMARY JUDGMENT MOTION CONFERENCE REQUEST**

Nathan Siegel (Bar No. 446253)
Courtney DeThomas (Bar No. 888304075)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, DC 20005
Tel: (202) 973-4200
nathansiegel@dwt.com
courtneydethomas@dwt.com

Rachel Strom (*pro hac vice*)
Amanda Levine (*pro hac vice*)
Hilary Oran (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Tel: (212) 489-8230
rachelstrom@dwt.com
amandalevine@dwt.com
hilaryoran@dwt.com

*Counsel for Defendant*
*Canadian Broadcasting Corporation*

In this action, WE Charity ("WE" or "Plaintiff") seeks to weaponize U.S. libel law to impose ruinous damages on Canada's only national public broadcaster—to the tune of at least $500 million according to its expert and discovery responses—over critical reporting about which there can be no genuine dispute CBC journalists believed to be true, and that was in fact true.

To state a defamation claim WE must establish that a challenged statement was (1) "of and concerning" it; (2) likely to be understood as defamatory by the ordinary person; (3) false; and (4) published with the requisite degree of fault. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 276 (S.D.N.Y. 2013). Here, WE alleges CBC published what it characterizes as ten defamatory "core allegations." *See* Compl. ¶¶ 424-703. Summary judgment will be warranted on several grounds.

*First*, several "core allegations" are not even "of and concerning" *Plaintiff*—WE's U.S. entity. For example, while WE claims CBC accused it of diverting funds donated for Kenya to other purposes and misreported an accountant's letter about that, it was WE Canada—not WE U.S.—that managed and expended funds for Kenyan projects. Similarly, while WE challenges CBC's reporting about donor Rukshan de Silva, he was Canadian and never donated to Plaintiff.

*Second*, WE will be unable to show that the challenged publications are materially false. It is insufficient to show that a publication was not literally true. Instead, WE must establish material falsity or, said differently, that the challenged publications are "not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). The question is whether the "substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991). Here, the "gist" of much of CBC's reporting is that WE deceived donors because it represented that donors were paying for the construction of primary school classrooms in Kenya, but there were fewer primary schoolhouses built in Kenya than donors believed they had paid to construct. The record establishes this is substantially true.

The Complaint's key premise is that WE did not communicate to donors, including Mr. de Silva and Watson Jordan, who was also interviewed in the documentary, that their donations could fully fund a schoolhouse or would be used that way. Rather, WE claims it told all donors their funds were "pooled" with others to achieve the greatest impact. Compl. ¶¶ 57-61; 323. But the record belies that claim. It shows that WE routinely told numerous donors that if they were to contribute a specific sum (typically $8,500 or $10,000), then "a school will be built" in a village abroad, including in Kenya. The record includes numerous communications in which WE repeatedly assured donors who contributed those amounts that their funds were being spent on constructing specific schoolhouses, including telling multiple different donors their donation was the one responsible for constructing the same schoolhouses. The record also contains many examples of communications in which donors questioned WE about whether their funds would build a specific schoolhouse—and *not* pooled with others more broadly—and were falsely assured the answer was "yes." In fact, to track how restricted donations were spent, WE's accounting system at the time did not even record whether donations were intended for schoolhouses—or even the "education pillar" or a village—or how much was spent for those purposes. And the sum of donations WE told donors would be used to construct classrooms in villages vastly exceeded what the charity actually spent. Put simply, as a former employee told CBC, WE overfunded projects.[1] While there could undoubtedly be disputes over whether this or that individual donor, viewed in isolation among the hundreds CBC researched, believed they fully funded a schoolhouse, such disputes are immaterial to the substantial truth of the reporting as a whole. When the full record

[1] Mr. Jordan confirmed at his deposition that he understood WE to communicate to him that he fully funded the construction of a classroom, and it is undisputed that in recorded interviews (and in a video he posted at the time of the donation) Mr. de Silva said he and his classmates were told the same about a schoolhouse in Pimbiniet, Kenya. The only dispute may be over whether both of them also understood that pictures of specific schoolhouses from those villages were the exact schoolhouses they had funded. But any such dispute would be immaterial, because it would not change the gist that both were told they fully funded schoolhouses and felt misled if that was not true.

is reviewed, CBC submits that no reasonable factfinder could conclude that WE did not engage in significant donor deception regarding contributions to build primary schoolhouses in Kenya.

Several of WE's "core allegations" also challenge CBC's reporting about how many structures WE built in Kenya. WE alleges it built 852 "schoolrooms" there and claims CBC falsely reported: (i) that WE only claimed to have built 360; (ii) there were far fewer "schoolrooms" in each of six villages than WE maintains existed; and (iii) WE included latrines in its "schoolroom" count. *See* Compl. ¶¶ 425 (c)-(e). WE's allegations rest on a semantic shell game.

In April 2021, WE told Parliament it had constructed 360 "schools and schoolrooms" in Kenya. Two months later, WE informed CBC that this figure had focused only on newly constructed primary schools. But that is exactly what CBC reported about: *primary schoolhouses* that WE *built*, not all "schoolrooms." *See* Compl. Ex. D at 13 ("[D]onors believed they had fully funded more than 900 primary schoolhouses in Kenya") & 12 ("At the top of the list, Kenya, where WE Charity said it had built 360 primary schoolhouses."). And both then and now, WE's own documents show that it claims to have built slightly fewer than 360 primary school classrooms in Kenya (about 343). Thus, CBC's reporting was, if anything, generous to WE.

CBC also reported about WE's 852 number, and that reporting was also substantially true. WE's 852 count was provided to CBC in August 2021 and purported to count all "educational spaces"—not just new primary classrooms—like kitchens, high school structures, buildings WE claimed to have "renovated," and more. CBC accurately reported that the new 852 figure included structures other than primary school classrooms WE built. *See* Compl. Ex. D at 28-29. And while WE maintains its 852 figure did not include latrines (as CBC reported), this does not change the accurate "gist" of the reporting—that the 852 count was inflated with many structures other than primary school classrooms. Nor is it defamatory to report that a charity included latrines in a count

of schoolrooms, since they are no less a part of a school than other structures (like kitchens).

*Third*, summary judgment will be warranted because WE will be unable to establish CBC acted with actual malice. A public figure like WE must show, by clear and convincing evidence, that the defendant published the challenged news reports "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986). "[R]eckless disregard" does not mean objective negligence or even recklessness. *Masson*, 501 U.S. at 510. Rather, it is a subjective test that can only be met with convincing proof that the defendant actually "entertained serious doubts as to the truth" or had a "high degree of awareness of [a publication's] probable falsity." *McFarlane v. Sheridan Square Press*, 91 F.3d 1501, 1508 (D.C. Cir. 1996). Actual malice also focuses on whether a journalist seriously doubted that "the underlying thrust of the broadcast was true." *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1241 (11th Cir. 1999). The standard "is a daunting one," *McFarlane*, 91 F.3d at 1515, and the "heavy burden" it imposes is often a basis for summary judgment. *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003). WE will not be able to make this showing as to any of the "core allegations", which include five principal topics.

1. <u>Overall Funding of Kenyan Projects</u>: WE alleges that CBC defamed it by asking the question "where did the money go?" Compl. ¶¶ 428-48. That is not an actionable statement, because questions are not actionable. *Abbas v. Foreign Policy Group*, 783 F.3d 1328, 1338-39 (D.C. Cir. 2015). But even if it was, the record reflects that CBC journalists believed that WE spent funds raised for Kenya for domestic purposes—something several insider sources told CBC was likely so. WE also claims CBC incorrectly reported on a preliminary report from WE's forensic accountant concerning funds donated for Kenya. Compl. ¶¶ 449-63. In fact, in testimony, the accountant acknowledged that his report was confusing and did not actually conclude anything.

He even agreed that when WE wrote to CBC to demand a "correction," WE gave CBC a factually false characterization of his report. CBC's interpretation of this admittedly confusing document was neither defamatory nor false and certainly cannot support actual malice. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512-13 (1984) (no actual malice where "language chosen was one of a number of possible rational interpretations" of ambiguous statement).

2. School Counting: CBC did not doubt its reporting about the number of schools WE said it constructed in Kenya. As explained above, CBC based its reporting on a figure, "360," that WE reported to Parliament and was closely matched by WE's own materials it provided to CBC. And when WE later informed CBC the total number of "schoolrooms" was 852, the notion that WE somehow discovered nearly 500 additional schoolrooms in Kenya seemed patently incredulous to CBC and an obvious effort by WE to inflate its numbers in response to CBC's investigation. Discovery has shown that the journalists' assessment was correct—most of the additional 500 "schoolrooms" were constructed or "renovated" as part of a crash plan by WE to boost its infrastructure that it devised only *after* it learned CBC was investigating that very issue. And the only way to reach WE's 852 figure based on the maps it provided to CBC was to include latrines, which were depicted therein in the same manner that all schoolrooms were.

3. WE's Deceptive Practices: CBC based its reporting on months of research, such as public statements, materials posted by donors that consistently said similar things about having donated $8,500 or $10,000 to build schools, numerous communications with sources, including donors and former WE employees, and internal spreadsheets provided by a former WE employee (who explained how they should be interpreted). Moreover, in CBC's communications with WE, its journalists found WE repeatedly changed its explanations about how projects were supposedly funded. It would be difficult indeed to prove "reckless disregard for the truth" where the plaintiff's

own definition of the "truth" kept changing—and it has continued to change during this lawsuit.

4. CBC's Kenya Trip: WE claims CBC falsely accused it of interfering with CBC's investigation in Kenya. Compl. ¶¶ 641-74. While there is a dispute about whether WE did interfere, there can be no question that CBC *believed* WE was interfering. Even before the Kenya trip, sources who told CBC they believed they paid to fully fund classrooms reversed their earlier statements and began espousing WE talking points. While in Kenya, verbatim statements from a CBC interview with a government official showed up the next day in a letter from WE's counsel threatening to sue CBC. Two days later, WE sent an email to CBC essentially accusing it of criminal activity, followed the next day by a letter from a local Kenyan official, copied to WE, making the same accusations. After journalists returned from Kenya, CBC began receiving similarly-worded letters, ostensibly written by donors but appearing to the journalists as (and now proven to have been) organized and drafted by WE, which often skirted around the actual issue CBC was investigating and seemed to contradict contemporaneous statements by donors.

5. WE's Response: Finally, WE contends CBC misled viewers into thinking that WE had "no response" to many reported allegations. Compl. ¶¶ 675-703. But CBC's reporting included an on-camera interview with WE's Kenya director, quotations drawn from communications from WE's lawyers, and quotations from donor letters to CBC. WE complains that CBC did not give it an opportunity to respond to each and every allegation, but this is a red herring. Case law holds that it is not actual malice to seek no comment from a reporting subject at all. *See Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85, 93 (S.D.N.Y. 1980). The fact that CBC engaged in dialogue with WE and reported responses from it and its supporters is, if anything, probative of the absence of malice. *Cabello-Rondon v. Dow Jones & Co., Inc.*, 2017 WL 3531551, at *10 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018).

Dated: November 2, 2026

Respectfully submitted,

/s/ *Nathan Siegel*

Nathan Siegel (Bar No. 446253)
Courtney DeThomas (Bar No. 888304075)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, DC 20005
Tel: (202) 973-4200
nathansiegel@dwt.com
courtneydethomas@dwt.com

Rachel Strom (*pro hac vice*)
Amanda Levine (*pro hac vice*)
Hilary Oran (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Tel: (212) 489-8230
rachelstrom@dwt.com
amandalevine@dwt.com
hilaryoran@dwt.com

*Counsel for Defendant*
*Canadian Broadcasting Corporation*